# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE FOOTBALL ASSOCIATION PREMIER   :
LEAGUE LIMITED and BOURNE CO., on   :
behalf of themselves and all others similarly   :
situated,   :
           :   07 Civ. 3582 (LLS)
           Plaintiffs,   :
  :
         v.   :
  :
YOUTUBE, INC., YOUTUBE, LLC and   :
GOOGLE, INC.,   :
  :
           Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)(2)(A)

PROSKAUER ROSE LLP

1585 Broadway
New York, NY 10036-8299
Phone: 212-969-3000
Fax: 212-969-2900

BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
Phone: 212-554-1400
Fax: 212-554-1444

*Attorneys for Lead Plaintiffs Premier League and Bourne
and for the Prospective Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ....................................................................................................1

STATEMENT OF FACTS ........................................................................................3

    A.   The Firms' Efforts On Behalf Of The Class Both Before And Since Filing The
          Complaint In This Action ...........................................................................3

    B.   The Recently Filed Tennessee Action ........................................................5

    C.   The Pressing Nature Of The Class' Claims And New Developments In The
          Individual Actions......................................................................................8

ARGUMENT .............................................................................................................9

I.     Appointment of Interim Class Counsel Is Appropriate Under Rule
      23(g)(2)(A).........................................................................................................9

    A.   The Class Will Be Prejudiced By Not Having Central Leadership At This Critical
          Time ............................................................................................................10

    B.   The Rivalry And Uncertainty Created By The Filing Of The Cal IV Complaint
          Should Be Resolved By The Appointment Of Interim Class Counsel...............11

II.    Under The Factors Set Forth In Rule 23(g)(1)(C), Proskauer Rose and
      Bernstein Litowitz Should Be Appointed Interim Class Counsel ......................13

    A.   The Work Performed By PL/B Counsel Has Already Created Significant Benefits
          for the Class ...............................................................................................14

    B.   Counsel in the Cal IV Action Have Sown Confusion And Have Harmed The
          Interests Of The Class................................................................................15

    C.   The Firms Have Substantial Experience Handling Copyright Actions and Class
          Actions ......................................................................................................16

    D.   The Firms' Resources Dwarf Those Of Counsel In The Cal IV Action.................19

CONCLUSION.........................................................................................................19

# TABLE OF AUTHORITIES

CASES

*Hawaiian Village Comp., Inc. v. Print Mgmt. Partners, Inc.*
  2007 WL 431017 (E.D. Mich. Feb. 5, 2007) ............................................................6

*Hill v. Tribune Co.,*
  2005 WL 3299144 (N.D. Ill. Oct. 13, 2005)...............................................9, 12, 13

*In re "Agent Orange" Prod. Liab. Litig.,*
  996 F.2d 1425 (2d Cir.1993)............................................................................12

*In re Air Cargo Shipping Servs. Antitrust Litig.,*
  240 F.R.D. 56 (E.D.N.Y. 2006).............................................................12, 13, 15

*In re Delphi ERISA Litig.,*
  230 F.R.D. 496 (E.D. Mich. 2005) ......................................................................14

*In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.,*
  234 F.R.D. 67 (S.D.N.Y. 2006) ............................................................................9

*In re WorldCom, Inc. Sec. Litig.,*
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)..................................................................18

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.),*
  471 F.3d 24 (2d Cir. 2006).............................................................................2, 11

*Parkinson v. Hyundai Motor Am.,*
  2006 WL 2289801 (C.D. Cal. Aug. 7, 2006)...............................................9, 12, 13

OTHER AUTHORITIES

Manual for Complex Litigation, Fourth § 21.11 at 245-46 ....................................11, 13

Fed. R. Civ. P. 23...............................................................................................11

Fed. R. Civ. P. 23(g)(1)(C) .........................................................................13, 16, 19

Fed. R. Civ. P. 23(g)(1)(C)(i) ..............................................................................14

Fed. R. Civ. P. 23(g)(1)(C)(ii) .............................................................................13

Fed. R. Civ. P. 23(g)(2)(A)..........................................................................1, 3, 9, 10, 11

Fed. R. Civ. P. 23(g)(2)(B) ...................................................................................3

Pursuant to Federal Rule of Civil Procedure 23(g)(2)(A), plaintiffs The Football Association Premier League Limited and Bourne Co. (together, the "PL/B Plaintiffs") respectfully submit this memorandum of law in support of their motion for appointment of their counsel, Proskauer Rose LLP and Bernstein Litowitz Berger & Grossmann LLP (together, "PL/B Counsel" or the "Firms"), as counsel for the putative Class on an interim basis.

## INTRODUCTION

The Federal Rules of Civil Procedure broadly empower the District Court to appoint interim counsel to protect the interests of the putative Class. Fed. R. Civ. P. 23(g)(2)(A) ("The court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action"). Among the factors motivating Advisory Committee recommendation to adopt the Rule are the ***need to attend to pressing pre-trial activities*** prior to certification, including the need for pre-certification discovery, and the presence of "***rivalry*** or ***uncertainty***" resulting from the filing of competing class actions. *See* Adv. Committee Notes to Fed. R. Civ. P. 23(g)(2)(A) (emphasis supplied).

These precise circumstances exist here. As explained more fully below and in the accompanying Joint Declaration of John P. Coffey and Louis M. Solomon ("Joint Decl."), circumstances have arisen — including the recent filing of a wholly unnecessary duplicative class action in Tennessee — that threaten to prejudice the interests of the putative Class absent prompt judicial action to appoint interim counsel.

Prompt appointment of interim Class counsel is compelling:

***First***, this is a paradigmatic case for the appointment of interim counsel since events are happening, will be happening, and should be happening in this and other related cases that need the prompt attention of Class counsel, who should be able to act expeditiously, without

- 1 -

distraction from rivals and with interim authority only. These events include, among other things, the need to expedite the proceedings in this case in order to stop or minimize the continuing harm to the Class from Defendants' unlawful conduct; the utility to the Class and to this Court from enabling the parties in this action and in the related Viacom Action (*Viacom Int'l et al. v. YouTube, Inc. et al.*, 07 Civ. 2103 (LLS) (S.D.N.Y.)) to carry out their agreements to coordinate the cases sensibly; the need promptly to conduct discovery in this case so that a critically valuable proposed agreement between counsel for the Class here and counsel for Defendants concerning the post-discovery timing of the class certification motion (in light of *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006)) does not have to be abandoned; and the need to make other time-sensitive decisions about this and other cases.

*__Second__*, there is a pressing need to stop the confusion and prejudice to class members and to the public at large being precipitated by a recent purportedly competing class action senselessly commenced in Tennessee, styled *Cal IV Entm't, LLC, et al. v. YouTube, et al.*, 3:07-cv-00617 (M.D. Tenn.) (the "Cal IV Action").

*__Third__*, counsel for the PL/B Plaintiffs satisfy the requisites for appointment as interim class counsel and are, we submit, the only counsel in the pending matters who do. The Firms have already collectively spent considerable time developing a litigation strategy, monitoring, recording, and scrutinizing Defendants' infringing conduct, drafting the Complaint, gathering support among class members, and unifying the Class. The Firms have already secured substantial benefits to the Class. And the Firms have extensive experience handling copyright actions and class actions, which is discussed at detail below.

2

The unfolding circumstances requiring early leadership in this important case are precisely those contemplated by Rule 23(g)(2)(A), and the Court should appoint interim Class counsel immediately. The counsel to be appointed should be the Proskauer Rose and Bernstein Litowitz firms — two nationally respected firms working together in a unique and powerful pairing that is "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2)(B).

## STATEMENT OF FACTS

### A.    The Firms' Efforts On Behalf Of The Class Both Before And Since Filing The Complaint In This Action

On May 4, 2007, the PL/B Plaintiffs filed in this District a class action complaint (the "Complaint") against defendants YouTube, Inc., YouTube, LLC and Google, Inc. (together, the "Defendants"), seeking injunctive relief to stop Defendants' unauthorized and uncompensated use on the YouTube.com website of the creative and other copyrighted works of the PL/B Plaintiffs and all other similarly situated copyright holders (the "Class"), as well as damages arising from that misappropriation. *See* Complaint (Dkt. Entry # 1), Joint Decl. at Ex. 1. This litigation — the first copyright infringement class action against YouTube — was commenced only after the Firms had collectively devoted over one thousand hours of lawyer time over a seven-month period to due diligence and pre-suit investigation. During this time, the Firms analyzed the serious and massive nature of Defendants' infringement and the harm being done to putative Class members. This effort included substantial field work both by the Firms and by retained experts to monitor the YouTube site; extensive research of Defendants' business model and the available technology; documentation and monitoring of Defendants' efforts to shield their behavior behind the Digital Millennium Copyright Act; fully vetting the copyrights of Plaintiffs Premier League and Bourne; drafting a detailed Complaint containing an abundance of

3

factual and evidentiary bases for each of the critical issues in this case; and amassing extensive proof to support the claims in the Complaint. *See* Joint Decl. at ¶¶ 2, 4.

Immediately upon filing the Complaint, the Firms activated a 1-800 number and a website devoted exclusively to this matter to provide information to copyright owners who had their works infringed by Defendants. *Id.* at ¶ 8. The Firms have already fielded a great many inquires received via the toll-free number and website or, as a result of the substantial positive press coverage generated by the Complaint, directly from Class members. *Id.* These inquiries have assisted the Firms (and, in turn, the Class) by supplementing the abundant evidence of infringement already catalogued by the Firms. *Id.* The Firms have also helped Class members to understand their rights, review their status as copyright holders, and stay abreast of the activities in this case. *Id.* at ¶ 9. In fact, in June — before the Cal IV action was filed — several prospective Class members both domestic and foreign, occupying prominent positions in the sports and music publishing fields and collectively owning hundreds of thousands of copyrights, have spoken out publicly to express their strong support for the PL/B Plaintiffs and/or their intention to join this action as class members. *Id.* at ¶ 10 & Ex. 2.

In addition to communications with putative Class members, the Firms have engaged in fruitful discussions to coordinate and minimize cost to the Class with counsel for the plaintiffs in the Viacom Action pending before this Court. *Id.* at ¶¶ 12-13. Indeed, the Firms have also entered into and are operating pursuant to a joint prosecution agreement with Viacom. *Id.* at ¶ 13. Such cooperation is especially important at this point in time because the Viacom Action has just commenced discovery, and there is a need to coordinate discovery efforts with that action on behalf of the Class. Accordingly, the Firms have informed Defendants' counsel in this action

(with the agreement of Viacom's counsel) that every reasonable effort will be made to coordinate discovery and other pre-trial proceedings between the Viacom Action and this action.  *Id.* at ¶ 14.

Significant progress was made at the Rule 26(f) conference, which was jointly held in Chicago among all parties in both this and the Viacom Actions.  Among the proposals we have made progress on, subject to the Court's views, are that discovery in the actions would be coordinated and that class certification issues would be taken up after the close of fact discovery.  *Id.*

We have talked to Viacom, and while we cannot state that we know what Viacom will do with respect to opting out of the class, counsel for Viacom has authorized us to state that (i) Viacom believes that it can cooperate and coordinate with the Firms effectively to ensure a smooth pretrial process, but that Viacom believes it will be much more difficult to do so with the Cal IV Action given that it is in a different venue on a different schedule; and (ii) Viacom supports our appointment as interim Class counsel and believes that such appointment would be in the best interests of the expeditious resolution of the claims against Defendants.  *Id.* at ¶ 30.

### B.    The Recently Filed Tennessee Action

On June 7, 2007, over a month after the PL/B Complaint was filed, another class action relating to the YouTube.com website was filed in the Middle District of Tennessee by Cal IV Entertainment, LLC (the "Cal IV Action" or "Cal IV Complaint").  *See* Joint Decl. at Ex. 3.  This second class action asserts identical claims against the same Defendants as the PL/B Action.  *Id.* at ¶ 20.  The Cal IV Complaint repeats—a few times in haec verba—the essential facts, allegations, class definition, class period, claims, and causes of action that are in the PL/B Complaint.  *Id.*  The Cal IV Action purports to assert claims and act on behalf of basically the same class (in fact a lesser inclusive one given the named plaintiff there) that is already being protected through the efforts of the PL/B Plaintiffs.  *Id.*

The filing of this copycat action has the potential to harm, and in fact already has harmed, the interests of the Class by promoting delay, confusion, and prejudice to the Class' interests. *Id.* at ¶¶ 22-24. The Cal IV Action has also already sown confusion and uncertainty among Class members, both because Class members are now reasonably asking who really represents their interests, but, even worse, because the appropriation by counsel in the Cal IV Action of the extensive efforts of the Firms in this action has created the false impression that counsel in the Cal IV Action have invested significant time and effort into their suit, and therefore have the resources to adequately prosecute the Class' claims.  Based on the dates alleged in the Cal IV Complaint, however, it appears that Cal IV's due diligence did not even begin until after the PL/B Complaint was filed.  The Cal IV Complaint attempts to piggyback off the many months of intensive and diligent work and effort that the PL/B Firms have put into this Action. *Id.* at ¶ 21. To make matters worse, the Cal IV plaintiff has now filed an MDL motion to transfer this action and the Viacom Action to Tennessee, thus engendering more confusion and potential delay. *Id.* at ¶ 22.

The haste to make their case look slightly different has led counsel in the Cal IV Action to choose a purported representative that is not adequate in at least the following respects:  (i) Cal IV Complaint's omits any allegation of copyright registration or its legal irrelevancy, thus creating a fatal defect in the pleading, depriving the Court there of subject matter jurisdiction right on the face of the complaint. *See* 17 U.S.C. § 411(a); *e.g. Hawaiian Village Comp., Inc. v. Print Mgmt. Partners, Inc.* 2007 WL 431017 at *3 (E.D. Mich. Feb. 5, 2007) (predicting that the Sixth Circuit will adopt a "registration approach" and dismissing the case for "lack of subject matter jurisdiction); (ii) all pre-1972 sound recordings are omitted from the Cal IV complaint, thus overly narrowing the class; and (iii)  the limited scope of the rights of the ***singular*** named

6

plaintiff in the Cal IV Complaint – to country music and only to those class members who have

sent take-down notices – will be claimed to exclude many Class members entitled to relief and

who are represented in this action.  For example, Cal IV will be claimed to exclude the full array

of other types of work (e.g., music, sports, and television and video programming); foreign

claimants altogether; and those class members who have not used the "content verification tool"

alleged in the Cal IV complaint or have not sent take-down notices.  *See* Joint Decl. at ¶ 25.

Furthermore, the multiplication of rival law firms purporting to represent the Class runs

the real risk of delay and distraction in conducting pressing pre-certification activities on behalf

of the Class, including discovery and necessary coordination with the Viacom Action and taking

appropriate actions in connection with the Tur Action.  *Id.* at ¶ 28.  Of critical value to the Class

and to this Court is the tentative agreement with Defendants here that the parties here will

conduct the class certification motion at the close of that discovery.  That proposal will have to

be abandoned if the Class faces a competing schedule in the Cal IV action.  *Id.* at ¶ 30.

The Firms in this action had no prior notice that the Cal IV Action would be filed.  In

fact, upon discovering the complaint there, one of the PL/B class members reached out to the

plaintiff Cal IV to discuss the ill-effects to the Class from a competing action.  Cal IV's counsel

refused to allow its client to communication with the class member.  *Id.* at ¶ 26.  All efforts to

persuade counsel for Cal IV to defer to the PL/B Action have been unsuccessful.  *Id.*

The Cal IV Action is not the first competing class action to appear during the course of

this litigation.  A previous action was commenced on May 10, 2007, in California as *Grisman v.*

*YouTube, et al.*, 07 Civ. 2518 (N.D. Cal) (herein the "Dawg Action").  The Dawg Action was

voluntarily dismissed by its counsel less than fifteen days later on May 25, 2007, after their

counsel realized it would be in their clients' (and the Class') best interests to withdraw in favor

of the PL/B Action pending in New York. *Id.* at ¶ 27. Cal IV has not responded with such

similar and appropriate concern for the Class.

### C.    The Pressing Nature Of The Class' Claims And New Developments In The Individual Actions

The expeditious prosecution of this action is key to the protection of the Class' interests;

Defendants continue to infringe the copyrighted works of the Class on a massive scale, and they

have deliberately delayed introducing available technology to reduce or eliminate their copyright

infringement. *See* Joint Decl. at ¶ 19. In addition to the overriding need for swift determination

of this action so that the continuing harm to the Class can be put to an end, events have arisen

that create a pressing need for decisive action to protect the interests of the Class.

First, we have been communicating with counsel for an individual action against

YouTube pending in federal court in Los Angeles. *Id.* at ¶¶ 15, 16 (*Tur v. YouTube, Inc.*, 2:06

Civ. 04436 (FMC-AJW) (C.D. Cal.) (the "Tur Action")). In the Tur Action, an individual

plaintiff and his solo practitioner attorney appear outmatched by the phalanx of lawyers deployed

by Google. After the District Court in California recently denied a summary judgment motion

filed by YouTube, plaintiff Tur requested that he be permitted to rely on discovery developed by

the PL/B Plaintiffs in this action. Interim Class counsel is needed to coordinate a strategy with

regard to the Tur Action and any future motions. *Id.* at ¶ 16. Unlike the Viacom Action, which

alleges widespread infringement of hundreds if not thousands of copyrights held by a major

media conglomerate, the Tur Action is an idiosyncratic suit brought by a single individual

alleging infringement on a much smaller scale than is at issue in this action or the Viacom

Action. *Id.* at ¶ 15. Class leadership is needed now to coordinate discovery and other impending

matters in connection with the Tur action.

Second, in both this and the Viacom Action, discovery has already gotten underway, with a full plate of discovery and other matters to deal with right now. *Id.* at ¶ 28. Pursuant to an agreement to coordinate discovery, and at the urging of Defendants, the document requests that Viacom and the PL/B Plaintiffs recently served each contain identical requests (in all but a few cases)—an early manifestation of cooperation among all the parties in the actions pending in this Court that will reduce the burden of litigating these cases. *Id.* at ¶ 29. This requires continuing in an efficient manner with ongoing attention and coordination in the best interests of the Class, without the distraction and delay that might result from class leadership rivalry, so that prosecution of the Class' claims can move through discovery and to trial expeditiously.

## **ARGUMENT**

### I.    **Appointment of Interim Class Counsel Is Appropriate Under Rule 23(g)(2)(A)**

As amended in 2003, Rule 23(g)(2)(A) provides: "The court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Because the rule does not provide a standard for determining when interim counsel should be appointed, courts have looked to the Advisory Committee Notes to the 2003 Amendments for guidance in determining when interim counsel is necessary to protect the interests of the class. *See e.g.*, *In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.*, 234 F.R.D. 67, 69-70 (S.D.N.Y. 2006); *Parkinson v. Hyundai Motor Am.*, 2006 WL 2289801, at *2 (C.D. Cal. Aug. 7, 2006); *see also Hill v. Tribune Co.*, 2005 WL 3299144, at *3-4 (N.D. Ill. Oct. 13, 2005).

The circumstances of this case exhibit precisely the factors that are listed in the Advisory Committee Notes as forming the basis for the interim counsel rule, including the need for coordinated action with respect to ***pressing pre-certification activities*** such as certification-

related discovery and the existence of "*rivalry or uncertainty*" created by competing class actions. *See* Adv. Committee Notes to Fed. R. Civ. P. 23(g)(2)(A).

### A.    The Class Will Be Prejudiced By Not Having Central Leadership At This Critical Time

The Advisory Committee Notes state that appointment of interim counsel is appropriate where leadership is needed to take action regarding pre-certification discovery, and where other preparations for a certification decision need to be made. *See* Adv. Committee Notes to Fed. R. Civ. P. 23(g)(2)(A). Such factors are particularly pressing here. Indeed, it is imperative that interim class counsel be appointed so that action can be taken, swiftly and with (interim) authority, to coordinate with plaintiffs in the Tur and Viacom Actions in conducting discovery and other pre-trial matters.

As already noted, expeditious prosecution is key to the protection of the interests of the Class in this case because Defendants' wrongs continue to be perpetrated on a daily and wide-scale basis. The presence now of rival firms purporting to represent the Class has the potential to distract from the efficient coordination of pre-trial activities with the individual actions, coordination which is already being undertaken by the Firms. Appointment of interim counsel will allow these necessary efforts — including coordination of discovery with the Viacom Action which has already begun, coordination of future responses to motions in the Tur Action, and ongoing monitoring of Defendants' continued infringement of the Class' copyrighted works — to proceed with minimum distraction and delay. Moreover, the substantial amount of press generated by the Complaint in this action, as well as the efforts of the Firms in communicating with prospective Class members, has already galvanized the members of the proposed Class. Appointment of interim Class counsel now will allow the Class to continue to act cohesively and with purpose, to efficiently prosecute its claims.

The need for central leadership in coordinating discovery with the individual actions will also be necessary to fulfill the claimed prerequisites for certification in the recent Second Circuit decision in *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006). That case has been read (principally by defendants) to emphasize that a full inquiry into certification requirements under Fed. R. Civ. P. Rule 23 will be needed even where there is overlap with merits-related issues. *See In re Initial Pub. Offering Sec. Litig.*, 471 F.3d at 41. ("there is no reason to lessen a district court's obligation to make a determination that every Rule 23 requirement is met […] just because of some or even full overlap of that requirement with a merits issue."). At the joint Rule 26(f) conference, the parties have tentatively agreed to present to this Court a plan to conduct discovery jointly and, after the close of discovery, to address class certification issues. The parties agreement on this issue will save huge amounts of time and expense in having to litigate the meaning and application of *In re Initial Public Offering Securities Litigation.* The sequencing will also significantly benefit the Class and this Court. Yet all those benefits will have to be abandoned if PL/B Plaintiffs in this action will have to compete with plaintiffs in the duplicative Tennessee action in terms of setting and carrying out a schedule for class certification motions.

**B.** **The Rivalry And Uncertainty Created By The Filing Of The Cal IV Complaint Should Be Resolved By The Appointment Of Interim Class Counsel**

The Advisory Notes to Rule 23(g)(2)(A) contemplate that interim class counsel can be appointed, *inter alia*, to resolve rivalry or uncertainty among competing counsel or law firms. *See* Adv. Committee Notes to Fed. R. Civ. P. 23(g)(2)(A). *See also* Manual for Complex Litigation, Fourth § 21.11, at 245-46 ("[i]f…there are a number of overlapping, duplicative, or competing suits pending in other courts, and some or all of those suits may be consolidated, a number of lawyers may compete for class counsel appointment. In such cases, designation of

11

interim counsel clarifies responsibility for protecting the interests of the class during pre-certification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.").[1]  Consistent with this guidance, courts have appointed interim class counsel on the basis that rival class actions have been filed.  *See Parkinson*, 2006 WL 2289801, at *2; *Hill*, 2005 WL 3299144, at *3-4 (N.D. Ill. Oct. 13, 2005); *In re Air Cargo Shipping Servs. Antitrust Litig.,* 240 F.R.D. 56, 57-58 (E.D.N.Y. 2006).

Through no fault of the PL/B Plaintiffs or the Firms, there is now a rivalry afoot – from a single plaintiff in an after-filed action with a fatal subject matter defect in its complaint.  While the Complaint here was filed only after many months of preparation by the Firms, it took only less than a week for the first of what we see are a number of copycat suits to be filed.  Doubtless there will be valuable resources otherwise available to prosecute the Class' claims diverted, to the detriment of the Class, unless this rivalry is promptly resolved.  The most prudent way to minimize that distraction, and prejudice, is to act now to establish interim counsel.

Indeed it is imperative that interim Class counsel be appointed so that Class members know who is protecting their interests prior to class certification and to avoid the belief that Cal IV Action supplied any significant positive thinking or approach to the matter.  *See* Joint Decl. at ¶ 21.  The attendant confusion among Class members as to who represents their interests threatens to destroy the cohesion and stability that will be necessary to efficiently prosecute the Class' claims, which the Firms have been endeavoring to establish since the Complaint in this action was filed.  *Id.* at ¶ 11.

---

[1] Designation of interim class counsel is a valuable tool the Court may use to fulfill the Court's independent responsibility to act as a fiduciary to protect absent Class members. *See In re "Agent Orange" Prod. Liab. Litig.*, 996 F.2d 1425, 1438 (2d Cir.1993) ("A judge in a class action is obligated to protect the interests of absent class members.").

In sum, the confusion and prejudice precipitated by the Cal IV Action, and the inevitable delay and distraction that will result from multiple law firms in multiple litigations purporting to speak for the Class, should be resolved by appointing interim Class counsel now.

## II.    Under The Factors Set Forth In Rule 23(g)(1)(C), Proskauer Rose and Bernstein Litowitz Should Be Appointed Interim Class Counsel

Courts considering who should be appointed interim class counsel generally use the considerations set out in Rule 23(g)(1)(C), which governs appointment of class counsel once a class is certified. *See Air Cargo Shipping*, 240 F.R.D. at 57-58 (standards for appointment of counsel for certified class apply equally to designation of interim counsel before certification) (citing *Parkinson*, 2006 WL 2289801, at *2; *Hill*, 2005 WL 3299144, at *3-4). The factors to be weighed include "the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class." *Id.* at 57 (citing Fed. R. Civ. P. 23(g)(1)(C)).

In addition to these factors, Rule 23(g)(1)(C)(ii) provides that a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Specifically, when more than one class action has been filed with multiple plaintiffs' counsel, "other considerations come into play, including among others the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court." *Air Cargo Shipping*, 240 F.R.D. at 57 (citing Manual for Complex Litigation, Fourth § 10.224); *see also Parkinson*, 2006 WL 2289801, at *2 (firm with "more experience and greater resources to commit to representing any class that may be certified" was "best able" to represent the interests of the putative class).

13

Applying these principles, there can be no well-reasoned opposition to the appointment of Bernstein Litowitz and Proskauer Rose as interim Class counsel. Since the appointment can be modified by the Court at any time (*see, e.g., In re Delphi ERISA Litig.*, 230 F.R.D. 496, 498 (E.D. Mich. 2005)), there will be no prejudice to the Class should the Court see a need to add additional co-lead counsel in the future.

### A.    The Work Performed By PL/B Counsel Has Already Created Significant Benefits for the Class

The first Rule 23(g)(1)(C)(i) factor—"the work counsel has done in identifying or investigating potential claims in the action"—weighs heavily in favor of PL/B counsel. As already noted in the accompanying Joint Declaration, since October 2006, many months before the Complaint was filed, the Firms have devoted tremendous resources preparing to litigate this action. *See* Joint Decl. at ¶ 4. During this time, the Firms collectively spent well over a thousand hours of attorney time developing a litigation strategy, monitoring, recording, and scrutinizing Defendants' infringing conduct, drafting the Complaint, and generally focusing on the many tasks necessary to litigate this important case to the maximum benefit of Class members. *See* Joint Decl. at ¶ 7.

The Firms' efforts did not end with the filing of the Complaint. Immediately after the Complaint was filed, the Firms have continued to work closely with a great many putative Class members, who have been contacting the Firms through a 1-800 number and a website devoted exclusively to this matter, as well as directly as a result of the significant positive press coverage that attended the filing of the Complaint. *Id.* at ¶ 8. The Firms have assisted these Class members in understanding their rights, keeping abreast of the case, and have encouraged a beneficial cohesiveness and unity of purpose among the Class. *Id.* at ¶ 11. The Firms have also furthered the Class' interests by communicating with and, where possible, coordinating with

counsel in the individual actions. *Id.* ¶ 12.  In addition, the Firms have established a courteous

working relationship with counsel for Defendants in this case, having already conducted a

productive Rule 26(f) conference and negotiated a time by which Defendants will respond to the

Complaint and tentative agreements concerning discovery, and the coordination with counsel for

Viacom is a key benefit to the Class.  *Id.* ¶ 14.  *See Air Cargo Shipping*, 240 F.R.D. at 57 (ability

to work with colleagues and opposing counsel should be considered in appointment of interim

class counsel).  In short, over the course of many months, the Firms have diligently investigated,

filed and developed a coherent strategy for prosecuting this important case, have coordinated

with related actions, have reached out to and assisted Class members, and have thereby already

achieved significant tangible benefits for the Class.

### B.    Counsel in the Cal IV Action Have Sown Confusion And Have Harmed The Interests Of The Class

The extensive work performed by the Firms in this case stands in stark contrast to that

performed by counsel in the Cal IV Action, whose pre-filing work appears to have been limited

to drawing and rewording the legal and factual arguments from the PL/B Complaint and

performing belated due diligence for a single plaintiff alone, and whose efforts have in fact likely

harmed and certainly confused the Class.  *See* Joint Decl. at ¶¶ 20-21.

Counsel in the Cal IV Action are inappropriate interim class counsel for a number of

reasons.

***First***, it is apparent from the face of Cal IV Complaint that counsel in that case have

performed little substantive work related to this litigation, and certainly have not undertaken

anything like the significant and diligent efforts of the Firms.  *Id.* at ¶ 21.  Based on the dates

alleged in the Cal IV Complaint, it appears that Cal IV's counsel were not stirred to pursue any

investigation of their potential claims until after the PL/B Complaint was filed.  The Cal IV

15

Complaint attempts to piggyback off the many months of intensive and diligent work and effort that our Firms have put into this Action. *Id.*

*Second*, the haste to make their case look slightly different has led counsel in the Cal IV Action to create a fatal defect in their complaint – depriving the Court in Tennessee of subject matter jurisdiction – and has led to the use of a named representative who cannot represent the broad and diverse interests of the Class. *Id.* at ¶ 25.

*Third*, counsel for Viacom has advised us that it can cooperate and coordinate with the Firms effectively to ensure a smooth pretrial process, whereas it believes it will be more difficult to do so with the Cal IV Action given that it is in a different venue on a different schedule. *Id.* at ¶ 30. In fact, Viacom has authorized us to state that Viacom supports our appointment as interim Class counsel and believes that such appointment would be in the best interests of the expeditious resolution of the claims against Defendants. *Id.*

### C. The Firms Have Substantial Experience Handling Copyright Actions and Class Actions

The next Rule 23(g)(1)(C) factor — counsel's experience in handling class actions, other complex litigation, claims of the type asserted in the action, and knowledge of the applicable law — also weighs heavily in favor of appointing Proskauer Rose and Bernstein Litowitz as interim Class counsel.

As outlined in detail in the accompanying Joint Declaration, Proskauer Rose is one of the Nation's oldest and largest law firms, and has a long history of successfully representing content producers, including musicians, playwrights, and sports leagues, across all media. *See* Joint Decl. at ¶ 33. Proskauer Rose currently has 700 attorneys, including 250 litigators, working out of seven domestic offices. *Id.* Proskauer Rose also has one of the preeminent intellectual property practices in the United States and substantial expertise in copyright law and the Digital

16

Millennium Copyright Act. *Id.* at ¶ 34. Proskauer's copyright practice, now co-chaired by

William Hart (who is actively working on this case), has been long led by the former General

Counsel of the U.S. Copyright Office, Jon Baumgarten. Members of the practice group have

been involved in some of the most important Internet-related copyright cases decided so far,

including *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.* (the case which forms the

basis for Section 512 of the Copyright Act, a statutory provision which will be a key issue in this

case); *A&M Records, Inc., et al. v. Napster, Inc.* (the most famous of the file sharing cases); and

*Universal City Studios v. Reimerdes* (involving a computer 'hack' of the encryption code

protecting DVD movies). *Id.* Proskauer has also appeared as amicus in the Supreme Court in

*MGM Studios Inc. v. Grokster, Ltd.*, (another file sharing case), and in the Third Circuit in *Video

Pipeline, Inc. v. Buena Vista Home Entm't, Inc.* (involving the creation and web distribution of

unauthorized 'trailers' for Hollywood movies). *Id.* Proskauer possesses a wealth of experience

dealing with multinational copyright issues and representing copyright owners outside of the

United States in copyright and rights-related technology matters. *Id.* at ¶ 34, 36.

Bernstein Litowitz is one of the Nation's preeminent affirmative class action firms, and in

the past five years alone has recovered over $12 billion on behalf of the classes it has

represented. *Id.* at ¶ 37. Bernstein Litowitz has over fifty attorneys located principally in offices

in New York City and San Diego, California, all who specialize in litigating large commercial

class actions such as this one. *Id.* Since its founding in 1983, Bernstein Litowitz has

successfully litigated some of the most complex and high-profile class actions in history,

including some of the largest settlements ever agreed to by public companies related to securities

fraud, and six of the ten largest securities recoveries in history. *Id.* at ¶ 38. Bernstein Litowitz's

extensive class action experience includes the demonstrated capability to develop and implement

17

procedures for communicating with absent class members, including the use of websites such as

the www.youtubeclassaction.com website discussed above. *Id.* at ¶ 39. *See In re WorldCom,*

*Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 342, n.36 (S.D.N.Y. 2005) (noting that a website

established by Bernstein Litowitz "gave Class Members access to all of the class action

pleadings and the Opinions issued in the Securities Litigation, among many other documents.").

For the Court's reference, attached at Exhibits 4 and 5 to the Joint Decl. are the firm resumes of

Prokauer Rose and Bernstein Litowitz respectively.

Overseeing this litigation on behalf of Proskauer Rose and Bernstein Litowitz, are,

respectively, Louis M. Solomon, the Co-Chair of Proskauer Rose's Litigation and Dispute

Resolution Department, and John P. ("Sean") Coffey, Co-Managing Partner of Bernstein

Litowitz, both of whom have extensive experience in trying large commercial cases such as this

one. *Id.* at Ex. 4, page 2, and Ex. 5, page 17.

The experience and resources of Cal IV's counsel pales in comparison to that of

Proskauer Rose and Bernstein Litowitz. The Cal IV Complaint lists the following law firms as

counsel: Barrett, Johnston & Parsley ("Barrett"), Girard Gibbs LLP ("Girard"), and Burr &

Forman ("Burr"). Barrett appears to be a nine-attorney law firm whose "cases usually involve

violations of federal securities law, the Employment Retirement Income and Security Act of

1974 ('ERISA'), federal antitrust law, state consumer and antitrust law, employment

discrimination and derivative litigation." *See* http://www.barrettjohnston.com/ and

http://www.barrettjohnston.com/Attorney.aspx. Girard is a thirteen-attorney law firm,

"specializing in consumer class actions, securities and complex business litigation." *See*

http://www.girardgibbs.com/attorneys.asp and http://www.girardgibbs.com/. Burr is a general

practice law firm that does not appear to have any significant experience prosecuting large

complex class actions. *See* www.burr.com. These firms, individually and collectively, do not have the requisite experience to take on Defendants, including Google, a company with a market capitalization of almost $150 billion, in a massive copyright infringement class action such as this one, especially one where the two large and sophisticated law firms are representing Defendants and where counsel for Viacom has already announced its correct intent to move the case to trial as fast as possible. If counsel in the Cal IV Action are appointed interim class counsel or lead counsel, it will be the absent Class members who will be delayed, prejudiced, and otherwise harmed.

### D. The Firms' Resources Dwarf Those Of Counsel In The Cal IV Action

The final Rule 23(g)(1)(c) factor — the resources counsel will commit to representing the class — also weighs in favor of appointing Proskauer Rose and Bernstein Litowitz as Interim Class Counsel. As set forth above, the Firms have already demonstrated a commitment to devoting substantial resources to advance the Class' ability to prevail in this litigation and have already shown concrete benefits to the Class as a whole. *See* Joint Decl. at ¶ 4. In contrast, counsel for Cal IV certainly have not shown any particular interest in the Class *as a whole* or that they have the resources sufficient to represent the class in the case or to even conduct their own investigation or evaluation. The Firms will continue to commit all necessary resources to the successful prosecution of this action.

### CONCLUSION

Every consideration set forth in Rule 23(g)(1)(C) weighs strongly in favor of the Court's acting now to appoint Proskauer Rose and Bernstein Litowitz as interim Class counsel on behalf of the putative Class. For these reasons, the PL/B Plaintiffs respectfully request that the Court designate Plaintiffs' chosen counsel, Proskauer Rose LLP and Bernstein Litowitz Berger & Grossmann LLP, as interim Class counsel.

Respectfully submitted,

Dated: July 3, 2007
New York, New York

Louis M. Solomon (LS-7906)
William M. Hart (WH-1604)
Noah S. Gitterman (NG-0106)
Dolores F. DiBella (DD-9637)
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036-8299
Phone: 212-969-3000

*-and-*

Max W. Berger (MB-5010)
John P. Coffey (JC-3832)
John C. Browne (JB-0391)
Eric T. Kanefsky (EK-3511)
BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
Phone: 212-554-1400
*Attorneys for Lead Plaintiffs Premier
League and Bourne and the Prospective
Class*

20