PROSKAUER ROSE LLP
Louis M. Solomon (LS-7906)
1585 Broadway
New York, NY 10036-8299
Telephone 212.969.3000
      - and -
BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
John P. Coffey (JC-3832)
1285 Avenue of the Americas
New York, NY 10019
Telephone 212.554.1400
*Attorneys for Lead Plaintiffs and the Prospective Class*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
THE FOOTBALL ASSOCIATION PREMIER        :
LEAGUE LIMITED and BOURNE CO., on       :
behalf of themselves and all others similarly :
situated,                               :
                                        :
                        Plaintiffs,     :
                                        :   07 Civ. 3582 (LLS)
            v.                          :
                                        :
YOUTUBE, INC., YOUTUBE, LLC and         :
GOOGLE, INC.,                           :
                                        :
                        Defendants.     :
------------------------------------- X

## JOINT DECLARATION OF JOHN P. COFFEY AND LOUIS M. SOLOMON IN SUPPORT OF MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)(2)(A)

JOHN P. COFFEY and LOUIS M. SOLOMON declare as follows:

1.  We are members, respectively, of the law firms of Bernstein Litowitz Berger & Grossmann LLP and Proskauer Rose LLP (together, "Counsel" or "PL/B Counsel" or the "Firms"), counsel to The Football Association Premier League Limited ("Premier League") and Bourne Co. ("Bourne") (collectively, the "PL/B Plaintiffs" or "Lead Plaintiffs"). We submit this Declaration in support of the PL/B Plaintiffs' Motion for Interim Appointment of Lead Counsel

Pursuant to Fed. R. Civ. P. 23(g)(2)(A). We respectfully set forth the facts showing that prompt appointment of interim class counsel is compelling given three considerations: (1) the need to promote expeditious discovery and continue the effective coordination of proceedings in this action, which will minimize further prejudice to class members; (2) the need to end the public and class confusion being precipitated by a recent "competing" class action, filed in Tennessee as *Cal IV Entm't, LLC, et al. v. YouTube, et al.*, 3:07- cv- 00617 (M.D. Tenn.) (the "Cal IV Action"); and (3) the fact that counsel for PL/B Plaintiffs satisfy the requisites for appointment as interim class counsel and are, we submit, the only counsel in any of the relevant pending matters who do. Unless otherwise indicated, the statements made herein are based on our personal knowledge or on our review of public information of which the Court can take judicial notice and are made without any intent of waiving any applicable privilege or immunity that our clients or we have.

### BACKGROUND

2.      On May 4, 2007, the Firms filed the Complaint in this action (the "Complaint") against defendants YouTube, Inc., YouTube LLC, and Google, Inc. (collectively, "Defendants") on behalf of the PL/B Plaintiffs and other similarly situated copyright holders (the "Class"). The Complaint seeks, among other things, injunctive relief to stop Defendants' unauthorized and uncompensated use on the YouTube.com website of the creative and other copyrighted works of the PL/B Plaintiffs and other Class members. *See* Complaint (Dkt. Entry # 1), attached hereto as Exhibit 1. This was the first class action commenced against YouTube alleging copyright infringement and presents issues of national and international importance. On the one hand, the PL/B Plaintiffs assert that the valuable intellectual property rights of many thousands of artists, musicians, and other content producers (many of whom lack the resources to litigate against

Defendants) cannot be used without permission; on the other, an immensely popular website – made popular in important respects by Defendants' unlawful behavior – insists that it can make that content available on the Internet without the consent of the rightful owners, and, in many cases, over their express objection.

3.      The Complaint garnered significant press attention; the filing of the case, for example, generated news stories in over one hundred print and electronic news sources, including in the foreign press, as well as on TV and radio.  As discussed below, the filing of the action has resulted in our Firms being contacted by many potential Class members who have been harmed by Defendants' copyright infringement (including several well-known organizations, discussed below).

**THE FIRMS' EXTENSIVE INVESTIGATION AND DUE DILIGENCE PRIOR TO COMMENCING THIS ACTION**

4.      Our Firms devoted tremendous effort and resources to investigating the class claims before filing the Complaint in this action.  More than seven months before filing this suit, the Firms began analyzing the serious nature of the problem presented by YouTube's conduct.  This included substantial field work both by the Firms and by retained experts to monitor the YouTube site, as well as YouTube's behavior, activities, and responses to the growing efforts by less powerful copyright holders to stop Defendants' infringement (including the use and futility of take-down notices).  During this period, the Firms and their experts also engaged in extensive research of Defendants' business model, the available technology, and the extent (or lack thereof) to which Defendants and others in the industry were or were not employing that technology.  We were also at this time monitoring Defendants' statements and undertakings and determined that Defendants' efforts to shield their conduct behind the Digital Millennium Copyright Act ("DMCA") were without basis.  (Between the two Firms there is considerable

copyright expertise, as we describe below.) We also spent a considerable number of months determining if a class action was the most feasible way to protect the members of the Class, identifying potential Class members, and communicating with many of them who consulted with us.

5.  After these efforts, we concluded that not only was massive unlawful activity occurring, but that a class action was the most practical way of securing relief. (In fact, we concluded that a class action is the *only* feasible means of putting an end to the unlawful conduct.) We then spent several weeks carefully and intensively drafting the Complaint, developing a litigation strategy, meeting and communicating frequently with the Premier League and Bourne, and generally preparing to litigate this case aggressively on behalf of the many thousands of absent Class members.

6.  As the Court will see in reviewing the PL/B Complaint, an extensive amount of research went into it. The Complaint includes, for example, research and factual citations and evidentiary bases for the allegations found nowhere else. There is extensive proof already amassed to support not only the acts of infringement specific to the named plaintiffs (Complaint ¶¶ 10-11 & Ex. A thereto), but also Defendants' infringement of the Protected Works (¶¶ 45-53); Defendants' refusal to deter or stop their infringing activity (¶¶ 54-67); Defendants' financial incentives to violate the class's copyrights (¶¶ 68-70); their "Strategic Partnerships" (¶¶ 71-76); as well as the factual reasons why Defendants cannot rely on the safe harbor of the DMCA (¶¶ 77-86) and the extensive harm to the Class resulting from Defendants' behavior (¶¶ 87-90).

7.  Principally because of the sheer volume of infringing activity, as well as the sometimes secret nature of Defendants' activities, the Firms together spent over a thousand hours of attorney time in due diligence, investigation, communicating with Class members and others,

and drafting, finalizing, and filing the Complaint.

**THE FIRMS' EXTENSIVE INVESTIGATION AND WORK DONE SINCE COMMENCING THIS ACTION AND THE RESULTING BENEFITS TO THE CLASS**

8. Following the filing of the Complaint, our Firms have continued diligently to protect the interests of proposed Class members. In order to keep Class members informed of the progress of the action and to provide a forum where the Class can contact our Firms, we activated (at our expense) a 1-800 number and a website (www.youtubeclassaction.com) devoted exclusively to this matter and designed to provide timely information to potential Class members whose copyrighted works have been infringed by Defendants. Our Firms have also posted the Complaint and other relevant materials on the website so that Class members can stay abreast of all developments in this Action. Through a combination of the 1-800 number, the website, and the significant press generated by the suit, our Firms have spoken to dozens of additional members of the proposed Class representing thousands of additional pieces of evidence of unlawful infringement, both here and abroad, regarding YouTube's practices and harm to Class members.

9. We have provided another benefit to the proposed Class and its members. In numerous instances since filing the Complaint, individual copyright holders have sought us out to express their support for the lawsuit and to review their own individual circumstances. We have devoted substantial time to reviewing the status of these copyright holders and have offered these Class members a means of staying abreast of the activities in the case and determining if they wish to join in a more active capacity in the future.

10. As mentioned above, several prospective Class members both domestic and foreign, occupying prominent positions in the sports and music publishing fields and collectively owning hundreds of thousands of copyrights, have spoken out publicly to express their strong

support for the PL/B Plaintiffs and/or their intention to join in this action as class members. Attached hereto at Exhibit 2 are the press releases from the following: Cherry Lane Music Publishing Co., one of the world's leading independent music publishers, expressing support and an intention to join this action; the Federation Francaise de Tennis, France's national tennis organization and organizer of the France Open, the Ligue de Football Professionnel, one of the top professional football leagues in the world, jointly expressing support and an intention to join this action; and the Association of European Professional Football Leagues, representing the interests of nineteen member and associate member leagues across Europe, expressing support for this action to its 500 member teams.

11.   Our efforts to date have benefited the proposed Class in yet another important respect. In our experience, it is crucial to a successful class action that the members of the class not only have adequate notice of the action and an opportunity to participate and be heard but also that there be a clear and understandable goal to be pursued by the class action and, as importantly, a cohesiveness of purpose and result. The extensive amount of press generated by the suit as well as our efforts in communicating with prospective Class members has galvanized the proposed Class, both here and abroad. The Class is beginning to act cohesively, something that will continue unless derailed by threats such as that posed by the Cal IV Action discussed below.

12.   In addition, we have attempted to advance the Class' interests by communicating and where possible coordinating with counsel in two other individual copyright actions that have been filed against Defendants. We have been in communication with counsel to the plaintiffs in *Viacom International, et al. v. YouTube, Inc. et al.*, 07 Civ. 2103 (LLS) (S.D.N.Y) (the "Viacom Action"), which is pending before this Court as the largest individual copyright infringement

action brought against Defendants. In the interests of judicial economy and efficiency, the PL/B Plaintiffs filed their Complaint in this Court as a related action. The Court has accepted this action as related to the Viacom Action.

13. Our efforts to reach out to the plaintiffs in the Viacom Action have already resulted in significant benefits for Class members. PL/B Counsel and counsel for Viacom have entered into a joint prosecution agreement. This understanding will greatly enhance the efficiencies in prosecuting this action, expediting the proceedings and keeping the very significant costs to the proposed Class to a minimum.

14. The coordination of this and the Viacom Actions goes deeper still. On June 27, 2007, PL/B Counsel, counsel for Viacom, and Defendants' counsel met in Chicago to conduct a joint in-person Rule 26(f) conference in anticipation of the joint Rule 16 conference scheduled for both cases before this Court on July 27, 2007. At the joint Rule 26(f) conference, numerous agreements in principle were reached, including coordinating discovery in this action and the Viacom Action; using discovery taken in one action as if it were taken in the other action; jointly negotiating and executing a proposed order of confidentiality, non-waiver agreement, and expert disclosure stipulation. July 2007 will bring initial disclosures, continuing the e-discovery work already begun, and the commencement of e-discovery-related 30(b)(6) depositions. Among the highly significant proposals we have made progress on, subject to this Court's views, is that class certification issues would be taken up after the close of discovery. This agreement will have huge implications to the Class and to this Court were it not to occur.

15. We have also been in communication with counsel for the plaintiff in another individual copyright infringement action, styled *Robert Tur v. YouTube, Inc.*, 2:06 Civ. 04436 (FMC-AJW) (C.D. Cal.) (the "Tur Action"), which was brought against Defendant YouTube,

Inc. in the United States District Court for the Central District of California. Unlike the Viacom Action, which alleges widespread infringement of thousands of copyrights held by a major media conglomerate, the Tur Action is brought by a single individual alleging infringement of essentially a single work. In addition, the Tur Action does not involve allegations concerning the notice and take down procedures of the DMCA, which Defendants assert as one of their key defenses.

16.     Recently in the Tur Action, the District Court in California denied a summary judgment motion filed by YouTube. That motion raised significant legal questions, and, at the oral argument on that motion, counsel for plaintiff Tur told the Court in California that plaintiff Tur wished to take advantage of and rely on the discovery that we are going to take in this action, to "piggy back" on our discovery and to "tag along" with our efforts here (Tr. of Arg., 6/18/07, at 31). Interim class counsel is thus needed to coordinate and effectuate a strategy with regard to the Tur Action..

17.     Our Firms have also established a courteous professional relationship with counsel for Defendants in this action. For example, we agreed to Defendants' request that the Rule 26(f) conference take place at the Chicago office of one of Defendants' law firms and to Defendants' request for additional time to respond to the Complaint, provided that the extension would "not prejudice or be claimed to affect plaintiffs' stated intention to coordinate this action" and the Viacom Action. (The Court entered that stipulation on May 15, 2007.)

18.     In short, over the course of many months, our Firms have diligently investigated, filed, and begun prosecuting this important case and have already achieved significant benefits for the proposed Class.

## THE NEED FOR EXPEDITIOUS RESOLUTION OF THIS CLASS ACTION

19.     We are mindful of this Court's busy docket and the near-ubiquitous chant from plaintiffs of the need for a speedy trial. We nonetheless respectfully believe that expedition is key to the protection of the proposed Class in this case. Class members are being harmed every day by delay, as the value of their copyrighted works are diminished, and thousands (or in some instances millions) of dollars are being spent annually to attempt to protect the rights of Class members, to no avail. The more quickly this case can be discovered and tried, the more advantageous it will be for the Class. New infringing matter is posted on Defendants' website by the thousands every day, thus harming more potential Class members and further harming existing Class members. We demonstrate below that the Firms have the desire and resources to push the case as quickly as the Court can accommodate.

## THE CAL IV ACTION: THREATENING THE CLASS WITH DELAY, CONFUSION, AND PREJUDICE

20.     Over a month after the PL/B Complaint was filed, a competing class action complaint was filed in Tennessee. Cal IV Complaint attached hereto as Exhibit 3. This class action brought by plaintiff Cal IV Entertainment, LLC asserts identical claims against the same Defendants as the PL/B Action. The Cal IV Complaint repeats the essential facts, allegations, class definition, class period, claims, and causes of action as are in the PL/B Complaint. The Cal IV Action purports to assert claims and act on behalf of basically the same class that is already being protected through the efforts of the PL/B Plaintiffs but with a named plaintiff that cannot represent all Class members adequately (discussed below).

21.     Based on the dates alleged in the Cal IV Complaint, it appears that Cal IV's due diligence did not even begin until after the PL/B Complaint was filed. The Cal IV Complaint attempts to piggyback off the many months of intensive and diligent work and effort that our

Firms have put into this Action. The Cal IV Complaint, and the Cal IV Action itself, raise significant issues that justify the prompt appointment of the Firms as interim lead counsel for the prospective class. For example:

22.     **Delay.**  The swift pace that our Firms have managed to achieve, and notably, need to continue, will be put at risk by the competing filing. Furthermore, this case does not need to involve additional attorneys – attorneys who would have to be consulted on discovery and other issues. "More" is distinctly *not* better in this situation. For example, even though the Cal IV plaintiff has filed a complaint with a glaring subject matter defect in it, the Cal IV plaintiff has just filed an MDL motion to transfer this action and the Viacom Action to Tennessee, thus engendering more potential delay

23.     **Confusion.**  Unfortunately, the Cal IV Complaint is already causing confusion among prospective Class members, threatening to dilute the ability of Class members to make informed decisions about whether they would like to participate in the Class. Some Class members are effectively asking, "Will the real class counsel please stand up?"

24.     **Prejudice.**  The prejudice the Cal IV Action is causing to Class members manifests itself in numerous ways. The very filing of the Cal IV Complaint has created unnecessary issues concerning law applicable to the claims of the Class. Not only will the confusion being generated by the dueling cases weaken the class structure itself; any class member associated with the other class action will face a prejudicial attack by Defendants as a result.

25.     **Mistaken Class Representative/Shape of Class.**  The haste to make their case look slightly different from the Complaint filed in this case has led counsel in the Cal IV Action to choose a purported representative who is not adequate in at least the following respects: (i)

the Cal IV Complaint omits any allegation of copyright registration or its inapplicability, thus creating a fatal defect in the pleading, depriving the Court there of subject matter jurisdiction right on the face of the complaint. *See* 17 U.S.C. § 411(a). (ii) All pre-1972 sound recordings are omitted from the Cal IV complaint, thus overly narrowing the class; and (iii) The limited scope of the rights of the *singular* named plaintiff in the Cal IV Complaint – to country music and only to those class members who have sent take-down notices – will be argued to exclude many Class members entitled to relief and who are represented in this action. For example, Cal IV will be said to exclude the full array of other types of work (e.g., music, sports, and television and video programming); foreign claimants altogether; and those class members who have not used the "content verification tool" alleged in the Cal IV complaint or have not sent take-down notices. By contrast, the Complaint in this case protects *both* the class members named in the Cal IV Complaint *and* the much wider group of copyright holders who are being harmed by Defendants actions, as discussed herein.

26.     The PL/B Counsel had no prior notice that the Cal IV Action would be filed. In fact, upon discovery of the Cal IV complaint, one of our own clients reached out to the plaintiff to discuss the ill-effects to the Class from a competing action. Cal IV's counsel refused to allow its client to communicate with ours. Our Firms' efforts to persuade counsel for Cal IV to defer to the PL/B Action have been unsuccessful.

27.     The Cal IV Action is not the first competing class action to appear during the course of litigation. A previous copycat action was commenced on May 10, 2007, in California as *Grisman v. YouTube*, et al., 07 Civ. 2518 (N.D. Cal) (herein the "Dawg Action"). The Dawg Action was voluntarily dismissed by its counsel less than fifteen days later on May 25, 2007, after their counsel realized it would be in their clients' (and the Class's) best interests to

withdraw in favor of the PL/B Action pending in New York (which it did).

### THE COMPELLING NEED FOR THE COURT TO APPOINT INTERIM COUNSEL NOW

28.  Several reasons support the appointment of interim Class counsel at this time. Timely and important decisions need to be made for the Class's benefit, both in this case and in other cases. These decisions require the prompt attention of class counsel, who should be able to act expeditiously, without distraction from rivals and with interim authority. These decisions relate to, among other things, the need to expedite the proceedings in this case in order to stop or minimize the continuing harm to the class from Defendants' unlawful conduct; the need to expedite proceedings and discovery in this case in order to coordinate it with the Viacom Action, which (like this action) has already begun discovery; the need to conduct discovery in this case, including potentially merits-related discovery, to satisfy claimed prerequisites flowing from the Second Circuit's decision in *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006), and the need to make other time-sensitive decisions about this and other related cases.

29.  As shown in the above paragraphs, expedited discovery and trial of this action is crucial to minimizing further harm to the Class (*supra*, ¶ 19). Appointing the Firms as interim class counsel is required to accomplish this goal. Defendants continue to infringe the copyrighted works of the PL/B Plaintiffs and all other similarly situated copyright holders on a daily basis, and thus the interests of the Class will be well-served by the swift and expeditious prosecution and determination of this action. Our Firms are best placed to effectuate this because we have already put considerable effort into understanding the relevant issues and the necessary discovery. Further, having reached an understanding with the plaintiffs in the related Viacom Action and having the capacity and resources to discover and try this case quickly, we have already begun discovery. Pursuant to our agreement to coordinate discovery—and at the

urging of Defendants—the document requests that Viacom and the PL/B Plaintiffs recently served on Defendants each contain identical requests (save for a handful of separate requests) — an early manifestation of cooperation among all the parties in the actions pending in this Court that will reduce the burden of litigating these cases.

30. Coordination of this action with the Viacom action is plainly of great value to this Court and to the Class. We have talked to Viacom, and while we cannot state that we know what Viacom will do with respect to opting out of the class, counsel for Viacom has authorized us to state that (i) Viacom believes that it can cooperate and coordinate with the Firms effectively to ensure a smooth pretrial process, but that Viacom believes it will be much more difficult to do so with the Cal IV Action given that it is in a different venue on a different schedule; and (ii) Viacom supports our appointment as interim Class counsel and believes that such appointment would be in the best interests of the expeditious resolution of the claims against Defendants. Furthermore, the standing proposal to coordinate discovery with the Viacom Action, and to address class certification issues at the close of that discovery, will have to be abandoned if we face a competing schedule in the Cal IV action. This is a hugely significant issue, to the Class and to this Court.

31. In addition, the early stages of a class action are vital for mobilizing and stabilizing the Class, which the law not only permits but encourages. *See* Plaintiff's accompanying Memorandum of Law in Support of Their Motion for Designation of Interim Class Counsel. The Cal IV Action threatens to destabilize and demobilize the Class to the ultimate detriment of Class members. As shown above, we are already seeing Class members hesitate, unsure of which is the "real" case. This confusion and prejudice would be stopped by interim appointment of Class counsel. Finally, the Class in this case has, we believe, the facts

and the law to accomplish the structural changes at YouTube sought in the Complaint.

**THE FIRMS' EXPERIENCE IN HANDLING CLASS ACTIONS, OTHER COMPLEX LITIGATION, CLAIMS OF THE TYPE ASSERTED IN THIS ACTION, AND KNOWLEDGE OF THE APPLICABLE LAW**

32. The Firms representing the PL/B Plaintiffs and the proposed Class are staffed with first-tier copyright specialists and class action counsel with the depth and resources to see this case through discovery, motion practice, and trial expeditiously, and to act as interim Class counsel in the meantime.

33. The Proskauer Rose Firm was founded in 1875 and is one of the Nation's oldest and largest law firms, with a long history of successfully representing content producers such as musicians, playwrights, and sports leagues in all media, including print, TV, video, and DVD. Proskauer currently employs approximately 700 attorneys, including 250 litigators, working out of seven domestic offices. Attached hereto at Exhibit 4 is the firm resume of Proskauer Rose.

34. Proskauer also has one of the preeminent intellectual property practices in the United States with substantial expertise in copyright law and the Digital Millennium Copyright Act. We respectfully submit that Proskauer has no parallel in the copyright area, particularly in connection with the enforcement of the rights of content owners on the Internet. The copyright practice, now co-chaired by William Hart (who is actively working on this case), has been long led by the former General Counsel of the U.S. Copyright Office, Jon Baumgarten, with a remarkable history of landmark cases in the field such as: *American Geophysical Union v. Texaco Inc.*; *Basic Books, Inc. v. Kinko's Graphics Corp.*; and *Universal City Studios v. Reimerdes*. The practice group members have also been involved in some of the most important Internet-related copyright cases decided so far, including the following: *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*, the case which forms the bedrock of Internet Service Provider

liability in the U.S. and was the basis for Section 512 of the Copyright Act, a statutory provision which will be the key defense asserted by Defendants in this case; *A&M Records, Inc., et al. v. Napster, Inc.*, the most famous of the file sharing cases, in which Proskauer acted as co-counsel to the RIAA; and *Remeirdes*, mentioned above, representing the major Hollywood studios in a case involving a computer 'hack' of the encryption code protecting DVD movies. Proskauer has also appeared as amicus in the Supreme Court in *MGM Studios Inc. v. Grokster, Ltd.*, on behalf of the Grammy Organization and a host of other artist groups, and as amicus in *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, a Third Circuit infringement case involving the creation and web distribution of unauthorized 'trailers' for Hollywood movies. Proskauer possesses a wealth of experience dealing with multinational copyright issues and representing copyright owners outside of the United States in copyright and rights-related technology matters.

35.   Proskauer also represents a wide variety of content owners, ranging from studios and sports leagues, to music publishers, performing artists, and other creators of copyrightable content. Proskauer has long been an advisor to trade organizations such as the Motion Picture Association of America (MPAA), the National Academy of Recording Arts and Sciences (NARAS), the Grammy Organization, and other groups whose members consist of authors, writers, filmmakers, producers and recording companies.

36.   Finally, Proskauer has a wealth of expertise in dealing with the technology issues that will be central to the case, including computer science and computer engineering. For example, Proskauer was extensively involved in the technical aspects of DVD encoding and copy protection, has represented numerous clients in trade secret and intellectual property cases involving computer software and computer systems, and has been involved in other high-technology matters. Similarly, the lawyers involved in this case, including lead counsel, recently

represented a major French cellular telephone provider in litigation over the failure of a key piece of network switching equipment, requiring in-depth knowledge and discovery of fundamental computer technology.

37.     Bernstein Litowitz is one of the Nation's preeminent affirmative class action firms, and in the past five years alone has recovered over $12 billion on behalf of the classes it has represented. Bernstein Litowitz has over fifty attorneys located principally in New York City, all whom specialize in prosecuting complex commercial class actions such as this one. Attached hereto at Exhibit 5 is the firm resume of Bernstein Litowitz.

38.     Since its founding in 1983, Bernstein Litowitz has successfully litigated some of the most high-profile class actions in history and has achieved some of the largest recoveries ever for the benefit of class members in securities fraud cases. Bernstein Litowitz has achieved six of the ten largest securities recoveries in history, and has achieved precedent-setting corporate governance reforms in many other cases. Bernstein Litowitz has also achieved historic recoveries in a number of high-profile employment discrimination and civil rights actions throughout the country. As a result of Bernstein Litowitz's accomplishments, the firm and its attorneys have been the subject of feature articles in a number of major media publications, including *Business Week, The Wall Street Journal, The American Lawyer,* and *The National Law Journal.*

39.     Bernstein Litowitz's extensive class action experience includes the demonstrated capability to develop and implement procedures for communicating with absent class members and keeping them informed about the progress of the litigation. As the Firms have done here with the www.youtubeclassaction.com website discussed above, Bernstein Litowitz has successfully designed and utilized websites in other complex cases in order to provide timely

information to class members. Three significant cases in this District include: *In re Nortel Networks Securities Litigation* ("*Nortel II*"), 05-MD-1659 (LAP); *In re WorldCom, Inc. Securities Litigation*, 02 Civ. 3488 (DLC); and the ongoing *In re Refco, Inc. Securities Litigation*, 05 Civ. 8626 (GEL). *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 342, n. 36 (S.D.N.Y. 2005) ("It should be noted that the Lead Counsel Website gave Class Members access to all of the class action pleadings and the Opinions issued in the Securities Litigation, among many other documents.")

40.  As noted above, the Bernstein Litowitz team is lead by the firm's Co-Managing Partner, John P. ("Sean") Coffey. A former Assistant United States Attorney in this District, Mr. Coffey has tried over a dozen jury cases to verdict in this Court House. He served as lead trial counsel in two of the more notable cases on this District's docket in recent years: the *WorldCom* securities class action, which settled for over $6.1 billion and culminated in five weeks of trial of WorldCom's former auditor; and the *Nortel II* securities class action, which settled last year for over $1.1 billion and resulted in an unprecedented percentage of recovery of investors' losses for a "mega-case."

41.  The declarants will be the partners overseeing this litigation on behalf of Proskauer Rose and Bernstein Litowitz. We both have extensive experience in discovering and trying large commercial cases such as this one. Attached hereto at Exhibit 4, page 2, and Exhibit 5, page 17, are copies of our respective biographies.

42.  In our opinion, there is no alternative to the Firms acting as interim Class counsel.

## CONCLUSION

43.  Based on the foregoing, we respectfully request that the Court designate Proskauer Rose and Bernstein Litowitz as interim Class counsel for the putative Class in this

Action pursuant to Federal Rule 23(g)(2)(A) to protect the absent Class members and the Court's jurisdiction.

We declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in New York, New York, on July 3, 2007.

_____  _____
JOHN P. COFFEY                    LOUIS M. SOLOMON