**EXHIBIT 3**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE, TENNESSEE

|  |  |  |
|---|---|---|
| CAL IV ENTERTAINMENT, LLC,<br>on behalf of itself and all others similarly<br>situated, | ) ) ) ) | |
| Plaintiff | ) ) | CASE NO _____ |
| v. | ) ) | JURY DEMAND |
| YOUTUBE, INC., YOUTUBE, LLC,<br>and GOOGLE, INC., | ) ) ) | |
| Defendants | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Cal IV Entertainment, LLC ("Cal IV") brings this class action, on behalf of itself and all others similarly situated, against Defendants YouTube, Inc., YouTube, LLC (collectively "YouTube"), and Google, Inc ("Google") (YouTube and Google are collectively referred to as "Defendants").

## INTRODUCTION

1.  YouTube operates one of the most widely visited websites in existence  YouTube refers to itself in press releases as "a consumer media company for people to watch and share original videos through a Web experience "

2.  YouTube's growth from startup company to $1 65 billion acquisition target in less than one year is one of the fastest and most dramatic growth stories in American economic history. The success of YouTube is based in substantial part upon the ability of YouTube users to post unauthorized copyrighted works, to view unauthorized copyrighted works posted by others, and to form networks or "communities" of YouTube users who exchange infringing works among

themselves. YouTube's profitability depends on advertising revenue. YouTube's advertising revenue is in turn determined by the number persons who visit the YouTube website. Even though a substantial portion of YouTube's "traffic" is attributable to the availability of infringing material, Defendants make no effort to compensate the owners of the infringed copyrights that appear on the YouTube website. Defendants seek instead to force owners of copyrights to choose between suffering continued infringement of their works and licensing those works on terms acceptable to Defendants.

3. Defendants have entered into license agreements with some large multimedia providers, including Warner, Sony, Universal, CBS, EMI and BBC. These license agreements give YouTube the right to display the multimedia providers' copyrighted content on YouTube. As part of these agreements, Defendants have agreed to use technology to filter unauthorized content and to protect the licensors' copyrights. Other major multimedia providers, such as Viacom, have sued YouTube asserting copyright violation claims similar to those alleged herein

4 Defendants encourage multimedia providers to enter into license agreements with YouTube by emphasizing that licensors will enjoy the benefits of YouTube's copyright protection technology. YouTube emphasizes that these so-called "strategic partners" are given tools to "monetize" the use of their copyrighted material on YouTube, and the ability to track royalties. YouTube does not give access to these tools to copyright holders who have not entered into license agreements with YouTube. Defendants instead require that copyright holders such as Cal IV identify and report each individual post of infringing material on YouTube and demand its removal. The design and operating features of the YouTube website make it difficult or impossible for copyright holders to identify and report all infringements to YouTube. In addition, Cal IV and other copyright holders have the right to assume that when

YouTube is sent a "take-down notice" identifying a representative list of infringing works, YouTube will act in good faith to remove all similarly infringing material from its website.

5  Even when provided with a list of representative works infringed on the YouTube website, however, YouTube refuses to implement these measures as it would materially diminish YouTube's profitability by (1) requiring YouTube to accept a reduction in the number of copyrighted works on YouTube, thereby reducing YouTube's appeal to the public or (2) requiring YouTube to enter into license agreements with copyright holders on terms less favorable to YouTube

6  Cal IV holds the copyrights to nearly 15,000 songs  Several of these songs have been recorded by leading country music artists and have enjoyed commercial success. To date, Cal IV owns the rights to fourteen number one hit singles on the country music charts. The copyrights associated with Cal IV's catalog of songs have significant commercial value. Cal IV's content has been and continues to be infringed in various ways by YouTube and its users

7.  Cal IV has attempted, in accordance with the provisions of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, to obtain the removal of all infringing material posted on YouTube. Cal IV has also complied with YouTube's own instructions for removal of unauthorized material. YouTube has failed to adopt and reasonably implement a policy that provides for termination of repeat-infringing YouTube subscribers and account holders. YouTube also fails to monitor works it has previously been noticed are being infringed. Cal IV's copyrights in various songs continue to be infringed on YouTube. Defendants have not provided Cal IV with any meaningful ability to prevent this infringement, and absent judicial intervention, such infringement will continue.

## PARTIES

8.   Plaintiff Cal IV Entertainment, LLC is a privately-held, independent music publisher located at 808 19th Avenue South, Nashville, Tennessee 37203.

9.   Defendant YouTube, Inc is a Delaware corporation with its principal place of business in San Bruno, California.

10.   Defendant YouTube, LLC, is a Delaware limited-liability company, with its principal place of business also in San Bruno, California   YouTube, LLC, is a successor in interest of YouTube, Inc.

11.   Defendant Google, Inc. is a publicly-traded Delaware corporation with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California.   YouTube is a wholly-owned and controlled subsidiary of Google   On October 9, 2006, Google announced that it was acquiring YouTube.  That transaction closed on November 13, 2006   Recently, Google launched its own website wherein searches for various videos return results for videos on the YouTube website.  Therefore, Google participates in inducing, contributing to and profiting from YouTube's massive copyright infringement.

## JURISDICTION AND VENUE

12.   This Court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338 (a) and (b).  Furthermore, this action arises under the Copyright Act 17 U.S.C. § 101 et seq.

13.   This Court has personal jurisdiction over Defendants because they transact business within the Middle District of Tennessee and supply goods and services in Tennessee to those individuals who reside here and who upload and view videos on YouTube's website

14   Venue is proper in this district pursuant to 28 U.S.D §§ 1391(b) and (c) and 1400(a)

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

**A.**    **YouTube's Rapid Growth Is Attributable to Widespread Copyright Infringement.**

15.   On December 15, 2005, YouTube announced the opening of its website to the public. YouTube explained that it had simplified viewing and sharing of videos and announced that as of December 15, 2005, it had already amassed 3 million videos on its website.  YouTube recently stated that its users view one hundred million videos each day.

16.   In order to make a video publicly available on YouTube, users simply upload a video from their computers.  Videos are converted into Flash videos, making them viewable through every major Web browser, including Internet Explorer and Mozilla Firefox.  Flash is available to 97 percent of Internet users.

17.   YouTube's website allows users to search for videos of interest by typing in specific search terms or browsing various available categories.  Users can search for videos by entering common search terms, or they can browse through videos based on channels of interest, popularity, user rankings, most recently viewed videos and featured videos selected by community recommendations.

18    YouTube's appeal is attributable in large part to copyrighted material made available on the YouTube website at no cost.  YouTube allows users to view these copyrighted materials as they are posted by others and to form lists of "favorites" that users can then return to and view at their leisure.  YouTube allows users to share copyrighted materials with others.  YouTube also allows users to form private networks, such that third parties are unable to determine the nature of the content shared within the user group.

19. Infringing uses of YouTube are widespread. Media executives and academics have estimated that between 30 and 70 percent of the content on YouTube is copyright material uploaded without the copyright holder's consent.

**B.    YouTube's Design Encourages Copyright Infringement and Impedes the Assertion of Copyrights.**

20. Any user who wishes to search for specific content can type in key words, such as titles of songs or performers, and receive a list of videos matching that specific content request. For example, a user might type in the words "Breathe" and "Faith Hill" and the result would be a list of several videos, most of which infringe a copyright of a song held by Cal IV. The user can then click on the videos he or she wishes to view and see them instantaneously.

21. An important function of YouTube is the ability to share or "embed" videos from its library:

> Video sharing on YouTube is not limited to www.YouTube.com. Through the video embedding feature, YouTube allows users to stream videos, both personal and public ones, across the Internet on other Web sites. For example, users can insert their favorite YouTube videos into their MySpace profiles, blogs or personal Web pages. Even as viewers watch videos across the Web, they can immediately share a video through e-mail from within the video player itself.

In other words, users can distribute videos on YouTube to other websites or via email with ease. Copyright holders, in contrast, are prevented from identifying infringing videos that are disseminated in this manner and prevented from enforcing their statutory rights.

22. The ability to "embed" a video makes it easy to transfer an infringing work to other websites, precluding the copyright owner from identifying and acting upon each instance of copyright infringement. To embed a video, a user need only copy a code, which YouTube readily supplies for each video found on its site, and paste that code into another website. The embedded video will then appear with a "play" button prominently displayed in the middle of the

screen. Once that video is embedded on another website, a subsequent user of that particular website simply has to click on the "play" button to watch the video. YouTube then transmits the streaming video directly to this ancillary website from its own servers

23.    Additionally, it is possible for users to share videos by clicking the word "share" that is displayed with each video found on YouTube's website. A user who clicks the word "share" is then directed to enter the e-mail addresses of each individual with whom the user wishes to share the video. YouTube then sends an email to each address provided by the user with a link to the video selected

24.    It is difficult, if not impossible, for the owners of copyrighted material to locate videos that are embedded or shared as described above. As a result, it is impractical, if not impossible, for copyright holders to seek to have these videos taken down or otherwise disabled once they have been embedded or shared.

    **C.**    **YouTube's Stunning Economic Success Is Based In Large Part Upon The Existence Of A Massive Amount of Copyrighted Material Easily Accessible To Users Worldwide.**

25    By offering access to large volumes of copyrighted material, YouTube has become one of the most visited internet sites. YouTube's enterprise value is directly tied to the advertising revenue YouTube has generated and is expected to generate in the future

26.    Throughout the entire YouTube experience – accessing the site, searching for videos, and watching videos – the YouTube website displays paid advertisements. Defendants, therefore, directly benefit via advertising dollars generated from the substantial traffic to their website due to its extensive library of copyrighted material.

27.    Approximately one month prior to the public unveiling of the website, YouTube announced that it had received $3.5 million in financing. According to YouTube's press release,

the funding was to "be used to accelerate the company's rapid growth, enhance product development and expand its marketing efforts."

28. Five months later, YouTube announced another round of financing from the same private equity source in the amount of $8 million, bringing the total announced funding to $11.5 million as of April 5, 2006.

29. During this time period, YouTube's popularity continued to grow and millions of additional videos were added by users from around the world.

30. As YouTube's popularity grew, the company entered into and announced a series of "strategic partnerships" with various media companies. Under these agreements, media companies provide copyrighted content on YouTube's website in exchange for a percentage of advertisement revenue. Additionally, YouTube announced that these strategic partners would receive the benefit of YouTube's content identification and royalty reporting program by year end 2006. YouTube has announced strategic partnerships with Warner Music Group Corporation, Universal Music Group, Sony BMG Music Entertainment, CBS Corporation, EMI Music and the British Broadcasting Corporation.

**D.  YouTube Provides Content Filtering Technology to Its Strategic Partners Only.**

31. In an effort to clarify YouTube's plans to adopt a content identification program, YouTube issued a September 25, 2006 Press Release entitled "YouTube Issues Correction on New Content Identification Architecture for Copyright Holders." In that Press Release YouTube revealed the following:

> By the end of the year, professional content creators, including record labels, TV networks and movie studios, will have the opportunity to authorize the use of their content within the YouTube community by taking advantage of YouTube's new tools and architecture. YouTube has been actively working on the operational details and building the

infrastructure for this innovative new framework, which will offer media companies the following:

- Sophisticated tools to help content owners identify their content on the site;
- Automated audio identification technology to help prevent works previously removed from the site at the request of the copyright owner from reappearing on the site;
- The opportunity to authorize and monetize the use of their works within the user-generated content on the site;
- Reporting and tracking systems for royalties, etc.

32    Defendants, therefore, admit that they have the ability to "monetize" the use of copyrighted material and track royalties on behalf of copyright holders. Defendants, however, choose not to offer this technology to copyright holders who are not strategic partners

33.    Although the September 25, 2006, press release was silent as to whether the content-identification tools would be available to copyright holders who did not enter into a strategic partnership with YouTube, YouTube soon confirmed that it would not. In February 2007, YouTube clarified that its content identification technology would be offered only to those entities that had agreements with YouTube  In a news article, "Viacom Tells YouTube: Hands Off", published on February 3, 2007, in the *New York Times*, YouTube's CEO asserted that this technology would be utilized for the benefit of its strategic partners, such as Warner Music Group, and those entities who entered into deals with YouTube in the future.

34.    After CEO Hurley's comments were reported in the *New York Times*, YouTube prepared another press release regarding YouTube's anti-piracy position. Unlike the other referenced Press Releases, this statement is no longer available on YouTube's website. In that press release, YouTube claimed that "From the start, we've led the industry in developing a content verification tool to help copyright owners locate their content on our site and send us notice with the click of a mouse."

35    The statement went on to confirm, however, that the content identification technology described in its September 25, 2006 press release would not be made available to individuals or entities unless they enter into a strategic partnership agreement with YouTube. "While we are focused on working with content owners to iron out these sorts of complexities and develop increasingly effective tools, our existing audio fingerprinting tools were not designed for and are not currently suited or scaled for mass public distribution." Thus, YouTube made clear that the technology to allow copyright holders to "monetize the use of their works within the user-generated content on the site" or to participate in a "tracking system for royalties" described in the September 25, 2006, press release would be reserved only for its strategic partners.

36.    Defendants provide Plaintiff and the class with no effective means to protect their copyrights from infringement. The details of any copyright protection non-strategic partners are afforded is, at best, unclear. On its website, YouTube has instructions on how a copyright holder should notify YouTube of any infringement of copyrighted works on its site. Those copyright holders are instructed to identify the copyrighted work and the specific instances of infringement found on YouTube's website. The copyright holder is asked to email the specific URLs to YouTube. URL stands for Uniform Resource Locator and is the specific address that each video is assigned on YouTube. Thus, as it is explained on YouTube's website, a copyright holder who wishes to eliminate and remove infringing works must identify each instance of infringement and notify YouTube with the specific details of each instance of infringement and its precise location. YouTube typically removes the identified works, but does not (1) search for and remove other instances of infringement of the identified copyrighted work or (2) take measures to prevent the identified copyrighted work from being infringed upon in the future

37. YouTube also offers copyright holders a "Content Verification Program." YouTube describes the program as a "Copyright Verification Tool that assists copyright owners in searching for material that they believe to be infringing, and providing YouTube with information reasonably sufficient to permit us to locate that material." Those wishing to avail themselves of this service are asked to fill out an enrollment form and send it, via facsimile, to YouTube. No detail is given as to how the program operates or how it will ultimately assist copyright holders in protecting their works.

38. Defendants have intentionally designed the notification system and the Content Verification Program to create the appearance of nominal concern for protection of copyrights, while knowing the programs are ineffectual. Defendants have no interest in assisting copyright holders, such as Cal IV and the class members, in enforcing their rights or preventing the unauthorized use of their works.

39. Defendants benefit enormously from participating in and assisting the massive and ongoing copyright infringement on the YouTube website. As a result, Defendants have an incentive to place the burden on copyright holders of locating infringing works on the YouTube website and demanding their removal. Defendants also have an incentive to remove only those works that are specifically identified by copyright holders while failing to search for and remove other similar infringing works. Defendants practices are intended to, and have the effect of, eroding the copyrights held by owners of creative works such as Plaintiff Cal IV by impeding the assertion of copyrights and placing unreasonable and unlawful burdens on copyright holders who attempt to exercise their rights.

40. On October 9, 2006, YouTube announced that it would be acquired by Google for $1.65 billion in a stock-for-stock transaction. According to various media reports the private

11

equity firm that in the previous year had supplied YouTube with $11.5 million in funding received a 30 percent stake in YouTube in exchange for its capital investment. Thus, that $11.5 million investment resulted in a $495 million stake in Google in less than one year.

**E.** **Cal IV's Copyrighted Works Continue To Be Infringed Despite the Company's Attempt to Avail Itself of YouTube's Content Verification Program.**

41. Cal IV is an independent and privately held music publishing company. Cal IV owns valuable copyrights to numerous songs. These copyrights generate revenue for Cal IV because artists and other users record the songs for public distribution, and the various users of these songs pay royalties to Cal IV.

42. The principal ways that Cal IV licenses its songs in exchange for the payment of royalties are: (1) public performance rights for playing songs on the radio, in television programs, and in live venues (collected primarily on behalf of Cal IV by ASCAP, BMI, and SESAC); (2) mechanical rights for recording the songs and selling tangible recordings embodying the songs (CDs, DVDs, authorized and licensed internet downloads, cassette and video tapes, etc.); and (3) synchronization rights for the use of the songs in conjunction with moving pictures of any sort (feature films, television programs, DVDs, video tapes, etc.). These uses typically require a license or written permission from Cal IV in order to authorize such use, and any use comprising more than one of these rights typically requires a license for each and every such right.

43. Based on a review of YouTube's website, Cal IV determined that more than 60 of the copyrighted songs in its catalog appeared in various forms without the proper license or any authorization from Cal IV in violation of the Copyright Act.

44. On May 11, 2007, Cal IV wrote to YouTube identifying itself as the holder of copyrights in the following songs:

(1)     "Am I Just One" (Carey Ott)
(2)     "And You" (Odie Blackmon/Marla Cannon-Goodman)
(3)     "Angels In Waiting" (Jim McBride/Tammy Cochran/Stewart Harris)
(4)     "Angels Like Her" (Trent Tomlinson/Aaron Barker/Anthony Smith)
(5)     "Blue Sky Grey" (Odie Blackmon/Bill Deasy)
(6)     "Breathe" (Holly Lamar/Stephanie Bentley)
(7)     "Can't Take It With You" (Marla Cannon-Goodman/Eric Church/Casey Beathard)
(8)     "Chance, The" (Liz Hengber/Deanna Bryant)
(9)     "Country Is My Rock" (Trent Tomlinson/Tony Ramey)
(10)    "Cry A little" (Odie Blackmon/Gil Grand)
(11)    "Daddy Won't Sell The Farm" (Steve Fox/Robin Branda)
(12)    "Daylight" (Carey Ott)
(13)    "Dearly Beloved" (Georgia Middleman/Fred Wilhelm)
(14)    "Don't Feel Like Lovin' You Today" (Jim Collins/Matraca Berg)
(15)    "Don't Make Me" (Dave Berg/Marla Cannon-Goodman/Deanna Bryant)
(16)    "Drive Me Wild" (Mike Lawler/Glenn Hubbard/Mark Miller)
(17)    "Drunker Than Me" (Trent Tomlinson/Ashe Underwood)
(18)    "Eu Posso Te Sentir" (Portuguese Adaptation - Breathe)
(19)    "Forever Love" (Liz Hengber/Deanna Bryant/Sunny Russ)
(20)    "Home Running Away" (Jim Collins/Katrina Elam/Stephony Smith)
(21)    "How Bad Do You Want It" (Jim Collins/Bill Luther)
(22)    "I Believe in Ghosts" (Jim Collins/Marc Beeson/D. Vincent Williams)
(23)    "I Don't Feel Like Lovin' You Today" (Jim Collins/Matraca Berg)
(24)    "I May Hate Myself In The Morning" (Odie Blackmon)
(25)    "I Never Had a Chance" (Odie Blackmon/Casey Beathard)
(26)    "I Tripped Over Your Memory" (Curtis Wright/Curt Ryle/Mike Baker)
(27)    "If It Wasn't for the Whiskey" (Kris Bergsnes/Zac Hacker)
(28)    "If You're Going Through Hell" (Before The Devil Even Knows) (Dave Berg/Annie Tate/Sam Tate)
(29)    "I'm Headed Your Way Jose" (James Slater/Dallas Davidson)
(30)    "In the Middle" (Dave Berg/Rodney Atkins/Annie Tate/Sam Tate)
(31)    "Innocence" (Dave Berg/Georgia Middleman/Sarah Buxton/Jeremy Stover)
(32)    "Intervention Divine" (Aaron Sain/Toby Boyett/Kelly Shiver)
(33)    "It Just Comes Natural" (Jim Collins/Marv Green)
(34)    "It's a Beautiful Life" (Jim Collins/Phil Vassar/Charlie Black)
(35)    "It's All How You Look At It" (Georgia Middleman/Dave Berg/Rivers Rutherford)
(36)    "Learning To Fall" (Odie Blackmon/Bill Deasy)
(37)    "Lets be Naughty and (Save Santa the Trip)" (Odie Blackmon/Clay Curtis)
(38)    "Lucid Dream" (Carey Ott)
(39)    "Lucky Man" (Dave Berg/Sam Tate/Annie Tate)
(40)    "My Truck" (Kim Morrison/Ronnie Godfrey/Ruby Gold)
(41)    "Nobody Drinks Alone" (Jim Collins/Matraca Berg)
(42)    "Nothing to Prove" (Jim Collins/Wendell Mobley)
(43)    "Revenge Of A Middle Aged Woman" (Dave Berg/Annie Tate/Sam Tate)
(44)    "Sacred Ground" (Vernon Rust/Kix Brooks)
(45)    "Say Yes" (Don Schlitz/Josh Turner/Brett James)

(46)    "Shade, The" (Shane Decker/Troy Jones)
(47)    "Shame on Me" (Jim Collins/Christi Dannemiller)
(48)    "Sharing The Night Together" (Ava Aldridge/Eddie Struzick)
(49)    "She Gets What I Deserve" (Connie Harrington/Kristin Osborn)
(50)    "She'll Leave You With A Smile" (Odie Blackmon/Jay Knowles)
(51)    "She's More" (Liz Hengber/Rob Crosby)
(52)    "Southern Comfort" (Ted Russell Kamp/Shooter Jennings/Leroy Powell)
(53)    "Steady at the Wheel" (Ted Russell Kamp)
(54)    "Stupid Boy" (Dave Berg/Sarah Buxton/Deanna Bryant)
(55)    "Then They Do" (Jim Collins/Sunny Russ)
(56)    "Thirsty Again" (Kris Bergsnes/Danielle Peck/John Paul White)
(57)    "Total Loss" (Billy Lawson/Angela Hacker/James LeBlanc)
(58)    "Treat Her Right" (Ava Aldridge/Lenny LeBlanc)
(59)    "Unbroken Ground" (Kris Bergsnes/Gary Nichols/James LeBlanc)
(60)    "Welcome to the Family" (Jim Collins/Wayne Kirkpatrick)
(61)    "You Don't Know a Thing About Me" (Odie Blackmon/Gary Allan/Jamie O'Hara)

45    These songs appeared in various forms on YouTube's website  Common examples of

how these songs were being utilized by YouTube users, include, without limitation:

(1)    Videos of performances of these songs by professional or amateur performers;

(2)    Videos, from a variety of sources, that have been synchronized with these songs; and

(3)    Videos of original recordings prepared for television or other outlets.

46.    It is difficult, if not impossible, for Cal IV to find every instance of infringement on

YouTube  Although a copyright holder may use the word search function to locate its

copyrighted works, a successful search is entirely dependent upon the searcher using words that

match the description given by the user who uploaded the video  For example, if a user uploaded

a video that was synchronized with the song "Stupid Boy" but did not name the song in the

description of the video, it is unlikely that Cal IV could ever locate it

47    Similarly, YouTube allows its users to mark a video as "private," which has the effect

of allowing only those authorized by the user who uploaded the video to view it  Videos that are

designated private cannot be found by using the search function.

48.  During the week of May 7, 2007, Cal IV identified a number of specific URLs that Cal

IV believed constituted a violation of the Copyright Act by using obvious search terms such as

the name of the song.   Specifically, Cal IV identified the following URLS that involved

copyright infringement of its works:

(1)    http://www.youtube.com/watch?v=F-bLSYNv0bk
(2)    http://www.youtube.com/watch?v=GQs1tcG9Hl0
(3)    http://www.youtube.com/watch?v=WHUTUYgJl1c
(4)    http://www.youtube.com/watch?v=UsNGLAXGKfl
(5)    http://www.youtube.com/watch?v=v32vDRmXTk4
(6)    http://www.youtube.com/watch?v=UUSXCUaq8ww
(7)    http://www.youtube.com/watch?v=HoSGaiUiNmg
(8)    http://www.youtube.com/watch?v=Y7s9h74aUIM
(9)    http://www.youtube.com/watch?v=PTOJo4NusqU
(10)   http://www.youtube.com/watch?v=FBhGdTwnkfY
(11)   http://www.youtube.com/watch?v=9yeGZkf932c
(12)   http://www.youtube.com/watch?v=gTZ6RQJM
(13)   http://www.youtube.com/watch?v=dOvgFlwTLCA
(14)   http://www.youtube.com/watch?v=761-43frGU
(15)   http://www.youtube.com/watch?v=vsP_k_yVWo
(16)   http://www.youtube.com/watch?v=4ZvBYoXylGU
(17)   http://www.youtube.com/watch?v=HbY2QCZalds
(18)   http://www.youtube.com/watch?v=wnmv_voY19Y
(19)   http://www.youtube.com/watch?v=ilp9vmH6ZYM
(20)   http://www.youtube.com/watch?v=psCOZOWfook
(21)   http://www.youtube.com/watch?v=R_tnq_SXjxc
(22)   http://www.youtube.com/watch?v=pBpv87aRMHo
(23)   http://www.youtube.com/watch?v=fl_9kosugMY
(24)   http://www.youtube.com/watch?v=zHerYBPFyrw
(25)   http://www.youtube.com/watch?v=GygSmNqZD0w
(26)   http://www.youtube.com/watch?v=Y2QYaWr8Faw
(27)   http://www.youtube.com/watch?v=mNNlv7Fq-is
(28)   http://www.youtube.com/watch?v=2tJ2KYhkBtY
(29)   http://www.youtube.com/watch?v=U4-wvJGsq1M
(30)   http://www.youtube.com/watch?v=0GlWrBATMWc
(31)   http://www.youtube.com/watch?v=acvxIZ2a5pQ
(32)   http://www.youtube.com/watch?v=evOjlv0_tTE
(33)   http://www.youtube.com/watch?v=HNThcYVjfak
(34)   http://www.youtube.com/watch?v=cMejcjTewrg
(35)   http://www.youtube.com/watch?v=DOmCpA6TR1M
(36)   http://www.youtube.com/watch?v=X-5wi0FCsgE
(37)   http://www.youtube.com/watch?v=UISANoTEZvI
(38)   http://www.youtube.com/watch?v=GlcQ9c4xU4o

(39)  http://www.youtube.com/watch?v=SJuSUvnDCAM
(40)  http://www.youtube.com/watch?v=3sK1PPbkz8s
(41)  http://www.youtube.com/watch?v=eTU3_lm_7rU
(42)  http://www.youtube.com/watch?v=sI8F2h5c1QU
(43)  http://www.youtube.com/watch?v=u3rL0Cso-60
(44)  http://www.youtube.com/watch?v=fnMG6X1DIr0
(45)  http://www.youtube.com/watch?v=QDbaiX6v528
(46)  http://www.youtube.com/watch?v=u3vYcKRBi2U
(47)  http://www.youtube.com/watch?v=UmxYbl3KNDw
(48)  http://www.youtube.com/watch?v=AdkJldMBP9c
(49)  http://www.youtube.com/watch?v=cU0l5ne-ZtQ
(50)  http://www.youtube.com/watch?v=TxkvEu0nVXg
(51)  http://www.youtube.com/watch?v=Pv1fZ14qZxg
(52)  http://www.youtube.com/watch?v=Oi0W8z3gXyU
(53)  http://www.youtube.com/watch?v=vC9gIG2fJG4
(54)  http://www.youtube.com/watch?v=NWbClviUXRc
(55)  http://www.youtube.com/watch?v=_qni6SJipfk
(56)  http://www.youtube.com/watch?v=tPSlmejsTnw
(57)  http://www.youtube.com/watch?v=dAeN-gciYck
(58)  http://www.youtube.com/watch?v=9CR3iEz9f_Y
(59)  http://www.youtube.com/watch?v=c9bTeE0AN0I
(60)  http://www.youtube.com/watch?v=0CHY3L-VOLc
(61)  http://www.youtube.com/watch?v=mNNlv7Fq-is
(62)  http://www.youtube.com/watch?v=A-Ng84tc3So
(63)  http://www.youtube.com/watch?v=_NZ-K4vFlLY
(64)  http://www.youtube.com/watch?v=OHxqoc09JAs
(65)  http://www.youtube.com/watch?v=_EszQa1RnDo
(66)  http://www.youtube.com/watch?v=PIcpeDBkjos
(67)  http://www.youtube.com/watch?v=3AIFa0isEjg
(68)  http://www.youtube.com/watch?v=IG1-J8w5YoI
(69)  http://www.youtube.com/watch?v=Qtr_tHxBsds
(70)  http://www.youtube.com/watch?v=J00c5TbuGGs
(71)  http://www.youtube.com/watch?v=JeT8jVBrj-I
(72)  http://www.youtube.com/watch?v=YHSYvLMoHYU
(73)  http://www.youtube.com/watch?v=JO1VGhp1j9s
(74)  http://www.youtube.com/watch?v=5sIX-lxllnk
(75)  http://www.youtube.com/watch?v=bYl68JCiAM0
(76)  http://www.youtube.com/watch?v=oCGh1T4rF-M
(77)  http://www.youtube.com/watch?v=weS1_M8naDc
(78)  http://www.youtube.com/watch?v=jVulecFjAbY
(79)  http://www.youtube.com/watch?v=iYZOnqdU-AI
(80)  http://www.youtube.com/watch?v=9RnObVwk4Bs
(81)  http://www.youtube.com/watch?v=wOChlI46Bgk
(82)  http://www.youtube.com/watch?v=PKmFF7r80z4
(83)  http://www.youtube.com/watch?v=trdFOnK-lEE
(84)  http://www.youtube.com/watch?v=uJlr285SFH8

(85)   http://www.youtube.com/watch?v=i5k-PqL4jFU
(86)   www.youtube.com/watch?v=jr8i03qTRi8
(87)   www.youtube.com/watch?v=HeROxVQ48AK
(88)   www.youtube.com/watch?v=p4FQ20auQJY
(89)   www.youtube.com/watch?v=sLZy0tHVbLs
(90)   www.youtube.com/watch?v=dv0VsyKqLLf
(91)   www.youtube.com/watch?v=f_9BwgIRSwE
(92)   www.youtube.com/watch?v=c7hC8JBtczi
(93)   www.youtube.com/watch?v=FOrTRz5Mdxk
(94)   www.youtube.com/watch?v=6LabrwbnyYY
(95)   www.youtube.com/watch?v=oqJpnZku_hQ
(96)   www.youtube.com/watch?v=cxbugvXgjAo
(97)   www.youtube.com/watch?v=pjk498de1us
(98)   www.youtube.com/watch?v=Bot_dltbrtg
(99)   www.youtube.com/watch?v=_bczcfjxObl
(100)  www.youtube.com/watch?v=yR2eDLQq4U8
(101)  www.youtube.com/watch?v=prz1zNODsVQ
(102)  www.youtube.com/watch?v=6pzhfuN4sXM
(103)  www.youtube.com/watch?v=Zqj_64lr1co
(104)  www.youtube.com/watch?v=1eHqVEg8HEQ
(105)  www.youtube.com/watch?v=BZlypl17xps
(106)  www.youtube.com/watch?v=wRHURidaKGQ
(107)  www.youtube.com/watch?v=VKHxFc9QGzC
(108)  www.youtube.com/watch?v=5HlFbl_lw1K
(109)  www.youtube.com/watch?v=KP_lrLDYCWY
(110)  www.youtube.com/watch?v=BKnoxrOoOiw
(111)  www.youtube.com/watch?v=45HFWGbZmz8
(112)  www.youtube.com/watch?v=WwIy_w5HoyA
(113)  www.youtube.com/watch?v=oiDPpxYXI30
(114)  www.youtube.com/watch?v=xHSjZGS9QaIO
(115)  http://www.youtube.com/watch?v=dVv7PWhlWg8
(116)  http://www.youtube.com/watch?v=B0RhqtNmXsE
(117)  http://www.youtube.com/watch?v=bs8bnb4neaY
(118)  http://www.youtube.com/watch?v=wAGKM_-eMdc
(119)  http://www.youtube.com/watch?v=Y9raAt4ROLk
(120)  http://www.youtube.com/watch?v=5UGcVmawnK0
(121)  http://www.youtube.com/watch?v=1nbWwa191fs
(122)  http://www.youtube.com/watch?v=6rQebQ-Vw00
(123)  http://www.youtube.com/watch?v=AxBW0OzUyqA
(124)  http://www.youtube.com/watch?v=440kC7-HZlE
(125)  http://www.youtube.com/watch?v=s-OWulhsgxE
(126)  http://www.youtube.com/watch?v=_zqxBCNHkps
(127)  http://www.youtube.com/watch?v=o010ENgdiaI
(128)  http://www.youtube.com/watch?v=ld3v0uKYOWs
(129)  http://www.youtube.com/watch?v=c_RqBH-Y3ok
(130)  http://www.youtube.com/watch?v=Ho8Zubr1MiyY

(131) http://www.youtube.com/watch?v=evjW0y35N28
(132) http://www.youtube.com/watch?v=ytMQ4U8EFmA
(133) http://www.youtube.com/watch?v=Np_hlYjPvVI
(134) http://www.youtube.com/watch?v=51HYTsCmyNk
(135) http://www.youtube.com/watch?v=_P-qKbn-ne8
(136) http://www.youtube.com/watch?v=7lQh5Lu7IhI
(137) http://www.youtube.com/watch?v=tOzP9komMsI
(138) http://www.youtube.com/watch?v=fhjwsWaskgw
(139) http://www.youtube.com/watch?v=3-ZRp0eK12o
(140) http://www.youtube.com/watch?v=K9DsYYtvh18
(141) http://www.youtube.com/watch?v=hU3wKachVvc
(142) http://www.youtube.com/watch?v=Mb-JJJ8Szuw
(143) http://www.youtube.com/watch?v=Mi12iTSmVGM
(144) http://www.youtube.com/watch?v=etXJ7ckOXXM
(145) http://www.youtube.com/watch?v=vZ3AVNNr9j4
(146) http://www.youtube.com/watch?v=21O_wa02ULg
(147) http://www.youtube.com/watch?v=tqzrqOxYnqE
(148) http://www.youtube.com/watch?v=hnlN8CQaaPE
(149) http://www.youtube.com/watch?v=i2NKPz2x-O0
(150) http://www.youtube.com/watch?v=McPbfQiLWGl
(151) http://www.youtube.com/watch?v=9uRFpmljl_k
(152) http://www.youtube.com/watch?v=a_L7kxJ_FVw
(153) http://www.youtube.com/watch?v=z5lv48QJ_IY
(154) http://www.youtube.com/watch?v=bTSlHlez6XM
(155) http://www.youtube.com/watch?v=IaHeVnigyWdQ
(156) http://www.youtube.com/watch?v=HpbmcPk3RGQ
(157) http://www.youtube.com/watch?v=hKEXH7qTmLQ
(158) http://www.youtube.com/watch?v=EfX189yWvNQ
(159) http://www.youtube.com/watch?v=VlrbpKuf4uc
(160) http://www.youtube.com/watch?v=tGce5SA8sNY
(161) http://www.youtube.com/watch?v=Uf0jd71O1SA
(162) http://www.youtube.com/watch?v=3A61PZk8vrM
(163) http://www.youtube.com/watch?v=R3BtKupx-ik
(164) http://www.youtube.com/watch?v=mWwE1ve6Zwo
(165) http://www.youtube.com/watch?v=jEM7Sa6ni8k
(166) http://www.youtube.com/watch?v=1-QHhO9Q0Bg
(167) http://www.youtube.com/watch?v=IiEFLNZPKsg
(168) http://www.youtube.com/watch?v=K9y_9Su4qMQ
(169) http://www.youtube.com/watch?v=M7F7UyRKZZ8
(170) http://www.youtube.com/watch?v=Man8gsmeip4
(171) http://www.youtube.com/watch?v=bhiFIGVOQbQ
(172) http://www.youtube.com/watch?v=TKsP6POc1Ig
(173) http://www.youtube.com/watch?v=srRgsBJIRRU
(174) http://www.youtube.com/watch?v=Hygg3WfQTls
(175) http://www.youtube.com/watch?v=wLhlhrhqH7E
(176) http://www.youtube.com/watch?v=0NiTsJvK4_A

(177) http://www.youtube.com/watch?v=-buKVEA_Cr0
(178) http://www.youtube.com/watch?v=xuYRM6H0-TU
(179) http://www.youtube.com/watch?v=DA6SsPJWBo8
(180) http://www.youtube.com/watch?v=Zm75xJOryzg
(181) http://www.youtube.com/watch?v=2yynwgveSMI
(182) http://www.youtube.com/watch?v=V9fNC8qYpLc
(183) http://www.youtube.com/watch?v=QdtRBxVdDAU
(184) http://www.youtube.com/watch?v=wdrWFfs2auk
(185) http://www.youtube.com/watch?v=T8RX7OvP1Ww
(186) http://www.youtube.com/watch?v=mB1bSwz0NMs
(187) http://www.youtube.com/watch?v=5QCp6NNcAhU
(188) http://www.youtube.com/watch?v=Ov-qqi6prEo
(189) http://www.youtube.com/watch?v=dPbGo8BdU0Y
(190) http://www.youtube.com/watch?v=mL4WTXpLxG8
(191) http://www.youtube.com/watch?v=v9zWnAeIG4Y
(192) http://www.youtube.com/watch?v=EcotcvniMdY
(193) http://www.youtube.com/watch?v=RW4p_oPTlec
(194) http://www.youtube.com/watch?v=LwbG4m7jVAQ
(195) http://www.youtube.com/watch?v=xJEhauGBxzU
(196) http://www.youtube.com/watch?v=XLAMQQPUkME
(197) http://www.youtube.com/watch?v=Nd_XNwwCmCw
(198) http://www.youtube.com/watch?v=add965rVgkk
(199) http://www.youtube.com/watch?v=MqLXrCtqioc
(200) http://www.youtube.com/watch?v=cG6MhshK7I4
(201) http://www.youtube.com/watch?v=OW0dI42CfL4
(202) http://www.youtube.com/watch?v=j4uCSuYvK18
(203) http://www.youtube.com/watch?v=5X6UWTXb_QA
(204) http://www.youtube.com/watch?v=1SgKjRkflbo
(205) http://www.youtube.com/watch?v=iGlggMEn-18
(206) http://www.youtube.com/watch?v=g2HqmTu9GDg
(207) http://www.youtube.com/watch?v=ujSTvCPHcNA
(208) http://www.youtube.com/watch?v=luJaOW-ChGw
(209) http://www.youtube.com/watch?v=nj81tWjs6x4
(210) http://www.youtube.com/watch?v=nxBu2gXaD2I
(211) http://www.youtube.com/watch?v=1sb6uz4y5_c
(212) http://www.youtube.com/watch?v=ndpPTxqdigU
(213) http://www.youtube.com/watch?v=RBIEry_9KGg
(214) http://www.youtube.com/watch?v=jObN2swwcr8
(215) http://www.youtube.com/watch?v=06bHooOCXps
(216) http://www.youtube.com/watch?v=zVyyZAWYlm8
(217) http://www.youtube.com/watch?v=9sAbL4CcRAU
(218) http://www.youtube.com/watch?v=gs0HWAon0
(219) http://www.youtube.com/watch?v=6Bwb6Gpo4gE
(220) http://www.youtube.com/watch?v=2PiXVY7wWj0
(221) http://www.youtube.com/watch?v=THQlCQj4Y-g
(222) http://www.youtube.com/watch?v=WKm9bgJ_CY8

(223) http://www.youtube.com/watch?v=D8icgELpasE
(224) http://www.youtube.com/watch?v=KM6xU_YYp34
(225) http://www.youtube.com/watch?v=y27pJlNTF5w
(226) http://www.youtube.com/watch?v=ve1Rh0LvoXU
(227) http://www.youtube.com/watch?v=c_gbHwFHqSc
(228) http://www.youtube.com/watch?v=Pa8Bs21Bu8U
(229) http://www.youtube.com/watch?v=GXk0TUWh7Kc
(230) http://www.youtube.com/watch?v=7PCnmE1Fc
(231) http://www.youtube.com/watch?v=q9l83oEPWyg
(232) http://www.youtube.com/watch?v=iHDajYlF5CA
(233) http://www.youtube.com/watch?v=-qJQxBEtK2g
(234) http://www.youtube.com/watch?v=4BzNx_a3eRY
(235) http://www.youtube.com/watch?v=qZBFideF97
(236) http://www.youtube.com/watch?v=xcPwUq7tQi4
(237) http://www.youtube.com/watch?v=mOtTZ2Ks_48
(238) http://www.youtube.com/watch?v=gR5fOcG2GhQ
(239) http://www.youtube.com/watch?v=ecmt6kILZvU
(240) http://www.youtube.com/watch?v=f3p1yN7OtwQ
(241) http://www.youtube.com/watch?v=0PN2laKzeDk
(242) http://www.youtube.com/watch?v=-uU7qJ5tOdk
(243) http://www.youtube.com/watch?v=BetCYLfYj4I
(244) http://www.youtube.com/watch?v=tHwXYs5kOEM
(245) http://www.youtube.com/watch?v=iaE0zUPYU38
(246) http://www.youtube.com/watch?v=kFcq7FAnrsE
(247) http://www.youtube.com/watch?v=xr-DaHjHh5g
(248) http://www.youtube.com/watch?v=_ajRyqcWtXg
(249) http://www.youtube.com/watch?v=eRNrrENbr1c
(250) http://www.youtube.com/watch?v=RyFcW6e-CzQ
(251) http://www.youtube.com/watch?v=14po1-wZpvI

Cal IV sent this list to YouTube pursuant to its "take down" notification instructions via email, facsimile and overnight delivery on May 11, 2007.

49. As contemplated by the DMCA, 17 U.S.C § 512(c)(3)(A)(ii), Cal IV's May 11, 2007 letter provided Defendants with a representative list of the works infringed by YouTube. By May 16, 2007, YouTube had removed the majority of these specific URLs. Due to the volume of material posted on YouTube's website, the ability of users to constantly upload new videos (even if they have previously been identified as infringing), and YouTube's failure to search for and remove infringing material similar to that identified by the copyright holder, infringing posts

continue to appear on YouTube, notwithstanding the fact that YouTube has been served with a representative list of infringing works

50.    Thus, unless Cal IV devotes its resources to constant monitoring of YouTube's website, its copyrights will be infringed by new uploads. Such monitoring would require significant ongoing expenditures for personnel, and would adversely affect Cal IV's operating margins. Even constant monitoring by Cal IV would not be fully effective in protecting Cal IV's copyrights, however, because YouTube has given users the ability to "embed," share," or mark as "private" any video uploaded to YouTube, and in any case Cal IV could not possibly identify all the search terms attributed to infringing works by YouTube users

51    As part of its May 11, 2007, correspondence Cal IV also submitted a Content Verification Program application. Cal IV expected the Content Verification Program to eliminate, or at a minimum curtail, future uploads of its copyrighted material.

52    As of the date of this filing, Cal IV has identified numerous instances of newly uploaded videos infringing upon the same copyrighted songs identified in its May 11, 2007, letter. For example, Cal IV has discovered 22 URLs containing videos in which its popular song "Stupid Boy" is performed or has been synchronized with video, uploaded to the YouTube website since May 11, 2007. Those URLs include:

| | |
|---|---|
| (1) | http://www.youtube.com/watch?v=Xqkxc1hEVcs |
| (2) | http://www.youtube.com/watch?v=dBDbuWS1QsE |
| (3) | http://www.youtube.com/watch?v=TROmtsZmJu8 |
| (4) | http://www.youtube.com/watch?v=sOxUGKba3_s |
| (5) | http://www.youtube.com/watch?v=5wtg4EJsL_c |
| (6) | http://www.youtube.com/watch?v=TSXkiasbSEA |
| (7) | http://www.youtube.com/watch?v=Kl4h_6DeqTY |
| (8) | http://www.youtube.com/watch?v=CnRzXv4yVC8 |
| (9) | http://www.youtube.com/watch?v=9OX6I54A2SI |
| (10) | http://www.youtube.com/watch?v=FDkoS9z3tLQ |
| (11) | http://www.youtube.com/watch?v=fgaDcm3nO3g |
| (12) | http://www.youtube.com/watch?v=7rDjSxuWL1U |

    (13)    http://www.youtube.com/watch?v=lZhrQU__4YU
    (14)    http://www.youtube.com/watch?v=u_6vRfawd2A
    (15)    http://www.youtube.com/watch?v=QrcDNCNswIA
    (16)    http://www.youtube.com/watch?v=mTZamVAelU8
    (17)    http://www.youtube.com/watch?v=BNDEFFV5wzA
    (18)    http://www.youtube.com/watch?v=FMpccxX7vSQ
    (19)    http://www.youtube.com/watch?v=QoZlhXFiNc
    (20)    http://www.youtube.com/watch?v=9wn5fNldf0E
    (21)    http://www.youtube.com/watch?v=0aT-30lHYf0
    (22)    http://www.youtube.com/watch?v=1aJe0FUUx8w

53.    Cal IV continues, on a daily basis, to find its songs appearing on YouTube's website through new uploads despite having provided YouTube with a list of representative works infringed and enrolled in the Content Verification Program. Thus, the Content Verification Program has had no discernible effect on screening or filtering infringing posts.

54    In sum, Defendants have failed to take reasonable steps to prevent the infringement of copyrights on their website or provided copyright holders with an effective way of doing so.

    F.    **Defendants Cannot Avail Themselves of the Safe Harbor Provisions of 17 U.S.C. Section 512.**

55.    Defendants' conduct does not fall within any of the limited "safe harbors" of 17 U.S.C. § 512, the Digital Millennium Copyright Act.

56    Copyright infringements occurring on YouTube do not occur solely "by reason of [Defendants'] storage at the direction of a user." 17 U.S.C. § 512(c)(1). Instead, Defendants provide platforms for users to perpetuate infringements that Defendants have facilitated in the first place. The website provides various features that permit users to embed, distribute and save infringing content. Thus, infringements on YouTube do not occur solely at the direction of users, because Defendants facilitate those infringements

57.    Defendants have actual knowledge that infringing materials exist on YouTube, and that activities using the materials on the system are infringing. Defendants are aware of the facts and

circumstances from which infringing activity is apparent   Defendants have the tools and architecture to control infringements of its strategic partners' works   Defendants' ability to filter copyrighted content, and their implementation of that filtration only for strategic partners, reveals Defendants' knowledge that infringements occur on its system

58.   Defendants have the right and ability to control infringing activities on YouTube. Defendants' selective implementation of their filtration controls reveals Defendants' broader right, ability and ultimate failure to control the infringing activities on YouTube.

59.   YouTube's $1 65 billion purchase price is evidence of the financial benefits attributable to infringing activities on the website   Absent its library of infringing material, YouTube would not enjoy its high volume of traffic, which, in turn, results in lucrative advertising revenues.   Defendants thus receive financial benefits directly attributable to the infringing activity.

60   Defendants fail to adequately respond to notifications of claimed infringements by effectively removing or disabling access to all material claimed to be infringing.   Cal IV's experience demonstrates the futility of providing takedown notices to YouTube.   Cal IV provided YouTube with a takedown notice and has participated in the Content Verification Program. Nevertheless, infringement of Cal IV's works on YouTube persists.

61.   Defendants have failed to adopt and reasonably implement a policy that provides for termination of repeat-infringing YouTube subscribers and account holders.   Defendants' failure to prevent the re-appearance of infringing materials and works that were the subjects of takedown notices demonstrates as much.

## CLASS ACTION ALLEGATIONS

62    Plaintiff brings this action on behalf of itself and all others similarly situated, as members of a proposed plaintiff class, defined as follows:

> All persons or entities who own or hold exclusive rights to any copyrighted work in which a certificate of registration has been issued or for which an application for registration has been properly submitted to the United States Copyright Office that, without consent or authorization was reproduced, adapted, distributed, publicly displayed, performed, or otherwise transmitted or disseminated on or through the YouTube com website on or after December 15, 2005, through the date that these illegal actions cease

Excluded from the class are Defendants, any entities in which Defendants have a controlling interest, Defendants' officers, directors, and employees; Defendants' legal representatives, heirs, successors, and assigns; any Judge to whom this case is assigned and his or her immediate family, and all "strategic partners" who have entered into licensing agreements with YouTube.

63.    This action has been brought and may properly be maintained, pursuant to Federal Rules of Civil Procedure 23(a)(1)-(4), 23(b)(1), (2) or (3), and case law thereunder.

64    **Numerosity Of The Class – Fed.R.Civ.P. 23(a)(1).**  Class members are so numerous that their individual joinder is impracticable.  Plaintiff estimates that there are thousands of members in the proposed class  YouTube has reported, in various Press Releases, that its users view more than 100 million videos every day.

65    **Existence And Predominance Of Common Questions Of Law And Fact – Fed.R.Civ.P. 23(a)(2), 23(b)(3).**  Common questions of law and fact exist as to all members of the class.  These predominate over any questions affecting only individual class members.  These common legal and factual questions include, but are not limited to the following:

a.  Whether Defendants are engaged in direct infringement of Plaintiff's and class members' copyrighted works;

b.  Whether Defendants are engaged in contributory infringement of Plaintiff's and class members' copyrighted works;

c.  Whether Defendants are engaged in vicarious infringement of Plaintiff's and class members' copyrighted works;

d.  Whether Defendants are engaged in inducing infringement of Plaintiff's and class members' copyrighted works;

e.  Whether the Defendants have the ability to take reasonable measures to prevent the infringement of copyrighted works held by Plaintiff and the class;

f.  Whether Defendants acted willfully in regards to the allegations described above;

g.  Whether Defendants place an undue burden on copyright holders to monitor www.YouTube.com to find and ascertain infringing works;

h.  Whether Defendants have the ability or technology that would allow Defendants to filter content uploaded by its users to prevent its users from uploading work and materials that are protected by the Copyright Act;

i.  Whether Defendants have the ability to provide Plaintiff and the class members with an opportunity to monetize the use of their copyrighted works or to track royalties due and owing;

j.  Whether Defendants have benefited financially from the alleged copyright violations described herein;

k.  Whether YouTube's "take down" notice procedure complies with the requirements of the DMCA;

l    Whether Defendants have access to technology that would allow them to limit the ability of users to post copyrighted material, to identify and remove copyrighted material, and prevent the repeat posting of infringing material;

m.   Whether Defendants are obligated to use such technology as currently exists to limit copyright infringement, without regard to the copyright holder's decision to enter into a license agreement with YouTube;

n.   Whether Defendants, in operating the YouTube website, are engaged in "storage at the direction of a user," of copyrighted material, as such term is used in 17 U S C section 512 (c)(1);

o    Whether Defendants, in operating the YouTube website, limit their activities to storing user directed content without modification or whether YouTube instead provides features and facilities to propagate the content in modified form;

p    Whether copyrighted material displayed by YouTube resides on the a system or network controlled by Defendants, as that term is defined in 17 U.S.C section 512 (c)(1);

q.   Whether Defendants have actual knowledge of the infringing material on their systems or networks;

r.   Whether Defendants have actual knowledge of the infringing activities of YouTube users on their systems or networks;

s.   Whether technology utilized by Defendants makes it difficult, if not impossible for copyright holders to locate all instances of copyright infringement occurring on Defendants' website;

t.   Whether the defenses set forth in 17 U.S.C. section 512 or elsewhere in the Copyright Act are available to Defendants;

u.   Whether Defendants knowingly provide the means, facilities and networks to promote, encourage, invite and/or induce the infringing activities alleged herein;

v.   Whether Plaintiff and class members are entitled to injunctive relief;

w.   Whether Plaintiff and class members are entitled to damages (in the form of statutory and monetary damages), disgorgement of profits, interest, and attorneys' fees and costs.

66.   **Typicality – Fed.R.Civ.P. 23(a)(3).** Plaintiffs' claims are typical of the claims of the class because, as with other class members, Defendants have engaged in infringing upon Plaintiffs' copyrighted works without seeking permission or providing Plaintiffs with any benefit in violation of the Copyright Act.

67.   **Adequacy – Fed.R.Civ.P. 23(a)(4).** Plaintiff is an adequate representative of the class because Plaintiff's interests do not conflict with the interests of the class members Plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff's counsel is experienced in copyright law. Plaintiff intends to prosecute this action vigorously. The interests of the class members will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

68.   **Superiority – Fed.R.Civ.P. 23(b)(3).** A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's claims. The damages suffered by each individual class member are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the class members individually to redress effectively the wrongs done to them.

Furthermore, even if class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system from the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

69. **Certification under Fed. R. Civ. P. 23(b)(1) and/or 23(b)(2).** Certification may also be appropriate under Fed. R. Civ. P. 23(b)(1) and/or (b)(2) because:

    a. the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for Defendants;

    b. the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

    c. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

**CAUSES OF ACTION**
**COUNT I**
**(Direct Copyright Infringement)**

70. Plaintiff incorporates by reference all preceding paragraphs.

71.   Defendants' conduct has resulted in the direct copyright infringement of Cal IV's copyrighted songs and copyrighted works of the class members   Defendants cause these direct copyright infringements each time a user causes one of the copyrighted works to be performed

72.   Defendants' acts of infringement have been willful, intentional and purposeful, in plain disregard of and indifferent to the rights of Cal IV and the class members.

73.   Defendants' conduct constitutes direct infringement of Cal IV and the class members' exclusive rights in their copyrighted songs that will likely continue in the future unless enjoined by this Court   Cal IV and the class members have no adequate remedy at law and pursuant to 17 U S C. § 502, are entitled to a permanent injunction requiring Defendants to take reasonable measures to prevent or limit the rampant infringement of Cal IV and the class members copyrighted material.

## COUNT II
### (Inducement Of Copyright Infringement)

74.   Plaintiff incorporates by reference all preceding paragraphs.

75.   Defendants are liable for inducing the infringing acts of the users of YouTube pursuant to the Copyright Act.

76   Defendants encourage YouTube users to unlawfully reproduce, and infringe upon Cal IV and the class members' copyrighted materials.   In fact, Defendants have greatly benefited financially from encouraging traffic to its website by relying upon copyrighted material owned by others.

77.   Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Cal IV and the class members

## COUNT III
### (Contributory Copyright Infringement)

78.   Plaintiff incorporates by reference all preceding paragraphs

79.   Defendants, through their website, enable users to violate and infringe upon Cal IV and the class members' copyrighted material on a massive and wide-spread scale.  Defendants materially contribute to each act of infringement by YouTube users

80.   Defendants have both actual and constructive knowledge that the users of YouTube are utilizing its website to infringe upon Cal IV and the class members' copyrighted works.

81   Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to the rights of Cal IV and the class members

## COUNT IV
### (Vicarious Copyright Infringement)

82.   Plaintiff incorporates by reference all preceding paragraphs

83.   Defendants are vicariously liable for the infringing acts of YouTube users.  Defendants have the ability, and in fact, duty to supervise its users' infringing conduct, and to prevent them from infringing Cal IV's and the class members' copyrighted works.

84   Based upon public statements, YouTube utilizes certain filtering technology to limit or prevent copyright infringement on behalf of only those music publishers and other owners of copyrighted materials who have entered into a contractual relationship with YouTube.  The content verification program offered to those who are not business partners or maintaining a contractual relationship with YouTube is ineffectual and does not actually prevent the rampant infringement of copyrighted material.

85.   Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Cal IV and the class members

WHEREFORE Plaintiff and the class members pray for judgment against Defendants as follows:

1. For a determination that this action is a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. For a permanent injunction requiring that Defendants cease directly or indirectly infringing, or causing, enabling, facilitating, encouraging, promoting and inducing or participating in the infringement of, any of Plaintiffs' and the class members' copyrighted works protected by the Copyright Act, whether now in existence or hereafter created;

3. For an order requiring Defendants to adopt and implement, and offer to all holders of valid copyrights, such technological measures as exist, now or in the future, including without limitation technologies developed pursuant to a broad consensus of copyright holders owners and service providers in the relevant industries without unnecessarily substantial costs or burdens on their systems, to identify and protect copyrighted content and prevent it from being posted or otherwise made available through the facilities owned or operated by Defendants;

4. For actual damages to be proved at trial, including but not limited to Defendants' profits attributable to their infringing acts. Alternatively, for statutory damages pursuant to 17 U S C. § 504(c);

5. For an order directing disgorgement of all profits, direct or indirect, illegally obtained;

6. For an award of punitive damages as allowable under any applicable state law;

7.   For Plaintiffs' reasonable attorney fees pursuant to 17 U.S.C. § 505, costs and

other disbursements;

8.   For pre and post-judgment interest allowed under the law; and

9.   For such other relief that Plaintiffs may be entitled to or that this Court should

deem just and proper.

Respectfully submitted,

Gerald E. Martin #20193
Barrett, Johnston & Parsley
217 Second Avenue North
Nashville, Tennessee 37201
615-244-2202
615-252-3798 (facsimile)

Daniel C. Girard
Girard Gibbs LLP
601 California Street, 14th Floor
San Francisco, CA 94108
415-981-4800
415-981-4846 (facsimile)

Kevin Doherty
Burr & Forman
700 Two American Center
3102 West End Avenue
Nashville, TN 37203
615-724-3211
615-724-3290 (facsimile)

*Attorneys for Plaintiff Cal IV Entertainment*