# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE FOOTBALL ASSOCIATION PREMIER LEAGUE LIMITED, BOURNE CO. (together with its affiliate MURBO MUSIC PUBLISHING, INC.), CHERRY LANE MUSIC PUBLISHING COMPANY, INC., CAL IV ENTERTAINMENT LLC, ROBERT TUR d/b/a LOS ANGELES NEWS SERVICE, NATIONAL MUSIC PUBLISHERS ASSOCIATION, THE RODGERS & HAMMERSTEIN ORGANIZATION, STAGE THREE MUSIC (US), INC., EDWARD B. MARKS MUSIC COMPANY, FREDDY BIENSTOCK MUSIC COMPANY d/b/a BIENSTOCK PUBLISHING COMPANY, ALLEY MUSIC CORPORATION, X-RAY DOG MUSIC, INC., FEDERATION FRANCAISE DE TENNIS, THE SCOTTISH PREMIER LEAGUE LIMITED, THE MUSIC FORCE MEDIA GROUP LLC, THE MUSIC FORCE LLC, and SINDROME RECORDS, LTD. on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> YOUTUBE, INC., YOUTUBE, LLC and GOOGLE, INC., <br><br> Defendants. | ECF Case <br><br> Civil Action No. 07-CV-3582 (LLS) <br> (Related Case No. 07-CV-2103) |

## YOUTUBE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' PUNITIVE DAMAGES CLAIM

David H. Kramer
Maura L. Rees
Michael H. Rubin
Bart E. Volkmer
WILSON SONSINI GOODRICH & ROSATI PC
650 Page Mill Road
Palo Alto, California 94304
(650) 493-9300

Richard Ben-Veniste
Andrew H. Schapiro
A. John P. Mancini
Matthew D. Ingber
Brian M. Willen
MAYER BROWN LLP
1675 Broadway
New York, NY 10019
(212) 506-2500

*Attorneys for Defendants*

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| BACKGROUND | 1 |
| ARGUMENT | 2 |
|     I.    CLASS PLAINTIFFS ARE NOT ENTITLED TO STATUTORY DAMAGES FOR FOREIGN WORKS THAT ARE NOT REGISTERED IN THE UNITED STATES | 3 |
|     II.   CLASS PLAINTIFFS ARE NOT ENTITLED TO SEEK PUNITIVE DAMAGES FOR WORKS THAT ARE INELIGIBLE FOR STATUTORY DAMAGES | 8 |
| CONCLUSION | 11 |

# TABLE OF AUTHORITIES

## CASES

*Ad Rendon Committees, Inc. v. Lumina Americas, Inc.*,
   2006 WL 1593884 (S.D.N.Y. June 7, 2006) ............................................................................2

*Blanch v. Koons*,
   329 F. Supp. 2d 568 (S.D.N.Y. 2004) ....................................................................................9

*Edmark Industrial SDN, BHD. v. South Asia International (H.K.) Ltd.*,
   89 F. Supp. 2d 840 (E.D. Tex. 2000) ......................................................................................7

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
   153 F.3d 82 (2d Cir. 1998) ....................................................................................................10

*La Resolana Architects, PA v. Clay Realtors Angel Fire*,
   416 F.3d 1195 (10th Cir. 2005) ..............................................................................................5

*Master Sound International, Inc. v. PolyGram Latino U.S.*,
   1999 WL 269958 (S.D.N.Y. May 4, 1999) ............................................................................7

*Nash v. Coram Healthcare Corp.*,
   1996 WL 363166 (S.D.N.Y. June 28, 1996) ..........................................................................3

*Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.*,
   832 F. Supp. 1378 (C.D. Cal. 1993) ......................................................................................7

*Peliculas y Videos Internacion-ales, S.A. de C.V. v. Harriscope of Los Angeles, Inc.*,
   302 F. Supp. 2d 1131 (C.D. Cal. 2004) ..................................................................................7

*Phillips v. Pembroke Real Estate, Inc.*,
   459 F.3d 128 (1st Cir. 2006) ..................................................................................................5

*Rudnicki v. SPNA 1490 AM*,
   580 F. Supp. 2d 690 (N.D. Ill. 2008) ......................................................................................7

*Rudnicki v. WPNA 1490 AM Alliance Communications, Inc.*,
   2006 WL 59368 (N.D. Ill. Jan 4. 2006) ..................................................................................7

*Viacom International, Inc. v. YouTube, Inc.*,
   540 F. Supp. 2d 461 (S.D.N.Y. 2008) ..........................................................................1, 4, 8, 9

# TABLE OF AUTHORITIES
(continued)
Page

**STATUTES & LEGISLATIVE HISTORY**

17 U.S.C. § 101 ............................................................................................................. 3

17 U.S.C. §§ 408-410 .................................................................................................... 4

17 U.S.C. § 411(a) ..................................................................................................... 5, 6

17 U.S.C. § 412 ............................................................................................... 3, 4, 6, 7, 8

17 U.S.C. § 504(c) ..................................................................................................... 2, 3

House Joint Explanatory Statement on House-Senate Compromise Incorporated In
   Senate Amendment to H.R. 4262 (Oct. 12, 1988) .................................................. 5-6

Joint Explanatory Statement on Amendment to S. 1301 (Oct. 5, 1988) .......................... 6

H.R. Rep. 94-1476 (Sept. 3, 1976) ............................................................................. 4, 5

S. Rep. 100-352 (May 18, 1988) ................................................................................ 5, 6

**MISCELLANEOUS**

Berne Convention for the Protection of Literary and Artistic Works, Art. 5(2) ............... 5

2 NIMMER ON COPYRIGHT § 7.16[C][1] (2007) ......................................................... 4, 7

Defendants YouTube, Inc., YouTube LLC, and Google Inc. ("YouTube") submit this memorandum of law in support of YouTube's motion for judgment on the pleadings or, alternatively, to strike Class Plaintiffs' punitive damages claims. In particular, we address the two questions that the Court formulated at the February 27, 2009 pre-motion conference. Both have simple answers. *First*, the law is clear that Class Plaintiffs are not eligible for statutory damages in connection with foreign works that have not been registered in the United States. *Second*, like all other works asserted under the Copyright Act, unregistered foreign works are not eligible for punitive damages.

## BACKGROUND

On March 7, 2008, this Court rejected Viacom's claim for punitive damages, holding unambiguously that "punitive damages cannot be recovered under the Copyright Act." *Viacom Int'l, Inc. v. YouTube, Inc.*, 540 F. Supp. 2d 461, 464 (S.D.N.Y. 2008). Although that ruling applies equally to the *Premier League* action, Class Plaintiffs' Second Amended Class Action Complaint ("SACAC"), filed on November 24, 2008, nevertheless included a prayer for punitive damages "on all sound recordings protected by state law, or as otherwise permitted by law." SACAC ¶ 154. YouTube filed a pre-motion letter on January 16, 2009, seeking to move to dismiss Class Plaintiffs' claim for punitive damages.

Despite the Court's prior ruling, Class Plaintiffs argued that they were entitled to seek punitive damages with respect to unregistered foreign works to the extent that statutory damages are unavailable for such works. *See* Letter from Louis M. Solomon to The Honorable Louis M. Stanton at 2-3 (Jan. 21, 2009) ("Solomon Letter"). In response, YouTube pointed out that the Court's ruling made clear that punitive damages are categorically unavailable under the Copyright Act, regardless of the availability of statutory damages.

1

At a pre-motion conference on February 27, 2009, the Court focused on the statutory damages question. It was common ground between the parties that if a given work *is* eligible for statutory damages under 17 U.S.C. § 504(c), then punitive damages are unavailable as a matter of law. The parties disputed the availability of statutory damages, however, as well as whether punitive damages were available if statutory damages were not. In order to resolve those disputes, the Court requested that the parties brief the following issues:

1. Whether Class Plaintiffs are entitled to seek statutory damages under the U.S. Copyright Act for the alleged infringement of foreign works that have not been registered in the United States; and

2. Assuming that unregistered foreign works are *not* eligible for statutory damages, whether punitive damages are available under the Copyright Act for the alleged infringement of such works.

2/27/09 Tr. at 13:14-25. As discussed below, the answer to both questions is an unequivocal "no." Accordingly, YouTube respectfully requests that the Court reject Class Plaintiffs' claims for (1) statutory damages for any unregistered foreign works and (2) punitive damages for any claims arising under the Copyright Act.[1]

## ARGUMENT

Courts in the Second Circuit routinely dismiss claims for damages that are legally unavailable. *See, e.g., Ad Rendon Comms., Inc. v. Lumina Americas, Inc.*, 2006 WL 1593884, at *6 (S.D.N.Y. June 7, 2006) (granting motion to dismiss punitive damages claim under Rule

---

[1] Consistent with the Court's instructions at the February 27 conference, we do not address the availability of punitive damages for pre-1972 sound recordings because Class Plaintiffs have not asserted any such sound recordings as works in suit in this case. *See* 2/27/09 Tr. at 16:18-24. YouTube, of course, reserves the right to oppose any claim for punitive damages in the event that Class Plaintiffs do eventually assert such works. Nor does this motion address the availability of punitive damages for hypothetical claims arising solely under foreign law. As the Court recognized, Class Plaintiffs have yet to make any such claims, and they have not identified any even potentially applicable foreign law that would permit recovery of punitive damages in this case. Tr. at 12:15-25. At the same time, however, we continue to request that insofar as Class Plaintiffs intend to raise claims under foreign law, they promptly disclose which of their claims arise under what foreign country's law.

2

12(c)); *Nash v. Coram Healthcare Corp.*, 1996 WL 363166, at *4-5 (S.D.N.Y. June 28, 1996) (granting motion to strike punitive damages claim under Rule 12(f)). That is the situation here: Class Plaintiffs are not legally entitled to seek statutory damages for unregistered foreign works or punitive damages for any claims arising under the Copyright Act.

## I. CLASS PLAINTIFFS ARE NOT ENTITLED TO STATUTORY DAMAGES FOR FOREIGN WORKS THAT ARE NOT REGISTERED IN THE UNITED STATES.

The Copyright Act distinguishes for certain limited purposes between "United States works" and works that are not "United States works." *See* 17 U.S.C. § 101 (defining the term "United States work"); *id.* § 411. (We will refer to works that are not "United States works" as "foreign works.") Class Plaintiffs' Second Amended Complaint seeks statutory damages for "U.S. and non-U.S. works alike." SACAC ¶ 151; *see generally* 17 U.S.C. § 504(c) (describing statutory damages).[2] Class Plaintiffs argue that statutory damages are available under the Copyright Act for foreign works, even if those works have not been registered in the United States. *See* Solomon Letter at 2-3. That argument is wrong: it contradicts the clear text and legislative history of the Copyright Act, as well as the decisions of every court to have addressed the issue, and would undermine the policy behind the registration requirement.

The statute unambiguously rules out Class Plaintiffs' bid for statutory damages for unregistered foreign works. The relevant provision is section 412, entitled "Registration as prerequisite to certain remedies for infringement." 17 U.S.C. § 412. Consistent with that description, the statute provides, in pertinent part:

> In any action under this title . . . no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for –

---

[2] We have assumed for purpose of this motion that certain of Class Plaintiffs' unregistered works are actually foreign works rather than United States works. But YouTube does not concede that point and reserves the right to challenge Class Plaintiffs' allegations about the country of origin of any given work in suit at an appropriate time.

> (1) *any* infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> (2) *any* infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

*Id.* (emphases added). As this Court has recognized, Section 412 makes clear that in order to recover statutory damages, "the work must have been registered before the infringement (or within three months of its first publication)." *Viacom Int'l, Inc. v. YouTube, Inc.*, 540 F. Supp.2d 461, 463 (S.D.N.Y. 2008).[3] The language of the provision is unequivocal and leaves no room for exceptions based on the work's country of origin. It does not distinguish between "United States works" and foreign works. Regardless of where a work originates, it must have been registered in the United States in order for a plaintiff to be able to seek statutory damages.

The legislative history of Section 412 makes that explicit. The provision was added by the Copyright Act of 1976. The House Report accompanying that legislation describes Congress' conclusion that works "should not be given special statutory remedies unless the owner has, by registration, made a public record of his copyright claim." H.R. Rep. 94-1476 (Sept. 3, 1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5774. Section 412 was designed so that the availability of the "extraordinary" remedy of statutory damages would create an incentive for copyright owners to register their works. *Id.* The Report expressly states that those provisions (and the policy choices they embodied) "would be applicable to works of foreign and domestic origin[] alike." *Id.* In short, Congress could hardly have been clearer that foreign works, just like United States works, must first be registered to be eligible for statutory damages.

---

[3] The provisions of the Copyright Act governing registration make no distinction between United States works and foreign works. *See* 17 U.S.C. §§ 408-410. Any work that constitutes copyrightable subject matter, no matter what its place of origin, can be registered in the United States and thereby gain the benefits that the Copyright Act provides uniquely to registered works. *See* 2 NIMMER ON COPYRIGHT § 7.16[C][1], p. 7-182 (2007).

4

If any further support for that conclusion were needed, it comes from the legislative history relating to Congress' implementation of the Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention"). The Berne Convention is an international copyright treaty providing that works created by the citizens of one signatory nation will be fully protected by other signatories. *See Phillips v. Pembroke Real Estate, Inc.*, 459 F.3d 128, 133 n.3 (1st Cir. 2006). Among its provisions is a requirement that the "enjoyment and the exercise" of rights protected by the Convention "shall not be subject to any formality." Berne Convention, Art. 5(2). When the United States joined the Berne Convention in 1988, there was considerable debate in Congress about which, if any, portions of the Copyright Act would have to be changed to adhere to Berne's prohibition on formalities.

In particular, a major issue was whether to retain the requirement provided in Section 411(a) that a work must be registered before a copyright owner may bring an infringement action. The Senate believed that Section 411(a) imposed a formality and thus had to give way to Berne (*see* S. Rep. 100-352, at 14 (May 18, 1988), reprinted in 1988 U.S.C.C.A.N. 3607, 3719); the House disagreed. *See La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1205-06 (10th Cir. 2005) (describing the congressional debate). Ultimately, Congress compromised by exempting foreign works from Section 411(a)'s registration requirement, while continuing to insist on registration for U.S. works as a prerequisite to bringing suit. *See* House Joint Explanatory Statement on House-Senate Compromise Incorporated In Senate Amendment to H.R. 4262, reprinted in 134 Cong. Rec. H10097 (daily ed. Oct. 12, 1988) ("House Explanatory Statement").[4]

---

[4] This was accomplished by amending Section 411(a) to provide that "no civil action for infringement of the copyright in *any United States work* shall be instituted until preregistration or registration of the copyright claim as been made in accordance with this title." 17 U.S.C. § 411(a) (emphasis added).

The important part of this history for present purposes is that the changes made to Section 411(a) had no effect on Section 412's requirement that, *for both foreign and domestic works,* registration is a prerequisite to statutory damages. That fact was recognized by all parties to the debate; no one, not even the Senate, believed that Section 412 imposed a "formality" that required modification.[5] To the contrary, the Senate expressly described "the availability of statutory damages" as one of the Copyright Act's "Berne-compatible incentives for timely registration." Joint Explanatory Statement on Amendment to S. 1301, reprinted in 134 Cong. Rec. S14544 (daily ed. Oct. 5, 1988). In describing the compromise that was ultimately enacted, the framers of the bill made clear that "foreign authors must also register in order to obtain the important benefits of . . . statutory damages." House Explanatory Statement, 134 Cong. Rec. H10097. Congress maintained that requirement for the same reason that it had originally enacted Section 412: to create an incentive for *all* authors to register their works and thereby to "assure a strong, accurate, and effective public record and deposit of works for the benefit of the Library of Congress." *Id.*

Given the unambiguous language of the statute and its unusually clear legislative history, it is no surprise that the courts have uniformly concluded that Section 412 precludes a plaintiff from recovering statutory damages for unregistered foreign works. For example, in a case involving sound recordings created in Mexico, Judge Cote held that the plaintiff's failure to provide United States registrations for its works required dismissal of its claim for statutory damages and attorney's fees. *Master Sound International, Inc. v. PolyGram Latino U.S.*, 1999

---

[5] *See* House Explanatory Statement, 134 Cong. Rec. H10097 (noting that both the House and Senate bills left "unaffected the provisions of existing law granting . . . statutory damages and attorneys' fees upon timely registration of claims to copyright"); S. Rep. 100-352, U.S.C.C.A.N. at 3726 (under the Senate bill, statutory damages and attorney's fees "would remain available only with respect to works that had been registered with the Copyright Office").

WL 269958, at *3 (S.D.N.Y. May 4, 1999). She summarized the law as follows: "Registration is a prerequisite to bringing suit for recovery of such damages and fees, and [Section 412] does not incorporate an exception for works originated in countries outside the United States. *Id.*

That has been the conclusion of every other court that has addressed this issue. *See Rudnicki v. WPNA 1490 AM*, 580 F. Supp. 2d 690, 694 (N.D. Ill. 2008) ("Registration is only a prerequisite when the foreign copyright holder seeks statutory damages and attorney's fees.");[6] *Peliculas y Videos Internacion-ales, S.A. de C.V. v. Harriscope of Los Angeles, Inc.*, 302 F. Supp. 2d 1131, 1138-39 (C.D. Cal. 2004) (finding statutory damages unavailable for unregistered foreign films); *Edmark Indus. SDN, BHD. v. South Asia Int'l (H.K.) Ltd.*, 89 F. Supp. 2d 840, 844 (E.D. Tex. 2000) (citing 1 BOORSTYN ON COPYRIGHT § 1.08, p. 1-45 to 1-46 (1999)) ("Boorstyn highly recommends that foreign works be registered in order to . . . be entitled to statutory damages and attorney's fees under section 412"); *Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.*, 832 F. Supp. 1378, 1393 & n.13 (C.D. Cal. 1993) (holding that under Section 412, statutory damages were unavailable for the plaintiff's unregistered work and the "the fact that the [the work] was created and first published in France is irrelevant"). A leading copyright treatise has joined the chorus:

> [T]he loss of remedies under Section 412 due to failure to register is applicable to works of foreign origin as well as to domestic works. Given further that even foreign works must be registered to take advantage of this remedy, foreign works' nominal exemption from registration as a prerequisite to filing suit holds only a hollow advantage.

2 NIMMER ON COPYRIGHT § 7.16[C][1], p. 7-183 (2007).

---

[6] In an earlier decision in the same case, the court had held that the fact that the plaintiffs' works were published abroad and thus "fall within the scope of the Berne Convention does not excuse non-registration for the purpose of seeking extraordinary damages." *Rudnicki v. WPNA 1490 AM Alliance Communications, Inc.*, 2006 WL 59368, at *1 (N.D. Ill. Jan 4. 2006).

For these reasons, unregistered works do not become eligible for statutory damages simply because they were published or created abroad. In addition to all of its other problems, such a result would eliminate the incentive that the owners of foreign works currently have to register those works with the Copyright Office, thereby undermining one of Congress' chief goals in enacting—and subsequently preserving—Section 412. Class Plaintiffs' claim for statutory damages with respect to any unregistered foreign works therefore should be dismissed or stricken.

## II. CLASS PLAINTIFFS ARE NOT ENTITLED TO SEEK PUNITIVE DAMAGES FOR WORKS THAT ARE INELIGIBLE FOR STATUTORY DAMAGES.

The fact that Section 412 precludes statutory damages for most unregistered works (whether foreign or domestic) does not mean Class Plaintiffs are eligible to recover punitive damages for such works. To the contrary, regardless of the availability of any other remedy, punitive damages are categorically unavailable for claims asserted under the Copyright Act. That conclusion flows directly from this Court's prior ruling on punitive damages, from the structure of the Act, and from any sensible understanding of the relevant policy incentives.

When this Court rejected Viacom's claim for punitive damages, it directly addressed the relationship between statutory damages and punitive damages: "The Second Circuit has stated that 'punitive damages are not available under the Copyright Act of 1976,' *regardless of whether a plaintiff is seeking statutory damages or the alternative of actual damages plus profits.*" *Viacom*, 540 F. Supp. 2d at 462-63 (quoting *Oboler v. Goldin*, 714 F.2d 211, 213 (2d Cir.1983)). The Court then proceeded to conclude that "[c]ommon-law punitive damages cannot be recovered under the Copyright Act." *Id.* at 464. That unequivocal statement was the Court's holding. In light of that holding, punitive damages are not a remedy allowed under the Copyright Act. The availability or unavailability of any other form of damages is irrelevant.

8

That is confirmed by the Court's discussion of *Blanch v. Koons*, 329 F. Supp. 2d 568 (S.D.N.Y. 2004). That case involved an alleged willful infringement of a work that was unregistered and thus not eligible for statutory damages. Although the Court in *Blanch* gave the plaintiff an opportunity to argue that punitive damages should be available in that circumstance (*id.* at 570), the whole point of the subsequent ruling in *Viacom* was to make clear that "[i]f it ever was, *that decision is no longer good law*." 540 F. Supp. 2d at 463. Thus, while the *Viacom* decision noted in passing that it would be "especially inappropriate" to permit copyright owners who qualify for statutory damages to seek punitive damages (*id.* at 464), that was merely an observation about a difference between *Viacom* and *Blanch*. It plainly was not a limitation on the Court's core holding that *Blanch* was no longer good law and that the Copyright Act does not allow plaintiffs to obtain punitive damages.

But even if it were not foreclosed by the Court's holding, the result that Class Plaintiffs seek is inconsistent with the Copyright Act's registration and damages provisions. As discussed above, in implementing the Berne Convention, Congress made a considered decision to allow the owners of foreign works a limited exception from the requirement of U.S. registration: the owners of such works may sue under the Copyright Act without having to register, but unless they register they are not permitted to obtain statutory (or attorney's fees) and are limited to actual damages. The purpose of that statutory arrangement is to comply with the Berne Convention's prohibition on formalities, while at the same time maintaining powerful incentives for the owners of both foreign and U.S. works to register.

The result that Class Plaintiffs seek would undermine this scheme by creating a perverse incentive *not* to register foreign works. Under Class Plaintiffs' approach, the owners of foreign works who do not bother to register—thereby disqualifying themselves from obtaining statutory

damages—would nevertheless be rewarded with the ability to seek the extraordinary remedy of punitive damages, even though that benefit is denied to *all* other copyright owners, including those who diligently register their works. That makes no sense. Indeed, it is entirely at odds with the structure and purpose of the Copyright Act to give the owners of unregistered foreign works access to more expansive remedies under U.S. law than are available to the owners of registered U.S. works.

Accordingly, insofar as Class Plaintiffs are suing under U.S. copyright law, they are limited to the remedies available under the Copyright Act.[7] As this Court has already determined, those remedies do not include punitive damages.

---

[7] The Second Circuit has held that, regardless of whether a work is foreign or domestic, the question of "what remedies are available" for alleged infringements asserted in the United States will typically be a matter of U.S. law. *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 84 (2d Cir. 1998); *see also id.* at 91 ("On infringement issues, the governing conflicts principle is usually *lex loci delicti*, the doctrine generally applicable to torts."). As discussed above, this memorandum addresses only infringement claims arising under U.S. law.

## CONCLUSION

For the reasons given above, YouTube respectfully requests that the Court dismiss or, in the alternative, strike Class Plaintiffs' claims for (1) statutory damages for all unregistered foreign works, and (2) punitive damages for all claims arising under the U.S. Copyright Act.

Dated: April 3, 2009
      New York, NY

Respectfully submitted,

/s/ Andrew H. Schapiro

Andrew H. Schapiro
A. John P. Mancini
Matthew D. Ingber
Brian M. Willen
MAYER BROWN LLP
1675 Broadway
New York, NY 10019
(212) 506-2500

David H. Kramer
Michael H. Rubin
Bart E. Volkmer
WILSON SONSINI GOODRICH & ROSATI PC
650 Page Mill Road
Palo Alto, California 94304
(650) 493-9300

*Attorneys for Defendants*