PROSKAUER ROSE LLP
Louis M. Solomon
1585 Broadway
New York, NY 10036-8299
Telephone 212.969.3000
        - and -
BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
Max W. Berger
1285 Avenue of the Americas
New York, NY 10019
Telephone 212.554.1400
*Attorneys for Lead and Named Plaintiffs and the Prospective Class*

<div align="center">

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

</div>

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE FOOTBALL ASSOCIATION PREMIER : 
LEAGUE LIMITED, BOURNE CO. (together :    **ECF Case**
with its affiliate MURBO MUSIC PUBLISHING, :
INC.), CHERRY LANE MUSIC PUBLISHING :    **07 Civ. 3582 (LLS)**
COMPANY, INC., CAL IV ENTERTAINMENT :
LLC, ROBERT TUR d/b/a LOS ANGELES :
NEWS SERVICE, NATIONAL MUSIC :    **CLASS PLAINTIFFS'**
PUBLISHERS' ASSOCIATION, THE :    **OPPOSITION TO YOUTUBE'S**
RODGERS & HAMMERSTEIN :    **MOTION FOR JUDGMENT ON**
ORGANIZATION, STAGE THREE MUSIC :    **THE PLEADINGS REGARDING**
(US), INC., EDWARD B. MARKS MUSIC :    **CERTAIN MONETARY RELIEF**
COMPANY, FREDDY BIENSTOCK MUSIC :    **AVAILABLE FOR**
COMPANY d/b/a BIENSTOCK PUBLISHING :    **UNREGISTERED "FOREIGN"**
COMPANY, ALLEY MUSIC CORPORATION, :    **WORKS**
X-RAY DOG MUSIC, INC., FÉDÉRATION :
FRANÇAISE DE TENNIS, THE MUSIC FORCE :
MEDIA GROUP LLC, THE MUSIC FORCE :
LLC, and SIN-DROME RECORDS, LTD. on :
behalf of themselves and all others similarly :
situated, :
                          :
               Plaintiffs, :
                           :
           v. :
                           :
YOUTUBE, INC., YOUTUBE, LLC and :
GOOGLE, INC., :
                           :
              Defendants. :
                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

SUMMARY OF ARGUMENT ..............................................................................................2

OVERVIEW OF RELEVANT STATUTORY, TREATY AND TRADE AGREEMENT
PROVISIONS PERTINENT TO YOUTUBE'S MOTION ........................................................6

      A. Relevant Provisions of the U.S. Copyright Act ...........................................................7

      B. Berne Convention ......................................................................................................9

      C. TRIPs ......................................................................................................................11

      D. The DMCA Amendments ........................................................................................13

ARGUMENT .......................................................................................................................15

    The Scope of, and Standard on, YouTube's Motion ...........................................................15

    I. Statutory Remedies Are Available to Owners of Unregistered Non-U.S. Works ..............17

      A. Section 411(b) Permits the Recovery of Statutory Damages and Attorneys' Fees
      for Unregistered Works. ................................................................................................17

      B. No "Hidden Trap" Should Be Read Into U.S. Law Conditioning Statutory Remedies
      on Registration When the U.S. Copyright Act Imposes Registration Only on "United
      States Works" ................................................................................................................19

    II. If Statutory Damages Are Unavailable to Owners of Unregistered Non-U.S. Works, They
    Are Entitled to Seek Punitive Damages under the U.S. Copyright Act ...............................29

CONCLUSION .....................................................................................................................33

**CASES**

*Am. Metro. Enters. of New York, Inc. v. Warner Bros. Records, Inc.*,
  389 F.2d 903 (2d Cir. 1968) ................................................................................................35

*Boddie v. Connecticut*, 401 U.S. 371 (1971) ..............................................................................26

*Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470 (6th Cir. 2007) ..........................36

*Cleveland v. Caplaw Enters.*, 448 F.3d 518 (2d Cir. 2006) ........................................................17

*Edmark Indus. SDN, BHD v. South Asia Int'l (H.K.), Ltd.*,
  89 F. Supp. 2d 840 (E.D. Tex. 2000) ...................................................................................24

*Eisen, Durwood, & Co. v. Tolkien*, 794 F. Supp. 85 (S.D.N.Y. 1992) ........................................31

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228 (1952).......................................34

*Hamil Am., Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999)...................................................................35

*Lawton v. Melville Corp*. 1997 U.S. Dist. LEXIS 15228 (2d Cir. 1997).....................................35

*London Film Prods., Ltd. v. Intercont'l Comm'ns, Inc.*,
  580 F. Supp. 47 (S.D.N.Y. 1984)...................................................................................32, 36

*Master Sound Int'l, Inc. v. Polygram Latino U.S.*,
  1999 U.S. Dist. LEXIS 6287 (S.D.N.Y. May 3, 1999) .........................................................23

*Parfums Givenchy, Inc. v. C&C Beauty Sales, Inc.*, 832 F. Supp. 1378 (C.D. Cal. 1993) ...........25

*Peliculas y Videos Internacionales S.A. de C.V. v. Harriscope of L.A., Inc.*,
  302 F. Supp. 2d 1131 (C.D. Cal. 2004)................................................................................24

*Rudnicki v. WPNA 1490 AM*, 2006 U.S. Dist. LEXIS 1238 (N.D. Ill. Jan. 4, 2006) .............21, 24

*Rudnicki v. WPNA 1490 AM*, 580 F. Supp. 2d 690 (N.D. Ill. 2008) ..........................................24

*Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969).........................................................26

*United States v. Fields*, 783 F.2d 1382 (9th Cir. 1986) ..............................................................21

*Van Der Zee v. Greenidge*, 2006 U.S. Dist. LEXIS 400 (S.D.N.Y. Jan. 6, 2006) .......................26

*Viacom Int'l, Inc. v. YouTube, Inc.*, 540 F. Supp. 2d 461 (S.D.N.Y. 2008).............................6, 37

*Weinberger v. Rossi,* 456 U.S. 25 (1982) ....................................................................31, 32

*Yankees Entm't & Sports Network, LLC v. Cablevision Sys. Corp.*, 224 F. Supp. 2d 657 (S.D.N.Y. 2002) ...........................................................................18

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001)....................................34

## STATUTES AND LEGISLATIVE HISTORY

17 U.S.C. § 101..............................................................................................................8, 16

17 U.S.C. § 408.................................................................................................................22

17 U.S.C. § 410.................................................................................................................22

17 U.S.C. § 411(a) .....................................................................................................passim

17 U.S.C. § 411(b) .....................................................................................................passim

17 U.S.C. § 412.....................................................................................................3, 23, 27

17 U.S.C. § 504..........................................................................................................passim

17 U.S.C. § 505..........................................................................................................passim

Berne Convention Art. 5(2) .............................................................................................10

Berne Convention Implementation Act of 1988...............................................................11

Committee on the Judiciary, *Section-by-Section Analysis of H.R. 2281 as Passed by the United States House of Representatives on August 4, 1998* (Sept. 1998) ...........................................16

Copyright Act of Canada §§ 38.1, 54-56 .........................................................................30

Copyrights, Designs, and Patents Act of 1998 §§ 96, 97.................................................30

*GATT Implementing Legislation: Hearings on S.2467 Before the S. Comm. on Commerce, Science, and Transportation*, 103d Cong., 2d Sess. (1994) ...........................................12

H. Rep. 105-551 (1998).....................................................................................................15

H.R. Rep. 103-316 (1994) .................................................................................................12

H.R. Rep. 94-1476 (1976) ...................................................................................................8

S. Rep. 100-352 (1988) ...................................................................................passim

S. Rep. 105-190 (1998) ...................................................................................15

Statement of Administrative Action, H.R. Rep. 103-316 (1994) ...........................13, 14

TRIPs Art. 41(1) ...................................................................................13

TRIPs Art. 45(2) ...................................................................................13

TRIPs Art. 62(1) ...................................................................................13

TRIPs Art. 9 ...................................................................................13

TRIPs Preamble ...................................................................................12

Uruguay Round Agreements Act ...................................................................13, 14

## OTHER AUTHORITIES

2 NIMMER ON COPYRIGHT § 7.16[B][1][b][iv] ..........................................................10

2 NIMMER ON COPYRIGHT § 7.16[B][3] ...................................................................19

3 PATRY ON COPYRIGHT § 6.2...................................................................................9

4 NIMMER ON COPYRIGHT § 14.04 ...................................................................................34

4 NIMMER ON COPYRIGHT § 17.01[B] ...................................................................................9

4 NIMMER ON COPYRIGHT § 18.05[A][2] ..........................................................11, 26

6 PATRY ON COPYRIGHT § 22:174...................................................................................34

7 NIMMER ON COPYRIGHT § 17.01[C][2] ...................................................................10

Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE (2009) .............17

David Nimmer, *The Impact of Berne on United States Copyright Law,* 8 CARDOZO
    ARTS & ENTM'T L.J. 27 (1989)...................................................................24

James E. Hawes & Bernard C. Dietz, COPYRIGHT REGISTRATION PRACTICE (2d ed. 2008) ..........9

John S. McKeown, FOX ON CANADIAN LAW OF COPYRIGHT AND INDUSTRIAL DESIGNS
    (3d ed. 2000)...................................................................................29

iv

Laddie, Prescott & Vitoria: The Modern Law of Copyright and Designs
   (3d ed. 2000).........................................................................................................29

Norman J. Singer, Sutherland Statutes and Statutory Construction (6th ed. 2008) .....30

Shira Perlmutter, *Freeing Copyright from Formalities*,
   13 Cardozo Arts & Entm't L.J. 565 (1994) ..........................................................22, 26, 27

## PRELIMINARY STATEMENT

Class Plaintiffs, through Interim Class Counsel, respectfully submit this memorandum of law and accompanying papers in opposition to Defendants' Motion for Judgment on the Pleadings on Plaintiffs' Punitive Damages Claim filed by Defendants YouTube, Inc., YouTube, LLC and Google, Inc. ("YouTube") (the "Motion").

YouTube moves for what amounts to a blanket, stark, and abstract legal ruling. Sections 504 and 505 of the United States Copyright Act (the "Copyright Act" or "Act") permit statutory damages and attorneys' fees in certain circumstances ("Section 504-05 Remedies"). YouTube claims on this Motion that—irrespective of what the proof shows concerning who the injured party is, where in the world the work was made or the infringement occurred, how egregious or willful was the infringement—no class member may seek Section 504-05 Remedies unless that class member had registered the work with the U.S. Copyright Office at a time prior to (or in some cases very shortly after) the infringing activity commenced. Says YouTube: "Regardless of where a work originates, it must have been registered in the United States in order for a plaintiff to be able to seek statutory damages," and "Congress could hardly have been clearer that foreign works, just like United States works, must first be registered to be eligible for statutory damages." Motion at 4.

By making this blanket assertion, YouTube is claiming that registration with the U.S. Copyright Office prior to commencement of the infringing activity is mandatory to seek Section 504-05 Remedies, even for rights holders such as named plaintiffs the Premier League and Fédération Française de Tennis ("FFT"), whose rights originate outside of the United States and are not otherwise required to be registered under the Act (we refer to these as "Non-U.S. Works"). For the purposes of its Motion, YouTube concedes that the works at issue qualify as Non-U.S. Works. Motion at 3 n.2.

To compel denial of YouTube's Motion, it is sufficient for us to demonstrate that, as a matter of law, owners of Non-U.S. Works are not legally prohibited from praying for Section 504-05 Remedies. We do so below. Indeed, we go further and demonstrate that, far from being prohibited, the U.S. Copyright Act *entitles* the owners of Non-U.S. Works to seek Section 504-05 Remedies without first having had to register those works in the U.S. Copyright Office before commencement of the infringing activity.

While styled as a motion addressing the availability of punitive damages, the bulk of YouTube's Motion focuses on statutory damages, which YouTube argues are never available, in any circumstance, absent prior registration in the U.S. Copyright Office. The Class Plaintiffs address this threshold issue first, in Argument Point I, below, since if statutory damages are available to the copyright owners of Non-U.S. Works, the parties agree that the Court need not reach the punitive damages question. Motion at 2. Should the Court nevertheless conclude that Section 504-05 Remedies are never available absent registration prior to commencement of the infringing activity, the owners of these Non-U.S. Works should be entitled to seek punitive damages, for the reasons set forth in Argument Point II below.

## SUMMARY OF ARGUMENT

YouTube's Motion should be denied for the initial reason that owners of unregistered Non-U.S. Works are entitled to seek Section 504-05 Remedies, based on any fair reading of the Copyright Act. While YouTube resorts to background materials and obsolete snippets of legislative history, a more complete consideration of the Act, pertinent treaties, trade agreements, and other legislative pronouncements confirms the availability of these statutory remedies without any registration requirement. If, however, this Court concludes that statutory damages

and attorney's fees are unavailable in any of these circumstances, there is a sound basis to permit the owners of these works to seek punitive damages.  To summarize:

*First,* Sections 504-05 of the Copyright Act provide that "an infringer of copyright is liable" for statutory damages and attorneys' fees in any case, "[e]xcept as otherwise provided by this title."  No "condition" of prior registration exists in these Sections.  That is, YouTube is liable for these remedies in this case, once it has been shown to infringe, unless the Act "otherwise provide[s]" elsewhere.

*Second,* Section 411(a) of the Act requires registration of "United States work(s)." It does *not* require registration of Non-U.S.Works.  In pertinent part it provides that "no action for infringement of the copyright *in any United States work* shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title …".  17 U.S.C. § 411(a) (emphasis supplied).  This is the sole requirement for registration in the Act.

*Third,* Sections 411(b) and 412 -- the two statutory provisions that YouTube either ignores (§ 411(b)) or misreads (§ 412) -- make it clear that they, like § 411(a), do not limit the scope of rights or remedies for Non-U.S. Works but apply only to United States Works.  Section 411(b) addresses works such as live sports telecasts, which are first "fixed" for copyright purposes simultaneously with their initial broadcast (hereinafter "Simultaneous Fixation Works").  Section 411(b) says that the sweep of civil statutory remedies are available for such works *unless registration is required by § 411(a).*  To the same effect, Section 412 provides that "no award of statutory damages or of attorneys' fees, as provided by sections 504 and 505, shall be made" in the case of "unpublished works" for infringements commenced "*before the effective date of its registration,*" 17 U.S.C. § 412(1), or in the case of "published works" for infringements commenced "after first publication of the work *and before the effective date of its*

*registration*, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412(2) (emphasis supplied).  In each of §§ 411(b) and 412 there is statutory language limiting those sections to cases of registration, thus confirming that they do not have a sweep broader than the registration requirement of § 411(a) – which as we saw is explicitly limited to United States Works.

*Fourth,* it follows from the above that Non-U.S. Works are *not* subject to the "except as otherwise provided" proviso to the Sections 504 and 505 entitlement to seek statutory damages and attorneys' fees.  Non-U.S. Works are therefore entitled to seek Section 504-05 Remedies.  Non-U.S. Works are not covered in §§ 411(a), (b), or 412.  Section 411(a) limits the requirement of registration to "United States works."  The other two Sections either say that a registration precondition is applicable if *required by § 411(a)* or speaks only of those cases where there is an "effective date of [] registration," *i.e.*, where registration is elsewhere required.  Since the only instance where registration is required is § 411(a)'s provision applicable *only* to "United States works," no registration requirement can be read into §§ 411(b) or 412 for Non-U.S. Works.  Such works are not subject to an "otherwise provided" exception to the availability Section 504-05 Remedies.

*Fifth,* the above conclusions follow not only from the plain language, structure, and operation of the statute; they follow inexorably from an analysis of the legislative history and operative provisions of subsequent Congressional enactments that implement various treaties and trade agreements to which the U.S. has become bound, including the Berne Convention ("Berne Convention" or "Berne") to which the U.S. acceded in 1989 and the Agreement on Trade-Related Aspects of Intellectual Property Rights ("TRIPs") to which the U.S. became bound in 1994.  In the first of these enactments, Congress declared that "registration as a condition of

copyright enforcement is incompatible with Berne standards." *See* S. Rep. 100-352, at 30 (1988), reprinted in 1988 U.S.C.C.A.N. 3607. TRIPs gave even greater force to the original Berne amendments under a mandate simultaneously to avoid barriers to trade and to provide effective remedies that are not conditioned on formalities such as copyright registration. These crucial federal policies were reflected in amendments to the Copyright Act made by the Digital Millennium Copyright Act ("DMCA") in 1998, which substantially rewrote the § 411 requirement of registration to apply ***only*** to "United States works," thus confirming the Act's loyal adherence to Berne and TRIPs (and other international agreements).

***Sixth,*** as a matter of important federal policy, the Copyright Act should not be read to deny Section 504-05 Remedies to rights owners of Simultaneous Fixation Works and Non-U.S. on the basis of a formality such as "registration." Such a formality is universally regarded as repugnant to authors' rights. Conditioning important remedies on a formality such as prior registration implicates such fundamental rights that this Court should avoid a reading of the Copyright Act that offends such important interests, if any other construction is possible, as it plainly is. Indeed, we believe that a reading of the Copyright Act that precludes Section 504-05 Remedies in the circumstances here would raise serious Constitutional objections, particularly given the fact that, according to YouTube's reading, there is no realistic, effective, or practical way for an owner of a Non-U.S. Work to comply with the U.S. statutory scheme as read by YouTube.

***Seventh,*** should the Court nonetheless conclude that Section 504-05 Remedies are unavailable in these circumstances, there is a compelling basis to permit the owners of unregistered Non-U.S. Works to seek punitive damages. There is a well-recognized, and entirely permissible, "punitive" component to monetary recoveries under the U.S. Copyright Act,

whether in the form of "statutory damages" or actual damages/profit disgorgement recoveries. YouTube reads this Court's March 7, 2008 ruling on Viacom's punitive damages claim far too broadly. *See Viacom Int'l, Inc. v. YouTube, Inc.*, 540 F. Supp. 2d 461 (S.D.N.Y. 2008) (the "Viacom Ruling"). That ruling did not foreclose all forms of punitive monetary relief under the Act. Nor did it address a circumstance where statutory damages or attorney's fees are being denied based on non-compliance with a "formality"—copyright registration—which is regarded as antithetical to authors' rights under the various treaties and international agreements to which the U.S. is bound. The availability of meaningful monetary remedies, including those meant to deter willful infringement, cannot be withheld based on what is effectively a prior registration obstacle that may prove impossible to overcome, particularly where such a result is at odds with U.S. obligations under international treaties and agreements, and the statute contains no express prohibition against such punitive/deterrent or cost-shifting remedies.

## OVERVIEW OF RELEVANT STATUTORY, TREATY, AND TRADE AGREEMENT PROVISIONS PERTINENT TO YOUTUBE'S MOTION

One searches YouTube's Motion in vain for any recognition that the Copyright Act affords certain rights specific to copyright owners of Simultaneous Fixation Works and Non-U.S. Works. Only by ignoring the express language of the Act itself and by relying on snippets of legislative history that have been superseded by later enactments can YouTube insist that, absent registration in the U.S. Copyright Office prior to commencement of the infringing activity, the owners of these works are uniformly barred from recovering Section 504-05 Remedies.

We therefore set forth the relevant statutory provisions and framework and legislative history, not just of the Copyright Act but of the relevant treaties, trade agreements, and other amendments to the Act that directly affect the rights at issue here. We respectfully reserve the

right to reply to any discussion by YouTube, should it address these issues for the first time in its reply brief.

## A.  Relevant Provisions of the U.S. Copyright Act

The availability of statutory damages and attorneys' fees in copyright infringement actions is governed by Sections 504 and 505 of the Copyright Act.  Neither section mentions registration as a prerequisite for such remedies.  Rather, § 504 indicates that statutory damages are available "[e]xcept as otherwise provided by this title."  Section 504(a) provides, in relevant part:

> Except as otherwise provided by this title, an infringer of copyright is liable for either—
> (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or
> (2) statutory damages, as provided by subsection (c).

17 U.S.C. § 504(a).  Section 504(c) permits copyright owners to elect to recover statutory damages at any time before final judgment is rendered.  17 U.S.C. § 504(c).

Section 505, the provision relating to attorneys' fees, provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

Elsewhere, the Copyright Act does "otherwise provide" that registration in the U.S. Copyright Office is a pre-condition to suit.  It does so, however, only in the case of "United States works."  Section 411(a) provides, in relevant part:

> [S]ubject to the provisions of subsection (b), no civil action for infringement of the copyright in any **United States work** shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.

17 U.S.C. § 411(a) (2009) (emphasis supplied).

"United States work(s)" are expressly defined in the Act, 17 U.S.C. § 101, and for the purposes of this Motion, YouTube assumes, as it must, that the category of works at issue on this Motion fall **outside** that definition, *i.e.*, they are Non-U.S. Works (or what YouTube refers to as "foreign works"). *See* Motion at 3 n.2. The works at issue are specifically pled as Non-U.S. Works. *See* Class Pls.' Second Am. Compl. at ¶¶ 15, 32.

Section 411(a) contains two companion provisions, §§ 411(b) and 412. These provisions were enacted at the same time. *See* Copyright Act of 1976, Pub. L. No. 94-553, §§ 411, 412, 90 Stat. 2541 (1976) (as enacted). Section 411(b) was originally included in the Copyright Act to address the special needs of rights owners of Simultaneous Fixation Works, such as sports telecasts and other live broadcast events, which were only first recorded (or "fixed" for copyright purposes) at the time of initial transmission.[1] That Section (recently recodified as subsection (c) without relevant substantive change) provides in pertinent part that, if no registration is required by § 411(a), then no registration is required under § 411(b) for the Section 504-05 Remedies, to be recoverable:

> In the case of a work consisting of sounds, images, or both, the first fixation of which is made simultaneously with its transmission, the copyright owner may… institute an action for infringement under section 501, fully subject to the remedies provided by sections 502 through 505 and section 510, if … the copyright owner… makes registration for the work, **if required by subsection (a)**, within three months after its first transmission.

17 U.S.C. § 411(b) (2009) (recodified as § 411(c)) (emphasis supplied). Class Plaintiffs, such as the Premier League, have specifically pled that they are entitled to statutory damages and attorneys' fees, including under § 411(b). *See* Class Pls.' Second Am. Compl. ¶¶ 15, 32.

The other related provision is Section 412, which provides:

---

[1] *See* H.R. Rep. 94-1476, at 157 (1976), reprinted in 1976 U.S.C.C.A.N. 5659 (noting that § 411(b) is "intended to deal with the special situation presented by live broadcasts").

> In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(c), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—
>
>> (1) any infringement of copyright in an unpublished work commenced before *the effective date of its registration*; or
>>
>> (2) any infringement of copyright commenced after first publication of the work and before *the effective date of its registration*, unless *such registration* is made within three months after the first publication of the work.

17 U.S.C. § 412 (emphasis supplied). On its face, § 412 contains no registration requirement, but rather speaks to works that have already have an "effective date of registration" (i.e., "*the* effective date" and "*such* registration").

The practical effect of reading § 412 to apply to Non-U.S. Works would be to impose a registration requirement immediately upon creation of a work, since a rights owner will not otherwise know when an infringement commences. And, even then, if the infringing activity commenced before the effective date of registration, a foreign rights owner would, in YouTube's estimation, be barred from effective relief.

### B.    Berne Convention and the Complexities of U.S. Registration

In 1886, in an effort to recognize copyright protection beyond their national borders, a coalition of nations joined together to form the Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention" or "Berne"). *See* 4 NIMMER ON COPYRIGHT § 17.01[B] (2007). Over the next century, the coalition of Berne member nations grew to 77. *See id.*

One notable holdout was the United States, which had long maintained certain formalities, such as copyright registration, considered antithetical to one of the most fundamental tenets of Berne, that "the enjoyment and the exercise of [copyright] shall not be subject to any

formality." Berne Convention Art. 5(2); *see* 3 PATRY ON COPYRIGHT § 6.2 (2007) ("The most recognizable formalities include registration with a government body…").

Copyright registration is an involved, often time-consuming and complex process. *See* James E. Hawes & Bernard C. Dietz, *Preface to* COPYRIGHT REGISTRATION PRACTICE, at v (2d ed. 2008) (a 1,200-page volume devoted to U.S. registration practice and referring, in the Preface, to the area as "deceptively simple," and the process of registration as a "mine field of determinations"); 2 NIMMER ON COPYRIGHT § 7.16[B][1][b][iv], at n.66 (describing the "complex" process for a foreign rights owner to register in the United States, including "consulting an expert on American copyright law" for help in applying the "elaborate rules to the circumstances of his particular case" and noting that "[s]uch a result is ironic, to say the least, in light of the fact that U.S. adherence to Berne was designed to forestall formalistic requirements"); *id.* at n.38-94: ("[A]t stake is not simply registration, but rather the process of filling out a registration form, sending it to Washington, D.C., paying a fee, depositing copies, and awaiting official action. That scenario hardly comports with Berne's anti-formal approach").

Driven by the need to assure protection of the authorship rights of its own citizens abroad, the U.S. finally acceded to the Berne Convention. In 1988, Congress passed the Berne Convention Implementation Act ("BCIA"), to bring U.S. standards into compliance with Berne. The BCIA was ratified by the Senate on October 20, 1988 and became effective March 1, 1989. *See* Berne Convention Implementation Act of 1988, Pub. L. No. 100-568, 102 Stat. 2853 (1988); 7 NIMMER ON COPYRIGHT § 17.01[C][2]. U.S. accession to Berne wrought certain fundamental changes to the Copyright Act. In particular, § 411(a) was amended in 1988 to carve out an exception to registration for qualifying foreign works known as "Berne Convention works":

> *Except for actions for infringement of copyright in Berne Convention works whose country of origin is not the United States*, and subject to the provisions of subsection (b),

no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title.

17 U.S.C. § 411(a) (1988) (emphasis supplied).

### C. TRIPs

Adherence to Berne was only the beginning of significant change to the U.S. Copyright Act, as the United States increasingly recognized the importance of intellectual property protection to world trade.  *See* 4 NIMMER ON COPYRIGHT § 18.05[A][2].  Thereafter, the United States aggressively moved toward internationalization of its copyright law through trade-based initiatives.  Chief among these was the Agreement on Trade-Related Aspects of Intellectual Property Rights ("TRIPs") that was part of the Uruguay Round of multinational trade negotiations under the auspices of the General Agreement on Tariffs and Trade ("GATT").  *See* Statement of Administrative Action, H.R. Rep. 103-316, at 376 (1994) ("the most comprehensive trade agreements in history"); *see also GATT Implementing Legislation: Hearings on S.2467 Before the S. Comm. on Commerce, Science, and Transportation*, 103d Cong., 2d Sess. 34 (1994) (lauding TRIPs' "landmark protection" for intellectual property, the United States' "fastest growing industry").

The TRIPs protocol incorporates the relevant provisions of the Berne Convention  but goes beyond the minimum standards imposed by that treaty.  The Preamble to TRIPs makes it clear that one of its prime objectives is to reduce, if not eliminate, "distortions and impediments to international trade" resulting from anomalies in various member countries' laws.  *See* TRIPs Preamble.  TRIPs also forbids attaching "formalities" such as registration to copyrights by listing those intellectual property rights as to which member nations may impose "reasonable formalities" and deliberately and intentionally excludes copyright from the list.  *See* TRIPs Art.

62(1).  Moreover, TRIPs expressly *mandates* that member nations provide remedies that deter

infringement of all intellectual property rights, including copyrights:

> Members shall ensure that enforcement procedures as specified in this Part are available under their law so as to permit effective action against any act of infringement of intellectual property rights covered by this Agreement, including expeditious remedies to prevent infringements and remedies which constitute a deterrent to further infringements. These procedures shall be applied in such a manner as to avoid the creation of barriers to legitimate trade and to provide for safeguards against their abuse.

TRIPs Art. 41(1).  Among the remedies expressly contemplated by TRIPs are attorneys' fees and

"pre-established damages":

> The judicial authorities shall also have the authority to order the infringer to pay the right holder expenses, which may include appropriate attorney's fees. In appropriate cases, Members may authorize the judicial authorities to order recovery of profits and/or payment of pre-established damages even where the infringer did not knowingly, or with reasonable grounds to know, engage in infringing activity.

TRIPs Art. 45(2).

These basic standards are incorporated into U.S. law.  *See* Uruguay Round Agreements

Act, Pub. L. 103-465 (1994) ("URAA") at §§ 101(a)(1), 101(d)(15) (expressly adopting TRIPs);

§ 101(a)(2) (expressly adopting the Statement of Administrative Action, H.R. Rep. 103-316

(1994), reprinted in 1994 U.S.C.C.A.N. 4040 ("SAA") submitted to and approved by Congress).

TRIPs incorporates the "no formalities" mandate of Berne.  *See* TRIPs Art. 9 ("Members shall

comply with Articles 1 through 21 of the Berne Convention…").  The URAA also provides that

the SAA

> shall be regarded as an authoritative expression by the United Sates concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application.

URAA at § 102(d). The SAA concludes that the U.S. is already a party to Berne, and bound to comply with its provisions, other than those relating to "moral rights," not relevant here. *See* SAA at 255-56. According to the SAA:

> The Agreement on Trade-Related Aspects of Intellectual Property Rights (Agreement on TRIPs) establishes comprehensive standards for the protection of intellectual property and the enforcement of intellectual property rights in WTO member countries. It requires each WTO member country to apply the substantive obligations or [*sic*] the world's most important intellectual property conventions, supplements those conventions with substantial additional protection, and ensures that critical enforcement procedures will be available in each member country to safeguard intellectual property rights. The Agreement requires few changes in U.S. law and regulations and does not affect U.S. law or practice relating to parallel importation of products protected by intellectual property rights.

SAA at 253.

The obligations imposed on the United States by its accession to the treaties and trade agreements discussed herein are far from one-sided; to the contrary, the United States is a direct beneficiary of the heightened protections that they afford its authors. The *quid pro quo*, of course, is that in exchange for securing greater international protection for the rights of American authors, the United States must meet certain minimum standards of protection and enforcement of copyrighted works that are commensurate with the "no-formalities" approach favored in much of the world, and eliminate impediments to meaningful remedies, including remedies to deter infringement. *See* Irwin Karp, *A Future Without Formalities*, 13 CARDOZO ARTS & ENTM'T L.J. 521, 522 (1993); s*ee also* Doris Estelle Long, *The Impact of Foreign Investment on Indigenous Culture: An Intellectual Property Perspective*, 23 N.C.J. INT'L L. & COM. REG. 229, 237 n.18, 256 (1998) (hereafter "Long").

### D. The DMCA Amendments

In 1998, four years after the ratification of TRIPs, Congress made fundamental changes to the registration requirement and in doing so, altered the very framework of the U.S. Copyright

Act.  What was originally expressed in the 1988 Berne amendment to 411(a) as an exception to registration for qualifying "Berne Convention works," *see* Section B *supra*, was jettisoned, and a new definition, "United States works," was adopted.  Even more fundamentally, the registration requirement of § 411(a) was then narrowly recast only to "United States works":

> Subject to the provisions of subsection (b), no action for infringement of the copyright *in any United States work* shall be instituted until registration of the copyright claim has been made in accordance with this title.

17 U.S.C. § 411(a) (1998) (emphasis supplied).  Other works falling outside of this definition, i.e., the Non-U.S. Works and Simultaneous Fixation Works at issue on this Motion, are no longer subject to any registration requirement.

The rationale for these additional amendments was the impact of additional treaty obligations, intended to make U.S. law less "Berne-centric" as the United States entered into more international agreements affecting copyright.  *See* H. Rep. 105-551, at 16 (1998); S. Rep. 105-190, at 27 (1998)**.**  The impact of this change should not be underestimated, particularly in light of the expanding United States adherence to additional multinational agreements affecting copyright:

> Amendments to section 411(a) reframe the registration requirement in the affirmative—essentially the converse of the current section.  In other words, the provision would state affirmatively that "United States works" must be registered before suit, with "United States works" defined as the converse of the current definition of works whose country of origin is not the United States. Similar to the changes in section 104, this section could be easily updated each time the United States joins another treaty, without the need to change several interrelated provisions of the Act.

*See* Committee on the Judiciary, *Section-by-Section Analysis of H.R. 2281 as Passed by the United States House of Representatives on August 4, 1998*, at 3-4 (Sept. 1998) ("Section by Section Analysis").

Thus, the requirement of registration applies only to "United States works" under the U.S. Copyright Act as a result of amendments intended to take into account U.S. adherence to its obligations under various treaties and trade agreements, including TRIPs. This is confirmed by the other related changes wrought by the DMCA, which include adding a definition of "treaty party" as "a country or intergovernmental organization other than the United States that is a party to an international agreement" as well as a definition of "international agreement" to include, *inter alia*, "the WTO Agreement" as well as "any other copyright treaty to which the United States is a party." *See* 17 U.S.C. § 101; *see also* Section by Section Analysis at 3-4 ("If we join any future treaties, they can simply be added to the list of "international agreements" without any detailed amendments repeating the criteria for eligibility").

## ARGUMENT

### The Scope of, and Standard on, YouTube's Motion

YouTube styles its Motion as one for judgment on the pleadings, or to strike Class Plaintiffs' statutory damage claims and plea for punitive damages with respect to unregistered Non-U.S. Works. (YouTube's Motion ignores Simultaneous Fixation Works altogether and refers to Non-U.S. Works as "foreign works," *see* Motion at 3). The parties agree that, if these unregistered "foreign" works *are* eligible for statutory damages under U.S. law, then the Court need not reach the punitive damages question. *See* Motion at 3; Feb. 27, 2009 Pre-Motion Conference Transcript at 8:20-24 ("2/27/09 Tr.").[2]

---

[2] At the Court's direction, punitive damages claims for pre-1972 sound recordings are not at issue on this Motion, nor is the availability of punitive damages for foreign law infringement claims, although YouTube cannot resist arguing about them. *Compare* Motion at 1 n.2 *with* 2/27/09 Tr. at 12:15-25.

The controlling standard for a judgment on the pleadings is whether *any* set of facts would entitle plaintiffs to the relief sought. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 522 (2d Cir. 2006). Because there is undeniable statutory authority for qualifying Class Plaintiffs to seek Section 504-05 Remedies under the provisions discussed below, and a sound basis for permitting punitive damages to such rights owners should statutory damages be unavailable to them in the circumstances addressed here, YouTube's Motion should be denied.

YouTube also moves to strike Class Plaintiffs' claims under Federal Rule of Civil Procedure 12(f). Rule 12(f), which permits a court to strike from a pleading material that is "redundant, immaterial, impertinent, or scandalous," Fed. R. Civ. P. 12(f), is "neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint." Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1380 (2009) ("Wright & Miller"). Even assuming YouTube's motion was properly and timely brought, the standard on a motion to strike is even *more* stringent than on a motion for judgment on the pleadings. *See Yankees Entm't & Sports Network, LLC v. Cablevision Sys. Corp.*, 224 F. Supp. 2d 657, 676-77 (S.D.N.Y. 2002) (standard on motion to strike is whether "the disputed matter is irrelevant under any state of facts which could be proved in support of the claims being advanced"); Wright & Miller, at § 1380 ("Both because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic, numerous judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted"). Since YouTube cannot meet even the more lenient standard for judgment on the pleadings, this motion too should be denied.

# I.    Statutory Remedies Are Available to Owners of Unregistered Non-U.S. Works

YouTube claims that the U.S. Copyright Act requires owners of Non-U.S. Works to register in order to enjoy the Section 504-05 Remedies.  Yet, as explained above, that requirement can only be read as a condition to those works that are subject to the requirement of registration in the first instance.  Sections 504-05, which provide for statutory damages and attorneys' fees as remedies, contain no such condition of registration.  And, unless such a condition appears elsewhere in the Act by reason of the preamble in both sections "except as otherwise provided by this title," none should be read into §§ 504 and 505.

### A.    Section 411(b) Permits the Recovery of Statutory Damages and Attorneys' Fees for Unregistered Works.

Section 411(a) does contain a registration requirement, but, as YouTube concedes, that section was amended in 1988, as part of the United States accession to the Berne Convention, and again in 1998, to eliminate any registration requirement for what are now defined as Non-U.S. Works   *See* Motion at 5; *see also supra* at 10, 14.

Since no registration is required under § 411(a) for Non-U.S. Works, none is required under § 411(b).  Section 411(b) makes clear that the entire sweep of civil statutory remedies, including statutory damages and prevailing party attorney's fees, is available in these circumstances.  The pertinent statutory language in § 411(b) (recently recodified without relevant substantive change as § 411(c)) provides:

> In the case of a work consisting of sounds, images, or both, the first fixation of which is made simultaneously with its transmission, the copyright owner may… institute an action for infringement under section 501, fully subject to the remedies provided by sections 502 through 505 and section 510, if … the copyright owner… makes registration for the work, *if required by subsection (a)*, within three months after its first transmission.

17 U.S.C. § 411(c) (2009) (emphasis supplied).  The accompanying legislative history is unambiguous in respect to this change:

> In accordance with the committee's conclusion that registration as a condition of copyright enforcement is incompatible with Berne standards, the new section 411(b) omits this registration requirement.

S. Rep. 100-352, at 30-31.  This provision has direct application to rights owners of Simultaneous Fixation Works, such as the Premier League and FFT, whose copyrighted works consist of broadcasts of live sporting events which, by their nature, can only be first "fixed" for copyright purposes at the time of initial transmission.  *See* Class Pls.' Compl. at ¶¶ 15, 32 (pleading applicability of § 411(b)).

YouTube's reliance on legislative history accompanying the original, pre-Berne enactment of the Copyright Act — suggesting that the registration requirement is absolute, *see* Motion at 4 — is misplaced.  (It also fails to take account of a well-established exception to registration that existed even on January 1, 1978 (and still has applicability to American authors under both §§ 411 and 412).)

It is impossible to read § 411—which YouTube claims rules out Class Plaintiffs' bid for statutory damages, *see* Motion at 3—without paying heed to § 411(b), or the amendments wrought by U.S. accession to the Berne Convention in 1989 (highlighted above), including the accompanying legislative history (which supersedes that cited by YouTube), all of which make it plain that the full sweep of statutory remedies is available to any party that qualifies under § 411(b).  *See* 2 NIMMER ON COPYRIGHT § 7.16[B][3].

YouTube can only reach its conclusion by reading § 411(b) out of the statute completely, since, for the purposes of its Motion, it assumes (as it must), that the works at issue are qualifying non-"United States works" within the meaning of the Copyright Act.  *See* Motion at 3 n.2.  YouTube's Motion even fails to make mention of § 411(b) (or for that matter, § 411(c), as

recodified).[3]  One case cited in YouTube's brief even recognizes the provision directly, but YouTube ignores that as well. *See Rudnicki v. WPNA 1490 AM*, 2006 U.S. Dist. LEXIS 1238, at *6 n.4 (N.D. Ill. Jan. 4, 2006) (noting that "[t]he registration requirement of *section 411(b)(2)* does not apply because that subsection conditions registration on *section 411(a)*, which does not require registration for foreign works") (emphasis in original), cited in Motion at 7 n.6.  Given Class Plaintiffs' repeated reference to this provision in their Second Amended Complaint, *see* Class Pls.' Second Am. Compl. ¶¶ 15 , 32, in pre-motion letters to the Court, *see* Letters from Louis M. Solomon to the Honorable Louis L. Stanton at 2 (Jan. 21, 2009, Jan. 27, 2009), and at the February 27, 2009 pre-motion conference, *see* 2/27/09 Tr. at 10:24-11:6, YouTube evidently has no real answer to this.

YouTube's Motion should be denied simply on the basis that, since § 411(a) does not require the registration of Non-U.S. Works, § 411(b) permits the recovery of statutory damages and attorneys' fees for those plaintiffs, such as the Premier League and FFT, who assert Simultaneous Fixation Works in this case, without the need for any registration.

**B.      No "Hidden Trap" Should Be Read Into U.S. Law Conditioning Statutory Remedies on Registration; the U.S. Copyright Act Imposes Registration Only on "United States Works"**

Since registration is a requirement applicable only under § 411(a) and as such only in the case of "United States works,"  section 412, the other related provision, cannot be read to make

---

[3] The regulations governing the advance notices under this provision continue to refer to § 411(b). *See* 37 C.F.R. § 201.22.  Although not necessary to defeat YouTube's Motion, Class Plaintiffs are prepared to make an offer of proof that they have complied with the advance notice requirement of § 411(b), should the Court decide that is appropriate.

registration a prerequisite, certainly not to the very types of works that are explicitly no longer subject to any such requirement under the Act (*i.e.,* Non-U.S. Works).[4]

### (1)    The Requirement of Registration Applies Only to United States Works

YouTube's argument, that U.S. copyright law makes no distinction between "domestic" and "foreign" works in connection with registration, *see* Motion at 4 n.3, is plainly wrong. *See* 17 U.S.C. § 411(a).

YouTube also argues that references to registration is other parts of the Act are somehow informative. They are not. Registration is treated as permissive, not mandatory, under the sections cited by YouTube. *See*, *e.g.*, 17 U.S.C. § 408(a) (providing that "the owner of copyright or of any exclusive right in the work ***may*** obtain registration of the copyright claim"). Section 411(a) is the only one of these sections that imposes a *requirement* of registration, and that requirement is not applicable to Non-U.S. Works. (We concede, however, that there are benefits to registering under these sections, even for owners of Non-U.S. Works who are not required to do so. For example, the registration certificate affords certain presumptions, and constitutes prima facie evidence of the validity of the copyright and of the facts stated in the certificate. *See* 17 U.S.C. § 410(c). That is irrelevant to the main issue presented on the Motion.)

YouTube asserts that Section 412 requires registration prior to commencement of the infringing activity or the Section 504-05 Remedies are forever abandoned. This simply misreads Section 412. That section's references to "the effective date of [] registration" and to "such registration" refer to instances where registration is previously called for, *i.e.*, in the companion Section 411(a). Section 412 does not itself contain any requirement of registration. That

---

[4] The heading of § 412, "Registration as prerequisite to certain remedies for infringement," does not alter this conclusion; "[h]eadings are not part of the statute itself." *See United States v. Fields*, 783 F.2d 1382, 1384 n.1 (9th Cir. 1986).

requirement can be drawn only from a provision of the Act that does make registration mandatory, *i.e.*, § 411(a), which as we saw, applies only in the case of "United States works."

Reading §§ 411 and 412 together in this fashion is the only plausible reading. It only makes sense to read these two sections in tandem: Section 411(a) governs the institution of actions for infringement, and its registration requirement is limited entirely to "United States works;" Section 412, which addresses certain remedies in such infringement action begins with the preface "In any action under this Title…," *i.e.*, an action instituted under § 411(a). *See* Shira Perlmutter, *Freeing Copyright from Formalities*, 13 CARDOZO ARTS & ENTM'T L.J. 565, 574-75 (1994) (hereafter "Perlmutter") (describing that, prior to the DMCA amendments discussed below, the imposition of a registration requirement for remedies results from reading the two sections in tandem).

Although YouTube claims that "every other court that has addressed this issue" has concluded that § 412 operates as a bar to statutory damages for unregistered "foreign" works, *see* Motion at 7, in fact none of the cases it cites speak to the issues now before this Court and in any event do not bind this Court. In *Master Sound*—the only case YouTube cites from within this Circuit—the district court granted defendant's motion dismissing a claim for statutory damages and attorneys' fees where "plaintiff ha[d] not responded to this argument." *Master Sound Int'l, Inc. v. Polygram Latino* U.S., 1999 U.S. Dist. LEXIS 6287, at *7 (S.D.N.Y. May 3, 1999). *Edmark* involved infringement of a registered work and did not involve statutory damages at all. *See Edmark Indus. SDN. BHD. v. South Asia Int'l (H.K.) Ltd.*, 89 F. Supp. 2d 840 (E.D. Tex. 2000). In *Rudnicki*, the court determined that the plaintiff's registrations did not comply with pertinent regulations, underscoring the formalistic aspects of this process. *See Rudnicki v. WPNA 1490 AM*, 580 F. Supp. 2d 690 (N.D. Ill. 2008). The court did not address the issues here

and indeed, as discussed in Argument Point I.A, *supra*, in an earlier opinion the same court expressly recognized that a party relying on § 411(b) is entitled to statutory damages and attorneys' fees if no registration is required under § 411(a). *See Rudnicki v. WPNA 1490 AM*, 2006 U.S. Dist. LEXIS 1238, at *7 (N.D. Ill. Jan. 4, 2006).

In *Peliculas,* the films at issue had lost copyright protection due to failure to comply with U.S. formalities, but were "restored" to U.S. copyright protection as a result of TRIPs. *See Peliculas y Videos Internacionales S.A. de C.V. v. Harriscope of L.A., Inc.*, 302 F. Supp. 2d 1131, 1134 (C.D. Cal. 2004). However, because the defendant had engaged in the infringing acts prior to such "restoration" it was deemed a "reliance party" within the meaning of §104A(d), and was held not liable for statutory damages or attorneys' fees by the terms of that provision. *See id.* at 1136. The court in *Peliculas* also held that a small category of the films were only infringed before the date of the copyright registrations in issue; the court did not address the issues presented here. *See id.* at 1138. Finally, *Givenchy* addressed whether continuing acts of importation after registration are separate torts for the purposes of determining when infringing activity commenced. *See Parfums Givenchy, Inc. v. C&C Beauty Sales, Inc.*, 832 F. Supp. 1378, 1393-94 (C.D. Cal. 1993). The footnote in *Givenchy* on which YouTube relies depends on the legislative history to the original enactment of the 1976 Copyright Act, even before the United States became a member of Berne. *See id.* at 1393 n.13.

### (2) Creating a Registration Requirement for Non-U.S. Works Offends U.S. Obligations under International Law as Adopted by the U.S.

YouTube's reading of the Act would, at a minimum, impose a registration requirement on Non-U.S. Works that are otherwise free of any registration requirement under the U.S. Copyright Act. (In fact, it would do more than that; it would emasculate any right in an owner of Non-U.S. Works to obtain Section 504-05 Remedies, since as a practical matter an owner of such

Works will not register in time.)  Such a "backdoor" registration requirement as a condition to essential remedies, such as statutory damages and attorneys' fees, would amount to a "trap" for the owners of non-United States works that is offensive to the most basic obligations of U.S. law, both domestically and internationally.  Although there are suggestions in the legislative history at the time the Act was first amended to comply with Berne, in 1988, that "foreign" authors must still register to obtain statutory damages, *see* House Explanatory Statement cited in Motion at 6, Professor Nimmer, writing at the time, referred to this as a "hidden trap."  *See* David Nimmer, *The Impact of Berne on United States Copyright Law,* 8 CARDOZO ARTS & ENTM'T L.J. 27, 35 (1989).  Later statutory amendments, and international obligations imposed on the U.S. under treaties and trade agreements, change this analysis.

Statutory damages are often the only form of monetary relief available to many copyright holders in an infringement action.[5]  The deprivation of important rights based on non-compliance with a formality – a formality that as a practical matter cannot be complied with – is offensive to our most fundamental notions of jurisprudence.  *See Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (court filing fee held unconstitutional as applied "when it operate[d] to deprive an individual of a protected right").  A statute should not be interpreted to create a right without a remedy.  *See, e.g., Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 239 (1969) ("it is… well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done").  YouTube's argument—that registration is a prerequisite to statutory remedies

---

[5] *See Van Der Zee v. Greenidge*, 2006 U.S. Dist. LEXIS 400, at *3 (S.D.N.Y. Jan. 6, 2006) ("An award of statutory damages is particularly appropriate where actual damages are difficult to prove").

where registration has been jettisoned altogether in the case of non-United States works—asks the Court to do exactly that.

This concern becomes even more compelling in light of the various international agreements to which the U.S. is a party, where the interests of foreign citizens are at stake.

**(3)     Any "Rights/Remedies" Distinction Is Illusory**

It is not sufficient to say that the Berne Convention, and other treaties, conventions, and trade agreements affecting intellectual property to which the United States is a party merely require the unimpeded exercise of rights, but not "remedies." *See* Motion at 5-6. The distinction between rights and remedies is disfavored in copyright jurisprudence and becomes, in cases like the present one, "metaphysical." *See* S. Rep. 100-352, at 16 ("Under current law, the author of an unregistered work has, if anything, a right without a remedy, a right that 'exists' but that he is unable to fully 'enjoy or exercise'). Addressing registration as an impediment to suit in 1988, Senator Patrick Leahy, sponsor of the Senate bill on Berne implementation, observed:

> [I]n our legal tradition, which disfavors the creation of rights without remedies, it is more difficult to argue that a hurdle such as registration, which bars the courthouse door to any enforcement of an author's rights, is not a formality inconsistent with Berne standards.

*Id.* at 16-17 (statement of Sen. Leahy). To the extent such a distinction was credited when Berne was first enacted, it is no longer sound, given the increasing internationalization of U.S. copyright law. *See* 4 NIMMER ON COPYRIGHT § 18.05[A][2] (summarizing movement of U.S. law beyond initial Berne adherence); *see also* Perlmutter at 575 (any restriction on remedies under § 412 which operates to prevent the effective enforcement of rights is an offensive formality, and "a distinction between rights and remedies in this respect is elusive").

**(4)     A Registration Requirement for Remedies Offends U.S. International Obligations Because It Creates a "Hidden Trap"**

Even more offensive, the "trap" of conditioning important remedies on an internationally prohibited formality is well-hidden from the "foreign" authors whose interests are supposed to be protected.  While taking credit for eliminating formalities from its copyright scheme, the U.S. has effectively concealed the real danger of failing to comply with such a formality from those persons least likely to have any familiarity with it.  *Compare* S. Rep. 100-352, at 11 (U.S. now in conformity with Berne, which rejects "idea that the government of a State adhering to the Berne Convention may condition effective protection for a work originating in another Berne member State on the satisfaction of government-imposed formal requirements") *with* Perlmutter at 573 ("No incentive to registration can have the desired effect on those who are ignorant of its existence or are unable to comply"); see the accompanying May 7, 2009 Declaration of Andrew Shaw (The U.K. music licensing society, PRS for Music, representing some 51,000 songwriters and 8,000 music publishers, regards formalities such as registration as a condition to effective relief as contrary to international norms, creating unnecessary hurdles to the exercise of rights and burdens on commercial transactions with the U.S.).

The effect of these provisions, according to YouTube, is to deny statutory damages and attorneys' fees to any copyright claimant whose work is infringed before the effective date of registration (subject to a limited three month "grace period" for published works). As a practical matter, if read to apply to Non-U.S. Works, this would deny effective monetary relief to foreign copyright owners.  Thus, a foreign copyright owner, who has no reason to know of any requirement for registration as a condition to important remedies, will never likely seek to register its works to preserve such rights; once the work has been infringed, or very shortly thereafter, it will have lost any ability to obtain these remedies.  This result hinges on the

existence of a formality that no foreign copyright owner could ever comply with, since the infringing acts, by definition, would occur before registration. This is more than an impediment to the enjoyment and exercise of meaningful rights and remedies under the Act; it is an absolute bar to them. Under the treaties and trade agreement obligations to which the U.S. is bound, and which necessarily inform any reading of the Copyright Act and its amendments, such rights owners are entitled to exercise their rights and seek meaningful remedies, including deterrence remedies, without being subject to an impediment such as a registration formality.

The issue is not whether foreign authors are entitled to "better" treatment than U.S. authors, but instead, whether U.S. law conforms to international norms that the U.S. voluntarily embraced and from which it significantly benefits. *See* Irwin Karp, *A Future Without Formalities*, 13 CARDOZO ARTS & ENTM'T L.J. 521, 522 (1993); *see also* SAA at 253 ("If every country applied America's unreasonable standard, U.S. authors would have to register in about seventy different languages using seventy different foreign attorneys"). The United States enjoys benefits from its compliance with international norms by gaining stronger protection for U.S. authors abroad, and has advocated more effective protection in other countries for the interests of American authors. *See* Long at 237 n.18, 256 ("TRIPS not only relies upon the long-established protection norms of the Berne and Paris Conventions, it fills some important gaps in protection under these treaties... In effect, the governments of [industrialized] countries, particularly that of the United States, have pushed strongly in the Uruguay Round for stricter and more uniform norms regarding the protection of intellectual property rights"). Thus, other regimes that provide for statutory or enhanced damages do not condition them on registration. *See*, *e.g.*, App. Ex. 1,[6] Copyright Act of Canada §§ 38.1, 54-56 (permissive registration no

---

[6] References to App. Ex. __ are to the Appendix accompanying this memorandum of law.

condition to remedies, which include statutory damages and punitive damages); App. Ex. 2, John S. McKeown, FOX ON CANADIAN LAW OF COPYRIGHT AND INDUSTRIAL DESIGNS 661 (3d ed. 2000) (registration not required in Canada for statutory damages); App. Ex. 3, Copyrights, Designs, and Patents Act of 1998 §§ 96, 97 (2009) (enhanced damages available under U.K. copyright law not conditioned on registration); App. Ex. 4, LADDIE, PRESCOTT & VITORIA: THE MODERN LAW OF COPYRIGHT AND DESIGNS § 1.2 (3d ed. 2000) ("Nor does the law require registration of the right…").

### (5) The DMCA Amendments Render the U.S. Act Consistent with Treaty and Trade Agreement Obligations

The changes wrought by the DMCA amendment to the registration requirement—limiting that requirement to "United States works"—take on additional significance in view of the prohibition against conditioning important rights and remedies on formalities. That amendment was aimed at changing the Act, not only with the intention of limiting the registration requirement, but to ensure that the Act would be read in conformity with a continuing series of "international agreements," TRIPs among them, by adding the definitions of "treaty party" and "international agreement" (which expressly includes the WTO Agreement implementing TRIPs), "without the need to change several interrelated provisions of the Act." Section by Section Analysis, at 3-4.

Although § 412 was not expressly amended to make it clear that it only applied to United States works, no other reading makes sense of the language of Section 412 itself, for the Act as a whole to make sense, and to avoid putting the U.S. in violation of its international treaty and agreement obligations. *See, e.g.,* Norman J. Singer, 1A SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 22:35 (6th ed. 2008) ("The general rule of statutory interpretation that a provision in an act to be read in its context, is applicable to the interpretation of

amendatory acts… .The original section as amended and the unaltered sections of the act, code, or compilation of which it is a part, relating to the same subject matter, are to be read together."); *Weinberger v. Rossi,* 456 U.S. 25, 32, aff'd without op., 221 U.S. App. D.C. 511 (1982) ("It has been a maxim of statutory construction since the decision in *Murray v. The Charming Betsy*, that an act of congress ought never to be construed to violate the law of nations, if any other possible construction remains. . .") (citations omitted).

Courts in this country have long sought to avoid such confrontations in the interests of comity, where a reading of the Copyright Act appears to be at odds with the interests of foreign authors. Thus, in *Eisen, Durwood, & Co. v. Tolkien*, for example, the court held that U.S. copyright notice formalities should not be read to impose an obligation on foreign authors where the result might have adverse effects on the enforcement of U.S. rights in other countries:

> Imposing the draconian sanction of forfeiture of the copyright for the often unintentional infraction would be certain to cause resentment abroad with adverse effects on implementation of U.S. intellectual property rights in other countries.

794 F. Supp. 85, 87 (S.D.N.Y. 1992), aff'd without op., 990 F.2d 623 (2d Cir. 1993). The court in *Tolkien* recognized that "[s]imilar problems arose when the Berne Copyright Convention was more recently adopted by the United States, necessitating enactment of the Berne Convention Implementation Act, permitting foreign authors to obtain copyright in the United States without registration." *Id.* (citation omitted).

United States courts are particularly mindful of the consequences of denying foreign copyrights holders an effective forum even where no direct U.S. interest is at stake. *See London Film Prods., Ltd. v. Intercont'l Comm'ns, Inc.*, 580 F. Supp. 47 (S.D.N.Y. 1984) (exercising jurisdiction over copyright claim involving foreign works given need, under principles of comity, for the U.S. to provide meaningful opportunities for enforcement of rights of foreign authors). These principles are certainly not unique to the copyright law, but reflect an even deeper

recognition that a U.S. statute should not be construed to offend the interests of other nations, when "any other possible construction remains." *See Weinberger*, 456 U.S. at 31.

The U.S. Copyright Act should not now be construed to deny effective remedies to foreign authors, based on a construction that purports to give effect to a registration requirement that has long been recognized to offend international copyright principles, particularly where more recent amendments to that statute have unambiguously limited registration to so-called "United States works" and not the non-U. S. Works at issue on this Motion.

## II. If Statutory Damages Are Unavailable to Owners of Unregistered Non-U.S. Works, They Are Entitled to Seek Punitive Damages under the U.S. Copyright Act

YouTube also contends that the owners of Non-U.S. Works should be barred from seeking punitive damages if statutory damages are unavailable to them, based on this Court's Viacom Ruling.[7] While respectfully reserving their rights, the Class Plaintiffs do not seek to revisit the Viacom Ruling as part of this Motion. YouTube, however, reads the Viacom Ruling far too broadly. The Viacom Ruling did not address the availability of punitive damages for infringement claims involving unregistered Non-U.S. Works, let alone in light of the various multi-national treaties, conventions and trade agreements to which the United States is a party.

The notion that the Viacom Ruling forecloses an award of punitive damages in ***any*** circumstance under the Copyright Act grossly oversimplifies the law in several respects: first,

---

[7] YouTube implies that the Class Plaintiffs only asserted a punitive damages claim after the Viacom Ruling. *See* Motion at 1. However, punitive damages claims were included in the Class Plaintiffs' initial Complaint, filed on May 4, 2007, and again in the First Amended Complaint, filed on November 7, 2007, and YouTube never moved against those claims. *See* Class Action Compl., No 07-CV-3582, Docket No. 1, at 36; Amended Class Action Compl., No 07-CV-3582, Docket No. 58, at ¶ 148. When it did make a motion with respect to Viacom's punitive damages claim almost a year later, YouTube acknowledged that Class Plaintiffs' punitive damages claim "undeniably raises distinct legal issues from those presented by [Viacom.]" *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to File First Amended Complaint, No. 07-CV-2103, Docket No. 81, at 4 n.3 (Feb. 8, 2008).

there is a permissible "punitive" component to statutory damage and actual damage/profit awards under the statute that the Viacom Ruling could not be meant to foreclose. The Copyright Act entitles a prevailing plaintiff to elect either actual damages and non-duplicative profits, or statutory damages. 17 U.S.C. §§ 504(b), (c). One of the primary purposes of statutory damages under the Act has long been the deterrence of future infringement. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952) ("The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct"). Google's copyright counsel acknowledges as much:

> [W]hile certainly serving to provide some compensation for defendant's infringement, statutory damages also to [*sic*] serve a deterrent purpose, discouraging wrongful conduct by imposing a high enough penalty so that defendants will realize that it is less expensive to comply with the law than to violate it.

6 PATRY ON COPYRIGHT § 22:174.

The statutory damage scheme set forth in the 1976 Copyright Act contains statutory minimums and maximums, which have increased by amendment to ensure adequate deterrence. *See* S. Rep. 100-352, at 31; 4 NIMMER ON COPYRIGHT § 14.04 (2007) (noting that increases in statutory awards necessary to "restor[e] the Act's deterrent effect against infringement"). The statute thus provides that the amount of statutory damages may be increased, to discourage wrongful conduct.[8]

Similarly, awards of actual damages and profits under the U.S. Copyright Act are meant not just to compensate, but to deter. *See Hamil Am., Inc. v. GFI*, 193 F.3d 92, 106-07 (2d Cir.

---

[8] Courts in this Circuit often award enhanced statutory damages in appropriate cases to punish willful conduct and deter future infringement. *See*, *e.g.*, *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 113-14 (2d Cir. 2001) ("[S]tatutory damages are not meant to be merely compensatory or restitutionary. The statutory award is also meant 'to discourage wrongful conduct.' That is why the statute permits consideration of $80,000 in additional damages where an infringement is willful.") (citation omitted).

1999) (quoting H.R. Rep. 94-1476, at 161). The Second Circuit has also awarded treble damages against willful infringers under both the current Act and its predecessor. *See, e.g.*, *Lawton v. Melville Corp.* 1997 U.S. Dist. LEXIS 15228 (2d Cir. 1997) (affirming treble damages award for willful infringement); *Am. Metro. Enters. of New York, Inc. v. Warner Bros. Records, Inc.*, 389 F.2d 903 (2d Cir. 1968) (noting that "the discouraging of willful violations of the Copyright Act can be sufficiently handled through the trial court's use of its power to grant treble damages…").

The Viacom Ruling could not be meant to foreclose any plaintiff, foreign or domestic, from seeking monetary relief under the Copyright Act that includes well-established, and entirely permissible, punitive components. To the extent YouTube now claims otherwise on this Motion, Class Plaintiffs respectfully request that this Court reject any such interpretation. Further, to the extent that a claim does not arise under the U.S. Copyright Act, punitive damages may be permitted, and YouTube's Motion does not reach those.[9]

As noted in Argument Point I.B(2) above, many rights owners would have a difficult—if not impossible—time obtaining any effective monetary relief if they are foreclosed from recovering statutory damages or attorneys' fees. If, at the same time, such rights holders are denied the opportunity to seek punitive damages in instances of willful infringement, they may be denied any effective monetary relief, a outcome which collides with the international obligations to which the U.S. has bound itself. According to YouTube, this result is mandated by a formality—registration—which is generally regarded as offensive to international copyright principles, and under the U.S. Act itself, is not even applicable to the categories of works in

---

[9] Claims involving pre-1972 sound recordings are not claims "under" the federal Copyright Act, but instead arise under state law. *See Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 477, 480 (6th Cir. 2007) (approving punitive damages under New York law for willful infringement of pre-1972 sound recording). Class Plaintiffs reserve their rights respecting such claims, which are not now before the Court on YouTube's Motion. *See* note 2 *supra*.

question, *see* Argument Point I.B(5) *supra*. However, even if the Court concluded that such a formality was a condition to the recovery of statutory damages and attorney's fees for such Non-U.S. Works, that would not foreclose this Court from permitting the owners of such works from seeking punitive damages in these circumstances.

The Viacom Ruling certainly never purported to address these issues, or the international implications of such a holding. *See London Film Prods., Ltd.*, 580 F. Supp. at 49 (noting danger that judicial imposition upon rights of foreign owners could create "an unseemly conflict with the judgment of another country"); S. Rep. 100-352, at 17 (remarking that the creation of impediments to the exercise of rights by foreign authors could backfire by leading other countries to adopt stratagems that "frustrate copyright protection for works created by American authors" and thereby "undermine the advantages for enhanced trade in copyrighted works that would otherwise flow from adherence to Berne"). Indeed, the Court's ruling specifically recognized that it addressed the situation where a plaintiffs "have the full array of remedies, (including statutory willfulness remedies) available to them, as they claim to have timely registered the infringed works." *See Viacom*, 540 F. Supp. 2d at 464.

Avoiding such a conflict gives the Court ample justification for concluding that a punitive damages remedy should not foreclosed to these rights holders. YouTube's contention, that "the availability of any other form of damages is irrelevant," *see* Motion at 8, bypasses these international considerations altogether, including the obligation to provide "foreign" rights holders with remedies to deter infringement. If the availability of such remedies hinges on a registration formality, the U.S. is in violation of its international obligations.

YouTube also claims that a punitive damages entitlement, even in these limited circumstances, would undermine the policy incentives to register which are based on having a

public record of copyright claims.  However, this argument had already been rejected by Congress in 1988 when the Berne amendments permitted the owners of Berne Convention works owners to sue for infringement without registering.  Congress at that time refused to justify an unqualified registration requirement as necessary to maintain the record keeping function of the U.S. Copyright Office.  *See* S. Rep. 100-352, at 18-19.  Moreover, the notion that "foreign" rights holders who do not register are being treated differently (and better) than U.S. authors is hardly at odds with the U.S. copyright scheme.  Since the 1988 Berne amendments, the U.S. has had to make just such distinctions to meet its obligations under prevailing international standards.  *Compare* Motion at 9-10 *with* Argument Point I.B(4)-(5), *supra*.

## CONCLUSION

For the foregoing reasons, YouTube's Motion should be denied in all respects.


Dated: May 8, 2009
New York, NY

<div style="margin-left:40%">

s/ Louis M. Solomon
Louis M. Solomon
William M. Hart
Hal S. Shaftel
PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036-8299
Telephone:  (212) 969-3000
Email: lsolomon@proskauer.com

 *- and -*
Max W. Berger
John P. Coffey
John C. Browne
BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 554-1400
Email: mwb@blbglaw.com

</div>

*Attorneys for Lead Plaintiffs, Named Plaintiffs Murbo Music Publishing, Inc., Cherry Lane Music Publishing Company, Inc., Robert Tur d/b/a Los Angeles News Service, X-Ray Dog Music, Inc., Fédération Française de Tennis, The Scottish Premier League Limited, and for the Prospective Class*

Daniel Girard
Aaron Sheanin
Christina Connolly Sharp
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, CA 94108
-and-
Gerald E. Martin
Laurel Johnston
BARRETT JOHNSTON & PARSLEY
217 Second Avenue North
Nashville, TN 37201
*-and-*
Kevin Doherty
BURR & FORMAN
700 Two American Center
3102 West End Avenue
Nashville, TN 37203
*Attorneys for Cal IV Entertainment, LLC*

David S. Stellings
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY 10017-2024
Tel. (212) 355-9500
Fax. (212) 355-9592
*-and-*
James E. Hough
Jacqueline C. Charlesworth
MORRISON & FOERSTER
1290 Avenue of the Americas
New York, New York 10104
Phone (212) 468-8158
Facsimile (212) 468-7900

*Attorneys for the National Music Publishers'
Association, Rodgers & Hammerstein
Organization, Stage Three Music (US), Inc.,
Edward B. Marks Music Company, Freddy
Bienstock Music Company d/b/a Bienstock
Publishing Company, and Alley Music
Corporation.*

Christopher Lovell
Christopher M. McGrath
LOVELL STEWART HALEBIAN LLP
500 Fifth Avenue, 58th Floor
New York, New York 10110
Telephone: (212) 608-1900
Facsimile: (212) 719-4677
*-and-*
Jeffrey L. Graubart
LAW OFFICES OF JEFFREY L.
GRAUBART
350 West Colorado Boulevard, Suite 200
Pasadena, California 91105-1855
Telephone: (626) 304-2800
Facsimile: (626) 304-2807
*-and-*
Steve D'Onofrio
5335 Wisconsin Avenue, N.W. Suite 950
Washington, D.C. 20015
Telephone: (202) 686-2872
Facsimile: (202) 686-2875
*Attorneys for The Music Force Media Group
LLC, The Music Force LLC, and Sin-Drome
Records, Ltd.*