## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

THE FOOTBALL ASSOCIATION PREMIER
LEAGUE LIMITED, BOURNE CO. (together
with its affiliate MURBO MUSIC PUBLISHING,
INC.), CHERRY LANE MUSIC PUBLISHING
COMPANY, INC., CAL IV ENTERTAINMENT
LLC, ROBERT TUR d/b/a LOS ANGELES
NEWS SERVICE, NATIONAL MUSIC
PUBLISHERS ASSOCIATION, THE RODGERS
& HAMMERSTEIN ORGANIZATION, STAGE
THREE MUSIC (US), INC., EDWARD B.
MARKS MUSIC COMPANY, FREDDY
BIENSTOCK MUSIC COMPANY d/b/a
BIENSTOCK PUBLISHING COMPANY,
ALLEY MUSIC CORPORATION, X-RAY DOG
MUSIC, INC., FEDERATION FRANCAISE DE
TENNIS, THE SCOTTISH PREMIER LEAGUE
LIMITED, THE MUSIC FORCE MEDIA
GROUP LLC, THE MUSIC FORCE LLC, and
SINDROME RECORDS, LTD. on behalf of
themselves and all others similarly situated,

                             Plaintiffs,

               v.

YOUTUBE, INC., YOUTUBE LLC, and
GOOGLE INC.,

                           Defendants.

ECF Case

Civil Action No. 07-CV-3582 (LLS)
(Related Case No. 07-CV-2103)

### YOUTUBE'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' PUNITIVE DAMAGES CLAIM

David H. Kramer
Michael H. Rubin
Bart E. Volkmer
WILSON SONSINI GOODRICH & ROSATI PC
650 Page Mill Road
Palo Alto, California 94304
(650) 493-9300

Andrew H. Schapiro
A. John P. Mancini
Matthew D. Ingber
Brian M. Willen
MAYER BROWN LLP
1675 Broadway
New York, NY 10019
(212) 506-2500

*Attorneys for Defendants*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

ARGUMENT .......................................................................................................... 2

I.     PLAINTIFFS ARE NOT ENTITLED TO STATUTORY DAMAGES FOR
UNREGISTERED FOREIGN WORKS............................................................ 2

     A.     The Text And Structure Of The Copyright Act Make Clear That Section
412 Applies To Both U.S. And Foreign Works...................................... 2

     B.     Subsequent Legislative History And Treaties Confirm That Section 412
Applies To U.S. And Foreign Works Alike........................................... 4

          1.     Berne Convention ................................................................... 5

          2.     Agreement On Trade-Related Aspects Of Intellectual Property
Rights (TRIPs) ....................................................................... 7

          3.     The Digital Millennium Copyright Act (DMCA)................... 10

     C.     Plaintiffs' Reliance On The Charming Betsy Canon Is Misplaced .................... 11

     D.     Congress' Decision To Limit Statutory Damages To Registered Works
Does Not Deny Plaintiffs An "Effective Remedy"................................. 12

II.     PLAINTIFFS CANNOT RELY ON SECTION 411(C) ................................. 13

III.     PLAINTIFFS ARE NOT ENTITLED TO SEEK PUNITIVE DAMAGES FOR
WORKS THAT ARE INELIGIBLE FOR STATUTORY DAMAGES ........................ 15

CONCLUSION...................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*Almendarez-Torres v. U.S.*,
    523 U.S. 224 (1998)............................................................................................3

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937, 2009 WL 1361536 (May 18, 2009) .........................................14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................14

*Business Trends Analysts, Inc. v. Freedonia Group, Inc.*,
    887 F.2d 399 (2d Cir. 1989)..............................................................................13

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
    528 F.3d 696 (9th Cir. 2008) .............................................................................12

*Eisen, Durwood & Co., Inc. v. Tolkien*,
    794 F. Supp. 85 (S.D.N.Y. 1992) ................................................................11, 12

*Guaylupo-Moya v. Gonzales*,
    423 F.3d 121 (2d Cir. 2005)..............................................................................11

*ITC Ltd. v. Punchgini, Inc.*,
    482 F.3d 135 (2d Cir. 2007).................................................................................9

*La Resolana Architects, PA v. Clay Realtors Angel Fire*,
    416 F.3d 1195 (10th Cir. 2005) .........................................................................13

*London Films Prods., Ltd. v. Intercontinental Communications, Inc.*,
    580 F. Supp. 47 (S.D.N.Y. 1984) ......................................................................12

*Networks, Inc. v. A10 Networks, Inc.*,
    2008 WL 687114 (W.D. Wash. Mar. 10, 2008) .................................................15

*Porter v. Nussle*,
    534 U.S. 516 (2002)............................................................................................3

*Radzanower v. Touche Ross & Co.*,
    426 U.S. 148 (1976)..........................................................................................11

*Saregama India Ltd. v. Young*,
    2003 WL 25769784 (C.D. Cal. Mar. 11, 2003) .................................................16

*United States v. Yousef*,
    327 F.3d 56 (2d Cir. 2003).................................................................................11

# TABLE OF AUTHORITIES
(continued)

Page

*Woodruff v. Sullivan County Rural Elec. Co-op., Inc.*,
2008 WL 1924119 (M.D. Pa. April 28, 2008) .......................................15

## STATUTES AND LEGISLATIVE HISTORY

37 C.F.R. § 201.22 ................................................................................14

17 U.S.C. § 102(a) (1976) .......................................................................8

17 U.S.C. § 104A(d)(4) .........................................................................10

17 U.S.C. § 410(c) ..................................................................................7

17 U.S.C. § 411(a) ........................................................................ passim

17 U.S.C. § 411(c) .............................................................................13, 14

17 U.S.C. § 412 ............................................................................. passim

17 U.S.C. § 502 .................................................................................8, 12

17 U.S.C. § 504 ...............................................................................2, 8, 12

17 U.S.C. § 505 ......................................................................................2

19 U.S.C. § 3512(a)(1) ............................................................................9

House Joint Explanatory Statement, 134 Cong. Rec. H10097 ...............6

Pub. L. No. 101-650, Title VI, § 606(c)(2) (Dec. 1, 1990) .....................5

Pub. L. No. 109-9, Title I, § 104(c) (Apr. 27, 2005) ..............................5

Pub. L. No. 110-403, Title I, § 101(b)(1) (Oct. 13, 2008) ......................5

Uruguay Round Agreements Act, Pub. L. No. 103-465 (1994) ..........8, 9

H.R. Rep. 94-1476 (Sept. 3, 1976) .....................................................4, 13

S. Rep. 105-190 (May 11, 1998) ...........................................................10

TRIPs Art. 41(1) .....................................................................................8

TRIPs Art. 45(2) .....................................................................................8

TRIPs Art. 62(1) .....................................................................................8

OTHER AUTHORITIES

4 Nimmer On Copyright, § 18.06[A][2] ...........................................................................................7

4 Nimmer On Copyright, § 18.06[B][2] ...........................................................................................8

4 Nimmer On Copyright, § 18.06[C][1] ...........................................................................................8

David Nimmer, *The Impact of Berne on United States Copyright Law*,
    8 Cardozo Arts & Ent. L.J. 27 (1989) ..........................................................................6, 7

Shira Perlmutter, *Freeing Copyright From Formalities*,
    13 Cardozo Arts & Ent. L.J. 565 (1994) ...............................................................................7

Defendants ("YouTube") submit this reply in support of their motion for judgment on the pleadings or, alternatively, to strike the putative Class Plaintiffs' punitive damages claims.

## INTRODUCTION

Plaintiffs' lengthy opposition does nothing to refute what we established in our opening brief: section 412 of the Copyright Act unambiguously provides that statutory damages are available only to registered works; it makes no distinction between U.S. works and foreign works; and the legislative history and case law make clear that it applies to both. Even Plaintiffs are ultimately forced to concede that section 412, as written, applied to non-U.S. works, but they contend that it ceased to do so, "given the increasing internationalization of U.S. copyright law." Class Plaintiffs' Opposition to YouTube's Motion for Judgment on the Pleadings ("Opp.") 24.

Plaintiffs' argument is doubly wrong. First, it incorrectly assumes that the United States has an obligation to allow owners of foreign works to obtain statutory damages regardless of registration. Plaintiffs cite no authority to support their position, which Congress considered and rejected. Second, even if there were tension between section 412 and international copyright principles, the Court would be compelled to follow the former. The latter have no effect on U.S. law unless Congress so provides, but Congress has not amended section 412. To the contrary, in implementing both of the international instruments on which Plaintiffs rely, Congress made clear that it was maintaining the rule that foreign works, like U.S. works, must be registered to be eligible for the extraordinary remedy of statutory damages. That result is entirely appropriate; it preserves an incentive to register, without closing the courthouse door to owners of foreign works or preventing the enforcement of their rights. Plaintiffs' policy disagreement with Congress' choice is no reason for the Court to disregard the result that Congress has prescribed.

Plaintiffs also argue that they are entitled to statutory damages under the limited exception provided in section 411(c) of the Copyright Act for works first fixed at the time they

are transmitted.  But even assuming that section 411(c) allows statutory damages for works that are *never* registered, Plaintiffs have made no valid allegation, much less a showing, that they have complied with that provision's strict procedural requirements.  Indeed, Plaintiffs have yet to identify a single work that they contend is actually subject to the 411(c) exception.

Finally, Plaintiffs claim that even if statutory damages are unavailable for their unregistered foreign works, they should be entitled to seek punitive damages instead.  Here, too, Plaintiffs' position is premised on the fallacy that international law requires that result.  It does not.  Unable to rely on international law, Plaintiffs offer no plausible reason why this Court's unequivocal holding that punitive damages are not a permissible remedy under the Copyright Act should not apply *a fortiori* to the owners of non-U.S. works.

## ARGUMENT

Plaintiffs begin by chiding YouTube for seeking a "blanket, stark, and abstract legal ruling."  Opp. 1.  But the issues presented here—whether the Copyright Act allows the owners of unregistered foreign works to obtain statutory or punitive damages—are purely legal issues properly addressed in a motion to strike or motion for judgment on the pleading.

### I.    PLAINTIFFS ARE NOT ENTITLED TO STATUTORY DAMAGES FOR UNREGISTERED FOREIGN WORKS.

#### A.    The Text And Structure Of The Copyright Act Make Clear That Section 412 Applies To Both U.S. And Foreign Works.

Though their argument is not entirely clear, Plaintiffs appear to suggest that section 412 does not apply to non-U.S. works because such works are not required to be registered in the first place.  Opp. 7-9, 20-22.  That badly misconstrues the text and structure of the Copyright Act.

Plaintiffs point out that statutory damages and attorney's fees are available "[e]xcept as otherwise provided by this title."  Opp. 4, 7, 17 (citing 17 U.S.C. §§ 504-505).  But that language does not help Plaintiffs, because the whole point of section 412 is to provide otherwise.  That is

made plain both by its title ("Registration as a prerequisite to certain remedies for infringement") and its text ("no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for . . .").[1]  Whether section 412 imposes a formal registration "requirement" (Opp. 9) is beside the point; what matters is that it unambiguously makes registration a prerequisite for the recovery of statutory damages.  And, as described in our opening brief (at 3-4), it is equally clear that section 412 applies to both U.S. and foreign works; the text simply makes no exception based on a work's country of origin.

Plaintiffs try to obscure that clarity by conflating section 412 with section 411(a).  They argue that the two provisions should be read as "companions" and thus that 411(a)'s express limitation to U.S. works should be imported into section 412.  Opp. 7-9, 20-22.  Plaintiffs' approach is unfounded.  Sections 411(a) and 412 are related only in the sense that they were enacted at the same time, along with all the other provisions of the 1976 Copyright Act.  Beyond that, they are distinct provisions addressing distinct issues.  Section 411(a) makes registration a prerequisite to bringing an infringement action and expressly applies only to United States works.  Section 412, in contrast, makes registration a prerequisite only to obtaining certain extraordinary remedies (statutory damages and attorney's fees), and it contains no language limiting it to U.S. works.  Neither provision cross-references the other, and there is no indication either in their texts or histories that they were meant to be read together.

Plaintiffs try desperately to invent a connection, claiming that the first clause of section 412 ("In any action under this Title"), is a reference to section 411(a).  Opp. 21.  But the reference to "this Title" is plainly to Title 17, which comprises the entire Copyright Act.  And an

---

[1] Contrary to Plaintiffs' assertion (Opp. 20), statutory titles are not irrelevant, but rather are "tools available for the resolution of a doubt about the meaning of a statute."  *Porter v. Nussle*, 534 U.S. 516, 527-28 (2002) (quoting *Almendarez-Torres v. U.S.*, 523 U.S. 224, 234 (1998)).  Here, of course, there is no doubt about what section 412 says or means, and the title merely reaffirms the obvious.

infringement action brought by the owner of a foreign work is as much an action "under" Title 17 as is one concerning a U.S. work. Both actions are subject to section 412. (Plaintiffs' argument also ignores that a civil infringement action is not brought "under" section 411(a) at all, but instead under section 501.) Contrary to what Plaintiffs say, therefore, the rule that registration is necessary to obtain statutory damages does not result from reading sections 412 and 411(a) "in tandem" (Opp. 21); it results simply from reading section 412.

Plaintiffs cite no authority that supports their strained interpretation of section 412: not one case, not one piece of legislative history, not one authoritative commentary. That is not surprising, because that authority all reaffirms that section 412 bars statutory damages for unregistered foreign works. As described in our opening brief (at 4-6)—and as Plaintiffs themselves concede (Opp. 23)—the legislative history leaves no doubt that section 412 "would be applicable to works of foreign and domestic origin[] alike." H.R. Rep. 94-1476, at 157 (Sept. 3, 1976). So, too, has the case law uniformly concluded that section 412 makes no exception for foreign works. YouTube Br. 6-7. Unable to dispute what these authorities say, Plaintiffs instead draw irrelevant distinctions based on aspects of those cases that have nothing to do with the issue at hand. Opp. 21-22. Those efforts do nothing to diminish that unbroken line of holdings and only highlight the complete lack of support for Plaintiffs' position.

### B. Subsequent Legislative History And Treaties Confirm That Section 412 Applies To U.S. And Foreign Works Alike.

Even Plaintiffs ultimately acknowledge that section 412, as enacted, barred statutory damages for unregistered works, whether foreign or domestic. Opp. 23. They nevertheless contend that even though the text of section 412 has not materially changed since enactment, the meaning somehow has, in light of other "statutory amendments and international obligations

imposed on the U.S. under treaties and trade agreements," (Opp. 23), none of which refer to section 412. Plaintiffs are wrong.

Plaintiffs discuss three such developments: the 1988 Berne Convention; the 1994 Agreement on Trade-Related Aspects of Intellectual Property Rights (TRIPs); and a 1998 "technical amendment" to section 411(a) enacted as part of the DMCA. Before explaining the many problems with Plaintiffs' analysis of these materials, we emphasize a fundamental point that Plaintiffs cannot evade: *section 412 has remained materially unchanged since it was originally enacted in 1976.*[2] That alone makes Plaintiffs' discussion of the subsequent history of the Copyright Act and the international agreements relating to copyright law irrelevant.

But, in any event, that history only provides further support for YouTube's position. Congress had various opportunities to amend section 412 to exclude foreign works, but each time chose not to do so. Not only that, Congress went out of its way to confirm that the provision would continue to apply to both U.S. and foreign works, and it expressly rejected any suggestion that maintaining that requirement would violate any applicable treaty obligation.

### 1. Berne Convention

Plaintiffs begin by discussing the Berne Convention (Opp. 9-11); their argument is premised on the notion that section 412 would impose a formality prohibited by Berne if applied to foreign works. But Congress expressly rejected that idea. As discussed in our opening brief (at 5-6), no one in the congressional debate believed that Berne required the United States to

---

[2] Congress has made certain minor, technical amendments to section 412. *See* Pub. L. No. 101-650, Title VI, § 606(c)(2) (Dec. 1, 1990); Pub. L. No. 109-9, Title I, § 104(c) (Apr. 27, 2005); Pub. L. No. 110-403, Title I, § 101(b)(1) (Oct. 13, 2008). None of those amendments changed anything of substance, and none has any bearing on the issue here. Plaintiffs do not contend otherwise. Opp. 27.

allow foreign works to be eligible for statutory damages without registration.[3]

The primary issue in Congress was whether section 411's requirement of registration as *a precondition for filing an infringement action* was a prohibited formality under Berne. Congress ultimately compromised on the issue, amending section 411(a) to make clear that registration would no longer be a prerequisite to bringing suit with respect to so-called "Berne Convention works." But, while Plaintiffs describe this amendment to section 411(a) as a "fundamental change[] to the Copyright Act" (Opp. 10), it had absolutely no effect on section 412. Indeed, Congress expressly rejected the idea that registration *as a precondition to obtaining statutory damages* was a prohibited formality if applied to foreign works. *See* House Joint Explanatory Statement, contained in 134 Cong. Rec. H10097 (1988). Far from being a "hidden trap" (Opp. 25), therefore, Congress made clear that foreign works would continue to be subject to section 412 and said openly that Berne required no change to that provision.

Plaintiffs offer no authority to support their contrary position, and even the articles they cite directly undercut their argument. Nimmer's piece observes that, under section 412, statutory damages and attorneys' fees "hinge on the formality of registration, which is perfectly compatible with the Berne Convention because they do not interfere with the exercise and enjoyment of a copyright. In other words, it does not contravene the Berne Convention to make remedies dependent upon formalities." David Nimmer, *The Impact of Berne on United States Copyright Law*, 8 Cardozo Arts & Ent. L.J. 27, 30 (1989) ("Impact of Berne"). Professor Perlmutter's article similarly acknowledges that, even after the implementation of Berne, "the limitation of remedies for works not registered prior to infringement remains in place for all

---

[3] That includes Senator Leahy. The floor statement that Plaintiffs cite (Opp. 24) relates to section 411(a)'s requirement of registration as a prerequisite to suing for copyright infringement; it has nothing to do with section 412's distinct requirement of registration to obtain certain extraordinary remedies.

works, *whether from a Berne country or not*." Shira Perlmutter, *Freeing Copyright From Formalities*, 13 Cardozo Arts & Ent. L.J. 565, 570 (1994) (emphasis added); *see also id*. at 575.

Moreover, even Plaintiffs admit that foreign works must be registered to obtain *other* benefits under the Copyright Act, such as the presumption of copyright validity. Opp. 20 (citing 17 U.S.C. § 410(c)). That concession undermines their entire argument, however, as statutory damages and attorney's fees are indistinguishable from those other benefits: all are special privileges that Congress conditioned on registration to preserve the incentive to register. None of them offends Berne, as Nimmer's article itself makes clear:

> Only those who register their works are entitled to statutory damages, attorneys' fees within the discretion of the court, and a prima facie presumption of copyright validity. Therefore, to avail herself of these additional privileges, which go beyond Berne minima, a foreign author must register her copyright.

*Impact of Berne*, 8 Cardozo Art & Ent. L.J. at 36.

### 2. Agreement On Trade-Related Aspects Of Intellectual Property Rights (TRIPs)

Nor have post-Berne developments altered the meaning of section 412. Plaintiffs spend multiple pages describing the TRIPs protocol, which they say bars conditioning statutory damages on registration. Opp. 11-13. Even if that were not a gross mischaracterization of TRIPs (which it is), it would be irrelevant to the interpretation of section 412. TRIPs is not a self-executing treaty and has no effect on U.S. law except insofar as Congress dictates. In implementing that agreement, however, Congress did not alter section 412 in the least.

As an initial matter, TRIPs was "largely harmonious with existing United States law, meaning that Congress needed to make relatively few adjustments to bring our law into harmony with TRIPs." 4 Nimmer On Copyright, § 18.06[A][2]. The 1994 statutory amendments enacted to ensure compliance with TRIPs thus made only four changes to U.S. copyright law, none of

which had any effect on section 412.[4]  That Congress elected not to amend section 412 is

unremarkable, as nothing in TRIPs casts doubt on Congress' conclusion that requiring

registration as a precondition to statutory damages is not a prohibited formality.  Article 45(2)—

the only provision in TRIPs that addresses so-called "pre-established damages"—is entirely

permissive and does not bar signatories from conditioning such remedies on registration:

> The judicial authorities shall also *have the authority* to order the infringer to pay
> the right holder expenses, which *may include* appropriate attorney's fees.  In
> appropriate cases, Members *may authorize* the judicial authorities to order
> recovery of profits and/or payment of pre-established damages even where the
> infringer did not knowingly . . . engage in infringing activity.

TRIPs Art. 45(2) (emphasis added).  Under TRIPs, that is, a country "may authorize recovery of

profits or statutory damages," but is not required to do so.  Nimmer § 18.06[B][2] n.188.[5]

Thus, despite Plaintiffs' unsupported assertion that section 412 "has long been recognized

to offend international copyright principles" (Opp. 29), the United States, by allowing parties to

seek statutory damages at all, goes *beyond* the minimum requirements of TRIPs (and Berne for

that matter).  It would make no sense to conclude that conditioning those extraordinary remedies

on registration would offend TRIPs, where those remedies themselves are not even required.

---

[4] Those amendments were:  (1) eliminating the sunset provision formerly incorporated into the Computer
Software Rental Amendments Act of 1990; (2) providing federal protection for live musical
performances; (3) creating criminal liability for such conduct; and (4) as already required by Berne,
furnishing the mechanism to restore copyright protection for certain works of foreign origin.  *See* Nimmer
§ 18.06[C][1] (describing the Uruguay Round Agreements Act, Pub. L. 103-465 (1994) ("URAA")).

[5] The other two provisions of TRIPs that Plaintiffs cite do not support their position either.  Article 62(1)
simply provides that the "acquisition or maintenance" of a copyright may not be conditioned on
formalities.  TRIPs Art. 62(1).  This concept, which has nothing to do with statutory damages or any other
remedy for infringement, was already incorporated into U.S. law as part of the original 1976 Copyright
Act.  *See* 17 U.S.C. § 102(a) (1976) (copyright protection occurs at the moment a work is "fixed in any
tangible medium").  Plaintiffs also cite Article 41(1) for the general proposition that TRIPs "expressly
mandates that member nations provide remedies that deter infringement."  Opp. 12.  That concept, too, is
well-integrated into U.S. law, which provides copyright plaintiffs, whether registered or not, with the
ability to seek actual damages and profits, as well as injunctive relief.  *See* 17 § U.S.C. 504(b), 502.
Article 41(1) does not prohibit conditioning certain additional remedies on registration.

And Plaintiffs cite nothing that says otherwise. The most they can muster is to point out that

Canada and the U.K. allow statutory damages without prior registration. Opp. 26-27. But

Plaintiffs do not suggest that those countries have done so because they believed themselves

bound by any treaty obligation. Indeed, the commentary on Canadian law cited by Plaintiffs

expressly notes, without comment or condemnation, that U.S. law requires registration as a

precondition for statutory damages. Appendix to Plaintiffs' Br., Ex. 2, p. 661 n. 438. Plaintiffs'

notion that the United States violates international law by doing so is without foundation.

Plaintiffs' argument would fail, however, even if they could establish that section 412 is

inconsistent with TRIPs. Because TRIPs is not a self-executing treaty, its "legal effect in the

United States is governed by implementing legislation." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d

135, 161-62 (2d Cir. 2007) (quoting Pub. L. No. 103-465, 108 Stat. 4809 (1994)); *see also* 19

U.S.C. § 3512(a)(1) ("No provision of any of the Uruguay Round Agreements [including

TRIPs], nor the application of any such provision to any person or circumstance, that is

inconsistent with any law of the United States shall have effect."). In other words, TRIPs could

have no effect on U.S. law, including the requirement imposed by section 412, unless Congress

actually effectuated such a change.

But not only has Congress failed to amend section 412 in response to TRIPs, the

legislation that it did enact after TRIPs confirmed that foreign works would still have to be

registered to be eligible for statutory damages. One provision of the URAA restored copyright

for certain foreign works that had fallen into the public domain. *See* Pub. L. No. 103-465, Title

V, § 514(a). In allowing such copyrights to be reclaimed, however, Congress created an

exception to protect so-called "reliance parties" (those who had previously exploited newly

restored copyrights) from exposure to statutory damages and attorney's fees: "For purposes of

section 412, . . . infringement shall be deemed to have commenced before registration when acts which would have constituted infringement had the restored work been subject to copyright were commenced before the date of restoration." 17 U.S.C. § 104A(d)(4). By deeming infringement to have occurred before registration, this provision forecloses statutory damages (and attorney's fees) for such restored works. And because this exception deals only with foreign works, it would have been entirely unnecessary had Congress thought that section 412 no longer applied to such works at all. If there were any doubt, therefore, this exception makes clear that section 412 continues to preclude statutory damages for unregistered works, foreign and domestic.

### 3. The Digital Millennium Copyright Act (DMCA)

Finally, Plaintiffs point out that section 411(a) was modestly amended in 1998 as part of the DMCA. Opp. 13-15, 27. While Plaintiffs claim that this amendment "altered the very framework of the U.S. Copyright Act" (Opp. 13-14), it did nothing of the sort. The DMCA amendment is, in fact, wholly irrelevant to the issue at hand.

The change that Plaintiffs tout was nothing more than a "technical amendment" to section 411(a). S. Rep. 105-190, at 25-26 (May 11, 1998). That amendment was necessary because when Congress had first amended section 411(a), it exempted from the requirement of registration as a precondition to filing an infringement action works from countries adhering to the Berne Convention. *Id.* at 27. In 1998, Congress decided to broaden that exemption to include "works from members of the two new WIPO Treaties." *Id.* Instead of listing all these treaties by name, Congress simply amended section 411(a) to state that only "United States works" would have to be registered before an infringement action could be instigated. *Id.*

But that amendment has nothing to do with whether any foreign works were exempted from the *separate* mandate imposed by section 412 that works be registered to be eligible for statutory damages. Even Plaintiffs concede that the DMCA did not touch section 412. Opp. 27.

And there is nothing in the Act's text or legislative history that even hints that Congress intended its modest adjustment of section 411(a) to have any effect on section 412. The general principle invoked by Plaintiffs that statutes should be read in context (Opp. 27) is not license to read the technical amendment of one provision as resulting in a fundamental change to a different provision—all without so much as a word about that supposed change from Congress. Cf. *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976) ("It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored."). In short, Plaintiffs ask the Court to conclude that section 412, though not itself amended, nevertheless stopped applying to foreign works merely because Congress tweaked a different part of the statute. That argument refutes itself.

### C. Plaintiffs' Reliance On The *Charming Betsy* Canon Is Misplaced.

Equally misguided is Plaintiffs' invocation of the *Charming Betsy* doctrine. Opp. 28-29. Plaintiffs' argument is premised on the notion that requiring foreign works to be registered to obtain statutory damages violates international law and U.S. treaties. As discussed above, that premise is wrong. But even if the international law question were a debatable one, "the *Charming Betsy* canon comes into play only where Congress' intent is ambiguous." *Guaylupo-Moya v. Gonzales*, 423 F.3d 121, 135 (2d Cir. 2005) (quoting *United States v. Yousef*, 327 F.3d 56, 93 (2d Cir. 2003)). Here, both the text of section 412 and its legislative history unambiguously indicate that the statute applies to both U.S. and foreign works. Because the statute "makes plain Congress' intent," *Charming Betsy* is inapplicable, and the Court must "enforce the intent of Congress irrespective of whether the statute conforms to customary international law." *Id.* at 135-36.[6]

---

[6] Plaintiffs' reliance (at 28) on *Eisen, Durwood & Co., Inc. v. Tolkien*, 794 F. Supp. 85 (S.D.N.Y. 1992), is equally misplaced. That case involved the potential forfeiture of a plaintiff's claim for failure to

### D. Congress' Decision To Limit Statutory Damages To Registered Works Does Not Deny Plaintiffs An "Effective Remedy."

Plaintiffs also assert that insisting on registration as a precondition for statutory damages "is offensive to our most fundamental notions of jurisprudence" because it creates a right without a remedy. Opp. 23-24. That plainly is not so. Plaintiffs are free to seek actual damages and profits, as well as injunctive relief, for the alleged infringement of their unregistered foreign works. 17 U.S.C. §§ 502, 504(b). Not only are those the standard remedies in American law, they are the typical remedies for copyright infringement around the world. It is only the extraordinary remedies of statutory damages and attorneys' fees—which in most countries are not available for copyright infringement at all—that are foreclosed.

Refusing those remedies is not remotely the denial of an "effective forum" or of "meaningful opportunities for enforcement" (Opp. 28). Plaintiffs cite nothing to support their assertion that statutory damages are "often the only form of monetary relief available." Opp. 23.[7] But even if that were true, it would not matter, as Congress has decided that copyright holders must register to obtain that remedy. It did so for a good reason: "by denying an award of statutory damages and attorney's fees where infringement takes place before registration, Congress sought to provide copyright owners with an incentive to register their copyrights promptly." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700 (9th Cir. 2008).

Plaintiffs here are in the same position as any owner of U.S. works who fails to register before an alleged infringement. Yet that hardly invalidates section 412 or allows courts to

---

comply with formalities—a result not mandated by Copyright Act, which made "no provision anywhere for forfeiture of copyrights of aliens because of distribution of their works without a copyright notice." *Id.* at 86. Section 412, in contrast, expressly mandates that a plaintiff loses the opportunity to seek statutory damages by failing to register its works.

[7] *London Films Prods., Ltd. v. Intercontinental Communications, Inc.*, 580 F. Supp. 47 (S.D.N.Y. 1984), is totally off-point. Opp. 28. That case merely holds that a U.S. court can, in some cases, exercise jurisdiction over copyright claims arising under foreign law. It has nothing to do with remedies, much less with the availability of any given form of damages under the U.S. Copyright Act.

override the clear limitations that Congress has imposed. *See, e.g.*, *Business Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 404 (2d Cir. 1989) ("Because BTA did not register the Predicasts study until after the infringement, BTA is not eligible for statutory damages and is limited to actual damages and profits under Section 504(b)."). Equally unsupported is Plaintiffs' suggestion that registration is something "that as a practical matter cannot be complied with." Opp. 23. Nothing in the statute (or otherwise) prevents foreign works from being registered in the United States, and there is no reason why a sophisticated party, such as the English Premier League, could not have done so. Indeed, "registering a copyright is a relatively simple and inexpensive process." *La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1199 (10th Cir. 2005). It involves little more than filling out a short form that is readily available on-line (http://www.copyright.gov/eco/index.html).

## II.  PLAINTIFFS CANNOT RELY ON SECTION 411(C).

Perhaps recognizing the futility of their broad argument for the availability of statutory damages, Plaintiffs also advance the more limited claim that they are entitled to that remedy based on section 411(c). Opp. 17-18. That provision creates an exception from the requirement of advance registration, but only for works "consisting of sounds, images, or both, the first fixation of which is made simultaneously with its transmission." 17 U.S.C. § 411(c). Section 411(c) was enacted to permit suits to enjoin the infringement of "live" broadcasts before such broadcasts had actually taken place. *See* H.R. Rep. 94-1476, at 157. In such a case, the copyright owner may institute an action for infringement, even if the works have not been registered, but only if the plaintiff has provided an "Advance Notice of Potential Infringement" not less than 48 hours before the work is first transmitted. As provided in authoritative regulations issued by the Copyright Office, such a notice:

1. Must make reference to 17 U.S.C. § 411(c) as the statutory authority on which the notice as based;

2. Must identify the work at issue;

3. Must identify the date, specific time, and expected duration of the intended first transmission of the work;

4. Must identify the source of the intended first transmission of the work;

5. Must identify the author and/or owner of the work; and

6. Must include a description of the relevant activities of the person responsible for the potential infringement which would, if carried out, result in an infringement of copyright.

17 U.S.C. § 411(c)(1)-(2); 37 C.F.R. § 201.22. The plaintiff must also register the work within three months after its first transmission, if registration is required by section 411(a). *Id.*

Assuming *arguendo* that section 411(c) allows statutory damages for foreign works that are *never* registered (rather than, as with United States works, merely for those works that are registered within three months of the first transmission), Plaintiffs could not rely on that provision here. Not only have they failed to point to a single work for which they claim to qualify for the exception, they have not even attempted to allege the facts necessary to satisfy the provision's detailed notice requirements. Plaintiffs' reference to section 411(c) in their complaint is entirely formulaic; it consists of a naked assertion devoid of any further factual enhancements. As the Supreme Court has recently made clear, that is not enough. Instead, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 2009 WL 1361536, at *12 (May 18, 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Given the lack of supporting factual allegations, any claim that Plaintiffs may be making for statutory damages

pursuant to section 411(c) would be entirely speculative and would have to be rejected.[8]

But even assuming that Plaintiffs could pursue claims (and statutory damages) under section 411(c), they must, at a minimum, identify particular works that they contend qualify for that exception and provide actual proof that they have complied with its exacting notice requirements. Plaintiffs say they are willing to "make an offer of proof that they have complied" with section 411(c) (Opp. 19 n.3), yet tellingly, more than two years into their case, they provide not a morsel of actual evidence that they have done so. YouTube would need such information to investigate any potential section 411(c) claims in discovery.

III. **PLAINTIFFS ARE NOT ENTITLED TO SEEK PUNITIVE DAMAGES FOR WORKS THAT ARE INELIGIBLE FOR STATUTORY DAMAGES.**

Finally, on the assumption that statutory damages are unavailable for their unregistered foreign works, Plaintiffs pursue the "slender hope" that they are entitled to punitive damages for those works. 2/27/09 Tr. at 13. But they offer no plausible reason why the only litigants eligible for punitive damages under the Copyright Act should be owners of unregistered foreign works.

Plaintiffs first argue that punitive damages should be available because "there is a permissible 'punitive' component to statutory damage and actual damage/profit awards." Opp. 29-30. That is a non-sequitur. The fact that statutory damages may have a punitive component is not an argument for allowing litigants whom Congress has barred from obtaining such damages to seek punitive damages instead. Quite the contrary, in fact. The purpose of withholding statutory damages (including any "punitive" component of such damages) for unregistered works is to encourage copyright holders, whether domestic or foreign, to register

---

[8] *See, e.g.*, *Networks, Inc. v. A10 Networks, Inc.*, 2008 WL 687114, at *1 (W.D. Wash. Mar. 10, 2008) (striking treble damages claim because, although plaintiff generally alleged willfulness, "the complaint does not contain any facts to support a claim of willful infringement"); *Woodruff v. Sullivan County Rural Elec. Co-op., Inc.*, 2008 WL 1924119, at *6 (M.D. Pa. April 28, 2008) (dismissing punitive damages claim because, although plaintiff pled facts necessary to support her claims under *Twombly*, she failed to plead additional facts necessary to support punitive damages).

their works with the Copyright Office.  Allowing punitive damages where statutory damages are not authorized would undermine that scheme by giving owners an incentive *not* to register.

Plaintiffs' only response is to posit that withholding punitive damages for unregistered foreign works would violate international law.  Opp. 31-32.  But here again Plaintiffs provide no support for their bare assertion:  no case, no treaty, no authoritative commentary.  That is not surprising, because, as explained above, neither the Berne Convention, TRIPs nor any other international agreement require signatories to provide punitive damages, and they certainly provide no basis for the Court to expand the remedies available under the Copyright Act.  *See Saregama India Ltd. v. Young*, 2003 WL 25769784, at *1 (C.D. Cal. Mar. 11, 2003) ("[T]he Court does not agree with Plaintiff's assertion that it is entitled to greater protection than that provided for by the Copyright Act because its copyright infringement claim is subject to the Berne Convention . . . and [TRIPs].  Neither of these agreements [Berne or TRIPs] extends the remedies available to Plaintiff.").

In short, the notion that the United States would run afoul of international law by refusing to give owners of foreign works punitive damages—an extraordinary remedy not available to owners of U.S. works and not available at all under most foreign legal systems—is fanciful.  Thus, as we explained in our opening brief (at 8-9), there is no basis for distinguishing this Court's unequivocal rulings that *Blanch v. Koons* "is no longer good law" and that punitive damages are not authorized in suits brought under the Copyright Act.

## CONCLUSION

For the reasons given above and in our opening memorandum of law, YouTube respectfully requests that the Court dismiss or, in the alternative, strike Class Plaintiffs' claims for (1) statutory damages for all unregistered foreign works and (2) punitive damages for all claims arising under the U.S. Copyright Act.

Dated: May 29, 2009
     New York, NY

                                Respectfully submitted,

                                s/ Andrew H. Schapiro
                                Andrew H. Schapiro
                                A. John P. Mancini
                                Matthew D. Ingber
                                Brian M. Willen
                                MAYER BROWN LLP
                                1675 Broadway
                                New York, NY 10019
                                (212) 506-2500

                                David H. Kramer
                                Michael H. Rubin
                                Bart E. Volkmer
                                WILSON SONSINI GOODRICH & ROSATI PC
                                650 Page Mill Road
                                Palo Alto, California 94304
                                (650) 493-9300

                                *Attorneys for Defendants*