```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------x
THE FOOTBALL ASSOCIATION PREMIER LEAGUE
LIMITED, BOURNE CO. (together with its
affiliate MURBO MUSIC PUBLISHING, INC.),
CHERRY LANE MUSIC PUBLISHING COMPANY,
INC., CAL IV ENTERTAINMENT LLC, ROBERT
TUR d/b/a LOS ANGELES NEWS SERVICE,
NATIONAL MUSIC PUBLISHERS' ASSOCIATION,
THE RODGERS & HAMMERSTEIN ORGANIZATION,
STAGE THREE MUSIC (US), INC., EDWARD B.
MARKS MUSIC COMPANY, FREDDY BIENSTOCK
MUSIC COMPANY d/b/a BIENSTOCK PUBLISHING
COMPANY, ALLEY MUSIC CORPORATION, X-RAY
DOG MUSIC, INC., FÉDÉRATION FRANÇAISE DE
TENNIS, THE MUSIC FORCE MEDIA GROUP LLC,
THE MUSIC FORCE LLC, and SIN-DROME
RECORDS, LTD. on behalf of themselves
and all others similarly situated,              OPINION and ORDER

                        Plaintiffs,             07 Civ. 3582 (LLS)

     - against -

YOUTUBE, INC., YOUTUBE, LLC and GOOGLE,
INC.,
                        Defendants.
---------------------------------------x
```

In this putative class action for copyright infringement brought under the U.S. Copyright Act of 1976 (17 U.S.C. § 101 et seq.), defendants move for judgment on the pleadings dismissing plaintiffs' claims under the Act for (1) statutory damages on foreign works that have not been registered with the U.S. Copyright Office and (2) punitive damages.[1]

Plaintiffs' Copyright Act claims for statutory damages are dismissed with respect to all foreign works which were not registered in the United States ("unregistered foreign works"), except those in suit under the "live broadcast exemption" in Section 411(c) of the Act.

---
[1] Although defendants' motion also seeks, in the alternative, to strike those claims, it is treated as a motion for judgment on the pleadings dismissing those claims.

-1-

I. <u>Statutory Damages</u>

A. Section 412 of the Copyright Act

Defendants argue that because statutory damages are not available under the Copyright Act for the unregistered foreign works plaintiffs sue upon, plaintiffs' Copyright Act claims for statutory damages on those works must be dismissed.

Plaintiffs respond that they may seek statutory damages on unregistered foreign works because all foreign works, as a matter of law, are exempt from any registration requirements under the Act.

That response is foreclosed by Section 412 of the Act. With specified exceptions, Section 412 prohibits recovery of statutory damages for each and every work unless the work was registered (a) before the infringement commenced or (b) within three months after its first publication. Section 412 states in pertinent part:

> **Registration as prerequisite to certain remedies for infringement**
>
> In any action under this title, other than an action . . . instituted under section 411(c), no award of statutory damages . . . shall be made for—
>
> **(1)** any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> **(2)** any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412.

Section 412 has no exception excusing foreign works from its mandate: it requires registration to obtain statutory

damages for both domestic and foreign works.  Cf. Master Sound Int'l, Inc. v. PolyGram Latino U.S., No. 98 Civ. 8468 (DLC), 1999 WL 269958, at *3 (S.D.N.Y. May 4, 1999)("Registration is a prerequisite to bringing suit for recovery of [statutory] damages and [attorney's] fees, and [Section 412] does not incorporate an exception for works originated in countries outside the United States."); accord Rudnicki v. WPNA 1490 AM, 580 F. Supp. 2d 690, 694 (N.D.Ill. 2008)("Registration is only a prerequisite when the foreign copyright holder seeks statutory damages and attorney's fees."); Peliculas Y Videos Internatcionales, S.A. de C.V. v. Harriscope of Los Angeles, Inc., 302 F. Supp. 2d 1131, 1138-39 (C.D.Cal. 2004)(statutory damages unavailable on four foreign films because they were not timely registered in accordance with Section 412); Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc., 832 F. Supp. 1378, 1393-95, 1393 n.13 (C.D.Cal. 1993)(statutory damages not recoverable on foreign design for perfume box because it was not timely registered as required by Section 412);  2 NIMMER ON COPYRIGHT § 7.16[C][1], at 7-183 (2008)("the loss of remedies under Section 412 due to failure to register is applicable to works of foreign origin as well as to domestic works").

Section 411(a) of the Act, which requires preregistration or registration before any copyright infringement suit may be brought, is limited to U.S. works, stating "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made", 17 U.S.C. § 411(a) (emphasis added), and thus allows suits to be brought upon foreign works without registration of them;  but it does not impair the operation of Section 412, which forbids the recovery of statutory damages in any infringement action (except, among others, those under Section 411(c) concerning live broadcasts)

-3-

unless the work has been registered.  Unlike Section 411(a), Section 412 has no such limitation to U.S. works:  it applies to all unregistered works.  See Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 452 (2002)("when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" (internal quotation marks omitted)).

That Congress did not intend to exempt foreign works generally from Section 412 is also clear from the Act's legislative history.  The House of Representatives' Report accompanying the Act shows that Section 412 was enacted to induce copyright registration, "which is useful and important to users and the public at large," by denying "special statutory remedies unless the owner has, by registration, made a public record of his copyright claim."  H.R. Rep. No. 94-1476, at 158 (Sept. 3, 1976).  According to the Report (at 158), the Act's general scheme permits a copyright owner whose work has been infringed before registration to seek the ordinary remedies of an injunction and actual damages plus any applicable profits, while:

> section 412 would deny any award of the special or "extraordinary" remedies of statutory damages or attorney's fees where infringement of copyright in an unpublished work began before registration or where, in the case of a published work, infringement commenced after publication and before registration (unless registration has been made within a grace period of three months after publication).

The Report's next sentence states that "These provisions [of Section 412] would be applicable to works of foreign and domestic origin alike."  Id.

B. International Agreements

Plaintiffs contend that unless Section 412 is construed to exempt all foreign works from its directive it would violate two international agreements to which the U.S. is bound: the Berne Convention for the Protection of Literary and Artistic Works, an international copyright treaty which the U.S. joined in 1989, and the Agreement on Trade-Related Aspects of Intellectual Property Rights ("TRIPs"), a trade agreement the President made in 1994. Further, plaintiffs say, an amendment to Copyright Act § 411(a) in the Digital Millennium Copyright Act of 1998 ("DMCA") shows that Congress intended § 412 to be so construed, to conform to the foregoing and similar international agreements.

None of the materials on which plaintiffs rely so alters Section 412's terms.

1. The Berne Convention

Plaintiffs assume that if Section 412 denied statutory damages on a foreign work for failure to register, it would violate "one of the most fundamental tenets of Berne, that 'the enjoyment and the exercise of [copyright] shall not be subject to any formality.'" Class Pls.' Opp. at 9-10 (plaintiffs' brackets), quoting Berne Convention Art. 5(2).

Congress rejected that assumption when it passed the Berne Convention Implementation Act of 1988 "to make the changes to the U.S. copyright law that are necessary for the United States to adhere to the Berne Convention." S. Rep. No. 100-352, at 1 (May 20, 1988).

The Senate Judiciary Committee confronted "the question of whether the registration provisions of existing U.S. copyright

law, as applied to foreign works originating in States adhering to Berne, constitute a prohibited formality" (id. at 13).

With respect to Copyright Act § 411(a), which at that time required registration as a prerequisite for a copyright infringement suit for both foreign and domestic works, the Senate Judiciary Committee "concluded that section 411(a) in its current form is incompatible" with Berne. Id. at 14. Although the House of Representatives disagreed, Congress as a whole ultimately exempted foreign "Berne Convention works" from Section 411(a)'s registration requirement, while leaving it intact as to U.S. and other works. See 134 Cong. Rec. H10091, at H10093, H10096 (daily ed. Oct. 12, 1988). Thus, pursuant to that exemption, one could bring an infringement suit (although not obtain statutory damages) based on an unregistered foreign Berne Convention work.

Neither the House nor the Senate found that Section 412, which denies statutory damages for both foreign and domestic unregistered works, violated the Berne Convention. The Senate Judiciary Committee concluded that Section 412 and other provisions of the Copyright Act "do not condition the availability of all meaningful relief on registration, and therefore are not inconsistent with Berne." S. Rep. No. 100-352, at 14-15.

Even if Section 412 were in conflict with the Berne Convention, Section 412 would be binding. The Berne Convention has no effect on U.S. law unless Congress so provides,[2] and

---

[2] Congress declared in the Berne Convention Implementation Act (Pub. L. 100-568 § 2, codified at 17 U.S.C. § 101 note): that "the 'Berne Convention'" is "not self-executing under the Constitution and laws of the United States"; that "The obligations of the United States under the Berne Convention may be performed only pursuant to appropriate domestic law"; and that "The amendments made by this Act, together with the law as it exists on the date of the enactment of this Act, satisfy the obligations of the United States in adhering to the Berne Convention and no further rights or interests shall be recognized or created for that purpose."

Congress left Section 412 "unaffected" by the Berne Convention Implementation Act (134 Cong. Rec. at H10096).

### 2. Agreement on Trade-Related Aspects of Intellectual Property Rights ("TRIPs")

Nor would Section 412 be altered by TRIPs, one of the Uruguay Round Agreements on trade entered into by the President in 1994, even if applying it to foreign works conflicted with TRIPS. "TRIPs is plainly not a self-executing treaty", ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 161 (2d Cir. 2007), and Congress has mandated that U.S. laws such as Section 412 prevail if they conflict with any of the Uruguay Round Agreements (see 19 U.S.C. § 3512(a)(1)), including TRIPs (see id. §§ 3501(7), 3511(a)(1) & (d)(15)). As stated by the Uruguay Round Agreements Act implementing TRIPs: "No provision of any of the Uruguay Round Agreements, nor the application of any such provision to any person or circumstance, that is inconsistent with any law of the United States shall have effect." Id. § 3512(a)(1).

### 3. Digital Millennium Copyright Act of 1998 ("DMCA")

Plaintiffs argue that an amendment to Copyright Act § 411(a) made by the DMCA shows that Congress intended § 412 to be construed to exempt all foreign works from its rule, to conform to "an increasing array of international treaties and trade agreements that prohibit the conditioning of copyright rights and remedies on formalities such as copyright registration." Class Pls.' Sur-Reply at 2.

Plaintiffs cite no binding authority holding that Section 412's terms violate any treaty or trade agreement, and the

DMCA's legislative history shows that the amendment it made in Section 411(a) was not meant to change Section 412.

When Congress was considering the DMCA, Section 411(a) exempted foreign "Berne Convention works" from its requirement that works be registered before suit could be brought for their infringement. See S. Rep. No. 105-190, at 27 (May 11, 1998). Congress decided that the exemption needed to be expanded to include works from parties to two treaties the United States made after the Berne Convention. See id. Rather than leave Section 411(a)'s general rule in place and draft an exception listing all the treaties, in the DMCA Congress amended Section 411(a) to "state affirmatively that 'United States works' must be registered before suit." Id.

That was done so that "section 411(a), as amended by [the DMCA], may be easily updated each time the United States joins another treaty, without the need to change several interrelated provisions of the [Copyright] Act." Id. The change was merely one of "several technical amendments to the U.S. Copyright Act." Id. at 25. Congress, by the DMCA, certainly did not intend a sweeping exemption of all foreign works from Section 412's bar of statutory damages for unregistered works, and did not do so implicitly by a technical amendment to a different section of the statute.

\*       \*       \*

Thus, Section 412 must be construed according to its terms: subject to specified exceptions, it bars statutory damages for all foreign and domestic works not timely registered.

Plaintiffs' Copyright Act claims for statutory damages are dismissed with respect to all unregistered foreign works that do not fall within any such exception.

## C. Section 411(c) of the Copyright Act

The relevant exception is the "live broadcast exemption" in Section 411(c) of the Act, which states in pertinent part:

> **(c)** In the case of a work consisting of sounds, images, or both, the first fixation of which is made simultaneously with its transmission, the copyright owner may, either before or after such fixation takes place, institute an action for infringement under section 501, fully subject to the remedies [of, among other things, statutory damages], if, in accordance with requirements that the Register of Copyrights shall prescribe by regulation, the copyright owner—
>
> **(1)** serves notice upon the infringer, not less than 48 hours before such fixation, identifying the work and the specific time and source of its first transmission, and declaring an intention to secure copyright in the work . . . .

17 U.S.C. § 411(c)(1).[3]

All foreign works which meet the requirements of Section 411(c) are exempted from the general rule of Section 412, which bars statutory damages for works not timely registered. See 17 U.S.C. §§ 411(a) & (c), 412, 504; accord 2 NIMMER ON COPYRIGHT § 7.16[B][3], at 7-176. Section 411(c) "is intended to deal with the special situation presented by works that are being transmitted 'live' at the same time they are being fixed in tangible form for the first time", H.R. Rep. No. 94-1476, at 157, such as live broadcasts of "sporting events, concerts, theatrical presentations and news and public affairs programs",

---

[3] Pursuant to Section 411(c)(2), the copyright owner of such a work may (among other things) seek statutory damages only if the copyright owner "makes registration for the work, if required by subsection (a), within three months after its first transmission." 17 U.S.C. § 411(c)(2). Since Section 411(a) does not require registration of foreign works, Section 411(c)(2) does not apply to foreign works consisting of sounds, images, or both, the first fixation of which are made simultaneously with their transmission.

-9-

Works Consisting of Sounds, Images, or Both, 46 Fed. Reg. 28,846, at 28,849 (May 29, 1981).

In a suit under Section 411(c), the copyright owner of a foreign work consisting of sounds, images, or both, the first fixation of which is made simultaneously with its transmission may obtain statutory damages (see 17 U.S.C. §§ 411(c), 504) without registering the work (see id. §§ 411(a) & (c)(2), 412) if the copyright owner serves an "Advance Notice of Potential Infringement" on the prospective infringer at least 48 hours before the work is transmitted (see id. § 411(c)(1); 37 C.F.R. § 201.22). Among other things, the Advance Notice must clearly identify each work at issue by title, as well as the date, specific time, and expected duration of the intended first transmission of each work, the source of the intended first transmission, and the copyright owner of each work; and include a description of the relevant activities of the potential infringer which would, if carried out, result in an infringement of the copyright. See 17 U.S.C. § 411(c)(1); 37 C.F.R. § 201.22(c).

Defendants argue that plaintiffs cannot rely on Section 411(c), stating (Defs.' Reply at 14):

> Not only have they failed to point to a single work for which they claim to qualify for the exception, they have not even attempted to allege the facts necessary to satisfy the provision's detailed notice requirements. Plaintiffs' reference to section 411(c) in their complaint is entirely formulaic; it consists of a naked assertion devoid of any further factual enhancements. As the Supreme Court has recently made clear, that is not enough. Instead, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 2009 WL 1361536, at *12 (May 18, 2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Plaintiffs' complaint[4] alleges (at ¶¶ 1-2, 10, 15, 31-32, 69) that their copyrighted works have been infringed on defendants' YouTube website; that "For each of the Protected Works at issue, all statutory and other applicable formalities have been complied with"; and that the works of lead-plaintiffs The Football Association Premier League Limited and Fédération Française de Tennis, each of which owns the copyright in audiovisual footage of certain foreign sports matches, "are not 'United States works' within the meaning of the U.S. Copyright Act" and are "pursuant to section 411(b) [recently redesignated as section 411(c)] of the U.S. Copyright Act, entitled to all remedies under U.S. copyright law, including statutory damages."

Whether or not those allegations suffice, it is apparent from plaintiffs' submissions that they could adequately amend their complaint to assert facts showing that there are unregistered foreign works in suit which meet Section 411(c)'s requirements.

First, plaintiffs submit the June 4, 2009 Declaration of Oliver Weingarten, the Commercial and Intellectual Property Solicitor for lead-plaintiff The Football Association Premier League Limited, in which he states under penalty of perjury that (his Decl. ¶¶ 2-5):

> 2. In the period since 10 September 2008, the Premier League has caused to be served on [the] YouTube [website] more than three hundred and forty four "Advance Notices of Potential Infringement" (an "Advance Notice"). . . .
>
> 3. Each of these has been served on YouTube by email no less than 48 hours in advance of the first fixation and simultaneous transmission of a particular Premier League soccer match, identifies the particular match by title (the names of the teams), the date, specific time and expected duration of the intended first transmission and other information concerning that

---

[4] Plaintiffs' second amended class action complaint is referred to as "complaint."

-11-

work, including the source of its intended first transmission, the parties responsible for recording the live event and the identity of the copyright owner, as well as a description of the activities which would, if carried out, constitute infringement . . . .

4. In addition, the original copy of the Advance Notice bearing the actual handwritten signature on behalf of the Premier League has been served on YouTube by courier . . . so that they receive it before the first fixation and simultaneous transmission take place. . . .

5. This practice has been followed for each of the hundreds of Advance Notices sent so far to YouTube on behalf of the Premier League.

Second, in his June 9, 2009 Letter to the Court, plaintiffs' counsel represents "that the hundreds of 411(c) notices described in Mr. Weingarten's Declaration specifically relate to works in suit" (Solomon Esq.'s June 9, 2009 Ltr. to the Ct. at 1).

Under the circumstances, plaintiffs' complaint is deemed amended to include the material set forth in Mr. Weingarten's Declaration and the above quoted representation of plaintiffs' counsel,[5] and defendants' motion is denied insofar as it seeks dismissal of plaintiffs' claims for statutory damages arising from infringements of unregistered foreign works which qualify under the "live broadcast exemption" in Section 411(c).

---

[5] Cf. Brickman v. Tyco Toys, Inc., 722 F. Supp. 1054, 1061 (S.D.N.Y. 1989)("Plaintiff's amended complaint shall be deemed further amended to include the stock purchase information contained in this affidavit, thereby curing this particular defect.").

II. Punitive Damages

Defendants argue that plaintiffs' Copyright Act claims for punitive damages must be dismissed because such damages are, as a matter of law, not obtainable under the Act.

Plaintiffs maintain that they should be allowed to seek punitive damages under the Act for willful infringements of the unregistered foreign works that are barred from recovering statutory damages "in these limited circumstances" (Class Pls.' Opp. at 32), where they would otherwise "have a difficult—if not impossible—time obtaining any effective monetary relief" for such works (id. at 31).[6]

There is no circumstance in which punitive damages are available under the Copyright Act of 1976. "Common-law punitive damages cannot be recovered under the Copyright Act." Viacom Int'l Inc. v. Youtube, Inc., 540 F. Supp. 2d 461, 464 (S.D.N.Y. 2008), relying primarily on Oboler v. Goldin, 714 F.2d 211, 213 (2d Cir. 1983)("If the action proceeds to a new trial, we note that punitive damages are not available under the Copyright Act of 1976."); accord Faulkner v. Nat'l Geographic Soc., 576 F. Supp. 2d 609, 612-13, 613 n.7, 617 (S.D.N.Y. 2008)("the Copyright Act limits recovery in this case to 'actual damages' and does not permit recovery of punitive damages"); Granger v. Gill Abstract Corp., 566 F. Supp. 2d 323, 330 (S.D.N.Y. 2008)("Finally, irrespective of whether a plaintiff is seeking actual or statutory damages, "'punitive damages are not

---

[6] Plaintiffs also argue that punitive damages must be available for foreign works under the Copyright Act because the U.S. has an international obligation "to provide 'foreign' rights holders with remedies to deter infringement." Class Pls.' Opp. at 32. However, plaintiffs cite no binding authority requiring the U.S. to furnish the remedy of punitive damages in suits under the Copyright Act, nor one holding that the remedies ordinarily available in infringement cases of an injunction and actual damages plus any applicable profits (see H.R. Rep. No. 94-1476, at 158) do not suffice to deter infringement.

available under the Copyright Act of 1976.'"); 4 NIMMER ON COPYRIGHT § 14.02[C][2], at 14-34 ("The cases are clear that exemplary or punitive damages should not be awarded in a statutory copyright infringement action.").

Plaintiffs' claims for punitive damages under the Copyright Act are dismissed. (For the reasons stated on the record at the February 27, 2009 pre-motion conference before the Court, any ruling on whether plaintiffs may seek punitive damages for pre-1972 sound recordings under state law, or infringements for which foreign law determines the remedies, is deferred.)

## CONCLUSION

For the reasons set forth above, the issues raised by defendants' motion (Docket No. 120) are disposed of as follows:

(1) plaintiffs' complaint is deemed amended to include the material set forth in Mr. Weingarten's June 4, 2009 Declaration and the above quoted representation of plaintiffs' counsel;

(2) plaintiffs' Copyright Act claims for statutory damages are dismissed with respect to all unregistered foreign works, except those claims based on unregistered foreign works which qualify for the "live broadcast exemption" in Section 411(c) of the Act; and

(3) plaintiffs' claims for punitive damages under the Copyright Act are dismissed.

So ordered.

Dated: New York, NY
~~June 30, 2009~~
July 3, 2009

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.