ORIGINAL
DOC...
ELEC...
DOC #:
DATE FILED 10-30-09

To The Clerk of the Court
Please docket and place
this document in the public file.

LLS 10/29/09
Louis L. Stanton
U.S.DJ

# MAYER·BROWN

Mayer Brown LLP
1675 Broadway
New York, New York 10019-5820

Main Tel (212) 506-2500
Main Fax (212) 262-1910
www.mayerbrown.com

October 15, 2009

**Andrew H. Schapiro**
Direct Tel (212) 506-2672
Direct Fax (212) 849-5973
aschapiro@mayerbrown.com

The Honorable Louis L. Stanton
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2250
New York, NY 10007

5

Re:     *The Football Ass'n Premier League Ltd., et al. v.
YouTube, Inc., et al.*, No. 07-cv-3582

Dear Judge Stanton:

On behalf of Defendants ("YouTube"), we write in response to Class Plaintiffs' October 9, 2009 letter regarding the untimely identification of new works in suit and allegedly infringing clips by X-Ray Dog Music, Inc. ("XRD").

This Court could not have been more clear in its June 23, 2008 ruling that—to ensure a "closed universe of claims" in this case and to allow YouTube sufficient time to explore Plaintiffs' allegations—Plaintiffs were required to complete their identification of alleged infringements by no later than 90 days before the close of discovery. *See* June 23, 2008 Tr. 3:12-30 (attached as Ex. A). While the Court held open the possibility that a "need for exceptions" might occur, it expressly warned the parties that "I would treat exceptions as having to be proved to be exceptional indeed." *Id.* at 3:22-23.

Under the current case schedule, that 90-day deadline passed on August 17, 2009. By that date, XRD had identified only 12 claims of infringement (based on two works in suit). As the deadline for making new infringements allegations came and went, XRD failed to notify either YouTube or the Court that it might need additional time.[1] Instead, nearly three weeks after the deadline passed, XRD significantly expanded its claims, seeking to add over 1,500 new infringement allegations and nearly 200 new works in suit. Even then, however, XRD offered no explanation for its tardiness. Indeed, XRD did not so much as acknowledge that it was making

---

[1] Class Plaintiffs point to a letter (actually sent on May 8) advising that XRD was "still compiling additional works and infringements." (Letter from Noah S. Gitterman to Michael Rubin (May 8, 2009) (attached as Ex. B). (While Class Plaintiffs did send another letter on July 10, 2009, that letter said nothing about XRD. *See* Letter from Noah S. Gitterman to Michael Rubin (July 10, 2009) (attached as Ex. C)). Class Plaintiffs say that YouTube "did not then raise any issue about XRD at that time." But that is hardly surprising; at the time of that letter (and for more than three months thereafter), XRD's identification of new works would have been timely. Indeed, in that very letter, Class Plaintiffs told us that XRD expected to identify any additional alleged infringements "expeditiously." Ex. B. They said nothing whatsoever about any personnel issues that even threatened to cause XRD to miss the Court-imposed 90-day deadline.

The Football Association Premier League Limited et al. v. Youtube, Inc. et al.        Doc. 141

those new allegations after the Court's 90-day cutoff. It was only after YouTube protested that XRD offered the excuses now presented in its October 9 letter.

We respectfully submit that XRD has not met the "exceptional circumstances" standard articulated by the Court. Even putting to one side the fact that XRD chose to initiate this suit and thus bears the burden of diligently prosecuting its claims, XRD has not offered any compelling reason justifying its untimely attempts to so dramatically expand the scope of its case. For example, XRD does not (and cannot) claim that the video clips at issue were only uploaded recently to YouTube and thus that it could not have found them earlier. To the contrary, based on YouTube's investigation, it appears that hundreds of the new clips that XRD identified on September 9 appear to have been posted before Class Plaintiffs filed their Second Amended Complaint on November 26, 2008; hundreds more were posted in 2007 (before XRD even joined this case); and still others seem to have been posted even before that, as early as February 2006.

Even accepting the facts as described in XRD's letter and accompanying declaration, therefore, they do not explain why it would take XRD over a year (to say nothing of two or three years) to come forward with its new allegations. Any reasonably diligent Plaintiff should have been able to make such identifications in a timely manner, and would not have put itself in a position where a single employee's personal circumstances might cause the entire company to miss a Court deadline known to it for more than 14 months. What is more, XRD has offered nothing to suggest that it made a serious, good-faith effort to comply with the 90-day cutoff. Given the number of infringements alleged on September 9, it is entirely implausible that none of those were in a position to be transmitted to YouTube within the time allotted by the Court. Yet XRD let the deadline pass by without identifying even one new alleged infringement. That is not reasonable.[2] For these reasons alone, therefore, XRD's untimely attempt to expand the scope of its claims should be rejected.

Compounding XRD's failure to show "exceptional" circumstances is the fact that YouTube would be significantly prejudiced were XRD's claims so significantly expanded at this late date. As the Court recognized back in June 2008, YouTube needed sufficient time to explore each of the claims of infringement that Plaintiffs might allege. But, due to XRD's tardiness, the time available for such an exploration has been significantly curtailed. Within that shortened period, YouTube would have to analyze the chains-of-title for 198 additional works, potentially depose witnesses on specific ownership issues based on that analysis, examine 1,548 new video clips and assess the possible defenses (including fair use, copyright misuse, authorization, and express or implied license) that might be available for each of those distinct clips, and potentially expand the scope of expert opinion. The Court's 90-day deadline was designed to prevent just such unfairness, and that deadline should be enforced.

---

[2] *Cf. Lincoln v. Potter*, 418 F. Supp. 2d 443, 454 (S.D.N.Y. 2006) ("If [a] party was not diligent, the [good cause] inquiry should end.") (quotation omitted); *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, 2006 WL 2242596, at *3 (S.D.N.Y. Aug. 3, 2006) (finding plaintiff failed to show good cause where it "had access to all the materials it claimed necessary and essential" to make the new allegations at least seven months prior to making the amendment).

Accordingly, we respectfully ask that the Court find XRD's September 9, 2009 identification of new alleged infringements untimely.

Respectfully submitted,

Andrew H. Schapiro

cc:    All counsel in this action and the *Viacom* action