

Figueira Decl. Tab 34



**cherry lane**
music publishing
company, inc.

6 East 32nd Street, 11th Floor
New York, New York 10016
www.cherrylane.com

**Keith C. Hauprich**
Vice President, Business & Legal Affairs
P: 212.561.3527  F: 212.683.2040
khauprich@cherrylane.com

April 23, 2008



<u>**VIA FACSIMILE**</u> (650)963-3367
YouTube Video Identification Support

Re:   Content Identification and Management Agreement

Dear Sir or Madam:

As you know, Cherry Lane Music Publishing Company, Inc. is one of several lead plaintiffs currently in litigation with YouTube and Google over copyright infringements of its works, and those of others appearing on the YouTube site without authorization. We recently received your proposed "Content Identification and Management Agreement" in response to a request we made to get more information about filtering and blocking of infringing works appearing on YouTube. Your proposed agreement raises a number of issues. Although those will be dealt with in the litigation, and the concerns expressed here should not be read as exhaustive, I do want to raise the following now:

First, paragraph 2 requires us to deliver to Google so-called Reference Files, which consist of copies of the actual works we seek to protect against unauthorized copying and exploitation. Since the necessary "ID Files" or "fingerprints" can be created without requiring us to deliver to you, or permitting you to permanently retain, copies of each of our works in its entirety, we object to this approach. You should provide us with a "fingerprinting tool" that would enable us to make the necessary "ID Files" for delivery to you without requiring us to turn over actual copies of our works.

It also appears that if we wish to have the actual copies of our works on file at Google removed at any time, you will then delete the "fingerprint" used to identify and block our material. This means that you will cease blocking or filtering any work for which we do not permit you to permanently retain a copy, even though your retention of that copy is then unnecessary to the fingerprinting and blocking process. You are thus penalizing us as a rights owner if we elect at any time not to permit you to retain a copy of our actual work(s).

When this system was first announced, it was my understanding that the uploaded material would still appear on YouTube for some period of time even if you had the requisite fingerprint and could block the material so that it did not appear publicly. This then allows our works to be infringed before you block them although you have the ability to prevent that.

34-0002

Unlike the license Google grants to Rights Owner to use the System, the Rights Owner's grant in paragraph 5 is not limited "solely for the purpose of identifying and managing [the] Works on YouTube and Google Video." This means that my company has no assurance that copies of works turned over to you for the purpose of creating ID Files will also not be used for another purpose.

Google also caps its liability at $50,000 under paragraph 8 which is far below the potential value of any work which you may infringe. Moreover, the rights granted under this proposed agreement do not appear to be confined to YouTube and Google Video, but would seem to extend to any facilities, services or operations of Google and its affiliates now or in the future.

Nor is there any assurance that the System, as defined, would be or remain limited to the "content identification and management system" as presently offered by Google.

Ultimately we have no assurance that, in turning over copies of our works to enable them to be fingerprinted, these copies will not be also be used by Google to amass a database of original and highly valuable copyrighted works—not just a "fingerprint" of them—for other purposes.

We have not been given any concrete information about the operation, features or limitations of the "System" which should be transparent and readily available to rights owners without hidden traps or the creation of additional risks of infringement by your enterprises.

Answers to these questions are thus essential for us to get a better understanding of what Google is proposing. We would appreciate your prompt response.

Kind regards,

Keith C. Hauprich

Confidential