HIGHLY CONFIDENTIAL -- OUTSIDE
COUNSEL'S EYES ONLY

1            UNITED STATES DISTRICT COURT

2          FOR THE SOUTHERN DISTRICT OF NEW YORK

3

VIACOM INTERNATIONAL, INC., COMEDY )

4    PARTNERS, COUNTRY MUSIC.            )

TELEVISION, INC., PARAMOUNT          )

5    PICTURES CORPORATION, and BLACK     )

ENTERTAINMENT TELEVISION, LLC,       )

6                                        )

Plaintiffs,        )

7                                        )

vs.                                   ) NO. 07-CV-2103

8                                        )

YOUTUBE, INC., YOUTUBE, LLC,          )

9    and GOOGLE, INC.,                   )

)

10           Defendants.          )

_____)

11                                        )

THE FOOTBALL ASSOCIATION PREMIER     )

12   LEAGUE LIMITED, BOURNE CO., et al.,)

on behalf of themselves and all      )

13   others similarly situated,          )

)

14           Plaintiffs,        )

vs.                                   ) NO. 07-CV-3582

15                                        )

YOUTUBE, INC., YOUTUBE, LLC, and     )

16   GOOGLE, INC.,                       )

)

17           Defendants.          )

_____)

18       VIDEOTAPED DEPOSITION OF KENT WALKER

PALO ALTO, CALIFORNIA

19          THURSDAY, DECEMBER 17, 2009

20   BY:  ANDREA M. IGNACIO HOWARD, CSR, RPR, CLR

CSR LICENSE NO. 9830

21   JOB NO. 18312

22

23

24

25

Figueira Decl. Tab
114

1

```
1                    WALKER, KENT
2        A    One, I have no idea what other people --
3   there were a number of people in the company who were
4   engaged with Viacom in a whole variety of context that
5   I'm not familiar with.
6        Q    Understood.
7        A    So I don't know what they may or may not have
8   offered.  With regard to my conversation with
9   Mr. Fricklas, I don't remember whether Audible Magic
10  came up, I don't remember whether he asked for it, I
11  don't remember whether I offered it or didn't offer
12  it.  I just don't recall.
13           The reason for that was that it was and still
14  is my understanding that Audible Magic is more --
15  while it's not a great tool, it relatively is more
16  suited for audio content, music content, primarily,
17  than is for video content.  In part because of the --
18  the reasons we talked about before, that video is much
19  more information dense, it's a much harder search
20  problem, and that the -- the Audible Magic technology
21  hadn't evolved in a way that would make it usable or
22  useful for Viacom to -- to implement.
23           There's another distinction as well, which
24  is, music content is perhaps uniquely legally complex
25  because of the number of overlapping and sometimes
```

inconsistent rights associated with it.  There are a

wide number of different rights that are owned by the

performer, the creator, the -- the publishers, the

labels, the collecting societies in Europe, et cetera,

and each of those entities can own multiple rights,

which sometimes align and sometimes do not.

As a result of that, there are complexities

associated with that, which I believe the Audible

Magic system had been optimized for, both in terms of

the technological operation of the system and the

assembly of a database, which was designed to track

all of the -- the complex music rights associated with

it.

As the name Audible Magic itself suggests, it

was a music tool, at least that was my understanding.

MR. SCHAPIRO:  Let's -- let's take a break

for five minutes.

THE VIDEOGRAPHER:  The time is 10:47.

Off the record.

(Recess taken.)

THE VIDEOGRAPHER:  The time is 10:57.

On the record.

MR. DESANCTIS:  Mr. Walker, before we just

took a short break, you were describing for me certain