Figueira Decl. Tab
125

| | |
|---|---|
| **From:** | Chad Hurley <chadh@youtube.com> |
| **Sent:** | Tuesday, September 26, 2006 2:25 PM |
| **To:** | Roelof Botha <botha@sequoiacap.com>; Tony Bates ((tbates)) <tbates@cisco.com>; Pierre Lamond <lamond@sequoiacap.com>; Gideon Yu <gyu@youtube.com> |
| **Subject:** | Fwd: YouTube - Confidential |
| **Attach:** | Document.pdf |

G's initial offer is attached. We can discuss this at our 5pm meeting.

-Chad


Begin forwarded message:

EXHIBIT 9
G. Yu
8-14-09

HIGHLY CONFIDENTIAL

SC009721

Google Inc.										Main 650 253.0000
1600 Amphitheatre Parkway								Fax 650 253.0001
Mountain View, CA 94043								125-0002www.google.com

September 26, 2006

YouTube, Inc.
71 E Third Avenue, 2nd Floor
San Mateo, CA 94401
Attn: Chad Hurley and Steven Chen

Dear Chad and Steven:

We are pleased to present you with the attached Term Sheet setting forth the basic terms and conditions of the proposed acquisition of YouTube, Inc. (the "Company") by Google Inc. or one of its subsidiaries ("Google").

The acquisition contemplated in this Term Sheet is subject to Google's legal, financial and business due diligence and to the preparation, execution and delivery of definitive purchase documents. This Term Sheet is non-binding and does not constitute or give rise to any legally binding commitment (nor does it constitute an offer to enter into a legally binding commitment) except for the provisions regarding Public Disclosure, Company No Shop, Termination, Governing Law, and Expenses and Fees. Google and the Company understand that the Term Sheet is intended to set forth the fundamentals of the proposed acquisition, but that the foregoing intentions may be revised and new issues may be presented upon further investigation and due diligence by Google or the Company.

Please sign in the spaces provided below to acknowledge your agreement to the terms set forth in the Term Sheet as the basis on which we will prepare definitive agreements and your agreement to be bound by the Public Disclosure, Company No Shop, Termination, Governing Law, and Expenses and Fees provisions contained in the Term Sheet.

Regards,

GOOGLE INC.

_____
Name: David Drummond
Title: Senior Vice President, Corporate Development


Acknowledged and agreed as of
the date first written above:

YOUTUBE, INC.

By: _____
    Name:
    Title:

HIGHLY CONFIDENTIAL									SC009722

# Term Sheet
## For the Acquisition of YouTube, Inc.
## By Google Inc.

September 26, 2006

This term sheet ("Term Sheet") sets forth the principal terms and conditions of the proposed acquisition ("Acquisition") of YouTube, Inc. (the "Company") by Google Inc. or one of its subsidiaries ("Google").

| | |
|---|---|
| **Structure:** | Google will acquire the Company for the consideration set forth below pursuant to a definitive agreement containing representations, warranties, covenants, legal opinions, conditions and indemnities customary for a transaction of this type (the "Agreement"). The form of the transaction will be a merger. |
| | The representations regarding the Company will be made by the Company and the principal stockholders of the Company. |
| | Google and the Company intend that the transaction will be a "reorganization" within the meaning of Section of 368(a) of the tax code and that tax counsel of the Company will render an opinion to that effect. |
| **Acquisition Consideration:** | Subject to Google's additional due diligence and to the terms and conditions of this Term Sheet, in consideration for all of the issued and outstanding shares, options (including any options assumed or substituted in connection with the Acquisition), warrants and other equity interests of Company, at the closing of the Acquisition (the "Closing") Google will issue a number of shares of Google Class A Common Stock ("Shares") equal to One Billion Dollars ($1,000,000,000) based on the average daily closing price of the Shares for the thirty (30) days immediately preceding the closing of the Acquisition (the "Consideration"). |
| **Private Placement; Registration Rights:** | The Shares will be issued to the Company stockholders pursuant to the exemption provided by Rule 506 of Regulation D promulgated under the Securities Act of 1933, as amended. Google shall provide Company stockholders with customary registration rights for a transaction of this nature, which will include a covenant by Google to file a resale registration statement on Form S-3 within 30 business days of the Closing. |
| **Employee Equity:** | Subject to Google's due diligence review, all options to purchase Company capital stock outstanding immediately prior to the Closing, both vested and unvested (each, an "Option"), will be assumed by Google and converted into equivalent rights to acquire a number of Shares based on the total exchange ratio applicable to the Acquisition, with such rights continuing to be subject to vesting on current terms. Following Google's review of the Company's option plan documentation (including vesting schedules), the parties will discuss the possibility of partial acceleration of options for certain Company employees. |
| | For the avoidance of doubt, the amounts paid or issued to holders of Company Options will be considered part of the Consideration (i.e., the Consideration paid to the Company stockholders will be reduced to the extent of Share issuances made in respect of the Company Options). |
| | Unless otherwise agreed by the parties, prior to the execution of the Agreement, |

HIGHLY CONFIDENTIAL

SC009723

|  |  |
|---|---|
|  | the Company will amend, in accordance with applicable law, any applicable Company documentation to eliminate any provision that would result in the acceleration of vesting of unvested options or Company shares upon the consummation of the Acquisition, and will take such other action as shall be required to avoid the partial or complete acceleration of unvested options or shares. In addition, to the extent not already provided in the relevant Company documentation, Google may seek to include suitable retention provisions with respect to the key employees. |
| **Employment Arrangements:** | It shall be a condition to Google's obligation to close the Acquisition that certain Company employees to be identified by Google shall have accepted at-will employment with Google and shall have entered into Google's standard Employment Offer Letter and Proprietary Information and Inventions Assignment Agreement. |
| **Non-Competition Agreements:** | It shall also be a condition to the Closing that certain Company stockholders to be identified by Google shall have entered into a non-competition agreement, which will prohibit such Company stockholder from competing with the Company's business for a period of two years from the Closing date. |
| **Signing Date; Closing Date:** | The parties' objective is to execute the Agreement and close the Acquisition as soon as reasonably practicable following the date of this Term Sheet. |
| **Public Disclosure:** | Neither party shall issue any statement or communication to any third party (other than to its legal and accounting advisors) regarding the Acquisition, including, if applicable, its termination and the reasons therefor, without the consent of the other party, except that Google may issue any statement or communication to the extent it determines it necessary or appropriate in light of applicable laws, rules and regulations. |
| **Company No Shop:** | Until the earlier of (A) sixty (60) days from the date of this Term Sheet, (B) the execution and delivery of the Agreement by all of the parties thereto, or (C) the date on which Google advises the Company in writing that Google does not wish to proceed with discussions in respect of the proposed Acquisition (including by terminating this Term Sheet), neither Company nor any of Company's affiliates shall (nor will they permit, as applicable, any of their officers, directors, members, stockholders, agents, representatives or affiliates to), directly or indirectly, take any of the following actions with any party other than Google and its designees: (i) solicit, initiate, participate in, or encourage any negotiations or discussions with respect to any offer or proposal to acquire any portion of the Company's business and properties or any shares of Company capital stock or any rights to acquire any shares of Company capital stock, whether by merger, purchase of assets, purchase or issuance of shares or rights to acquire shares, tender offer or otherwise, or effect any such transaction, (ii) disclose any information not customarily disclosed to any person concerning Company's business and properties or afford to any person or entity access to its properties, books or records, (iii) assist or cooperate with any person to make any proposal to purchase any shares of Company capital stock or rights to acquire any shares of Company capital stock or any portion of the Company's assets, or (iv) enter into any agreement with any person providing for the acquisition of Company (whether by way of merger, purchase of assets, purchase or issuance of shares or rights to acquire shares, tender offer or otherwise). In the event Company or any of Company's affiliates shall receive any offer or proposal, directly or indirectly, of the type referred to in clause (i), (iii) or (iv) above, or any request for disclosure or access pursuant to clause (ii) above, Company or such affiliate shall immediately inform Google as to the |

HIGHLY CONFIDENTIAL       SC009724

| | existence of any such offer or proposal and will cooperate with Google by furnishing any information it may reasonably request, including, but not limited to, the name of the party making such offer or proposal, all written documentation relating to such offer or proposal and a summary of the principal terms of any such offer or proposal that is not made in writing. |
|---|---|
| **Termination:** | This Term Sheet shall terminate upon the written notification of such termination by any party hereto to the other parties hereto; provided that the provisions regarding Public Disclosure, Company No Shop, Termination, Governing Law, and Expenses and Fees shall survive any such termination in accordance with the terms thereof. |
| **Due Diligence:** | As soon as practicable after the date hereof, Google shall be permitted to make a full and complete investigation of the Company's business, intellectual property, technology, financial, employee and legal affairs. In addition, prior to signing the Agreement, the Company shall provide Google with reasonable access to all members of Company's management. The entering into of the Agreement shall be subject to the satisfactory completion, in Google's sole discretion, of Google's due diligence on Company. |
| **Expenses and Fees:** | All fees and expenses of Google in connection with the Acquisition will be paid by Google. All fees and expenses of the Company and the Company stockholders in connection with the Acquisition, including broker or finder fees, will be paid by the Company stockholders. |
| **Indemnification of Google:** | Indemnification. The Company and each of the Company stockholders will jointly and severally indemnify and hold Google and its affiliates, and their respective officers, directors, employees and agents, harmless from and against losses or liabilities that may be suffered by Google due to any inaccuracies in or breaches of representations, warranties and covenants or any other provision of the Agreement or any ancillary document.<br><br>Survival. Subject to the results of Google's due diligence investigation, the representations, warranties and covenants of the Company and the Company stockholders contained in the Agreement shall survive the Closing, with the representations and warranties surviving only for two years after the Closing; provided that:<br><br>(a) the representations and warranties related to intellectual property shall survive for three years;<br>(b) the representations and warranties related to taxes shall survive until 60 days after the expiration of the applicable statute of limitations;<br>(c) the representations and warranties related to capitalization shall survive indefinitely; and<br>(d) claims for fraudulent, intentional or willful breaches of representation and warranties shall survive indefinitely<br><br>(collectively, the "**Surviving Representations**").<br><br>Cap. The Company stockholders' liability for breaches of the Company representations and warranties will be limited to the aggregate Consideration, except no such cap shall apply with respect to any breaches of the Surviving Representations set forth in clauses (b) through (d).<br><br>Basket. Notwithstanding the foregoing, the Company stockholders will not be liable for indemnification until the aggregate amount of losses exceeds One |

HIGHLY CONFIDENTIAL         SC009725

|  | Million Dollars ($1,000,000) (the "**Threshold**"); provided that (a) once the Threshold has been met, the Company stockholders will be liable for the full amount of all losses, including those which comprised any portion of the Threshold, and (b) losses related to Surviving Claims shall not be subject to the Threshold.<br><br>Escrow.  Fifteen percent (15%) of the Consideration otherwise payable at Closing will be deposited in escrow by Google for two years as non-exclusive security for the Company stockholders' indemnity obligations. |
|---|---|
| **Voting Agreement** | Concurrently with the execution of the Agreement, members of management and certain stockholders to be determined will execute an agreement to vote their shares in favor of the Acquisition and to not transfer their shares or any interest therein. |
| **Governing Law:** | This Term Sheet and the letter to which it is attached shall be governed by California law without regard to that state's choice of law provisions. |

**[END OF TERM SHEET]**

HIGHLY CONFIDENTIAL                                                    SC009726