Contains Confidential and/or Highly Confidential Information- Subject to Protective Order

PROSKAUER ROSE LLP
Louis M. Solomon (LS-7906)
1585 Broadway
New York, NY 10036-8299
Telephone 212.969.3000
   - and -
BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
Max W. Berger (MB-5010)
1285 Avenue of the Americas
New York, NY 10019
Telephone 212.554.1400
*Attorneys for Lead and Named Plaintiffs and the Prospective Class*

Figueira Decl. Tab
138

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

THE FOOTBALL ASSOCIATION PREMIER
LEAGUE LIMITED, BOURNE CO. (together
with its affiliate MURBO MUSIC PUBLISHING,
INC.), CHERRY LANE MUSIC PUBLISHING
COMPANY, INC., CAL IV ENTERTAINMENT
LLC, ROBERT TUR d/b/a LOS ANGELES
NEWS SERVICE, NATIONAL MUSIC
PUBLISHERS' ASSOCIATION, THE
RODGERS & HAMMERSTEIN
ORGANIZATION, STAGE THREE MUSIC
(US), INC., EDWARD B. MARKS MUSIC
COMPANY, FREDDY BIENSTOCK MUSIC
COMPANY d/b/a BIENSTOCK PUBLISHING
COMPANY, ALLEY MUSIC CORPORATION,
X-RAY DOG MUSIC, INC., FÉDÉRATION
FRANÇAISE DE TENNIS, THE MUSIC FORCE
MEDIA GROUP LLC, THE MUSIC FORCE
LLC, and SIN-DROME RECORDS, LTD. on
behalf of themselves and all others similarly
situated,

              Plaintiffs,

    v.

YOUTUBE, INC., YOUTUBE, LLC and
GOOGLE, INC.,

             Defendants.

07 Civ. 3582 (LLS)

<u>SECOND AMENDED CLASS
ACTION COMPLAINT</u>

JURY TRIAL DEMANDED

------------------------------------X

1

Contains Confidential and/or Highly Confidential Information- Subject to Protective Order

Lead Plaintiffs, The Football Association Premier League Limited and Bourne Co. (together with its affiliate Murbo Music Publishing, Inc.) and Named Plaintiffs Cherry Lane Music Publishing Company, Inc., Cal IV Entertainment, LLC, Robert Tur d/b/a Los Angeles News Service, National Music Publishers' Association, The Rodgers & Hammerstein Organization, Stage Three Music (US), Inc., Edward B. Marks Music Company, Freddy Bienstock Music Company d/b/a Bienstock Publishing Company, Alley Music Corporation, X-Ray Dog Music, Inc., Fédération Française de Tennis, The Music Force Media Group LLC, The Music Force LLC, and Sin-Drome Records, Ltd. on behalf of themselves and all others similarly situated, by their attorneys Proskauer Rose LLP and Bernstein Litowitz Berger & Grossmann LLP, allege for their Second Amended Complaint against defendants YouTube, Inc., YouTube, LLC (together "YouTube," which also refers to Defendants' website YouTube.com) and Google, Inc. ("Google," and together with YouTube, "Defendants"), on personal knowledge as to matters relating to themselves, and on information and belief as to all other matters, as follows:

## NATURE OF ACTION

1. This action is brought to vindicate the rights of owners of copyrighted intellectual property, both large and small. This intellectual property was created and made valuable by the investment -- sometimes the life-long investment -- of creativity, time, talent, energy, and resources of content producers other than Defendants. Yet Defendants, which own and operate the website YouTube.com, have knowingly misappropriated and exploited this valuable property for their own gain without payment or license to the owners of the intellectual property.

2. The Class (as that term is defined in Paragraph 45 of this Amended Complaint) consists of copyright owners (together with the owners of exclusive rights in sound recordings

Contains Confidential and/or Highly Confidential Information- Subject to Protective Order

protected under state law) whose proprietary content Defendants have copied, stored, and electronically disseminated, publicly displayed, or performed, in whole or substantial infringing part, without the authorization of the rights owners. YouTube has done so, first independently and, since November 13, 2006, with the active, knowing encouragement and complicity of, and for the direct financial benefit of, its parent, Google. Defendants have continued and will continue their brazen acts of willful copyright infringement unless enjoined by this Court.

3. The Class is adequately represented by The Football Association Premier League Limited ("PL" or the "Premier League") and Bourne Co. ("Bourne," together with the Premier League, "Lead Plaintiffs"), and Bourne's affiliate Murbo Music Publishing, Inc. The Class is also represented by the Named Plaintiffs Cherry Lane Music Publishing Company, Inc., Cal IV Entertainment, LLC, Robert Tur d/b/a Los Angeles News Service, National Music Publishers' Association, The Rodgers & Hammerstein Organization, Stage Three Music (US), Inc., Edward B. Marks Music Company, Freddy Bienstock Music Company d/b/a Bienstock Publishing Company, Alley Music Corporation, X-Ray Dog Music, Inc., Fédération Française de Tennis, The Music Force Media Group LLC, The Music Force LLC, and Sin-Drome Records, Ltd. (collectively, "Named Plaintiffs"). The financial success and ability of Lead and Named Plaintiffs and other Class members (collectively, sometimes referred to herein as "Plaintiffs") to continue to produce and distribute original and valuable creative works, including musical compositions, sound recordings, motion pictures, television productions, and sports broadcasting, is dependent upon this Court's protection of their property rights. The National Music Publishers' Association, which represents over 700 music publishers, is suing as an association on behalf of its copyright owner members and seeks only equitable relief, not damages.

## THE PARTIES

A. <u>Plaintiffs</u>

<u>Premier League</u>

10. Lead Plaintiff Premier League, the top division of English soccer, broadcasts its copyrighted creations in 204 countries worldwide and is viewed by audiences estimated at 2.59 billion people. Premier League is a private limited company incorporated in England and Wales with a principal place of business at 30 Gloucester Place, London, W1U 8PL. Premier League owns the copyright and/or the relevant exclusive rights in the following Protected Works (as that term is defined in Paragraph 45 of this Amended Complaint), audiovisual footage consisting of soccer matches (the "PL Works"), among others:

    A. Chelsea v Tottenham, April 7, 2007

    B. Arsenal v West Ham, April 7, 2007

    C. Portsmouth v Manchester United, April 7, 2007

    D. Watford v Portsmouth, April 9, 2007

    E. Fulham v Manchester City, April 9, 2007

    F. Bolton v Everton, April 9, 2007

    G. Liverpool v Wigan, April 21, 2007

    H. Fulham v Blackburn, April 21, 2007

    I. West Ham v Everton, April 21, 2007

    J. Manchester United v Middlesbrough, April 21, 2007

    K. Tottenham v Arsenal, April 21, 2007

    L. Chelsea v Bolton, April 28, 2007

    M. Everton v Manchester United, April 28, 2007

Contains Confidential and/or Highly Confidential Information- Subject to Protective Order

  N.  Middlesbrough v Tottenham, April 28, 2007

  O.  Wigan v West Ham, April 28, 2007

  P.  Arsenal v Fulham, April 29, 2007

  Q.  Liverpool v Chelsea, August 19, 2007

  R.  Manchester United v Tottenham, August 26, 2007

  S.  Tottenham v Arsenal, September 15, 2007

11. Notwithstanding the fact that Defendants had actual and constructive knowledge of the presence of the above works on the YouTube website, certain of these works remained or remain on the YouTube website having been posted or re-posted by users to YouTube despite YouTube's actual and constructive knowledge of their infringing nature. The fact that these works were added back to the YouTube website *after* YouTube had actual and constructive knowledge of their presence further shows that notifying Defendants of the infringements is futile. These re-posted works include:

  A.  Liverpool v Chelsea, August 19, 2007. A video clip from this match was initially uploaded on August 19, 2007. After a takedown notice was sent, the same clip was subsequently re-posted twice on August 21, 2007, once on August 22, once on August 26, once on August 27, once on August 28, and once again on August 30.

  B.  Manchester United v Tottenham, August 26, 2007. A video clip from this match was initially uploaded on August 26, 2007. After a takedown notice was sent, the same clip was subsequently re-posted twice on August 27, twice on August 28, and twice again on August 30.

      C.      Tottenham v Arsenal, September 15, 2007. A video clip from this match was initially uploaded on September 15, 2007. After a takedown notice was sent, the same clip was subsequently re-posted on September 16, 2007.

12.      These re-posts were or are made in a deliberate effort to maintain these copies of infringing works on the YouTube site with full knowledge of their infringing nature. For instance, one work was reposted with an introductory frame "F**K THE NETRESULT W*NKERS," (referring to the monitoring and take-down agency used by the Premier League) and showing that the re-post was made with the full knowledge of the Premier League's rights. (Profanity omitted.)

13.      Defendants are fully aware of such re-posting activity but, as set forth below, have chosen not to take meaningful steps to prevent it.

14.      Since the commencement of this action more than 14,000 unauthorized postings of PL Works have been made to the YouTube website.

15.      The PL Works are not "United States works" within the meaning of the U.S. Copyright Act and are therefore not subject to any registration requirements under U.S. copyright law. In addition, and without limiting the Premier League's rights or remedies, the Premier League is, pursuant to section 411(b) of the U.S. Copyright Act, entitled to all remedies under U.S. copyright law, including statutory damages and attorneys' fees.

### Bourne

16.      Lead Plaintiff Bourne is an independent music publisher formed in 1919, with a principal place of business at 5 West 37th Street, New York, NY. Bourne holds the exclusive copyright interests in some of the world's most beloved and well-known songs. Bourne owns

9

Contains Confidential and/or Highly Confidential Information- Subject to Protective Order

138-0007

the copyright and/or the relevant exclusive rights in the following Protected Works, musical compositions (the "Bourne Works"), among others:

  A. "Inka Dinka Doo," registration number Eu 78547, renewed R 266593, registration number Ep 39319, renewed R 267341-42.

  B. "Let's Fall In Love," registration number Eu 77136, renewed R 264257, R 263531, registration number Ep 39325, renewed R 275972.

  C. "Popcorn," registration number Eu 131704, renewed Re 750-746, registration number Ep 293632, renewed R 799-458.

  D. "San Antonio Rose," registration number Eu 225380, renewed R 412838, registration number Ep 84968, renewed R 412839.

  E. "Smile," registration number Ep 81725, renewed Re 151-113, Re 129-387.

  F. "Far Away Places," registration number Eu 92652, renewed R 585879, registration number Ep 25000, renewed R 602745.

  G. "Confessin' (That I Love You)," registration number Eu 17265, renewed R 187325, registration number Ep 14162, renewed R 189021.

17. Bourne specifically identified a number of the above works by title, copyright registration, and infringing URLs where such works appeared on the YouTube website in the original Complaint in this action dated May 4, 2007 and in the First Amended Complaint, dated November 7, 2007, including the work entitled "Smile" at http://www.youtube.com/watch?v=7r9qwAZnl64. Despite the fact that Defendants were thereby notified of this infringement, the work remained on the YouTube website, at the same URL, for many additional weeks.

10

### Murbo Music Publishing, Inc.

18. Plaintiff Murbo Music Publishing, Inc. ("Murbo"), an affiliate of Lead Plaintiff Bourne, is an independent music publisher with a principal place of business at 5 West 37th Street, New York, NY. Murbo owns the copyright and/or the relevant exclusive rights in the following Protected Works, consisting of musical compositions (the "Murbo Works"), among others:

   A. "Black Magic Woman," registration numbers Eu 59671, renewed Re 719-457, registration number Ep 287018, renewed Re 774-250.

### Cherry Lane Music Publishing Company, Inc.

19. Plaintiff Cherry Lane Music Publishing Company, Inc. ("Cherry Lane") is a New York-based privately held music publisher founded in 1960 by renowned producer/arranger Milt Okun. Cherry Lane oversees an extensive catalogue of legendary songs from Elvis Presley, John Denver, Quincy Jones and Ashford & Simpson, to more recent popular songs from the Black Eyed Peas, John Legend and Wolfmother. Cherry Lane's partners and clients include DreamWorks Pictures, DreamWorks Animation SKG, The Weinstein Company, Lakeshore Entertainment, Walden Media, Sanrio (Hello Kitty), NASCAR, Icon Productions, NFL Films, World Wrestling Entertainment, Professional Bull Riders, Pokémon USA, Inc. and 4Kids TV, among others. Cherry Lane is incorporated in New York and has its principal place of business at 6 East 32nd Street, New York, NY. Cherry Lane owns the copyright and/or the relevant exclusive rights in the following Protected Works, consisting of musical compositions (the "Cherry Lane Works"), among others:

11

Contains Confidential and/or Highly Confidential Information- Subject to Protective Order

  A. "Afternoon Delight," registration number Eu 648070, renewed Re 895-945, registration numbers Ep 354820, Ep 358013 and Ep 360542.

  B. "Thank God, I'm a Country Boy," registration number Eu 469657, renewed Re 861-042, registration numbers Ep 370986, Ep 371122, Ep 371123.

  C. "American Beauty," registration number Pa 1-004-147.

  D. "Soul Bossa Nova," registration number Ep 169395, renewed Re 468-838, registration number Ep 340886.

  E. "Strawberry Letter #23," registration number Eu 270903, registration number Pa 587 523.

### Cal IV Entertainment, LLC

20. Plaintiff Cal IV Entertainment, LLC (hereinafter "Cal IV") is a privately-held independent music publisher organized under the laws of Tennessee, and has its principal place of business at 808 19th Avenue South, Nashville, TN. Cal IV holds the copyright interests in nearly 15,000 songs, many of which have been recorded by leading country music artists. Cal IV owns the copyright and/or the relevant exclusive rights in the following Protected Works, consisting of musical compositions (the "Cal IV Works"), among others:

  A. "If You're Going Through Hell," registration number Pa 1321261.

  B. "Sharing The Night Together," registration numbers Eu 640334, Eu 666747.

### Robert Tur d/b/a Los Angeles News Service

21. Plaintiff Robert Tur d/b/a Los Angeles News Service ("Tur") is a world-renowned broadcast journalist who virtually invented live televised coverage of events from the vantage

point of a helicopter. Tur's work, which has won several Emmy awards and the prestigious Edward R. Murrow award, includes the now infamous O.J. Simpson slow speed "White Bronco" chase and the Reginald Denny beating during the LA Riots. Tur's principal place of business is at 1247 Lincoln Blvd., Santa Monica, California, 90401. Tur owns the copyright and/or the relevant exclusive rights in the following Protected Works, consisting of video or audiovisual works (the "Tur Works"), among others:

    A.    "Beating of Man in Brown Hatchback with rescue," registration number Pa 576 702.

    B.    "Beating of Man in White Panel Truck," registration number Pa 576 703.

    C.    "Beating of Reginald Denny," registration number Pa 576 704.

    D.    "Earthquake," registration number Pa 839-603.

    E.    "North Hollywood Shootout," registration number Pa 862-544.

### National Music Publishers' Association

22.    Plaintiff NMPA is the preeminent trade association representing the interests of music publishers in the United States, with a principal place of business at 101 Constitution Ave. NW, Suite 705 East, Washington DC. Founded in 1917, NMPA's mission for nearly a century has been to protect, promote, and advance the interests of the creators and owners of copyrighted musical works. NMPA currently has over 700 members, including both small and large music publishers, whose interests it has long protected before Congress, the U.S. Copyright Office, and the courts. NMPA's wholly owned licensing subsidiary, The Harry Fox Agency, Inc. ("HFA"), acts as an agent for almost 35,000 music publishing entities that collectively own and/or control more than 1.6 million copyrighted musical works. HFA is by far the largest mechanical licensing and collection agency for musical publishers in the United States, with a principal place

Contains Confidential and/or Highly Confidential Information- Subject to Protective Order

138-0011

of business at 601 West 26th Street, 5th Floor, New York, NY. HFA licenses copyrighted musical works for reproduction and distribution in the form of physical phonorecords (CDs, cassette tapes and phonorecords), as well as for reproduction, distribution and display over the Internet through digital download and streaming services in the form of digital phonorecord deliveries, or "DPDs." HFA also licenses musical compositions in connection with other physical and digital uses. HFA collects and distributes royalties derived from these licensed uses of copyrighted music and conducts royalty examinations of licensees on behalf of its publisher-principals.

23. Central to NMPA's purpose is safeguarding the value of its members' intellectual property. The present action presents critical issues for owners of copyrighted works, including all of NMPA's members whose copyrights are being infringed by Defendants. Because the question of the legality of Defendants' conduct affects NMPA's members in an identical manner, the equitable relief sought by NMPA herein does not require the participation of NMPA's individual members.

### The Rodgers & Hammerstein Organization

24. Plaintiff Rodgers & Hammerstein Organization ("RHO"), on behalf of itself and Williamson Music Co., is a joint venture established under the laws of the State of New York, with a principal place of business at 1065 Avenue of the Americas, Suite 2400 New York, NY. RHO is a member of NMPA and a principal of HFA. RHO owns the copyright and/or the relevant exclusive rights in the following Protected Works, consisting of musical compositions (the "RHO Works"), among others:

    A.    "Bali Ha'I," registration number Ep 34987, renewed R 647156.

14

Contains Confidential and/or Highly Confidential Information- Subject to Protective Order

B. "The Carousel Waltz," registration number Eu 421279, renewed R 549622, registration number Ep 831, renewed R 560321, renewed R 554966, registration number Pa 175155.

C. "Climb Ev'ry Mountain," registration number Ep 141696, renewed Re 338-191.

D. "Do-Re-Mi," registration number Ep 134312, renewed Re 329-350, renewed Re 335-268.

E. "Edelweiss," registration number Eu 602935, renewed Re 332-881, renewed RE 335-357, registration number Ep 136496, renewed Re 358448.

F. "Getting to Know You," registration number Ep 54068, renewed Re 17-518.

### Stage Three Music (US), Inc.

25. Plaintiff Stage Three Music (US), Inc. ("Stage 3"), is a leading independent music publisher formed in 2003, with a principal place of business at 13A Hillgate Street, London, W8 7SP. Stage 3 is a member of NMPA and a principal of HFA. Stage 3 owns the copyright and/or the relevant exclusive rights in the following Protected Works, consisting of musical compositions (the "Stage 3 Works"), among others:

A. "Walk This Way," registration number Eu 569366, renewed Re 886-653, registration number Ep 380213.

B. "Dream On," registration number Eu 381003, renewed Re 844-286.

C. "Back in the Saddle," registration number Eu 758246, registration number Ep 380124.

D. "Sweet Emotion," registration number Eu 569371, renewed Re 887-602.

15

Contains Confidential and/or Highly Confidential Information- Subject to Protective Order

138-0013

  E. "La Grange," registration number Eu 426196, renewed Re 834-512, registration number Ep 337257.

  F. "Tush," registration number Eu 568381, renewed Re 886-650, registration number Pa 35-744.

  G. "Sharp Dressed Man," registration number Pa 170-377.

  H. "Legs," registration number Pa 170-380.

  I. "Gimme All Your Lovin," registration number Pa 170-557.

### Edward B. Marks Music Company

26. Plaintiff Edward B. Marks Music Company ("EBMMCo"), formed in 1894, holds the exclusive copyright interests in numerous concert music and popular song titles. EBMMCo is a partnership organized under the laws of the state of New York and has its principal place of business at 126 East 38th Street, New York, NY, 10016. EBMMCo owns the copyright and/or the relevant exclusive rights in the following Protected Works, consisting of musical compositions (the "EBMMCo Works"), among others:

  A. "I'd Do Anything For Love (But I Won't Do That)," registration numbers PA 668-441, PA 677-622.

  B. "God Bless The Child," registration number Ep 96565, renewed R 440611.

### Freddy Bienstock Music Company

27. Plaintiff Freddy Bienstock Music Company d/b/a Bienstock Publishing Company ("Bienstock") holds the exclusive copyright interests in numerous concert music and popular song titles. Bienstock is a partnership organized under the laws of the state of New York and has

16

Contains Confidential and/or Highly Confidential Information- Subject to Protective Order

138-0014

its principal place of business at 126 East 38th Street, New York, NY, 10016. Bienstock owns the copyright and/or the relevant exclusive rights in the following Protected Works, consisting of musical compositions (the "Bienstock Works"), among others:

    A.    "The Revolution Will Not Be Televised," registration number Eu 269324, renewed RE 671-567.

### Alley Music Corporation

28.    Plaintiff Alley Music Corporation ("Alley") holds the exclusive copyright interests in numerous concert music and popular song titles. Alley is incorporated in New York and has its principal place of business at 126 East 38th Street, New York, NY, 10016. Alley owns the copyright and/or the relevant exclusive rights in the following Protected Works, consisting of musical compositions (the "Alley Works"), among others:

    A.    "I Get the Sweetest Feeling," registration number Eu 58217, renewed Re 718-147, Re 740-294, registration number Ep 250514, renewed Re 718-157, Re 740-293.

29.    Alley, Bienstock, and EBMMCo are affiliates or subsidiaries of Carlin America, Inc., a leading independent music publishing company.

### X-Ray Dog Music, Inc.

30.    Plaintiff X-Ray Dog Music, Inc. ("X-Ray Dog") was formed in 1996 and is an innovator in the creation of original music and sound recordings used in motion picture film trailers, including such theatrical blockbusters as The Lord of the Rings, Pirates of the Caribbean, Spiderman and Harry Potter. Its musical compositions and sound recordings are

Contains Confidential and/or Highly Confidential Information- Subject to Protective Order

licensed to film producers for limited purposes and X-Ray Dog retains all rights in them, for future licensing in connection with other films and projects. X-Ray Dog is incorporated in California and has its principal place of business at 1023 N. Hollywood Way, Suite 103, Burbank, CA. X-Ray Dog owns the copyright and/or the relevant exclusive rights in the following Protected Works, consisting of musical compositions and sound recordings ("X-Ray Dog Works"), among others:

    A.    "Here Comes The King," registration number SR 363-745.

    B.    "Dethroned," registration number SR 363-767.

### Fédération Française de Tennis

31.    Plaintiff Fédération Française de Tennis ("FFT") is France's national tennis organization, and organizes the Roland-Garros International Championships, also known as the French Open. FFT has its principal place of business at 2 Avenue Gordon Bennett, 75016 Paris, France. FFT owns the copyright and/or the relevant exclusive rights in the following Protected Works, consisting of audiovisual footage of tennis matches ("FFT Works"), among others:

    A.    Roger Federer v Nicolay Davydenko, June 8, 2007.

    B.    Ernests Gulbis v Tim Henman, May 29, 2007.

    C.    Ana Ivanovic v Maria Sharapova, June 7, 2007.

32.    The FFT Works are not "United States works" within the meaning of the U.S. Copyright Act and are therefore not subject to any registration requirements under U.S. copyright law. In addition, and without limiting FFT's rights or remedies, FFT is, pursuant to section 411(b) of the U.S. Copyright Act, entitled to all remedies under U.S. copyright law, including statutory damages and attorneys' fees.

18

Contains Confidential and/or Highly Confidential Information- Subject to Protective Order

### The Music Force

33. Plaintiffs The Music Force Media Group LLC, a major independent record company organized under the laws of Tennessee, The Music Force LLC, a highly respected independent music publisher organized under the laws of Tennessee, and Sin-Drome Records, Ltd., an independent record company incorporated in California, together with their affiliated and related companies (collectively, "The Music Force"), all with a principal place of business at 4658 Wortser Ave. Sherman Oaks, CA, 91423, represent musical compositions embodied in sound recordings which have sold in excess of 50 million units, recorded by Artists such as Alicia Keyes, Neil Diamond, Peter Cetera, Anita Baker, Tupac Shakur, and Notorious B.I.G.; have received multiple Grammy nominations, including a Grammy award and other awards; and own the copyrights and/or the relevant exclusive rights in the following Protected Work(s) consisting of sound recordings, visual material and musical compositions ("The Music Force Works"), among others:

   A. "Stuck on You," registration number SR 132325 (sound recording).

   B. "Stuck on You," registration number Pau 1 6143 70 (visual material).

   C. "Stuck on You," registration number PA 527882 (musical composition).

   D. "What You Won't Do For Love," registration number SR 04796 (sound recording).

### B. Defendants

34. Defendant YouTube, Inc. is a corporation organized and existing under the laws of the State of Delaware and with its principal place of business at 1000 Cherry Avenue, San Bruno, California. YouTube, Inc. was founded in February 2005. Although YouTube

Contains Confidential and/or Highly Confidential Information- Subject to Protective Order

43. This Court also has personal jurisdiction over Defendants pursuant to CPLR § 302. Defendants, individually and collectively, acting alone and in concert, transact business within New York State and this District and supply goods and services in New York State by permitting users who reside in New York State frequently to upload and view videos. CPLR § 302(a)(1). Defendants commit tortious acts of copyright infringement within New York State every time they permit, encourage, and enable a user to view a copyright protected video without license or permission of the copyright owner. CPLR § 302(a)(2). Defendants commit tortious acts of copyright infringement outside of New York State, which cause injury within New York State, every time they permit, encourage, and enable a user to view an infringing video clip without the express permission or license of New York State resident copyright holders. CPLR § 302(a)(3). Defendants regularly do and solicit business within New York State and derive substantial revenue from their services within New York State. CPLR § 302(a)(3)(i). Defendants derive substantial revenue in interstate commerce and should reasonably expect their copyright infringement to have consequences in New York State. CPLR § 302(a)(3)(ii).

44. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a).

## CLASS ACTION ALLEGATIONS

45. Plaintiffs bring this action on behalf of themselves and as a class action pursuant to Federal Rules of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3), and/or 23(c)(4) on behalf of a class initially defined as all persons and entities that (a) own the copyright and/or the relevant exclusive rights in an original work, and (b) for which a certificate of registration has been issued or the deposit, application, and fee required for registration have been properly submitted to the U.S. Copyright Office; and/or (c) in the case of certain sound recordings, own

Contains Confidential and/or Highly Confidential Information- Subject to Protective Order

the exclusive rights protected under state law; and/or (d) own the exclusive rights in an unregistered copyrighted work and will have registered that work prior to the time of final judgment in this action; and/or (e) own a work that does not require registration as a matter of law (subsections (a)-(e), collectively, are sometimes referred to herein as "Protected Works") that, without authorization, was reproduced, adapted, distributed, publicly displayed, performed or otherwise transmitted or disseminated on or through the YouTube.com website on or after April 15, 2005 through the deadline for submitting a claim form in this action, as will be determined by the Court (the "Class"). Excluded from the Class are: (a) Defendants; (b) the subsidiaries and affiliates of Defendants; (c) any person or entity who is a partner, officer, director, employee, or controlling person of any Defendant; (d) any entity in which any Defendant has a controlling interest; (e) any copyright holder, including any Strategic Partner, in respect of those Protected Works and uses which had been duly authorized for the Defendants to exploit at the time Defendants engaged in such acts; (f) the legal representatives, heirs, successors and assigns of any excluded party.

46. This action has been brought and may properly be maintained, pursuant to Federal Rules of Civil Procedure 23(a)(1)-(4), 23(b)(1), (2) or (3), 23(c)(4), and case law thereunder.

47. Numerosity Of The Class – Fed.R.Civ.P. 23(a)(1). The members of the Class are so numerous that joinder of all members is impracticable. According to Nielsen/NetRatings, a leading Internet audience measurement firm, YouTube has approximately 20 million visitors per month. YouTube has admitted in court filings that in July 2006 more than 20 million unique visitors viewed YouTube's website. Since July 2006, YouTube has reported in its press releases that its users view more than 100 million videos every single day. A Nielsen Online Report indicates that in July 2008, YouTube had more than 74 million unique visitors. These visitors