# VII. User Partner Agreement Reps and Warranties

- Each party represents and warrants that it has full power and authority to enter into the Agreement and that upon execution and delivery hereof, this Agreement shall constitute the valid and binding obligations of the party. User Partner represents and warrants (i) it has and will maintain throughout the Test all rights, authorizations and licenses, including but not limited to licenses covering the use of sound recordings and musical compositions embodied in User Partner Content, that are required in order for it to permit YouTube to display YouTube Ads in conjunction with User Partner Content as set forth herein, and (ii) such display of YouTube Ads in conjunction with the display of User Partner Content as set forth herein does not infringe any third party right.



Confidential

Figueira Decl. Tab 154 - Part 4

G00001-01027039

# VIII. User Partner Agreement Indemnification

- User Partner shall indemnify and defend YouTube and its affiliates ... from and against any and all claims, demands, causes of action, debt or liability, including reasonable attorneys fees ("Losses") incurred in connection with any third party claim based upon or otherwise arising out of a claim alleging facts that would constitute a breach of User Partner's representations and warranties (i) and (ii) in the foregoing [Reps and Warranties] Section.



Confidential

G00001-01027040

Confidential

G00001-01027041

# Copyright 101 for YouTube Partners

Glenn Otis Brown, YouTube
Karin Swope, Keller Rohrback

May 1-2, 2007




Confidential

Speaker Notes Slide: 3

Copyright is trespassing and you can be liable for it. Just as real property is protected by law, so is IP protected by law, copyright law. The more creative the work, the more you can prove that it is unique.

Minimal creativity: stick figure may not be copyrighted, but add more, and on your way to creating a copyrighted character.

Speaker Notes Slide: 4

Copyright law lists the following types of works of authorship as those that can be protected by copyright.

Not Copyrightable – procedures, methods, systems, processes, concepts, principles, devices.

Speaker Notes Slide: 5

Not fixed: choreographed works that have not been notated, or improvised speech.

Ideas are not copyrightable: many ways to express the idea of a sunset, or a murder, or a four bedroom house: architect can design floor plan, writer describes house, photographer takes a picture of a house; painter draws a house: each artist has portrayed the idea of a four bedroom house through a different expression

Facts are not copyrightable: noone has the exclusive right to tell the story about an incident, but once a story is told, that fixed expression is protected by copyright.

Government works does not include network broadcasts of government related subject matter.

Speaker Notes Slide: 6

Examples of reproduction: photocopy of a magazine article, copy of a videotape, back up of a computer disk

Derivative Works: Copyright Owner has the exclusive right to create adaptations of a protected work and transform the protected work into a new work. Examples of derivative works: a screen play from a novel; a rap song from a rock song; a video from a performance; a postcard from a painting.

Examples of distribution: publishing and selling a book, sending an email

Examples of public performance: making a recording; broadcasting a sports event

Examples of public display is posting a videotape on the internet, or putting it on a bulliten board

Confidential

Speaker Notes Slide: 7

Copyright notice is like a "No Tresspassing" sign on your property.

Speaker Notes Slide: 10

Statutory damages between $750-$30,000; $150,000 if wilfull, per copy

Speaker Notes Slide: 11

Unauthorized copies being transmitted in another medium is not transformative under purpose of work, not faur use: A service that is innovative, is not transformative: MP3 and Napster. YouTube works under assumption that merely taking video and posting it on the internet is not fair use.

Parody: The parody must create a new work that can stand on its own, while criticizing the original work. The work may contain only enough of the original work to make it identifiable as a parody. Parody is protected as freedom of speech, but calling it a parody doesn't make it a parody.

Speaker Notes Slide: 12

Fair use. A movie company used a photo of a naked pregnant woman and superimposed the head of actor Leslie Nielsen. The photo was a parody using similar lighting and body positioning of a famous photograph taken by Annie Leibovitz of the actress Demi Moore for the cover of Vanity Fair magazine. Important factors: The movie company's use was transformative because it imitated the photographer's style for comic effect or ridicule. (Leibovitz v. Paramount Pictures Corp., 137 F.3d 109 (2d Cir. N.Y. 1998).)

Not a fair use. An artist created a cover for a New Yorker magazine that presented a humorous view of geography through the eyes of a New York City resident. A movie company later advertised their film Moscow on the Hudson using a similar piece of artwork with similar elements. The artist sued and a court ruled that the movie company 's poster was not a fair use. Important factors: Why is this case different than the previous case involving the Leslie Nielsen/Annie Leibovitz parody? In the Leibovitz case, the use was a true parody, characterized by a juxtaposition of imagery that actually commented on or criticized the original. The Moscow on the Hudson movie poster did not create a parody; it simply borrowed the New Yorker's parody (the typical New York City resident's geographical viewpoint that New York City is the center of the world). ( Steinberg v. Columbia Pictures Industries, Inc., 663 F. Supp. 706 (S.D. N.Y. 1987).)

Speaker Notes Slide: 13

Material in the public domain is free for all to use in any way they wish to use it

Copyright term has ended

Angels We Have Heard On High (traditional French carol, translated by James Chadwick, 1862s); Away In A Manger (Music James R. Murray, 1887, words unknown, possibly Martin Luther); Deck The Halls (Traditional Welsh Carol, first published 1881, author unknown); The First Noel (traditional English carol from the 1300s, first modern version appeared 1833); God Rest Ye Merry Gentlemen (Traditional English Carol, possibly from the 1500s, first published in 1827); Good King Wenceslas (Music from a 13th century carol, words John M. Neal, 1853); Hark The Herald Angels Sing (words Charles Wesley, 1739, music Felix Mendelssohn, 1858); It Came Upon a Midnight Clear (Written by Edmund Hamilton sears and Richard Storrs Wills. The words were first published in 1849, the music in 1850); Jingle Bells (words Joy To The World and music James Pierpont, 1857);

G00001-01027043

Confidential

Jolly Old St. Nicholas (1870s, Benjamin Hanby); (words Isaac Watts, 1713, music George Frederick Handel [date unknown, but he died in 1759]); O Christmas Tree (Traditional German carol, 1800s); O Come All Ye Faithful (words John Wade, music John Reading, early 1700s, 1751); O Little Town of Bethlehem (words Rector Phillip Brooks, music Lewis Redner, both 1858); Silent Night (translated from German by Joseph Moore in 1871); The First Noel (First published in 1823, but may date back to the 13th century. New arrangement and extra lyrics by William Sandys were added in 1833); The Twelve Days Of Christmas (Believed to date to the 1500s, first published 1780); Up On the Housetop (Written by Benjamin Handy--I couldn't find a year, but he died in 1867); We Three Kings (John H. Hopkins, Jr., 1857); We Wish You A Merry Christmas (English carol from the 1500s).

Speaker Notes Slide: 14

Musical artists can record a cover version of any song through a compulsory mechanical license. U.s. copyright website.

> ASCAP, BMI and SESAC are excellent resources for identifying the copyright holder for a particular piece of musice. They are licensing organizations that collect royalties through licensing fees.

Rights to a specific sound recording may be held by different party than rights to music, lyrics and arrangement. Ie. Vivaldi and Boston symphony's recording of Vivaldi. Bach is in the public domain.

Speaker Notes Slide: 16

It doesn't matter how long or short the clip is, or exactly how it got to YouTube. If you taped it off cable, videotaped your TV screen, or downloaded it from some other website, it is still copyrighted, and requires the copyright owner's permission to distribute.

It doesn't matter whether or not you give credit to the owner/author/songwriter—it is still copyrighted.

It doesn't matter that you are not selling the video for money—it is still copyrighted.

It doesn't matter whether or not the video contains a copyright notice—it is still copyrighted.

It doesn't matter whether other similar videos appear on our site—it is still copyrighted.

It doesn't matter if you created a video made of short clips of copyrighted content—even though you edited it together, the content is still copyrighted.