# SCHAPIRO DECLARATION EXHIBITS CONTINUED

# Schapiro Exhibit 85

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

THE FOOTBALL ASSOCIATION PREMIER )
LEAGUE LIMITED, BOURNE CO., et al.,)
on behalf of themselves and all )
others similarly situated, )
                                    )
                 Plaintiffs, ) Case No.
        vs. ) 07-CV-3582
                                    )
                                    )
YOUTUBE, INC., YOUTUBE, LLC, and )
GOOGLE, INC., )
                                    )
                Defendants. )

---

VIDEOTAPED DEPOSITION OF:

MARYANN SLIM

NEW YORK, NEW YORK

FRIDAY, OCTOBER 23, 2009

BY: REBECCA SCHAUMLOFFEL
JOB NO. 17852

A P P E A R A N C E S:


FOR THE PLAINTIFFS:
    LIEFF, CABRASER, HEIMANNN &
    BERNSTEIN, LLP
BY:  DAVID S. STELLINGS, ESQ.
    250 Hudson Street, 8th floor
    New York, New York 10013-1413
    Dstellings@lchb.com




FOR THE DEFENDANTS YOUTUBE, INC., YOUTUBE,
LLC and  GOOGLE, INC.:
    MAYER BROWN, LLP
BY:  ARIC S. JACOVER, ESQ.
    FIDELIS I. AGBAPURUONWU, ESQ.
    1675 Broadway
    New York, New York 10019
    (212) 506-2146
    Asjacover@mayerbrown.com
    Fagbapuruonwu@mayerbrown.com




ALSO PRESENT:


Carlos King, Videographer

MARYANN SLIM

 1

 2          YouTube?

 3                    A.    No.

 4                    Q.    Is it more than ten?

 5   12:10:55         A.    I truly, off the top of my

 6          head, don't know.  I would reckon for

 7          YouTube, for Stage Three UK, probably

 8          between 10 and 20.  I am not sure.

 9                    Q.    I am going to show you a

10   12:11:38  document that we will have marked as

11          Stage Three UK Exhibit 10, Bates

12          labeled ST00097906 to '11.

13                    (Whereupon, the

14                    aforementioned documents,

15                    ST00097906 to '11, were marked as

16                    Stage Three UK Exhibit 10 for

17                    identification as of this date by

18                    the Reporter.)

19                    Q.    This is an E-mail exchange

20   12:12:39  between yourself and Ian Neil?

21                    A.    That's correct.

22                    Q.    This is regarding the

23          licensing of the song, Rock & Roll

24          Queen in the Guy Ritchie film,

25   12:12:51  RocknRolla; is that correct?

1       MARYANN SLIM

2    A. That's correct.

3    Q. Is Rock & Roll Queen a US

4 work or a UK work?

5 12:13:00  A. It is a UK work.

6    Q. Do you know if that

7 composition is subject to either of the

8 Sub-publishing Agreements we discussed

9 earlier?

10 12:13:10   MR. STELLINGS: Objection.

11     You can answer, if you know.

12    A. Again, I have not seen

13 written documentation, but I would

14 think that it is.

15 12:13:17  Q. Who is the writer of Rock &

16 Roll Queen?

17    A. It is Morgan, Cooper,

18 Morgan. So it is Philip Morgan,

19 Charlotte Cooper and Joshua Morgan.

20 12:13:33  Q. If you can turn to the

21 second page of this document, you

22 write, "I approve the attached request

23 to use Rock & Roll Queen in the Guy

24 Ritchie film, RocknRolla as per the

25 12:13:47 terms and fees below."

MARYANN SLIM

1

2          Do you see that?

3      A.   I do.

4      Q.   And on the next page, under

5  12:13:56  rights, in the middle of that

6      paragraph, the media includes "by means

7      of the Internet or similar by way of

8      both downloading and streaming."

9          Do you see that?

10 12:14:12  A.   I do.

11     Q.   So this grant of rights

12     would include posting on YouTube,

13     correct?

14     A.   Yes, it would.

15 12:14:19  Q.   And this particular license

16     permits the licensee -- the licensee to

17     post the synchronized content on

18     websites that allow both downloading

19     and streaming?

20 12:14:38  A.   Correct.

21     Q.   Now, if this grant of rights

22     were limited only to streaming, would

23     that still permit the licensee to post

24     on YouTube?

25 12:14:49     MR. STELLINGS:  Objection.

MARYANN SLIM

1
2      Hypothetical.

3              You can answer, if you know.

4      A.      Let me just quickly read the

5  12:14:55  rights.

6              Sorry; can you ask the

7      question again?

8      Q.      Sure.  So if this grant of

9      rights were limited only to streaming,

10  12:15:29  as in, it did not allow downloading,

11     would that still permit the licensee to

12     post on YouTube?

13             MR. STELLINGS:  I still

14             object.

15  12:15:47  A.      As the -- if the film

16     company was intending to stream the

17     film on YouTube, then that would be

18     covered.

19     Q.      If the film company posted a

20  12:16:09  video on YouTube, that would be covered

21     as well?

22     A.      Only insofar as how the song

23     is contained within the film.  You

24     cannot pull the song out and lay it

25  12:16:20  over other bits of the film.

MARYANN SLIM

2  licensee here posted the synchronized

3  content on YouTube?

4              MR. STELLINGS:  The question

5  12:18:45    is whether you know.

6        A.    I don't know.

7        Q.    Would someone else know?

8              MR. STELLINGS:  Calls for

9  speculation.

10 12:18:55    You can answer, if you know.

11       A.    No.

12       Q.    So if anyone would know, you

13 would, at Stage Three?

14             MR. STELLINGS:  I object to

15 12:19:07    that question.

16       A.    We would -- I would be

17 informed if anyone else at Stage Three

18 knew and I didn't.

19       Q.    Would that information be

20 12:19:32    included on the Excel spreadsheet on

21 licensing?

22       A.    Which information?

23       Q.    The information on whether

24 the licensee posted content on YouTube

25 12:19:45    pursuant to this license.

MARYANN SLIM

     A.    No, that wouldn't go into the spreadsheet.

     Q.    If you can turn to the next page, '97909, you will see under "Miscellaneous," point 1 says, "The Subways will have the right to use the footage shot at the gig at Bournemouth Fire Station on Wednesday 22nd August 2007 on the internet via their own website, MySpace, YouTube," et cetera.

     Do you see that?

     A.    I do.

     Q.    Do you know if The Subways ever posted content on YouTube pursuant to this license?

     A.    I don't believe they did. We got the -- the film company delivered the parts to us late, way down the line. So I don't think they actually used it in the end. I can't confirm this, but I don't think they did because it was well past after the film had been out.

MARYANN SLIM

1

2      Q.     But if they did, that would

3  be authorized to be on YouTube?

4      A.     That would be authorized,

5  12:20:59  yes.

6      Q.     I am now going to show you a

7  document that we will have marked as

8  Stage Three UK Exhibit 11, Bates

9  ST00099175 to '77.

10             (Whereupon, the

11             aforementioned documents,

12             ST00099175 to '77, were marked as

13             Stage Three UK Exhibit 11 for

14             identification as of this date by

15  12:21:54   the Reporter.)

16      Q.     This appears to be a fully

17  executed license Agreement for the

18  song, Rock & Roll Queen, to be used in

19  an Internet advertisement by Harman

20  12:22:04  Consumer Group, correct?

21      A.     Correct.

22      Q.     Do you recognize this

23  license?

24      A.     I have seen it, yes.

25  12:22:11  Q.     Licensor, on the top, is

1                         MARYANN SLIM

2         Stage Three Music (US), Inc. on behalf

3         of Stage Three Music Limited.  Do you

4         see that?

5  12:22:24       A.    I do.

6                Q.    Why is this license on

7         behalf of Stage Three Music Limited?

8                MR. STELLINGS:  Objection.

9         Calls for a legal conclusion.

10  12:22:30         You can answer, if you know.

11          A.    This license was issued by

12        the US office.  It is not issued by

13        Stage Three UK.  This license is for a

14        UK song being issued out of the US for

15  12:22:45  the territory of the US.  Hence, the

16        wording.

17               Q.    If you look at Section 6,

18        "Grant of Rights" -- Section 6(a), I

19        should say, it allows use on YouTube in

20  12:23:19  non-downloadable streaming video

21        format.  Do you see that?

22          A.    Yes, I do.

23          Q.    Do you know if the licensee

24        posted any content on YouTube pursuant

25  12:23:29  to this license?

                    MARYANN SLIM

1

2          A.    I don't know.  It came out

3     of the US.

4          Q.    So would Jeff Duncan know

5  12:23:38  the answer to that?

6          A.    He might.  But as we give

7     them the right to do it, we wouldn't go

8     and check up on whether they had done

9     it or not.

10 12:23:50  Q.    Does Stage Three UK ever

11    inform YouTube -- I will ask this a

12    different way.

13               Has Stage Three UK ever

14    informed YouTube that -- of licenses

15 12:24:07  that it has authorized to be posted on

16    YouTube?

17          A.    No.

18               MR. JACOVER:  Let me know

19          when you want to break for lunch.

20 12:24:29       MR. STELLINGS:  Maybe 12:45

21          or so.

22          Q.    I am now going to show you

23    an exhibit that we will have marked as

24    Stage Three UK Exhibit 12, Bates number

25 12:24:43  ST00009404 to '07.

MARYANN SLIM

1

2          (Whereupon, the

3          aforementioned documents,

4          ST00009404 to '07, were marked as

5          Stage Three UK Exhibit 12 for

6          identification as of this date by

7          the Reporter.)

8          Q.    This is an E-mail exchange

9    between yourself and Theresa Torrance

10   12:25:26  with the subject, "I Box Up All The

11    Butterflies, The Boy Least Likely To,

12    ELLE Magazine video request."

13          A.    Correct.

14          Q.    Do you recognize this E-mail

15   12:25:35  exchange?

16          A.    I do.

17          Q.    On the first page, Theresa

18    Torrance writes to you, "I did notice

19    they want to exhibit on YouTube.  We

20   12:25:45  are in a Class Action lawsuit against

21    YouTube so please make sure any

22    licenses which grant unlimited Internet

23    rights exclude exhibition on YouTube."

24          Do you see that?

25   12:25:55     A.    I do.

MARYANN SLIM

2          a little bit further?

3               Q.   So we were talking about

4          when Stage Three UK learns of a

5  14:58:45  potentially unauthorized use on the

6          Internet.

7               A.   Yes.

8               Q.   My question was:  Does Stage

9          Three UK take any steps to determine

10 14:58:55  whether that use was authorized or not?

11               I believe you testified that

12          you would check with the licensing

13          folks at Stage Three UK to determine

14          whether the particular use was

15 14:59:09  authorized, correct?

16               A.   Correct.

17               Q.   What would you use to check

18          for that information?

19               A.   I would look through the

20 14:59:20  files.  Because if there was a case

21          where the song could be used supposedly

22          without consent, we would know the name

23          of the song, we would know the writer

24          and we would have evidence of the film

25 14:59:39  that it is being used in.

MARYANN SLIM

1

2          Therefore, we would be able

3     to look in the writer's file to see if

4     a license had been issued for that song

5  14:59:49  for that particular use.

6          Q.    The Excel spreadsheet you

7     described earlier, would that be a

8     source of information for you?

9          A.    That would be a source, yes.

10 15:00:00     Q.    Is any of that information

11    publicly available?

12          A.    That's a company document.

13    It is within the company.

14          Q.    So it is only available to

15 15:00:14  Stage Three employees?

16          A.    Yes.

17          Q.    Would you agree that the

18    reason you would check the licensing

19    records is because you can't

20 15:00:32  necessarily tell just by looking at,

21    say, a clip on the Internet whether

22    that clip had been authorized or not?

23          MR. STELLINGS:  Object to

24          the form of the question.

25 15:00:43          You can answer.

MARYANN SLIM

A.     I check because I have
worked for the company for six years.
Therefore, I am afraid I can't remember

15:00:49  every single license I have issued.  So
in some cases, I might be able to say,
yes, I licensed that.  But in other
cases, I might not know or it might
have come out of another territory.

15:01:01  Therefore, I have to double-check.

Q.     You testified earlier that a
number of compositions administered by
Stage Three include works in suit that
are -- sorry.  A number of compositions

15:01:18  administered by Stage Three, including
many of the works in suit, are co-owned
by other third parties; is that right?

MR. STELLINGS:  Objection.
Mischaracterizes the witness'

15:01:29  testimony.

You can answer.

A.     I didn't discuss the works
in suit.  I discussed UK -- Stage Three
UK copyrights and not all are

15:01:40  100 percent controlled by Stage Three.

MARYANN SLIM

1

2      Q.    Well, we did discuss, for

3  example, the works of Jerry Lynn

4  Williams, correct?

5  15:01:47      A.    Yes, we did.

6      Q.    And we discussed that those

7  works are co-owned?

8      A.    Yes, so that's one.

9      Q.    Those are -- some of those

10 15:01:57  of Jerry Lynn Williams are works in

11 suit, correct?

12     A.    Yes, I think only two of

13 those songs.

14     Q.    So my question is:  Do you

15 15:02:08  check with all the other co-owners of

16 the song before sending a Takedown

17 Notice to see if, perhaps, the other

18 co-owners may have licensed the content

19 in question?

20 15:02:20      A.    Yes, I might do that.

21     Q.    Do you do that every time?

22     A.    This isn't something I do on

23 a regular basis.  I have not received

24 notification of infringements of

25 15:02:35  copyrights within the UK on a regular

MARYANN SLIM

1

2          in that territory; i.e., we don't have

3          an office, a Stage Three office, in

4          that territory.  So as I said at the

5   15:51:09   beginning of the day, we do a

6          Sub-publishing Agreement with the local

7          publisher that they represent our works

8          in that territory.

9              Q.    What was the YouTube clip

10  15:51:21   that he sent you?

11             A.    It was a clip.  It was a

12         commercial for this supermarket chain

13         whereby the music used in the

14         commercial sounded like our song, Stuck

15  15:51:38   In The Middle With You.  So this is not

16         about it being up on YouTube.  This is

17         about whether the advertising agency

18         made a sound alike of our song because

19         they didn't want to license our song

20  15:51:56   for the commercial.

21             Q.    So Stage Three did not

22         license or authorize C1000 to use Stuck

23         In The Middle With You with this

24         advertisement?

25  15:52:08   A.    No.  And it is not --

MARYANN SLIM

technically, it is not using our song,

but it has produced a song to sound

like our song.  So this is a sound

15:52:19  alike case.

Q.    In the E-mail from you to

Steve Lewis and Alan Kading, at the top

you say, "This is with high

importance."  You are requesting that

15:52:33  they look at the YouTube clip or the

YouTube link.  And you say, "I am not

convinced we would win this one, but

please let me know if you would like CP

Masters to pursue this and get a

15:52:46  musicologist involved which we would

have to pay for."

Do you see that?

A.    I do.

Q.    Why were you not convinced

15:52:52  that you would win?

A.    Because I had heard the song

that they -- the piece of music they

used in the commercial.  And to me, it

didn't sound like it was reminiscent of

15:53:04  our song.  It didn't sound close enough

MARYANN SLIM

2        to our song that it would be identified

3        as a sound alike.  That was just my

4        personal opinion.

5  15:53:13     Q.  Why did you consider getting

6        a musicologist involved?

7        A.  Because that's the procedure

8        in the music publishing world.  If you

9        have a song that sounds -- that is what

10  15:53:30  you call a sound alike.  Or where you

11       think someone has taken a piece of your

12       song and put it in their song, a

13       musicologist is an expert that will

14       come in and listen to both your song

15  15:53:41  and the song that you think is

16       infringing your copyright and will

17       write a report to determine whether he

18       thinks it is a take of your song or

19       not.

20  15:53:50     Q.  So the reason that Stage

21       Three was considering getting a

22       musicologist involved, was that because

23       it is difficult for a person without

24       musical training to determine if this

25  15:54:05  was infringing or not?

MARYANN SLIM

A.    Yes.  And also you would
need an independent report.  Otherwise,
we could all be going after each other
15:54:15  saying, I think your song sounds like
my song.  So you need to establish an
independent report to backup your
argument.

Q.    Did you end up hiring a
15:54:23  musicologist to analyze this situation?

A.    I can't remember.  I think
they did.  I think that CP Masters did
in the end, but I can't remember.
There is more correspondence on this.
15:54:41  But once I handed it over to Steve, he
took it over because it is not my area.

Q.    Do you remember if Stage
Three took any action against C1000?

A.    If my memory is correct, we
15:54:55  did not because we decided it wasn't
close enough.

Q.    Did Stage Three send a
Takedown Notice to YouTube for this
clip?

15:55:07  A.    No.

MARYANN SLIM

1

2          Q.    Was that also because you

3    didn't believe that it was close

4    enough?

5    15:55:16    A.    Well, we hadn't established

6    that it was our song, it was our

7    copyright, in order to send a Takedown

8    Notice.  Until we could establish by

9    the musicologist that this song was a

10   15:55:29   sound alike, we have no right to send a

11   Takedown Notice.

12          Q.    Are you aware of any other

13   works in suit in this case that you

14   have had issue with sound alikes?

15   15:55:48    A.    With sound alikes?

16          Q.    Yes.

17          A.    No, I can't recall.

18          Q.    Any issues with Le Grange

19   with regard to sound alikes?

20   15:56:00    A.    Not out of the UK office,

21   no.

22          Q.    I am showing you an exhibit

23   that we will have marked as Stage Three

24   UK Exhibit 19, Bates number ST00083895

25   15:56:53   to '908.

                    MARYANN SLIM

1

2                   (Whereupon, the

3           aforementioned documents,

4           ST00083895 to '908, were marked as

5           Stage Three UK Exhibit 19 for

6           identification as of this date by

7           the Reporter.)

8                   Q.    Have you had a chance to

9           look this over?

10  15:57:35        A.    Sorry, I am reading it.  Do

11          you want me to read the whole thing?

12                  Q.    No, you don't have to read

13          it.  We will walk over it.

14                  A.    Yes, I have glanced at the

15  15:57:43    first page.

16                  Q.    This is a series of E-mails

17          relating to a request by an MIT

18          professor named Michael Snively to use

19          a 20-second clip of the song, "I Am

20  15:57:52    Glad I Hitched My Apple Wagon To Your

21          Star" in a video of one of his

22          lectures; is that correct?

23                  A.    That's correct.

24                  Q.    Do you recognize this series

25  15:58:05    of E-mails?

MARYANN SLIM

1

2          A.    I do.

3          Q.    And you respond, "Wow, this

4     is the best ad ever."

5  16:32:54          Do you see that?

6          A.    I do.

7          Q.    Did you view the YouTube

8     link that he had provided to you?

9          A.    Yes, I did.

10 16:33:02          Q.    And did you want to propose

11    to McDonald's they recreate this ad

12    using the song, Rock On?

13         A.    Yes, I would have liked to

14    have done that.

15 16:33:16          Q.    Did you present the idea to

16    McDonald's?

17         A.    No, I did not.

18         Q.    What was -- did your idea

19    ever come to fruition?

20 16:33:27          A.    No, it did not.

21         Q.    Why not?

22         A.    This was -- the reason for

23    this correspondence was when we -- was

24    David Essex's manager informed us in a

25 16:33:42     meeting, he said, you won't know this

MARYANN SLIM

2      because it was before you had the

3      rights to the song, but Rock On was

4      used in a McDonald's ad and it had a

5  16:33:56   James Dean look alike.  And he was

6      saying to us, you know, wouldn't it be

7      great if McDonald's wanted to

8      re-license that ad.

9           And clearly, as we weren't

10  16:34:07  the owners of that song at the time, we

11      had no knowledge of it, and I didn't

12      really know what he was talking about.

13           So as I was informed that

14      the commercial was in Australia, I

15  16:34:19  contacted our Australian sub-publisher

16      and asked him if he had any

17      recollection of Rock On being used in a

18      McDonald's ad.  And this was then

19      followed by this correspondence.

20  16:34:33       And would I go to an

21      advertising agency or a brand and

22      advise them how to advertise their

23      product, no, I wouldn't.

24           Q.   So then the last sentence of

25  16:34:46  your E-mail says, "Thank you so much

MARYANN SLIM

2           for finding this so quickly - don't you

3           just love YouTube?"

4               Do you see that?

5  16:34:55     A.    I do.

6             Q.    What did you love about

7           YouTube?

8             A.    YouTube is a -- it's a good

9           service.  It is a great, you know --

10  16:35:05  what you call it?  It is a great site.

11            Q.    And why do you feel like it

12           is a great site?

13            A.    Because it's -- it shows

14           interesting clips.  You know.  He could

15  16:35:22  clearly find something that I had no

16           knowledge of, wouldn't know how to get

17           ahold of or anything, and he was able

18           to find it.

19            Q.    And were there any other

20  16:35:32  reasons you thought it was a great

21           site?

22            A.    I don't have a problem with

23           YouTube.  I think YouTube -- everyone

24           loves YouTube, don't they?  It's not

25  16:35:47  that you don't love YouTube, it is just

MARYANN SLIM

1

2      you have to protect your copyrights and

3      make sure they are being used

4      illegally -- legally and not being

5  16:35:54  infringed.

6          Q.   Do you know whether the

7      YouTube video that Mr. Gough sent was

8      authorized to be on the site?

9          A.   I don't know because the

10 16:36:13  license for that commercial wouldn't

11     have been issued by our company.

12         Q.   I am showing you a document

13     that we will have marked as Stage Three

14     UK Exhibit 24, Bates number ST00086367

15 16:36:50  to '368.

16             (Whereupon, the

17             aforementioned documents,

18             ST00086367 to '678, were marked as

19             Stage Three UK Exhibit 24 for

20             identification as of this date by

21             the Reporter.)

22         Q.   This is an E-mail chain

23     between yourself and Dave Wibberley

24     with the subject, "Ford Stuff."

25 16:37:35          Do you see that?



**Schapiro Exhibit 86**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE FOOTBALL ASSOCIATION PREMIER LEAGUE LIMITED, BOURNE CO. (together with its affiliate MURBO MUSIC PUBLISHING, INC.), CHERRY LANE MUSIC PUBLISHING COMPANY, INC., CAL IV ENTERTAINMENT LLC, ROBERT TUR d/b/a LOS ANGELES NEWS SERVICE, NATIONAL MUSIC PUBLISHERS' ASSOCIATION, THE RODGERS & HAMMERSTEIN ORGANIZATION, STAGE THREE MUSIC (US), INC., EDWARD B. MARKS MUSIC COMPANY, FREDDY BIENSTOCK MUSIC COMPANY d/b/a BIENSTOCK PUBLISHING COMPANY, ALLEY MUSIC CORPORATION, X-RAY DOG MUSIC, INC., FÉDÉRATION FRANÇAISE DE TENNIS, THE MUSIC FORCE LLC, and SIN-DROME RECORDS, LTD. on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> YOUTUBE, INC., YOUTUBE, LLC and GOOGLE, INC., <br><br> Defendants. | Case No. 07 Civ. 3582 (LLS) <br><br> **CHERRY LANES' RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION TO CHERRY LANE MUSIC PUBLISHING COMPANY, INC.** |

   Pursuant to Rule 36(a) of the Federal Rules of Civil Procedure, Named Plaintiff Cherry

Lane Music Publishing Company, Inc. ("Cherry Lane") hereby responds and objects to the

Requests for Admission (the "Requests") propounded by Defendants YouTube, Inc., YouTube

LLC and Google, Inc. ("YouTube" or "Defendants").

# GENERAL OBJECTIONS

The following general objections and statements ("General Objections") apply to each of the particular Requests propounded by Defendants and are hereby incorporated within each response set forth below. All of the responses set forth below are subject to and do not waive the General Objections:

1.      Cherry Lane objects to the Requests on the ground that Cherry Lane is still in the process of gathering and analyzing information relevant to these Requests. Cherry Lane has not completed its review and analysis of all discovery obtained by the parties in this and the related *Viacom* action. Additionally, defendants and non-parties have produced more than 1.5 million pages of documents since October 13, 2009. Cherry Lane has not yet examined each document produced by defendants or otherwise in this action for the purpose of determining which individual allegations of the Second Amended Class Action Complaint ("Complaint") it might support, nor has Cherry Lane completed depositions that may more fully reveal facts and information relevant to these Requests. As discovery is not yet closed, including deposition and expert discovery, and the production of remaining data and/or documents, Plaintiff's responses to these Requests is preliminary and tentative subject to completion of discovery and following an adequate opportunity to review and analyze all discovery in this action.

2.      In responding to these Requests, Cherry Lane does not concede the relevance, materiality or admissibility of any of the admissions or responses sought herein. Cherry Lane's responses are made subject to and without waiving any objections as to relevancy, materiality, admissibility, vagueness, ambiguity, competency or privilege.

3.      Cherry Lane does not waive any of its rights to object on any ground to the use of its responses herein.

4.     Cherry Lane objects to the Requests to the extent that they set forth compound, conjunctive or disjunctive statements.

5.     Cherry Lane objects to each request, instruction or definition to the extent that they seek to impose obligations beyond those imposed or authorized by the Federal Rules of Civil Procedure, the Civil Local Rules of the United States District Court for the Southern District of New York ("Civil Local Rules"), or the applicable standing orders and orders of this Court.

6.     Cherry Lane objects to each request, instruction or definition to the extent that it would require the disclosure of information that is outside the scope of information relevant to this case or that is otherwise improper.

7.     Cherry Lane objects to each request, instruction or definition to the extent that it would require the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

8.     Cherry Lane objects to each request, instruction or definition to the extent that it would require the disclosure of information generated or compiled by or at the direction of Cherry Lane's counsel.

9.     Cherry Lane objects to each request, instruction or definition to the extent that it would require the compilation or review of information otherwise within Defendants' possession, custody or control or more easily accessible to Defendants.

10.     Cherry Lane objects to each request, instruction or definition to the extent that they are vague, ambiguous, overly broad or unduly burdensome.

11.     Cherry Lane objects to each request, instruction or definition to the extent that they purport to require separate responses for each "Accused Clip" as compound and unduly burdensome.

12.     Cherry Lane objects to each request to the extent that they fail to specify an applicable time period and are thereby vague, ambiguous and overbroad.

13.     Cherry Lane objects to each request as premature to the extent that it calls for expert opinion

14.     Cherry lane objects to each request to the extent that it calls for a legal conclusion.

15.     Cherry Lane objects to each request, instruction or definition to the extent that they purport to require Cherry Lane to respond to Defendants' characterizations of legal contentions or call for the application of law to fact to the extent such request seeks disclosure of privileged information.

16.     Cherry Lane objects to the definitions of "Cherry Lane", "Cherry Lane's", "you" and "your" as overly broad and unduly burdensome, and further objects to the extent it seeks to impose obligations broader than those specified by Federal Rules of Civil Procedure 26, and Civil Local Rule 26.3(c)(5).  Cherry Lane further objects on the grounds that the definition includes an unknown and unknowable number of "present and former agents, employees, representatives, accountants, investigators, attorneys," "person[s] acting or purporting to act on its behalf", and "other person[s] otherwise subject to its control, which controls it, or is under common control with them."  Moreover, this definition includes "affiliates," "divisions," and "units" without any explanation of those terms' meaning.  Cherry Lane further objects to the extent these definitions call for privileged information and to the extent they seek information outside of Plaintiffs' possession, custody or control.  In responding to the Interrogatories,

Plaintiffs will construe the terms "Cherry Lane", "Cherry Lane's", "you" and "your" to mean Named Plaintiff Cherry Lane.

17.    Cherry Lane objects to the definitions of "Work(s) In Suit" and "Accused Clip(s)" as compound, vague and ambiguous. Cherry Lane further objects to the extent these definitions call for privileged information. Cherry Lane further objects to the definitions of "Work(s) In Suit" and "Accused Clip(s)" to the extent such definitions attempt to limit the number or identity of infringed works or instances of infringement for which Cherry Lane seeks recovery. As set forth at paragraph 74 of the Second Amended Complaint, the infringed works specified by Cherry Lane in this litigation are "representative of Protected Works that are and have been infringed by Defendants and/or YouTube's users." Similarly, the infringements identified in Exhibit A to the Complaint and within the Complaint are representative and not an exhaustive list of the ongoing and massive infringement by Defendants. Cherry Lane reserves all rights to identify additional infringements and infringed works.

18.    Cherry Lane objects to the definition of "substantially DMCA-compliant takedown notice" as vague and ambiguous as it requires a qualitative judgment and lacks common or ready definition.

19.    Where Cherry Lane indicates a lack of information or knowledge sufficient to admit or deny a specific request, this lack of information or knowledge follows a reasonable inquiry by Cherry Lane, and the information known or readily obtainable by Cherry Lane is insufficient to enable the party to admit or deny.

20.    Cherry Lane reserves the right to supplement or amend these responses. These responses should not be construed as, and do not constitute, a waiver of Cherry Lane's right to prove additional facts at summary judgment or trial or any other rights.

21.     These general objections are continuing and are incorporated by reference in Cherry Lane's answers to each of the Requests set forth below.  Any objection or lack of objection to any portion of these Requests is not an admission.  Cherry Lane reserves the right to amend, supplement, modify, or correct these responses and objections as appropriate.

## CHERRY LANE'S RESPONSES AND OBJECTIONS TO SPECIFIC REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**  Admit that at all relevant times YouTube was a "service provider" as that term is used in 17 U.S.C. § 512(k)(1)(B).

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**  Cherry Lane objects to this Request on the grounds that it is vague and ambiguous, including the term "at all relevant times."  Cherry Lane further objects to this Request to the extent it calls for a legal conclusion.  Subject to and without waiving the foregoing objections, Cherry Lane admits that the YouTube website in part, provides or operates facilities for, among other things, "online services or network access" as those terms are used in 17 U.S.C. § 512(k)(1)(B), and otherwise denies this Request.

**REQUEST FOR ADMISSION NO. 2:**  Admit that at all relevant times, YouTube stored material "at the direction of a user" as that phrase is used in 17 U.S.C. § 512(c)(1).

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**  Cherry Lane objects to this Request as vague and overbroad, including with respect to the terms "at all relevant times" and "material," which are undefined terms.  Cherry Lane further objects to this Request to the extent it calls for a legal conclusion.  YouTube is a media entertainment enterprise that engages in an array of directly and secondarily infringing activities that are neither storage nor at the direction of a user, such as, without limitation, transforming, copying and distributing material without the direction of a user.  Subject to and without waiving the foregoing objections, Cherry Lane denies this Request.

6

**REQUEST FOR ADMISSION NO. 3:** Admit that the material you allege to infringe your copyrights in this case was stored on the youtube.com service "at the direction of a user" as that phrase is used in 17 U.S.C. § 512(c)(1).

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:** Cherry Lane objects to this Request for Admission as vague and overbroad, including with respect to the term "material," which is an undefined term. Cherry Lane further objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Cherry Lane denies this Request.

**REQUEST FOR ADMISSION NO. 4:** Admit that all of your copyright infringement claims in this action allege infringement of copyrights "by reason of the storage at the direction of a user" of material that resides on a system or network controlled or operated by or for YouTube, as set forth in 17 U.S.C. § 512(c)(1).

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:** Cherry Lane objects to this Request for Admission as vague and overbroad, including with respect to the term "material," which is an undefined term. Cherry Lane further objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Cherry Lane denies this Request.

**REQUEST FOR ADMISSION NO. 5:** Admit that at all relevant times, YouTube had "designated an agent to receive notifications of claimed infringement" as set forth in 17 U.S.C. § 5l2(c)(2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:** Cherry Lane objects to this Request on the grounds that it is vague and ambiguous, including the term "at all relevant times." Subject to and without waiving the foregoing objections, Cherry Lane denies this Request.

**REQUEST FOR ADMISSION NO. 6:** Admit that on every occasion that you sent YouTube a DMCA takedown notice relating to an accused clip, YouTube responded "expeditiously," as that phrase is used in 17 U.S.C. § 512(c)(1)(A)(iii), to remove or disable access to the material claimed to be infringing.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:** Cherry lane objects to this Request on the grounds that it is vague and ambiguous, including the term "material". Cherry Lane further objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Cherry Lane denies this Request.

**REQUEST FOR ADMISSION NO. 7:** Admit that on every occasion that you sent YouTube a DMCA takedown notice relating to an accused clip, YouTube responded within seventy-two business hours to remove or disable access to the material claimed to be infringing.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:** Cherry Lane objects to this Request on the grounds that it is vague and ambiguous, including the term "material." Subject to and without waiving the foregoing objections, Cherry Lane denies this Request.

**REQUEST FOR ADMISSION NO. 8:** Admit that for all of the accused clips, prior to receiving a DMCA takedown notice from you identifying those specific clips, YouTube did not have "actual knowledge" that the material was infringing, as described in 17 U.S.C. § 512(c)(1)(A)(i).

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:** Cherry Lane objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Cherry Lane denies this Request.

**REQUEST FOR ADMISSION NO. 9:** Admit that on no occasion did YouTube fail to expeditiously remove or disable access to an accused clip to the extent YouTube became aware of facts or circumstances from which infringing activity was apparent, as described in 17 U.S.C. § 512(c)(1)(A)(ii).

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:** Cherry Lane objects to this Request as compound. Cherry Lane further objects to this Request to the extent it calls for a legal

conclusion. Subject to and without waiving the foregoing objections, Cherry Lane denies this Request.

**REQUEST FOR ADMISSION NO. 10:** Admit that YouTube lacked the right and ability to control the infringing activity alleged by you in this case, as described in 17 U.S.C. § 512(c)(l)(B).

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:** Cherry Lane objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Cherry Lane denies this Request.

**REQUEST FOR ADMISSION NO. 11:** Admit that YouTube did not receive a financial benefit directly attributable to the infringing activity alleged by you in this case, as described in 17 U.S.C. § 512(c)(1)(B).

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:** Cherry Lane objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Cherry Lane denies this Request..

**REQUEST FOR ADMISSION NO. 12:** Admit that at all relevant times, access to and use of the youtube.com service was provided to users by YouTube free and without charge.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:** Cherry Lane objects to the request as compound. Cherry Lane further objects to the terms "at all relevant times", "access" and "use" as vague and ambiguous. For example, "use" of and "access" to the youtube.com website includes various activities, such as advertising. Subject to and without waiving the foregoing objections, Cherry Lane denies that "use" of the youtube.com website was provided free and without charge.

**REQUEST FOR ADMISSION NO. 13:** Admit that at all relevant times YouTube had adopted and reasonably implemented, and informed its subscribers and account holders of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of YouTube who were repeat infringers, as described in 17 U.S.C. § 512(i)(1)(A).

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:** Cherry Lane objects to this Request as vague and ambiguous, including the terms "at all relevant times", "reasonably implemented" and "appropriate circumstances". Cherry Lane further objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Cherry Lane denies this Request.

**REQUEST FOR ADMISSION NO. 14:** Admit that at no time relevant to this lawsuit have there been any "standard technical measures" in existence as that term is defined in 17 U.S.C. §§ 512(i)(1)(B) and 512(i)(2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:** Cherry Lane objects to this Request as vague and ambiguous, including the term "in existence". Cherry Lane further objects to this Request to the extent it calls for a legal conclusion. Cherry Lane further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Subject to and without waiving the foregoing objections, Cherry Lane denies Request.

**REQUEST FOR ADMISSION NO. 15:** Admit that you do not claim in this case that YouTube failed to comply with 17 U.S.C. §§ 512(i)(1)(B) (*i.e.,* YouTube accommodates and not interfere with "standard technical measures" to the extent any exist).

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:** Cherry Lane objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Cherry Lane denies Request.

**REQUEST FOR ADMISSION NO. 16:** Admit that you have issued licenses that grant the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:** Cherry Lane objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Cherry Lane further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Cherry Lane further objects to this Request on the ground that any rights extended to a licensee of Cherry Lane content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such license. Subject to and without waiving the foregoing objections, Cherry Lane denies that language granting rights in a license can be read in isolation, and states that it must be read in light of other terms and restrictions in that license. Cherry Lane admits that it has granted a limited number of licenses that grant certain rights, subject to various limitations, including without limitation, limitations on duration, territory, and use of musical compositions only in connection with particular video footage and in some cases, limitations to particular websites; among such licenses, there are an even smaller number that have granted licensees the right to use certain musical compositions on YouTube in combination with certain specified footage and in exchange for the payment of a license fee, subject to such additional restrictions, such as duration, territory and other restrictions of the type described above.

**REQUEST FOR ADMISSION NO. 17:** Admit that you have issued licenses for works-in-suit that grant the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:** Cherry Lane objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Cherry Lane further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Cherry Lane further

objects to this Request on the ground that any rights extended to a licensee of Cherry Lane content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such license. Subject to and without waiving the foregoing objections, Cherry Lane denies that language granting rights in a license can be read in isolation, and states that it must be read in light of other terms and restrictions in that license. Cherry Lane admits that it has granted a limited number of licenses that grant certain rights, subject to various limitations, including without limitation, limitations on duration, territory, and use of musical compositions only in connection with particular video footage and in some cases, limitations to particular websites; among such licenses, there are an even smaller number that have granted licensees the right to use certain musical compositions on YouTube in combination with certain specified footage and in exchange for the payment of a license fee, subject to such additional restrictions, such as duration, territory and other restrictions of the type described above. Cherry Lane admits that there are fewer than twenty licenses that have granted the licensee the right to exploit a work-in-suit in certain specific and identifiable contexts on certain specified websites, including youtube.com, subject to the various restrictions identified above. See also Cherry Lane's responses to Requests nos. 21-29.

**REQUEST FOR ADMISSION NO. 18:** Admit that you have issued licenses for works-in-suit after November 7, 2007, that grant the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:** Cherry Lane objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Cherry Lane further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Cherry Lane further objects to this Request on the ground that any rights extended to a licensee of Cherry Lane

content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such license. Subject to and without waiving the foregoing objections, Cherry Lane denies that language granting rights in a license can be read in isolation, and states that it must be read in light of other terms and restrictions in that license. Cherry Lane admits that it has granted a limited number of licenses that grant certain rights, subject to various limitations, including without limitation, limitations on duration, territory, and use of musical compositions only in connection with particular video footage and in some cases, limitations to particular websites; among such licenses, there are an even smaller number that have granted licensees the right to use certain musical compositions on YouTube in combination with certain specified footage and in exchange for the payment of a license fee, subject to such additional restrictions, such as duration, territory and other restrictions of the type described above. Cherry Lane admits that there are fewer than four licenses that have granted the licensee the right to exploit a work-in-suit in certain specific and identifiable contexts on certain specified websites, including youtube.com subject to the various restrictions identified above, since November 7, 2007. See also Cherry Lane's responses to Requests nos. 21-29.

**REQUEST FOR ADMISSION NO. 19:** Admit that you have issued licenses for works-in-suit after November 26, 2008, that grant the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:** Cherry Lane objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Cherry Lane further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Cherry Lane further objects to this Request on the ground that any rights extended to a licensee of Cherry Lane content do not extend to parties such as unauthorized uploaders of content or

YouTube, neither of whom derive any rights under such license. Subject to and without waiving the foregoing objections, Cherry Lane denies that language granting rights in a license can be read in isolation, and states that it must be read in light of other terms and restrictions in that license. Cherry Lane admits that it has granted a limited number of licenses that grant certain rights, subject to various limitations, including without limitation, limitations on duration, territory, and use of musical compositions only in connection with particular video footage and in some cases, limitations to particular websites; among such licenses, there are an even smaller number that have granted licensees the right to use certain musical compositions on YouTube in combination with certain specified footage and in exchange for the payment of a license fee, subject to such additional restrictions, such as duration, territory and other restrictions of the type described above. Cherry Lane admits that there has been one license that has granted the licensee the right to exploit a work-in-suit in certain specific and identifiable contexts on certain specified websites, including youtube.com subject to the various restrictions identified above, since November 26, 2008. See also Cherry Lane's responses to Requests nos. 21-29.

**REQUEST FOR ADMISSION NO. 20:** Admit that on no occasion did you or Stage Three Music Limited inform YouTube of the presence of any authorized videos on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:** Cherry Lane objects to this Request on the ground that it is vague and ambiguous, including the terms "inform" and "any authorized videos." Cherry Lane further objects on the ground that the reference to Cherry Lane's co-plaintiff Stage Three Music Limited renders this Request unintelligible. Cherry Lane further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Subject to and without waiving the foregoing objections, Cherry Lane denies this Request to the extent it implies that Cherry Lane has an obligation to

inform YouTube of the presence of "any authorized videos" on the YouTube website and further

denies this Request to the extent it implies that YouTube is not on active or constructive notice

whether it is authorized to exploit the videos on its own website, and further denies this Request

to the extent it implies that YouTube does not have access to information furnished by Cherry

Lane that would allow YouTube to determine if the presence of videos containing Cherry Lane

content are authorized.  As a business practice, it is ordinarily incumbent upon the party

exploiting content, i.e. YouTube, to seek and obtain appropriate license as well as information

concerning the owner and/or administrator of which it is exploiting.  Such information is readily

and publicly available including through public databases identifying Cherry Lane as the

administrator of and/or owner of the works in suit and other Cherry Lane content.  Cherry Lane

further denies this Request because Cherry Lane wrote YouTube in the fall of 2006 to inform

YouTube of the presence of videos infringing Cherry Lane works on the YouTube.com website.

Keith Hauprich of Cherry Lane also informed Chris Maxcy of the presence of videos infringing

Cherry Lane works during a telephone conversation in or around December 2006.  Cherry Lane

lacks knowledge of the actions of co-plaintiff Stage Three Music Limited, an entity which does

not have rights in Cherry Lane's works.

  **REQUEST FOR ADMISSION NO. 21:**  Admit that the license agreement produced at CH00000323-26 grants the licensee the right to exhibit and distribute the work on websites including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**  Cherry Lane objects to this Request

on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the

work" and "on websites".  Cherry Lane objects to this Request on the grounds that the requested

matter is not relevant to this case, because there is no evidence that Defendants or the uploader of

any infringing clip has represented that they have a license to post Cherry Lane content on

YouTube. Cherry Lane further objects on the ground that any rights extended to a licensee of Cherry Lane content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such license. Subject to and without waiving the foregoing objections, Cherry Lane denies that the license produced at the bates numbers above grants the right to exhibit and distribute the work on websites including YouTube.com. The above-referenced license grants certain express rights to the licensee to exploit Cherry Lane content, including the right to exhibit on the Internet limited only to "streaming-only exhibition by non-interactive electronic transmission on the internet" which excludes websites such as youtube.com. Other express provisions further limit the duration of use and limit such usage to an in-context use permitted only after payment of the fee by the licensee.

**REQUEST FOR ADMISSION NO. 22:** Admit that the license agreement produced at CH00000342-45 grants the licensee the right to exhibit and distribute the work on websites including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:** Subject to and without waiving the foregoing objections, Cherry Lane denies this Request because the express terms of the agreement exclude exploitation of Cherry Lane content on the internet, including youtube.com.

**REQUEST FOR ADMISSION NO. 23:** Admit that the license agreement produced at CH00000411-14 grants the licensee the right to exhibit and distribute the work on websites including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:** Cherry Lane objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Cherry Lane objects to this Request on the grounds that the requested matter is not relevant to this case, because there is no evidence that Defendants or the uploader of any Cherry Lane further objects on the ground that any rights extended to a licensee of Cherry Lane content do not extend to parties such as unauthorized uploaders of content or YouTube,

neither of whom derive any rights under such license. Subject to and without waiving the

foregoing objections, Cherry Lane denies that language granting rights to exploit in "any and all

forms of media now known of hereafter devised" standing alone authorizes Defendants or a

licensee to exploit Cherry Lane content on websites generally or on YouTube.com. The above-

referenced license grants certain express rights to the licensee to exploit Cherry Lane content, but

excludes "use of the Composition in so-called 'inter-active media' as such term is commonly

used in the entertainment industry," which excludes websites such as youtube.com. Other

express provisions further limit the duration of use and limit such usage to an in-context use

permitted only after payment of the fee by the licensee.

**REQUEST FOR ADMISSION NO. 24:** Admit that the license agreement produced at
CH00000415-18 grants the licensee the right to exhibit and distribute the work on websites
including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:** Cherry Lane objects to this Request

on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the

work" and "on websites". Cherry Lane objects to this Request on the grounds that the requested

matter is not relevant to this case, because there is no evidence that Defendants or the uploader of

any infringing clip has represented that they have a license to post Cherry Lane content on

YouTube. Cherry Lane further objects on the ground that any rights extended to a licensee of

Cherry Lane content do not extend to parties such as unauthorized uploaders of content or

YouTube, neither of whom derive any rights under such license. Subject to and without waiving

the foregoing objections, Cherry Lane denies that the license produced at the bates numbers

above grants the right to exhibit and distribute the work on websites including YouTube.com.

The above-referenced license grants certain express rights to the licensee to exploit Cherry Lane

content, including the right to exhibit on the Internet limited only to "streaming-only exhibition

by non-interactive electronic transmission on the internet" which excludes websites such as youtube.com. Other express provisions further limit the duration of use and limit such usage to an in-context use and only for that program, permitted only after payment of the fee by the licensee.

**REQUEST FOR ADMISSION NO. 25:** Admit that the license agreement produced at CH00000419-22 grants the licensee the right to exhibit and distribute the work on websites including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:** Cherry Lane objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Cherry Lane objects to this Request on the grounds that the requested matter is not relevant to this case, because there is no evidence that Defendants or the uploader of any infringing clip has represented that they have a license to post Cherry Lane content on YouTube. Cherry Lane further objects on the ground that any rights extended to a licensee of Cherry Lane content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such license. Subject to and without waiving the foregoing objections, Cherry Lane denies that the license produced at the bates numbers above grants the right to exhibit and distribute the work on websites including YouTube.com. The above-referenced license grants certain express rights to the licensee to exploit Cherry Lane content, including the right to exhibit on the Internet limited only to "streaming-only exhibition by non-interactive electronic transmission on the internet" which excludes websites such as youtube.com. Other express provisions further limit the duration of use and limit such usage to an in-context use and only for that program, permitted only after payment of the fee by the licensee.

**REQUEST FOR ADMISSION NO. 26:** Admit that the license agreement produced at CH00000482-85 grants the licensee the right to exhibit and distribute the work on websites including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:** Cherry Lane objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Cherry Lane objects to this Request on the grounds that the requested matter is not relevant to this case, because there is no evidence that Defendants or the uploader of any infringing clip has represented that they have a license to post Cherry Lane content on YouTube. Cherry Lane further objects on the ground that any rights extended to a licensee of Cherry Lane content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such license. Subject to and without waiving the foregoing objections, Cherry Lane denies that the license produced at the bates numbers above grants the right to exhibit and distribute the work on websites including YouTube.com. The above-referenced license grants certain express rights to the licensee to exploit Cherry Lane content, including the right to exhibit on the Internet limited only to "streaming-only exhibition by non-interactive electronic transmission on the internet" which excludes websites such as youtube.com. Other express provisions further limit the duration of use and limit such usage to an in-context use and only for that program, permitted only after payment of the fee by the licensee.

**REQUEST FOR ADMISSION NO. 27:** Admit that the license agreement produced at CH00102182-85 grants the licensee the right to exhibit and distribute the work on websites including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:** Cherry Lane objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Cherry Lane objects to this Request on the grounds that the requested

matter is not relevant to this case, because there is no evidence that Defendants or the uploader of any infringing clip has represented that they have a license to post Cherry Lane content on YouTube. Cherry Lane further objects on the ground that any rights extended to a licensee of Cherry Lane content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such license.  Subject to and without waiving the foregoing objections, Cherry Lane denies that the license produced at the bates numbers above grants the right to exhibit and distribute the work on websites including YouTube.com. The above-referenced license grants certain express rights to the licensee to exploit Cherry Lane content, including the right to exhibit on the Internet limited only to "in-context trailers, promotions and advertisements via website exhibition (whether by streaming or downloadable exhibition)" and in connection with that product.  Other express provisions further limit the term of the use, prohibit assignment by the licensee without Cherry Lane's prior written consent, and require the payment of royalties after an initial advance paid by the licensee.

**REQUEST FOR ADMISSION NO. 28:**  Admit that the license agreement produced at CH00114990-94 grants the licensee the right to exhibit and distribute the work on websites including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**  Cherry Lane objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites".  Cherry Lane objects to this Request on the grounds that the requested matter is not relevant to this case, because there is no evidence that Defendants or the uploader of any infringing clip has represented that they have a license to post Cherry Lane content on YouTube. Cherry Lane further objects on the ground that any rights extended to a licensee of Cherry Lane content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such license.  Subject to and without waiving

the foregoing objections, Cherry Lane denies that the license produced at the bates numbers

above grants the right to exhibit and distribute the work on websites including YouTube.com.

The above-referenced license grants certain express rights to the licensee to exploit Cherry Lane

content, including the right to exhibit on the Internet limited only to "streaming-only exhibition

by non-interactive electronic transmission on the internet" which excludes websites such as

youtube.com. Other express provisions further limit the duration of use and limit such usage to

an in-context use and only for that program, permitted only after payment of the fee by the

licensee.

**REQUEST FOR ADMISSION NO. 29:** Admit that the license agreement produced at CH00116388-92 grants the licensee the right to exhibit and distribute the work on websites including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:** Cherry Lane objects to this Request

on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the

work" and "on websites". Subject to and without waiving the foregoing objections, Cherry Lane

denies this Request denies this Request because the express terms of the agreement permit

exploitation of the Cherry Lane content on CMT.com only and exclude the remainder of the

internet, including youtube.com.

**REQUEST FOR ADMISSION NO. 30:** Admit that you never informed YouTube of the existence of the license agreements set forth in Requests 21-29.

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:** Cherry Lane objects to this Request

on the grounds that the requested matter is outside the scope of information relevant to this case.

Subject to and without waiving the foregoing objections, Cherry Lane denies this Request to the

extent it implies that Cherry Lane has any obligation to inform YouTube of the existence of these

license agreements. As a business practice, it is ordinarily incumbent upon the party exploiting

content, i.e. YouTube, to seek and obtain the appropriate license as well as information concerning the owner and/or administrator of which it is exploiting.  Such information is readily and publicly available including through public databases identifying Cherry Lane as the administrator of and/or owner of the works in suit and other Cherry Lane content.  Cherry Lane further denies this Request for the reasons set forth in Requests nos. 21-29.

**REQUEST FOR ADMISSION NO. 31:**  Admit that the presence on the youtube.com website of videos embodying the works in suit can have the effect of increasing consumer demand for those works.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**  Cherry Lane objects to this Request on the grounds that it is vague and ambiguous, including the phrases "can have the effect" and "consumer demand."  Cherry Lane further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case.  Cherry Lane further objects to this request on the ground that it seeks Cherry Lane's opinion regarding an incomplete hypothetical question, not the admission or denial of a fact.  Subject to and without waiving the foregoing objections, Cherry Lane denies that the presence of videos on Youtube.com has the effect of increasing consumer demand, including, without limitation, when the works are being made available for free on youtube.com and are a substitution of the products sold or licensed by Cherry Lane to third parties for a fee and/or otherwise damage Cherry Lane's business.

**REQUEST FOR ADMISSION NO. 32:**  Individually for each accused clip, admit that you did not send a DMCA takedown notice to YouTube within one week of becoming aware of that clip's presence on YouTube.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**  Cherry Lane objects to this Request on the grounds that it is vague and ambiguous, including the term "becoming aware."  Cherry Lane further objects to this Request on the ground that it calls for the disclosure of information protected by the attorney-client privilege and/or the work-product doctrine.  Cherry Lane further

objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Cherry Lane further objects to this request on the ground that it misconstrues the parties' respective obligations under applicable law. Subject to and without waiving the foregoing objections, Cherry Lane denies this Request to the extent that many DMCA takedown notices were sent to YouTube within one week of Cherry Lane discovering the infringing content. Cherry Lane states that, because of the huge volume of infringements of its works on the YouTube website, it notified YouTube in a manner compliant with the DMCA as expeditiously as possible after determining that each YouTube video that it claims as infringing in the Complaints in this action infringed its content.

**REQUEST FOR ADMISSION NO. 33:** Individually for each accused clip, admit that you did not send a DMCA takedown notice to YouTube within one month of becoming aware of that clip's presence on YouTube.

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:** Cherry Lane objects to this Request on the grounds that it is vague and ambiguous, including the term "becoming aware." Cherry Lane further objects to this Request on the ground that it calls for the disclosure of information protected by the attorney-client privilege and/or the work-product doctrine. Cherry Lane further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Cherry Lane further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Cherry Lane further object to this request on the ground that it misconstrues the parties' respective obligations under applicable law. Subject to and without waiving the foregoing objections, Cherry Lane denies this Request to the extent that many DMCA takedown notices were sent to YouTube within one month of Cherry Lane discovering the infringing content. Cherry Lane states that, because of the huge volume of infringements of its works on the YouTube website, it notified

YouTube in a manner compliant with the DMCA as expeditiously as possible after determining that each YouTube video that it claims as infringing in the Complaints in this action infringed its content.

**REQUEST FOR ADMISSION NO. 34:** Individually for each accused clip, admit that you did not send a DMCA takedown notice to YouTube within two months of becoming aware of that clip's presence on YouTube.

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:** Cherry Lane objects to this Request on the grounds that it is vague and ambiguous, including the term "becoming aware." Cherry Lane further objects to this Request on the ground that it calls for the disclosure of information protected by the attorney-client privilege and/or the work-product doctrine. Cherry Lane further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Cherry Lane further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Cherry Lane further object to this request on the ground that it misconstrues the parties' respective obligations under applicable law. Subject to and without waiving the foregoing objections, Cherry Lane denies this Request to the extent that many DMCA takedown notices were sent to YouTube within two months of Cherry Lane discovering the infringing content. Cherry Lane states that, because of the huge volume of infringements of its works on the YouTube website, it notified YouTube in a manner compliant with the DMCA as expeditiously as possible after determining that each YouTube video that it claims as infringing in the Complaints in this action infringed its content.

**REQUEST FOR ADMISSION NO. 35:** Individually for each accused clip, admit that you did not consult with your sub-publishers to ensure that the clip was unauthorized appear on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:** Cherry Lane objects to this request on the grounds that it is vague and ambiguous, including the terms "consult" and "ensure". Cherry Lane further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Cherry Lane further objects to this Request on the ground that it calls for the disclosure of information protected by the attorney-client privilege and/or the work-product doctrine. Subject to and without waiving the foregoing objections, Cherry Lane denies this Request to the extent it implies that Cherry Lane is obligated to consult with its sub-publishers to establish that each accused clip was unauthorized to appear on the YouTube website, and admits that in certain cases it did not contact its subpublisher prior to requesting that YouTube take down an infringing clip, because in those cases Cherry Lane's sub-publishers either do not have authority under the express terms of the agreements between them and Cherry Lane to post content to youtube.com or to authorize third parties to posts clips containing Cherry Lane content on youtube.com, a website that is available worldwide, or the sub-publisher is required to seek permission from Cherry Lane before issuing a license to grant the right to exploit Cherry Lane content on the internet.

**REQUEST FOR ADMISSION NO. 36:** Individually for each accused clip, admit that you did not consult with the co-owner(s) of the work-in-suit to ensure that the clip was unauthorized appear on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 36:** Cherry Lane objects to this request on the grounds that it is vague and ambiguous, including the terms "consult", "ensure" and "co-owner". Cherry Lane further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Cherry Lane further objects to this

Request on the ground that it calls for the disclosure of information protected by the attorney-client privilege and/or the work-product doctrine. Subject to and without waiving the foregoing objections, Cherry Lane denies this request, because there are no co-owners for the works in suit and Cherry Lane controls the administrative rights for each of the works in suit.

**REQUEST FOR ADMISSION NO. 37:** Individually for each accused clip, admit that you did not consult with the Stage Three writer of the work-in-suit to ensure that the clip was authorized to appear on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 37:** Cherry Lane objects to this request on the grounds that it is vague and ambiguous, including the terms "consult", "ensure" and "writer". Cherry Lane further objects on the ground that the reference to Cherry Lane's co-plaintiff Stage Three Music Limited renders this Request unintelligible. Cherry Lane further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Subject to and without waiving the foregoing objections, Cherry Lane denies that Stage Three holds any rights of any nature in its works in suit.

**REQUEST FOR ADMISSION NO. 38:** Individually for each accused clip, admit that you did not consult with any of your licensees to ensure that the clip was not authorized to appear on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:** Cherry Lane objects to this Request on the grounds that it is vague and ambiguous, including the word "consult" and "ensure". Cherry Lane further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Subject to and without waiving the foregoing objections, Cherry Lane denies that, with respect to each accused clip, any of the infringing clips involved licensed materials within the scope of the license.

**REQUEST FOR ADMISSION NO. 39:** Admit that you retracted DMCA takedown notices sent to YouTube for one or more of your works.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:** Subject to and without waiving the foregoing objections, Cherry Lane denies this Request.

**REQUEST FOR ADMISSION NO. 40:** Admit that on no occasion prior to November 7, 2007 did you inform YouTube of the presence and location of any video on the YouTube.com site that allegedly infringed your copyrights.

**RESPONSE TO REQUEST FOR ADMISSION NO. 40:** Cherry Lane objects to this Request on the ground that it requires the compilation or review of information otherwise within Defendants' possession, custody or control and more easily accessible to Defendants. Subject to and without waiving the foregoing objections, Cherry Lane denies this Request.

**REQUEST FOR ADMISSION NO. 41:** Admit that on no occasion prior to November 7, 2007 did you inform YouTube of the presence of any accused clip on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 41:** Cherry Lane objects to this Request on the ground that it requires the compilation or review of information otherwise within Defendants' possession, custody or control and more easily accessible to Defendants. Subject to and without waiving the foregoing objections, Cherry Lane denies this Request, and states that a copy of the Amended Complaint, listing video clips on the YouTube website that infringed Cherry Lane's works, was submitted to YouTube's counsel on October 8, 2007, and that the Amended Complaint, containing the same list of video clips, was filed with the Court on November 7, 2007.

AS TO OBJECTIONS:

Dated: January 8, 2009
New York, New York

_(signature)_ Louis M. Solomon
_____
Louis M. Solomon
William M. Hart
Hal S. Shaftel
Elizabeth Anne Figueira
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036-8299
Phone: 212-969-3000
*-and-*
John C. Browne
Benjamin Galdston
BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
Phone: 212-554-1400
*Attorneys for Lead Plaintiffs, Named
Plaintiffs Murbo Music Publishing, Inc.,
Cherry Lane Music Publishing Company,
Inc., Robert Tur d/b/a Los Angeles News
Service, X-Ray Dog Music, Inc., Fédération
Française de Tennis, and for the Prospective
Class*

# Schapiro Exhibit 87

.

| | |
|---|---|
| **From:** | Gregg Barron |
| **Sent:** | Thursday, February 01, 2007 5:29 PM |
| **To:** | James Williams; Philip Cialdella |
| **Subject:** | RE: License 15713 |
| | |
| **Attachments:** | You Tube Day-O.pdf |

Phil, here's the one sheet which tells most of the story. I've also pasted Erik's comments to Irving from his approval request below.  James, we should have some provision in the license ensuring no parodies, lyric changes, derogatory use, etc.



You Tube
Day-O.pdf (16 KB)

This is an internet only contest in which participants will record their own versions of the song and post the video to www.youtube.com.  The winner of the contest receives a two week vacation in the Carribean.  We would make every provision in the license ensuring that no parodies or lyric changes will be used, but the nature of YouTube prohibits this from being 100% accurate.  This could turn out to be a good promotion for the song and I believe Malibu Rum is also in talks with a few different bands trying to get them to cover the song as an example.
The contest will last two (2) months, but they want the videos to be uploaded for a year.


Gregg Barron
Director, Licensing
Cherry Lane Music Publishing
6 East 32nd Street, 11th floor
New York, NY 10016
P (212) 561-3045
F (212) 447-6885

gbarron@cherrylane.com

---

From: James Williams
Sent: Thursday, February 01, 2007 11:22 AM
To: Gregg Barron
Subject: License 15713

Gregg,

You'll give the licensing details to Phil in regard to the Youtube License? It's already drafted and awaiting comments, if any prior to sending out.

James Williams
Contract Administrator

Cherry Lane Music
6 East 32nd Street
11th Floor
New York, NY 10016

212-561-3519
212-683-2040 fax

Highly Confidential

CH00019803

http://www.cherrylane.com

--------------------------------------------------------------------------------
This message and its attachments have been sent by Cherry Lane Music Publishing Company,
Inc.'s Business & Legal Affairs Department and may contain information that is
confidential and protected by privilege from disclosure.  Any use, dissemination,
distribution, or reproduction of this message by unintended recipients is not authorized
and may be unlawful.  If you have received this message in error, please notify the sender
and delete all copies of this transmission.  Thank you.

Highly Confidential

<u>License Request One Sheet</u>

License #   15713                    Submission Date: 2/1/2007          By: Erik Tomlin

 To APB Board

Contact Name: Persis Singh
Phone:  212 229-2294 Fax: 212 229-2482
Licensee: The Thomas Collective
Address: 111 West 24th Street, Suite  6R
New York, NY 10011

Song (*If More Than One, See Attached*): *DAY-O  (100% of the world)*
*IRVING BURGIE, WILLIAM ATTAWAY*

Production: <u>Malibu-Youtube Online Contest</u>

Detailed Usage: multiple visual/background vocal uses, no parody/altered lyrics or contentious uses

Media: Multimedia / Internet / CDR:  Streaming only at www.youtube.com

Territory: Worldwide

Term: One (1) year

Commencement Date: 5/1/2007

Total Fee: $5,000  Cherry Lane Share: $5,000

Royalty:


MFN: with master recording

Exclusivity: No  None

Option Detail: No  None

Comments:

Mail To Address:
,
111 West 24th Street, Suite  6R, , ,
New York, NY 10011, NY, 10011

Highly Confidential                                                                              CH00019805

<u>License Request One Sheet</u>

# Schapiro Exhibit 88

# *LOS ANGELES NEWS SERVICE*

### VIDEO LICENSING AGREEMENT

Los Angeles News Service ("Licensor") hereby grants a limited license to use copyrighted material owned by LANS to Licensee as follows:

Licensee: __INTERIM PRODUCTIONS   INC.__

Address: __12233 W. OLYMPIC BLVD #158 LOS ANGELES, CA 90064__

License Fee: __$4,000.00__

[X]yes []no  On Screen Credits are required and shall read "Courtesy  of LANS" in credits for program.
The Copyrighted Video Tape Pictures are hereby licensed for use in the following broadcast program, movie, or other media presentation:   __"I SURVIVED A DISASTER II"__

This license is granted solely for following: __ALL MEDIA, NOW KNOWN OR HERAFTER DEEVISED, THROUGHOUT THE UNIVERSE IN PERPETUITY.__

This license does  allow the use of the Copyrighted Video Tape Pictures in any teasers,  promotions, and/or advertisements unless specifically authorized herein.

The Copyrighted Video Tape Pictures which are the subject of this limited license are identified as follows__
NORTH HOLLYWOOD SHOOTOUT   UP TO 30 SECONDS ONLY__

This agreement may be assigned only as long as used within the Program and pursuant to the terms of this Agreement and Assignee assumes all obligations. Other than that:

Licensee agrees that the  Copyrighted Video Tape Pictures are solely owned by Licensor and originated with LANS as News Video Tape Pictures.  These Copyrighted Video Tape Pictures are registered with the United States Copyright Office pursuant to a filing made by Licensor..  Licensee may not license, sell, assign, or in any other way authorize the use of the Copyrighted Video Tape Pictures to any third party not a party to this Video Licensing Agreement.  These Video Tape Pictures can not be reedited, used, or resold without the express written permission of Licensor and Payment in advance of additional licensing fees.  The Copyrighted Video Tape Pictures can not be taken from the broadcast program identified above and used in any other show, segment, movie, and/or other media presentation without the express written permission of Licensor and Payment in advance of additional licensing fees.  The Copyrighted Video Tape Pictures may not be maintained by Licensee in any video tape library separately from the broadcast show, whether maintained by Licensee directly or indirectly.

Licensee agrees that the use of the Copyrighted Video Tape Pictures as contemplated by this Video Licensing Agreement may not be used under the Fair Use Doctrine of the United States Copy Right laws and Licensee specifically waives any right to claim use of the Copyrighted Video Tape Pictures under the fair use doctrine..

The license granted herein is for  the above-defined usage only. No license is granted for public broadcasting of the Copyrigted Video Tape Pictures outside of above described locations.  The license granted  herein is granted solely for Licensee.
The license granted herein is solely for the limited use identified in this Video Licensing Agreement and includes no other right or uses.

HIGHLY
CONFIDENTIAL

Licensor warrants that it has the right to enter into this Agreement.

Licensee agrees that any use by Licensee beyond that authorized by this Video Licensing Agreement is an intentional and willful infringement of Licensor's Copyright and that Licensee may be required to pay statutory penalties to Licensor for such infringement. These statutory penalties are to be paid in addition to any other liability which may be imposed against Licensee for such infringement.

All video tape copies containing solely the Copyrighted Video Tape Pictures shall be returned to Licensor upon completion of editing.

This Video Licensing Agreement is not valid until all licensing fees have been received in full by Licensor.

Licensee agrees to be responsible for any fees which are payable to any guild or union, if any, by reason of the use of the Copyrighted Video Tape Pictures.

This Video Licensing Agreement constitutes the entire agreement between the parties with respect to the subject matter of this agreement. and can not be changed except by a written instrument signed by all parties. This agreement shall be binding all parties, their heirs, successors, and assigns. The provisions contained in this agreement are contractual and not a mere recital. This agreement shall not be construed against the party who drafted this Agreement or any portion hereof. This Agreement shall be construed according to the laws of the State of California.

WHEREFORE, the above terms are agreed to by and between the parties:

"LICENSEE"         INTERIM PRODUCTIONS, INC.

Name: _____

Title SR VP Business + Legal Affairs

Date 4/28/97

"LICENSOR"         _____

Name  Judy Tur

Title:  Library Manager

Date_____

HIGHLY
CONFIDENTIAL

HIGHLY CONFIDENTIAL

# Schapiro Exhibit 89



UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE FOOTBALL ASSOCIATION PREMIER LEAGUE LIMITED, BOURNE CO. (together with its affiliate MURBO MUSIC PUBLISHING, INC.), CHERRY LANE MUSIC PUBLISHING COMPANY, INC., CAL IV ENTERTAINMENT LLC, ROBERT TUR d/b/a LOS ANGELES NEWS SERVICE, NATIONAL MUSIC PUBLISHERS' ASSOCIATION, THE RODGERS & HAMMERSTEIN ORGANIZATION, STAGE THREE MUSIC (US), INC., EDWARD B. MARKS MUSIC COMPANY, FREDDY BIENSTOCK MUSIC COMPANY d/b/a BIENSTOCK PUBLISHING COMPANY, ALLEY MUSIC CORPORATION, X-RAY DOG MUSIC, INC., FÉDÉRATION FRANÇAISE DE TENNIS, THE MUSIC FORCE LLC, and SIN-DROME RECORDS, LTD. on behalf of themselves and all others similarly situated, | Civil Action  No. 07-CV-3582 (LLS) **BOURNE CO.'S RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION TO BOURNE CO.** |
| Plaintiffs, | |
| v. | |
| YOUTUBE, INC., YOUTUBE, LLC and GOOGLE, INC., | |
| Defendants. | |

Pursuant to Rule 36(a) of the Federal Rules of Civil Procedure, Named Plaintiff Bourne Company ("Bourne") hereby responds and objects to the Requests for Admission (the "Requests") propounded by Defendants YouTube, Inc., YouTube LLC and Google, Inc. ("YouTube" or "Defendants").

### GENERAL OBJECTIONS

The following general objections and statements ("General Objections") apply to each of the particular Requests propounded by Defendants and are hereby incorporated within each response set forth below. All of the responses set forth below are subject to and do not waive the General Objections:

1.      Bourne objects to the Requests on the ground that Bourne is still in the process of gathering and analyzing information relevant to these Requests. Bourne has not completed its review and analysis of all discovery obtained by the parties in this and the related *Viacom* action. Additionally, defendants and non-parties have produced more than 1.5 million pages of documents since October 13, 2009. Bourne has not yet examined each document produced by defendants or otherwise in this action for the purpose of determining which individual allegations of the Second Amended Class Action Complaint ("Complaint") it might support, nor has Bourne completed depositions that may more fully reveal facts and information relevant to these Requests. As discovery is not yet closed, including deposition and expert discovery, and the production of remaining data and/or documents, Plaintiff's responses to these Requests is preliminary and tentative subject to completion of discovery and following an adequate opportunity to review and analyze all discovery in this action.

2.      In responding to these Requests, Bourne does not concede the relevance, materiality or admissibility of any of the admissions or responses sought herein. Bourne's responses are made subject to and without waiving any objections as to relevancy, materiality, admissibility, vagueness, ambiguity, competency or privilege.

3.      Bourne does not waive any of its rights to object on any ground to the use of its responses herein.

4.     Bourne objects to the Requests to the extent that they set forth compound, conjunctive or disjunctive statements.

5.     Bourne objects to each request, instruction or definition to the extent that they seek to impose obligations beyond those imposed or authorized by the Federal Rules of Civil Procedure, the Civil Local Rules of the United States District Court for the Southern District of New York ("Civil Local Rules"), or the applicable standing orders and orders of this Court.

6.     Bourne objects to each request, instruction or definition to the extent that it would require the disclosure of  information that is outside the scope of information relevant to this case or that is otherwise improper.

7.     Bourne objects to each request, instruction or definition to the extent that it would require the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

8.     Bourne objects to each request, instruction or definition to the extent that it would require the disclosure of information generated or compiled by or at the direction of Bourne's counsel.

9.     Bourne objects to each request, instruction or definition to the extent that it would require the compilation or review of information otherwise within Defendants' possession, custody or control or more easily accessible to Defendants.

10.     Bourne objects to each request, instruction or definition to the extent that they are vague, ambiguous, overly broad or unduly burdensome.

11.     Bourne objects to each request, instruction or definition to the extent that they purport to require separate responses for each "Accused Clip" as compound and unduly burdensome.

12.     Bourne objects to each request to the extent that they fail to specify an applicable time period and are thereby vague, ambiguous and overbroad.

13.     Bourne objects to each request as premature to the extent that it calls for expert opinion

14.     Bourne objects to each request to the extent that it calls for a legal conclusion.

15.     Bourne objects to each request, instruction or definition to the extent that they purport to require Bourne to respond to Defendants' characterizations of legal contentions or call for the application of law to fact to the extent such request seeks disclosure of privileged information.

16.     Bourne objects to the definitions of "Bourne", "Bourne's", "you" and "your" as overly broad and unduly burdensome, and further objects to the extent it seeks to impose obligations broader than those specified by Federal Rules of Civil Procedure 26, and Civil Local Rule 26.3(c)(5).  Bourne further objects on the grounds that the definition includes an unknown and unknowable number of "present and former agents, employees, representatives, accountants, investigators, attorneys," "person[s] acting or purporting to act on its behalf", and "other person[s] otherwise subject to its control, which controls it, or is under common control with them." Moreover, this definition includes "affiliates," "divisions," and "units" without any explanation of those terms' meaning.  Bourne further objects to the extent these definitions call for privileged information and to the extent they seek information outside of Plaintiffs' possession, custody or control.  In responding to the Interrogatories, Plaintiffs will construe the terms "Bourne", "Bourne's", "you" and "your" to mean Named Plaintiff Bourne.

17.     Bourne objects to the definitions of "Work(s) In Suit" and "Accused Clip(s)" as compound, vague and ambiguous.  Bourne further objects to the extent these definitions call for

privileged information. Bourne further objects to the definitions of "Work(s) In Suit" and "Accused Clip(s)" to the extent such definitions attempt to limit the number or identity of infringed works or instances of infringement for which Bourne seeks recovery. As set forth at paragraph 74 of the Second Amended Complaint, the infringed works specified by Bourne in this litigation are "representative of Protected Works that are and have been infringed by Defendants and/or YouTube's users." Similarly, the infringements identified in Exhibit A to the Complaint and within the Complaint are representative and not an exhaustive list of the ongoing and massive infringement by Defendants. Bourne reserves all rights to identify additional infringements and infringed works.

18. Bourne objects to the definition of "substantially DMCA-compliant takedown notice" vague and ambiguous as it requires a qualitative judgment and lacks common or ready definition.

19. Where Bourne indicates a lack of information or knowledge sufficient to admit or deny a specific request, this lack of information or knowledge follows a reasonable inquiry by Bourne, and the information known or readily obtainable by Bourne is insufficient to enable the party to admit or deny.

20. Bourne reserves the right to supplement or amend these responses. These responses should not be construed as, and do not constitute, a waiver of Bourne's right to prove additional facts at summary judgment or trial or any other rights.

21. These general objections are continuing and are incorporated by reference in Bourne's answers to each of the Requests set forth below. Any objection or lack of objection to any portion of these Requests is not an admission. Bourne reserves the right to amend, supplement, modify, or correct these responses and objections as appropriate.

**BOURNE'S RESPONSES AND OBJECTIONS TO SPECIFIC
REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 1:** Admit that at all relevant times YouTube was a "service provider" as that term is used in 17 U.S.C. § 512(k)(1)(B).

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:** Bourne objects to this Request on the grounds that it is vague and ambiguous, including the term "at all relevant times." Bourne further objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Bourne admits that the YouTube website in part, provides or operates facilities for, among other things, "online services or network access" as those terms are used in 17 U.S.C. § 512(k)(1)(B), and otherwise denies this Request.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

**REQUEST FOR ADMISSION NO. 2:** Admit that at all relevant times, YouTube stored material "at the direction of a user" as that phrase is used in 17 U.S.C. § 512(c)(1).

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:** Bourne objects to this Request as vague and overbroad, including with respect to the terms "at all relevant times" and "material," which are undefined terms. Bourne further objects to this Request to the extent it calls for a legal conclusion. YouTube is a media entertainment enterprise that engages in an array of directly and secondarily infringing activities that are neither storage nor at the direction of a user, such as, without limitation, transforming, copying and distributing material without the direction of a user. Subject to and without waiving the foregoing objections, Bourne denies this Request.

**REQUEST FOR ADMISSION NO. 3:** Admit that the material you allege to infringe your copyrights in this case was stored on the youtube.com service "at the direction of a user" as that phrase is used in 17 U.S.C. § 512(c)(1).

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:** Bourne objects to this Request for

Admission as vague and overbroad, including with respect to the term "material," which is an

undefined term. Bourne further objects to this Request to the extent it calls for a legal

conclusion. Subject to and without waiving the foregoing objections, Bourne denies this

Request.

**REQUEST FOR ADMISSION NO. 4:** Admit that all of your copyright infringement
claims in this action allege infringement of copyrights "by reason of the storage at the direction
of a user" of material that resides on a system or network controlled or operated by or for
YouTube, as set forth in 17 U.S.C. § 512(c)(1).

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:** Bourne objects to this Request for

Admission as vague and overbroad, including with respect to the term "material," which is an

undefined term. Bourne further objects to this Request to the extent it calls for a legal

conclusion. Subject to and without waiving the foregoing objections, Bourne denies this

Request.

**REQUEST FOR ADMISSION NO. 5:** Admit that at all relevant times, YouTube had
"designated an agent to receive notifications of claimed infringement" as set forth in 17 U.S.C. §
512(c)(2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:** Bourne objects to this Request on the

grounds that it is vague and ambiguous, including the term "at all relevant times." Subject to and

without waiving the foregoing objections, Bourne denies this Request.

**REQUEST FOR ADMISSION NO. 6:** Admit that on every occasion that you sent
YouTube a DMCA takedown notice relating to an accused clip, YouTube responded
"expeditiously," as that phrase is used in 17 U.S.C. § 512(c)(1)(A)(iii), to remove or disable
access to the material claimed to be infringing.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:** Bourne objects to this Request on the

grounds that it is vague and ambiguous, including the term "material". Bourne further objects to

this Request to the extent it calls for a legal conclusion.  Subject to and without waiving the

foregoing objections, Bourne denies this Request.

**REQUEST FOR ADMISSION NO. 7:**  Admit that on every occasion that you sent
YouTube a DMCA takedown notice relating to an accused clip, YouTube responded within
seventy-two business hours to remove or disable access to the material claimed to be infringing.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**  Bourne objects to this Request on the

grounds that it is vague and ambiguous, including the term "material".  Subject to and without

waiving the foregoing objections, Bourne denies this Request.

**REQUEST FOR ADMISSION NO. 8:**  Admit that for all of the accused clips, prior to
receiving a DMCA takedown notice from you identifying those specific clips, YouTube did not
have "actual knowledge" that the material was infringing, as described in 17 U.S.C. §
512(c)(1)(A)(i).

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**  Bourne Lane objects to this Request

to the extent it calls for a legal conclusion.   Subject to and without waiving the foregoing

objections, Bourne denies this Request.

**REQUEST FOR ADMISSION NO. 9:**  Admit that on no occasion did YouTube fail to
expeditiously remove or disable access to an accused clip to the extent YouTube became aware
of facts or circumstances from which infringing activity was apparent, as described in 17 U.S.C.
§ 5l2(c)(1)(A)(ii).

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**  Bourne objects to this Request as

compound.  Bourne further objects to this Request to the extent it calls for a legal conclusion.

Subject to and without waiving the foregoing objections, Bourne denies this Request.

**REQUEST FOR ADMISSION NO. 10:**  Admit that YouTube lacked the right and
ability to control the infringing activity alleged by you in this case, as described in 17 U.S.C. §
512(c)(1)(B).

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**  Bourne objects to this Request to the extent it calls for a legal conclusion.  Subject to and without waiving the foregoing objections, Bourne denies this Request.

**REQUEST FOR ADMISSION NO. 11:**  Admit that YouTube did not receive a financial benefit directly attributable to the infringing activity alleged by you in this case, as described in 17 U.S.C. § 512(c)(1)(B).

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**  Bourne objects to this Request to the extent it calls for a legal conclusion.  Subject to and without waiving the foregoing objections, Bourne denies this Request.

**REQUEST FOR ADMISSION NO. 12:**  Admit that at all relevant times, access to and use of the youtube.com service was provided to users by YouTube free and without charge.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**  Bourne objects to the request as compound.  Bourne further objects to the terms "at all relevant times", "access" and "use" as vague and ambiguous.  For example, "use" of and "access" to the youtube.com website includes various activities, such as advertising.  Subject to and without waiving the foregoing objections, Bourne denies that "use" of the youtube.com website was provided free and without charge.

**REQUEST FOR ADMISSION NO. 13:**  Admit that at all relevant times YouTube had adopted and reasonably implemented, and informed its subscribers and account holders of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of YouTube who were repeat infringers, as described in 17 U.S.C. § 512(i)(1)(A).

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**  Bourne objects to this Request as vague and ambiguous, including the terms "at all relevant times", "reasonably implemented" and "appropriate circumstances".  Bourne further objects to this Request to the extent it calls for a legal conclusion.  Subject to and without waiving the foregoing objections, Bourne denies this Request.

**REQUEST FOR ADMISSION NO. 14:** Admit that at no time relevant to this lawsuit have there been any "standard technical measures" in existence as that term is defined in 17 U.S.C. §§ 512(i)(1)(B) and 512(i)(2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:** Bourne objects to this Request as vague and ambiguous, including the term "in existence". Bourne further objects to this Request to the extent it calls for a legal conclusion. Bourne further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Subject to and without waiving the foregoing objections, Bourne denies Request.

**REQUEST FOR ADMISSION NO. 15:** Admit that you do not claim in this case that YouTube failed to comply with 17 U.S.C. §§ 512(i)(1)(B) *(i.e.,* YouTube accommodates and not interfere with "standard technical measures" to the extent any exist).

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:** Bourne objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Bourne denies Request.

**REQUEST FOR ADMISSION NO. 16:** Admit that you have issued licenses that grant the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:** Bourne objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Bourne further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Bourne further objects on the ground that any rights extended to a licensee of Bourne content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such license. Subject to and without waiving the foregoing objections, Bourne denies that language granting rights in a license can be read in isolation, and states that it must be read in light of other terms and restrictions in that license. Bourne admits that it has granted a limited

number of licenses that grant certain rights, subject to various limitations, including without

limitation, limitations on duration, territory, and use of musical compositions only in connection

with particular video footage and in some cases, limitations to particular websites; among such

licenses, there are an even smaller number that have granted licensees the right to use certain

musical compositions on YouTube in combination with certain specified footage and in

exchange for the payment of a license fee, subject to such additional restrictions, such as

duration, territory and other restrictions of the type described above.

      **REQUEST FOR ADMISSION NO. 17:**  Admit that you have issued licenses for works in suit that grant the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**  Bourne objects to this Request on

the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the

work" and "on websites".  Bourne further objects to this Request on the ground that the

requested matter is outside the scope of information relevant to this case.  Bourne further objects

on the ground that any rights extended to a licensee of Bourne content do not extend to parties

such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under

such license.  Subject to and without waiving the foregoing objections, Bourne denies that

language granting rights in a license can be read in isolation, and states that it must be read in

light of other terms and restrictions in that license.  Bourne admits that it has granted a limited

number of licenses that grant certain rights, subject to various limitations, including without

limitation, limitations on duration, territory, and use of musical compositions only in connection

with particular video footage and in some cases, limitations to particular websites; among such

licenses, there are an even smaller number that have granted licensees the right to use certain

musical compositions on YouTube in combination with certain specified footage and in

exchange for the payment of a license fee, subject to such additional restrictions, such as duration, territory and other restrictions of the type described above. Bourne admits that there are fewer than twenty licenses that have granted the licensee the right to exploit a work-in-suit in certain specific and identifiable contexts on certain specified websites, including youtube.com subject to the various restrictions identified above. *See also* Bourne's responses to RFAs 21-27.

**REQUEST FOR ADMISSION NO. 18:** Admit that you have issued licenses after May 4, 2007 that grant the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:** Bourne objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Bourne further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. .Bourne further objects on the ground that any rights extended to a licensee of Bourne content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such license. Subject to and without waiving the foregoing objections, Bourne denies that language granting rights in a license can be read in isolation, and states that it must be read in light of other terms and restrictions in that license. Bourne admits that it has granted a limited number of licenses that grant certain rights, subject to various limitations, including without limitation, limitations on duration, territory, and use of musical compositions only in connection with particular video footage and in some cases, limitations to particular websites; among such licenses, there are an even smaller number that have granted licensees the right to use certain musical compositions on YouTube in combination with certain specified footage and in exchange for the payment of a license fee, subject to such additional restrictions, such as duration, territory and other restrictions of the type described above. Bourne admits that there

are fewer than ten licenses that have granted the licensee the right to exploit a work-in-suit in

certain specific and identifiable contexts on certain specified websites, including youtube.com

subject to the various restrictions identified above. *See also* Bourne's responses to RFAs 21-27.

**REQUEST FOR ADMISSION NO. 19:** Admit that you have issued licenses for works
in suit after May 4, 2007 that grant the licensee the right to exhibit and distribute the work on
websites, including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:** Bourne objects to this Request on

the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the

work" and "on websites". Bourne further objects to this Request on the ground that the

requested matter is outside the scope of information relevant to this case. Bourne further objects

on the ground that any rights extended to a licensee of Bourne content do not extend to parties

such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under

such license. Subject to and without waiving the foregoing objections, Bourne denies language

granting rights in a license can be in isolation, and states that it must be read in light of other

terms and restrictions in that license. Bourne admits that it has granted a limited number of

licenses that grant certain rights, subject to various limitations, including without limitation,

limitations on duration, territory, and use of musical compositions only in connection with

particular video footage and in some cases, limitations to particular websites; among such

licenses, there are an even smaller number that have granted licensees the right to use certain

musical compositions on YouTube in combination with certain specified footage and in

exchange for the payment of a license fee, subject to such additional restrictions, such as

duration, territory and other restrictions of the type described above. Bourne admits that there

are fewer than ten licenses that have granted the licensee the right to exploit a work-in-suit in

certain specific and identifiable contexts on certain specified websites, including youtube.com subject to the various restrictions identified above. *See also* Bourne's responses to RFAs 21-27.

**REQUEST FOR ADMISSION NO. 20:** Admit that on no occasion did you inform YouTube of the presence of any authorized videos on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:** Bourne objects to this Request on the ground that it is vague and ambiguous, including the terms "inform" and "any authorized videos." Bourne further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Subject to and without waiving the foregoing objections, Bourne denies this Request to the extent it implies that Bourne has an obligation to inform YouTube of the presence of "any authorized videos" on the YouTube website and further denies this Request to the extent it implies that YouTube is not on actual or constructive notice whether it is authorized to show the videos displayed on its own website, and further denies this Request to the extent it implies that YouTube does not have access to information furnished by Cherry Lane that would allow YouTube to determine if the presence of videos containing Cherry Lane content are authorized. As a business practice, it is ordinarily incumbent upon the party exploiting content, i.e. YouTube, to seek and obtain appropriate license as well as information concerning the owner and/or administrator of which it is exploiting. Such information is readily and publicly available including through public databases identifying Bourne as the administrator of and/or owner of the works in suit and other Bourne content.

**REQUEST FOR ADMISSION NO. 21:** Admit that the license agreement produced at BC00019096-98 grants the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:** Bourne objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the

work" and "on websites". Bourne further objects to this Request on the grounds that it seeks

information that is not relevant because there is no evidence that Defendants or the uploader of

any Bourne further objects on the ground that any rights extended to a licensee of Bourne content

do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom

derive any rights under such license. Subject to and without waiving the foregoing objections,

Bourne denies that language granting rights to exploit in "any and all forms of media now known

of hereafter devised" standing alone authorize Defendants or a licensee to exploit Bourne content

on websites generally or on YouTube.com. The above-referenced license grants certain express

rights to the licensee to exploit Bourne content, but any "internet exhibition must be in a non-

interactive, linear progression and the Works must be exhibited substantially in its entirety,"

which excludes websites such as youtube.com. Other express provisions further limit the

duration of use and limit such usage to an in-context use permitted only after payment of the fee

by the licensee.

**REQUEST FOR ADMISSION NO. 22:** Admit that the license agreement produced at
BC00009821-29 grants the licensee the right to exhibit and distribute the work on websites,
including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:** Bourne objects to this Request on

the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the

work" and "on websites". Bourne further objects to this Request on the grounds that it seeks

information that is not relevant because there is no evidence that Defendants or the uploader of

any Bourne further objects on the ground that any rights extended to a licensee of Bourne content

do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom

derive any rights under such license. Subject to and without waiving the foregoing objections,

Bourne denies that language granting rights to exploit in "any and all forms of media now known

of hereafter devised" standing alone authorize Defendants or a licensee to exploit Bourne content on websites generally or on YouTube.com. The above-referenced license grants certain express rights to the licensee to exploit Bourne content, but any "use of the Composition in the exhibition and/or broadcast of the Motion Picture in any media granted herein is limited to non-interactive, linear progression and the Motion Picture being exhibited in its entirety," which excludes websites such as youtube.com. Other express provisions further limit the duration of use and limit such usage to an in-context use permitted only after payment of the fee by the licensee.

**REQUEST FOR ADMISSION NO. 23:** Admit that the license agreement produced at BC00009400-402 grants the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:** Bourne objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Bourne further objects to this Request on the grounds that it seeks information that is not relevant because there is no evidence that Defendants or the uploader of any Bourne further objects on the ground that any rights extended to a licensee of Bourne content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such license. Subject to and without waiving the foregoing objections, Bourne denies that language granting rights to exploit in "any and all forms of media now known of hereafter devised" standing alone authorize Defendants or a licensee to exploit Bourne content on websites generally or on YouTube.com. Bourne states that the above-referenced license grants certain express rights to the licensee to exploit Bourne content, subject to a number of express limitations including provisions that limit the duration of use and limit such usage to an in-context use permitted only after payment of the fee by the licensee.

**REQUEST FOR ADMISSION NO. 24:** Admit that the license agreement produced at BC00007341-7345 grants the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:** Bourne objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Bourne further objects to this Request on the grounds that it seeks information that is not relevant because there is no evidence that Defendants or the uploader of any Bourne further objects on the ground that any rights extended to a licensee of Bourne content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such license. Subject to and without waiving the foregoing objections, Bourne denies that language granting rights to exploit in "any and all forms of media now known or hereafter devised" standing alone authorize Defendants or a licensee to exploit Bourne content on websites generally or on YouTube.com. Bourne states that the above-referenced license grants certain express rights to the licensee to exploit Bourne content, subject to a number of express limitations including provisions that limit the duration of use and limit such usage to an in-context use permitted only after payment of the fee by the licensee.

**REQUEST FOR ADMISSION NO. 25:** Admit that the license agreement referenced in the document produced at BC00004968-4970 grants the licensee the right to exhibit and distribute the work on websites, includingYouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:** Bourne objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Bourne further objects to this Request on the grounds that it seeks information that is not relevant because there is no evidence that Defendants or the uploader of any Bourne further objects on the ground that any rights extended to a licensee of Bourne content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom

derive any rights under such license. Subject to and without waiving the foregoing objections,

Bourne denies that language granting rights to exploit in "any and all forms of media now known

of hereafter devised" standing alone authorize Defendants or a licensee to exploit Bourne content

on websites generally or on YouTube.com. Bourne states that the above-referenced license

grants certain express rights to the licensee to exploit Bourne content, subject to a number of

express limitations including provisions that limit the duration of use and limit such usage to an

in-context use permitted only after payment of the fee by the licensee.

**REQUEST FOR ADMISSION NO. 26:** Admit that the license agreement referenced in the document produced at BC00002245-2246 grants the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:** Bourne objects to this Request on

the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the

work" and "on websites". Bourne further objects to this Request on the grounds that it seeks

information that is not relevant because there is no evidence that Defendants or the uploader of

any Bourne further objects on the ground that any rights extended to a licensee of Bourne content

do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom

derive any rights under such license. Subject to and without waiving the foregoing objections,

Bourne denies that language granting rights to exploit in "any and all forms of media now known

of hereafter devised" standing alone authorize Defendants or a licensee to exploit Bourne content

on websites generally or on YouTube.com. The above-referenced license grants certain express

rights to the licensee to exploit Bourne content, but "provided that the Trailer is shown in its

entirety… in a non-interactive, linear progression only," which excludes websites such as

youtube.com. *See* BC00002250-BC00002254. Other express provisions further limit the

duration of use and limit such usage to an in-context use permitted only after payment of the fee by the licensee.

      **REQUEST FOR ADMISSION NO. 27:**  Admit that the license agreement referenced in the document produced at BC00019096-19098 grants the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**  Bourne objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites".  Bourne further objects to this Request on the grounds that it seeks information that is not relevant because there is no evidence that Defendants or the uploader of any Bourne further objects on the ground that any rights extended to a licensee of Bourne content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such license.  Subject to and without waiving the foregoing objections, Bourne denies that language granting rights to exploit in "any and all forms of media now known of hereafter devised" standing alone authorize Defendants or a licensee to exploit Bourne content on websites generally or on YouTube.com.  The above-referenced license grants certain express rights to the licensee to exploit Bourne content, but any "internet exhibition must be in a non-interactive, linear progression and the Works must be exhibited substantially in its entirety," which excludes websites such as youtube.com.  Other express provisions further limit the duration of use and limit such usage to an in-context use permitted only after payment of the fee by the licensee.

      **REQUEST FOR ADMISSION NO. 28:**  Admit that on no occasion did you inform YouTube of the existence of the license agreements set forth in Requests 21-27.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**  Bourne objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case.

Subject to and without waiving the foregoing objections, Bourne denies this Request to the extent it implies that Bourne has any obligation to inform YouTube of the existence of these license agreement. As a business practice, it is ordinarily incumbent upon the party exploiting content, i.e. YouTube, to seek and obtain the appropriate license as well as information concerning the owner and/or administrator of which it is exploiting. Such information is readily and publicly available including through public databases identifying Bourne as the administrator of and/or owner of the works in suit and other Bourne content. Bourne further denies this Request for the reasons set forth in Requests nos. 21-27.

**REQUEST FOR ADMISSION NO. 29:** Admit that the presence on the youtube.com website of videos embodying the works in suit can have the effect of increasing consumer demand for those works.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:** Bourne objects to this Request on the grounds that it is vague and ambiguous, including the phrases "can have the effect" and "consumer demand." Bourne further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Bourne further objects to this request on the ground that it seeks Bourne's opinion regarding an incomplete hypothetical question, not the admission or denial of a fact. Subject to and without waiving the foregoing objections, Bourne denies that the presence of videos on Youtube.com has the effect of increasing consumer demand, including, without limitation, when the works are being made available for free on youtube.com and are a substitution of the products sold or licensed by Bourne to third parties for a fee and/or otherwise damage Bourne's business.

**REQUEST FOR ADMISSION NO. 30:** Individually for each accused clip, admit that you did not send a DMCA takedown notice to YouTube within one week of becoming aware of that clip's presence on YouTube.

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**  Bourne objects to this Request on the grounds that it is vague and ambiguous, including the term "becoming aware."  Bourne further objects to this Request on the ground that it calls for the disclosure of information protected by the attorney-client privilege and/or the work-product doctrine.  Bourne further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case.  Bourne further objects to this request on the ground that it misconstrues the parties' respective obligations under applicable law.  Subject to and without waiving the foregoing objections, Bourne denies this Request to the extent that many DMCA takedowns were issued within one week of Bourne discovering the infringing content.   Bourne states that, because of the huge volume of infringements of its works on the YouTube website, it notified YouTube in a manner compliant with the DMCA as expeditiously as possible after determining that each YouTube video that it claims as infringing in the Complaints in this action infringed its content.

**REQUEST FOR ADMISSION NO. 31:**  Individually for each accused clip, admit that you did not send a DMCA takedown notice to YouTube within one month of becoming aware of that clip's presence on YouTube.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**  Bourne objects to this Request on the grounds that it is vague and ambiguous, including the term "becoming aware."  Bourne further objects to this Request on the ground that it calls for the disclosure of information protected by the attorney-client privilege and/or the work-product doctrine.  Bourne further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case.  Bourne further objects to this request on the ground that it misconstrues the parties' respective obligations under applicable law.  Subject to and without waiving the foregoing objections, Bourne denies this Request to the extent that many DMCA

takedowns were issued within one month of Bourne discovering the infringing content. Bourne

states that, because of the huge volume of infringements of its works on the YouTube website, it

notified YouTube in a manner compliant with the DMCA as expeditiously as possible after

determining that each YouTube video that it claims as infringing in the Complaints in this action

infringed its content.

**REQUEST FOR ADMISSION NO. 32:** Individually for each accused clip, admit that
you did not send a DMCA takedown notice to YouTube within two months of becoming aware
of that clip's presence on YouTube.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:** Bourne objects to this Request on

the grounds that it is vague and ambiguous, including the term "becoming aware." Bourne

further objects to this Request on the ground that it calls for the disclosure of information

protected by the attorney-client privilege and/or the work-product doctrine. Bourne further

objects to this Request on the ground that the requested matter is outside the scope of

information relevant to this case. Bourne further objects to this request on the ground that it

misconstrues the parties' respective obligations under applicable law. Subject to and without

waiving the foregoing objections, Bourne denies this Request to the extent that many DMCA

takedowns were issued within two months of Bourne discovering the infringing content.

Bourne states that, because of the huge volume of infringements of its works on the YouTube

website, it notified YouTube in a manner compliant with the DMCA as expeditiously as possible

after determining that each YouTube video that it claims as infringing in the Complaints in this

action infringed its content.

**REQUEST FOR ADMISSION NO. 33:** Individually for each accused clip, admit that
you did not consult with your sub-publishers to ensure that the clip was not authorized to appear
on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**  Bourne objects to this request on

the grounds that it is vague and ambiguous, including the terms "consult" and "ensure".  Bourne

further objects to this Request on the ground that the requested matter is outside the scope of

information relevant to this case.  Bourne further objects to this Request on the ground that it

calls for the disclosure of information protected by the attorney-client privilege and/or the work-

product doctrine.  Subject to and without waiving the foregoing objections, Bourne denies this

Request to the extent it implies that Bourne is obligated to consult with its sub-publishers to

ensure that each accused clip was unauthorized to appear on the YouTube website, and admits

that in certain cases it did not contact its subpublisher prior to requesting that YouTube take

down an infringing clip, because in those cases Bourne's sub-publishers either do not have

authority under the express terms of the agreements between them and Bourne to post content to

youtube.com or to authorize third parties to posts clips containing Bourne content on

youtube.com, a website that is available worldwide, or the sub-publisher is required to seek

permission from Bourne before issuing a license to grant the right to exploit Bourne content on

the internet.

     **REQUEST FOR ADMISSION NO. 34:**  Individually for each accused clip, admit that
you did not consult with the writer of the work in suit to ensure that the clip was not authorized
to appear on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:** Bourne objects to this request on the

grounds that it is vague and ambiguous, including the terms "consult", "ensure" and "co-owner".

Bourne further objects to this Request on the grounds that it seeks information that is neither

relevant to any claim or defense of any party nor reasonably calculated to lead to the discovery

of admissible evidence.  Bourne further objects to this Request on the ground that it calls for the

disclosure of information protected by the attorney-client privilege and/or the work-product

doctrine.  Subject to and without waiving the foregoing objections, Bourne states that there are

no are co-owners for the works in suit and that Bourne controls the administrative rights for each

of the works in suit.

**REQUEST FOR ADMISSION NO. 35:**  Individually for each accused clip, admit that
you did not consult with any of your licensees to ensure that the clip was not authorized to
appear on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**  Bourne objects to this Request on

the grounds that it is vague and ambiguous, including the word "consult" and "ensure".  Bourne

further objects to this Request on the ground that the requested matter is outside the scope of

information relevant to this case. .Subject to and without waiving the foregoing objections,

Bourne denies that, with respect to each accused clip, any of the infringing clips involved

licensed materials within the scope of the license.

**REQUEST FOR ADMISSION NO. 36:**  Admit that you have not used YouTube's
Content Verification Program.

**RESPONSE TO REQUEST FOR ADMISSION NO. 36:**  Bourne objects on the grounds that

it is vague and ambiguous and that YouTube has used several euphemisms to refer a number of

"tools" that it offers to content owners.   Bourne further objects to this Request on the ground

that it calls for the disclosure of information protected by the attorney-client privilege and/or the

work-product doctrine.  Bourne further objects to this Request on the ground that the requested

matter is outside the scope of information relevant to this case.  To the extent that  the Content

Verification Program "tool" is an electronic substitute for a DMCA takedown notice, Bourne

admits that it has not used this "tool", and otherwise denies the Request.

**REQUEST FOR ADMISSION NO. 37:**  Admit that you have not used YouTube's
Content ID tool.

**RESPONSE TO REQUEST FOR ADMISSION NO. 37:** Bourne objects on the grounds that

that it is vague and ambiguous and YouTube has used several euphemisms to refer a number of

"tools" that it offers to content owners. Bourne further objects to this Request on the ground that

it calls for the disclosure of information protected by the attorney-client privilege and/or the

work-product doctrine. Bourne further objects to this Request on the ground that the requested

matter is outside the scope of information relevant to this case. To the extent that Content ID is a

tool that refers to digital fingerprinting technology, Bourne states that Defendants have not made

their digital fingerprinting technology readily available to Plaintiffs on reasonable terms.

**REQUEST FOR ADMISSION NO. 38:** Admit that on no occasion prior to May 4,
2007 did you inform YouTube of the presence and location of any video on the YouTube.com
site that allegedly infringed your copyrights.

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:** Bourne objects to this Request on

the grounds that it is vague and ambiguous, including the word "consult" and "ensure". Bourne

further objects to this Request on the ground that the requested matter is outside the scope of

information relevant to this case. .Subject to and without waiving the foregoing objection,

Bourne admits that, with respect to each accused clip, it is not obligated to consult with its

licensees prior to taking action against Defendants for infringements of its works on the

YouTube website, and therefore had no reason to consult with them.

**REQUEST FOR ADMISSION NO. 39:** Admit that on no occasion prior to May 4,
2007 did you inform YouTube of the presence of any accused clip on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:** Bourne objects to this Request on

the ground that it seeks information equally available to Defendants. Bourne objects to this

Request on the ground that it misconstrues the parties' obligations under applicable law. Subject

to and without waiving the foregoing objections, Bourne denies the Request to the extent that it

was unnecessary to alert YouTube to the presence of copyrighted musical compositions for

which YouTube had obtained no license from Bourne.  Bourne further states that, because of the

huge volume of infringements of its works on the YouTube website, it notified YouTube in a

manner compliant with the DMCA as expeditiously as possible after determining that each

YouTube video that it claims as infringing in this action infringed its content.

**REQUEST FOR ADMISSION NO. 40:**  Admit that you retracted DMCA takedown
notices sent to YouTube for one or more of your works.

**RESPONSE TO REQUEST FOR ADMISSION NO. 40:**  Subject to and without waiving the

foregoing objections, Bourne denies this Request.


Dated: January 8, 2009
New York, New York

Louis M. Solomon
William M. Hart
Hal S. Shaftel
Elizabeth Anne Figueira
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036-8299
Phone:  212-969-3000
*-and-*
John C. Browne
Benjamin Galdston
BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
1285 Avenue of the Americas
New York, NY 10019
Phone: 212-554-1400
*Attorneys for Lead Plaintiffs, Named
Plaintiffs Murbo Music Publishing, Inc.,
Cherry Lane Music Publishing Company,
Inc., Robert Tur d/b/a Los Angeles News
Service, X-Ray Dog Music, Inc., Fédération
Française de Tennis, and for the Prospective
Class*

# Schapiro Exhibit 90

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE FOOTBALL ASSOCIATION PREMIER LEAGUE LIMITED, BOURNE CO. (together with its affiliate MURBO MUSIC PUBLISHING, INC.), CHERRY LANE MUSIC PUBLISHING COMPANY, INC., CAL IV ENTERTAINMENT LLC, ROBERT TUR d/b/a LOS ANGELES NEWS SERVICE, NATIONAL MUSIC PUBLISHERS' ASSOCIATION, THE RODGERS & HAMMERSTEIN ORGANIZATION, STAGE THREE MUSIC (US), INC., EDWARD B. MARKS MUSIC COMPANY, FREDDY BIENSTOCK MUSIC COMPANY d/b/a BIENSTOCK PUBLISHING COMPANY, ALLEY MUSIC CORPORATION, X-RAY DOG MUSIC, INC., FÉDÉRATION FRANÇAISE DE TENNIS, THE MUSIC FORCE LLC, and SIN-DROME RECORDS, LTD. on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> YOUTUBE, INC., YOUTUBE, LLC and GOOGLE, INC., <br><br> Defendants. | Case No. 07 Civ. 3582 (LLS) <br><br> **EDWARD B. MARKS' RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION TO EDWARD B. MARKS MUSIC COMPANY** |

Pursuant to Rule 36(a) of the Federal Rules of Civil Procedure, Named Plaintiff

Edward B. Marks Music Company ("Marks") hereby responds and objects to the Requests for

Admission (the "Requests") propounded by Defendants YouTube, Inc., YouTube LLC and

Google, Inc. ("YouTube" or "Defendants").

## GENERAL OBJECTIONS

The following general objections and statements ("General Objections") apply to each of the particular Requests propounded by Defendants and are hereby incorporated within each response set forth below. All of the responses set forth below are subject to and do not waive the General Objections:

1. Marks objects to the Requests on the ground that Marks is still in the process of gathering and analyzing information relevant to these Requests. Marks has not completed its review and analysis of all discovery obtained by the parties in this and the related *Viacom* action. Additionally, defendants and non-parties have produced more than 1.5 million pages of documents since October 13, 2009. Marks has not yet examined each document produced by defendants or otherwise in this action for the purpose of determining which individual allegations of the Second Amended Class Action Complaint ("Complaint") it might support, nor has Marks completed depositions that may more fully reveal facts and information relevant to these Requests. As discovery is not yet closed, including deposition and expert discovery, and the production of remaining data and/or documents, Marks' responses to these Requests are preliminary and tentative subject to completion of discovery and following an adequate opportunity to review and analyze all discovery in this action.

2. In responding to these Requests, Marks does not concede the relevance, materiality or admissibility of any of the admissions or responses sought herein. Marks' responses are made subject to and without waiving any objections as to relevancy, materiality, admissibility, vagueness, ambiguity, competency or privilege.

3. Marks does not waive any of its rights to object on any ground to the use of its responses herein.

4.     Marks objects to the Requests to the extent that they set forth compound, conjunctive or disjunctive statements.

5.     Marks objects to each request, instruction or definition to the extent that they seek to impose obligations beyond those imposed or authorized by the Federal Rules of Civil Procedure, the Civil Local Rules of the United States District Court for the Southern District of New York ("Civil Local Rules"), or the applicable standing orders and orders of this Court.

6.     Marks objects to each request, instruction or definition to the extent that it would require the disclosure of information that is outside the scope of information relevant to this case or that is otherwise improper.

7.     Marks objects to each request, instruction or definition to the extent that it would require the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

8.     Marks objects to each request, instruction or definition to the extent that it would require the disclosure of information generated or compiled by or at the direction of Marks' counsel.

9.     Marks objects to each request, instruction or definition to the extent that it would require the compilation or review of information otherwise within Defendants' possession, custody or control or more easily accessible to Defendants.

10.     Marks objects to each request, instruction or definition to the extent that they are vague, ambiguous, overly broad or unduly burdensome.

11.     Marks objects to each request, instruction or definition to the extent that they purport to require separate responses for each "Accused Clip" as compound and unduly burdensome.

12. Marks objects to each request to the extent that they fail to specify an applicable time period and are thereby vague, ambiguous and overbroad.

13. Marks objects to each request as premature to the extent that it calls for expert opinion

14. Marks objects to each request to the extent that it calls for a legal conclusion.

15. Marks objects to each request, instruction or definition to the extent that they purport to require Marks to respond to Defendants' characterizations of legal contentions or call for the application of law to fact to the extent such request seeks disclosure of privileged information.

16. Marks objects to the definitions of "Edward B. Marks", "Edward B. Marks'", "you" and "your" as overly broad and unduly burdensome, and further objects to the extent it seeks to impose obligations broader than those specified by Federal Rules of Civil Procedure 26, and Civil Local Rule 26.3(c)(5). Marks further objects on the grounds that the definition includes an unknown and unknowable number of "present and former agents, employees, representatives, accountants, investigators, attorneys," "person[s] acting or purporting to act on its behalf", and "other person[s] otherwise subject to its control, which controls it, or is under common control with them." Moreover, this definition includes "affiliates," "divisions," and "units" without any explanation of those terms' meaning. Marks further objects to the extent these definitions call for privileged information and to the extent they seek information outside of Plaintiffs' possession, custody or control. In responding to the Interrogatories, Plaintiffs will construe the terms "Edward B. Marks", "Edward B. Marks'", "you" and "your" to mean Named Plaintiff Marks.

17. Marks objects to the definitions of "Work(s) In Suit" and "Accused Clip(s)" as compound, vague and ambiguous. Marks further objects to the extent these definitions call for

privileged information. Marks further objects to the definitions of "Work(s) In Suit" and "Accused Clip(s)" to the extent such definitions attempt to limit the number or identity of infringed works or instances of infringement for which Marks seeks recovery. As set forth at paragraph 74 of the Second Amended Complaint, the infringed works specified by Marks in this litigation are "representative of Protected Works that are and have been infringed by Defendants and/or YouTube's users." Similarly, the infringements identified in Exhibit A to the Complaint and within the Complaint are representative and not an exhaustive list of the ongoing and massive infringement by Defendants. Marks reserves all rights to identify additional infringements and infringed works.

18.     Marks objects to the definition of "substantially DMCA-compliant takedown notice" as vague and ambiguous as it requires a qualitative judgment and lacks common or ready definition.

19.     Where Marks indicates a lack of information or knowledge sufficient to admit or deny a specific request, this lack of information or knowledge follows a reasonable inquiry by Marks, and the information known or readily obtainable by Marks is insufficient to enable the party to admit or deny.

20.     Marks reserves the right to supplement or amend these responses. These responses should not be construed as, and do not constitute, a waiver of Marks' right to prove additional facts at summary judgment or trial or any other rights.

21.     These general objections are continuing and are incorporated by reference in Marks' answers to each of the Requests set forth below. Any objection or lack of objection to any portion of these Requests is not an admission. Marks reserves the right to amend, supplement, modify, or correct these responses and objections as appropriate.

## MARKS' RESPONSES AND OBJECTIONS TO SPECIFIC
## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that at all relevant times YouTube was a "service provider" as that term is used in 17 U.S.C. § 512(k)(1)(B).

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Marks objects to this Request on the grounds that it is vague and ambiguous, including the term "at all relevant times." Marks further objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Marks admits that the YouTube website in part, provides or operates facilities for, among other things, "online services or network access" as those terms are used in 17 U.S.C. § 512(k)(1)(B), and otherwise denies the request.

**REQUEST FOR ADMISSION NO. 2:**

Admit that at all relevant times, YouTube stored material "at the direction of a user" as that phrase is used in 17 U.S.C. § 512(c)(1).

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Marks objects to this Request as vague and overbroad, including with respect to the terms "at all relevant times" and "material," which are undefined terms. Marks further objects to this Request to the extent it calls for a legal conclusion. YouTube is a media entertainment enterprise that engages in an array of directly and secondarily infringing activities that are neither storage nor at the direction of a user, such as, without limitation, transforming, copying and distributing material without the direction of a user. Subject to and without waiving the foregoing objections, Marks denies this Request.

**REQUEST FOR ADMISSION NO. 3:**

Admit that the material you allege to infringe your copyrights in this case was stored on the youtube.com service "at the direction of a user" as that phrase is used in 17 U.S.C. § 512(c)(1).

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Marks objects to this Request for Admission as vague and overbroad, including with respect to the term "material," which is an undefined term. Marks further objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Marks denies this Request.

**REQUEST FOR ADMISSION NO. 4:**

Admit that all of your copyright infringement claims in this action allege infringement of copyrights "by reason of the storage at the direction of a user" of material that resides on a system or network controlled or operated by or for YouTube, as set forth in 17 U.S.C. § 512(c)(1).

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Marks objects to this Request for Admission as vague and overbroad, including with respect to the term "material," which is an undefined term. Marks further objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Marks denies this Request.

**REQUEST FOR ADMISSION NO. 5:**

Admit that at all relevant times, YouTube had "designated an agent to receive notifications of claimed infringement" as set forth in 17 U.S.C. § 512(c)(2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Marks objects to this Request on the grounds that it is vague and ambiguous, including

the term "at all relevant times." Subject to and without waiving the foregoing objections, Marks denies this Request.

**REQUEST FOR ADMISSION NO. 6:**

Admit that on every occasion that you sent YouTube a DMCA takedown notice relating to an accused clip, YouTube responded "expeditiously," as that phrase is used in 17 U.S.C. § 512(c)(1)(A)(iii), to remove or disable access to the material claimed to be infringing.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Marks objects to this Request on the grounds that it is vague and ambiguous, including the term "material". Marks further objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Marks denies this Request.

**REQUEST FOR ADMISSION NO. 7:**

Admit that on every occasion that you sent YouTube a DMCA takedown notice relating to an accused clip, YouTube responded within seventy-two business hours to remove or disable access to the material claimed to be infringing.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Marks objects to this Request on the grounds that it is vague and ambiguous, including the term "material." Subject to and without waiving the foregoing objections, Marks denies this Request.

**REQUEST FOR ADMISSION NO. 8:**

Admit that for all of the accused clips, prior to receiving a DMCA takedown notice from you identifying those specific clips, YouTube did not have "actual knowledge" that the material was infringing, as described in 17 U.S.C. § 512(c)(1)(A)(i).

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Marks objects to this Request to the extent it calls for a legal conclusion. Subject to and

without waiving the foregoing objections, Marks denies this Request

**REQUEST FOR ADMISSION NO. 9:**

Admit that on no occasion did YouTube fail to expeditiously remove or disable access to an accused clip to the extent YouTube became aware of facts or circumstances from which infringing activity was apparent, as described in 17 U.S.C. § 512(c)(1)(A)(ii).

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Marks objects to this Request as compound. Marks further objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Marks denies this Request.

**REQUEST FOR ADMISSION NO. 10:**

Admit that YouTube lacked the right and ability to control the infringing activity alleged by you in this case, as described in 17 U.S.C. § 512(c)(l)(B).

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Marks objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Marks denies this Request.

**REQUEST FOR ADMISSION NO. 11:**

Admit that YouTube did not receive a financial benefit directly attributable to the infringing activity alleged by you in this case, as described in 17 U.S.C. § 512(c)(1)(B).

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Marks objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Marks denies this Request.

**REQUEST FOR ADMISSION NO. 12:**

Admit that at all relevant times, access to and use of the youtube.com service was provided to users by YouTube free and without charge.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Marks objects to the request as compound. Marks further objects to the terms "at all relevant times", "access" and "use" as vague and ambiguous. For example, "use" of and "access" to the youtube.com website includes various activities, such as advertising. Subject to and without waiving the foregoing objections, Marks denies that "use" of the youtube.com website was provided free and without charge.

**REQUEST FOR ADMISSION NO. 13:**

Admit that at all relevant times YouTube had adopted and reasonably implemented, and informed its subscribers and account holders of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of YouTube who were repeat infringers, as described in 17 U.S.C. § 512(i)(1)(A).

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Marks objects to this Request as vague and ambiguous, including the terms "at all relevant times", "reasonably implemented" and "appropriate circumstances". Marks further objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Marks denies this Request.

**REQUEST FOR ADMISSION NO. 14:**

Admit that at no time relevant to this lawsuit have there been any "standard technical measures" in existence as that term is defined in 17 U.S.C. §§ 512(i)(1)(B) and 512(i)(2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Marks objects to this Request as vague and ambiguous, including the term "in existence". Marks further objects to this Request to the extent it calls for a legal conclusion. Marks further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Subject to and without waiving the foregoing objections,

Marks denies this Request.

## REQUEST FOR ADMISSION NO. 15:

Admit that you do not claim in this case that YouTube failed to comply with 17 U.S.C. §§ 512(i)(1)(B) (i.e., YouTube accommodates and not interfere with "standard technical measures" to the extent any exist).

## RESPONSE TO REQUEST FOR ADMISSION NO. 15:

Marks objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Marks denies this Request.

## REQUEST FOR ADMISSION NO. 16:

Admit that you have issued licenses that grant the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

## RESPONSE TO REQUEST FOR ADMISSION NO. 16:

Marks objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Marks further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Marks further objects to this Request on the ground that any rights extended to a licensee of Marks content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such license. Subject to and without waiving the foregoing objections, Marks denies that language granting rights in a license can be read in isolation, and states that it must be read in light of other terms and restrictions in that license. Marks admits that it has granted a limited number of licenses that grant certain rights, subject to various limitations, including without limitation, limitations on duration, territory, and use of musical compositions only in connection with particular video footage and in some cases, limitations to particular websites; among such licenses, there are an even smaller number that

have granted licensees the right to use certain musical compositions on YouTube in combination with certain specified footage and in exchange for the payment of a license fee, subject to such additional restrictions, such as duration, territory and other restrictions of the type described above.

**REQUEST FOR ADMISSION NO. 17:**

Admit that you have issued licenses for works-in-suit that grant the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Marks objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Marks further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Marks further objects to this Request on the ground that any rights extended to a licensee of Marks content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such license. Subject to and without waiving the foregoing objections, Marks denies that language granting rights in a license can be read in isolation, and states that it must be read in light of other terms and restrictions in that license. Marks admits that it has granted a limited number of licenses that grant certain rights, subject to various limitations, including without limitation, limitations on duration, territory, and use of musical compositions only in connection with particular video footage and in some cases, limitations to particular websites; among such licenses, there are an even smaller number that have granted licensees the right to use certain musical compositions on YouTube in combination with certain specified footage and in exchange for the payment of a license fee, subject to such additional restrictions, such as duration, territory and other restrictions of the type described above. Marks admits that there are fewer than five licenses that have granted the licensee the

right to exploit a work-in-suit in certain specific and identifiable contexts on certain specified

websites, subject to the various restrictions identified above. See also Marks' response to

Request no. 25.

## REQUEST FOR ADMISSION NO. 18:

Admit that you have issued licenses after November 7, 2007 that grant the licensee the

right to exhibit and distribute the work on websites, including YouTube.com.

## RESPONSE TO REQUEST FOR ADMISSION NO. 18:

Marks objects to this Request on the grounds that the terms "exhibit", "distribute", "the

work" and "on websites" are vague and ambiguous. Marks further objects to this Request on the

ground that the requested matter is outside the scope of information relevant to this case. Marks

denies that language granting rights to exploit in "all media" or "the Internet" standing alone

authorize a licensee to exploit Marks content on websites generally or on YouTube.com

specifically. Subject to and without waiving the foregoing objections, Marks denies this request.

## REQUEST FOR ADMISSION NO. 19:

Admit that you have issued licenses for works-in-suit after November 7, 2007, that grant

the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

## RESPONSE TO REQUEST FOR ADMISSION NO. 19:

Marks objects to this Request on the grounds that it is vague and ambiguous, including

the terms "exhibit", "distribute", "the work" and "on websites". Marks further objects to this

Request on the ground that the requested matter is outside the scope of information relevant to

this case. Marks further objects to this Request on the ground that any rights extended to a

licensee of Marks content do not extend to parties such as unauthorized uploaders of content or

YouTube, neither of whom derive any rights under such license. Subject to and without waiving

the foregoing objections, Marks denies that language granting rights in a license can be read in

isolation, and states that it must be read in light of other terms and restrictions in that license. Marks admits that it has granted a limited number of licenses that grant certain rights, subject to various limitations, including without limitation, limitations on duration, territory, and use of musical compositions only in connection with particular video footage and in some cases, limitations to particular websites; among such licenses, there are an even smaller number that have granted licensees the right to use certain musical compositions on YouTube in combination with certain specified footage and in exchange for the payment of a license fee, subject to such additional restrictions, such as duration, territory and other restrictions of the type described above. Marks admits that there are fewer than five licenses that have granted the licensee the right to exploit a work-in-suit in certain specific and identifiable contexts on certain specified websites, subject to the various restrictions identified above, since November 7, 2007. See also Marks' response to Request no. 25.

## REQUEST FOR ADMISSION NO. 20:

Admit that on no occasion did you inform YouTube of the presence of any authorized videos on the YouTube.com site.

## RESPONSE TO REQUEST FOR ADMISSION NO. 20:

Marks objects to this Request on the ground that it is vague and ambiguous, including the terms "inform" and "any authorized videos." Marks further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Subject to and without waiving the foregoing objections, Marks denies this Request to the extent it implies that Marks has an obligation to inform YouTube of the presence of "any authorized videos" on the YouTube website and further denies this Request to the extent it implies that YouTube is not on active or constructive notice whether it is authorized to exploit the videos on its own website, and further denies this request to the extent it implies that YouTube does not

have access to information furnished by Marks that would allow YouTube to determine if the presence of videos containing Marks content are authorized. As a business practice, it is ordinarily incumbent upon the party exploiting content, i.e. YouTube, to seek and obtain appropriate license as well as information concerning the owner and/or administrator of which it is exploiting. Such information is readily and publicly available including through public databases identifying Marks as the administrator of and/or owner of the works in suit and other Marks content.

## REQUEST FOR ADMISSION NO. 21:

Admit that the presence on the youtube.com website of videos embodying the works in suit can have the effect of increasing consumer demand for those works.

## RESPONSE TO REQUEST FOR ADMISSION NO. 21:

Marks objects to this Request on the grounds that it is vague and ambiguous, including the phrases "can have the effect" and "consumer demand." Marks further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Marks further objects to this request on the ground that it seeks Marks' opinion regarding an incomplete hypothetical question, not the admission or denial of a fact. Subject to and without waiving the foregoing objections, Marks denies that the presence of videos on Youtube.com has the effect of increasing consumer demand, including, without limitation, when the works are being made available for free on youtube.com and are a substitution of the products sold or licensed by Marks to third parties for a fee and/or otherwise damage Marks' business.

## REQUEST FOR ADMISSION NO. 22:

Individually for each accused clip, admit that you did not send a DMCA takedown notice to YouTube within one week of becoming aware of that clip's presence on YouTube.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Marks objects to this Request on the grounds that it is vague and ambiguous, including

the term "becoming aware." Marks further objects to this Request on the ground that it calls for

the disclosure of information protected by the attorney-client privilege and/or the work-product

doctrine. Marks further objects to this Request on the ground that the requested matter is outside

the scope of information relevant to this case. Marks further objects to this request on the ground

that it misconstrues the parties' respective obligations under applicable law. Subject to and

without waiving the foregoing objections, Marks denies this Request to the extent that many

DMCA takedown notices were sent to YouTube within one week of Marks discovering the

infringing content. Marks states that, because of the huge volume of infringements of its works

on the YouTube website, it notified YouTube in a manner compliant with the DMCA as

expeditiously as possible after determining that each YouTube video that it claims as infringing

in the Complaints in this action infringed its content.

**REQUEST FOR ADMISSION NO. 23:**

Individually for each accused clip, admit that you did not send a DMCA takedown notice

to YouTube within one month of becoming aware of that clip's presence on YouTube.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Marks objects to this Request on the grounds that it is vague and ambiguous, including

the term "becoming aware." Marks further objects to this Request on the ground that it calls for

the disclosure of information protected by the attorney-client privilege and/or the work-product

doctrine. Marks further objects to this Request on the ground that the requested matter is outside

the scope of information relevant to this case. Marks further objects to this Request on the

ground that the requested matter is outside the scope of information relevant to this case. Marks

further objects to this request on the ground that it misconstrues the parties' respective

obligations under applicable law. Subject to and without waiving the foregoing objections,

Marks denies this Request to the extent that many DMCA takedown notices were sent to

YouTube within one month of Marks discovering the infringing content. Marks states that,

because of the huge volume of infringements of its works on the YouTube website, it notified

YouTube in a manner compliant with the DMCA as expeditiously as possible after determining

that each YouTube video that it claims as infringing in the Complaints in this action infringed its

content.

## REQUEST FOR ADMISSION NO. 24:

Individually for each accused clip, admit that you did not send a DMCA takedown notice

to YouTube within two months of becoming aware of that clip's presence on YouTube.

## RESPONSE TO REQUEST FOR ADMISSION NO. 24:

Marks objects to this Request on the grounds that it is vague and ambiguous, including

the term "becoming aware." Marks further objects to this Request on the ground that it calls for

the disclosure of information protected by the attorney-client privilege and/or the work-product

doctrine. Marks further objects to this Request on the ground that the requested matter is outside

the scope of information relevant to this case. Marks further objects to this Request on the

ground that the requested matter is outside the scope of information relevant to this case. Marks

further objects to this request on the ground that it misconstrues the parties' respective

obligations under applicable law. Subject to and without waiving the foregoing objections,

Marks denies this Request to the extent that many DMCA takedown notices were sent to

YouTube within two months of Marks discovering the infringing content. Marks states that,

because of the huge volume of infringements of its works on the YouTube website, it notified

YouTube in a manner compliant with the DMCA as expeditiously as possible after determining

that each YouTube video that it claims as infringing in the Complaints in this action infringed its

content.

**REQUEST FOR ADMISSION NO. 25:**

Admit that the license agreement produced at CA00240485 – CA00240488 grants the licensee the right to exhibit and distribute the work on websites including youtube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Marks objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Subject to and without waiving the foregoing objections, Marks denies this Request because the express terms of the agreement permit exploitation of the Marks on hallmark.com only during a six week term, and excludes the remainder of the internet, including youtube.com.

**REQUEST FOR ADMISSION NO. 26:**

Admit that you never informed YouTube of the existence of the license agreement set forth in Request 25.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Marks objects to this Request on the grounds that the requested matter is outside the scope of information relevant to this case. Subject to and without waiving the foregoing objections, Marks denies this Request to the extent it implies that Marks has any obligation to inform YouTube of the existence of these license agreements. As a business practice, it is ordinarily incumbent upon the party exploiting content, i.e. YouTube, to seek and obtain appropriate license as well as information concerning the owner and/or administrator of which it is exploiting. Such information is readily and publicly available including through public databases identifying Marks as the administrator of and/or owner of the works in suit and other Marks content. Marks further denies this Request for the reasons set forth in Request no. 25.

**REQUEST FOR ADMISSION NO. 27:**

Individually for each accused clip, admit that you did not consult with your sub-publishers to ensure that the clip was unauthorized to appear on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Marks objects to this request on the grounds that it is vague and ambiguous, including the terms "consult" and "ensure". Marks further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Marks further objects to this Request on the ground that it calls for the disclosure of information protected by the attorney-client privilege and/or the work-product doctrine. Subject to and without waiving the foregoing objections, Marks denies this Request to the extent it implies that Marks is obligated to consult with its sub-publishers to establish that each accused clip was unauthorized to appear on the YouTube website, and admits that in certain cases it did not contact its sub-publisher prior to requesting that YouTube take down an infringing clip, because in those cases Marks' sub-publishers either do not have authority under the express terms of the agreements between them and Marks to post content to youtube.com or to authorize third parties to posts clips containing Marks content on youtube.com, a website that is available worldwide, or the sub-publisher is required to seek permission from Marks before issuing a license to grant the right to exploit Marks content on the internet.

**REQUEST FOR ADMISSION NO. 28:**

Individually for each accused clip, admit that you did not consult with the writer of the work-in-suit to ensure that the clip was authorized to appear on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Marks objects to this request on the grounds that it is vague and ambiguous, including the terms "consult", "ensure" and "writer". Marks further objects to this Request on the ground that

the requested matter is outside the scope of information relevant to this case. Subject to and without waiving the foregoing objections, Marks denies this Request to the extent it implies that Marks is obligated to consult with the "writer" to ensure that each accused clip was unauthorized to be on the YouTube website.

**REQUEST FOR ADMISSION NO. 29:**

Individually for each accused clip, admit that you did not consult with any of your licensees to ensure that the clip was not authorized to appear on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

Marks objects to this Request on the grounds that it is vague and ambiguous, including the word "consult" and "ensure". Marks further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Subject to and without waiving the foregoing objections, Marks denies that, with respect to each accused clip, any of the infringing clips involved licensed materials within the scope of the license.

**REQUEST FOR ADMISSION NO. 30:**

Admit that you have not used YouTube's Content Verification Program.

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

Marks objects on the grounds that it is vague and ambiguous and that YouTube has used several euphemisms to refer to a number of "tools" that it offers to content owners. Marks further objects to this Request on the ground that it calls for the disclosure of information protected by the attorney-client privilege and/or the work-product doctrine. Marks further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. To the extent that the Content Verification Program "tool" is an electronic substitute for a DMCA takedown notice, Marks admits that it has not used this "tool", and otherwise denies the Request.

**REQUEST FOR ADMISSION NO. 31:**

Admit that you have not used YouTube's Content ID tool.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

Marks objects on the grounds that that it is vague and ambiguous and YouTube has used several euphemisms to refer to a number of "tools" that it offers to content owners. Marks further objects to this Request on the ground that it calls for the disclosure of information protected by the attorney-client privilege and/or the work-product doctrine. Marks further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. To the extent that Content ID is a tool that refers to digital fingerprinting technology, Marks states that Defendants have not made their digital fingerprinting technology readily available to Plaintiffs on reasonable terms.

**REQUEST FOR ADMISSION NO. 32:**

Admit that on no occasion prior to November 7, 2007 did you inform YouTube of the presence and location of any video on the YouTube.com site that allegedly infringed your copyrights.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

Marks objects to this Request on the ground that it requires the compilation or review of information otherwise within Defendants' possession, custody or control and more easily accessible to Defendants. Subject to and without waiving the foregoing objections, Marks denies this Request.

**REQUEST FOR ADMISSION NO. 33:**

Admit that on no occasion prior to November 7, 2007 did you inform YouTube of the presence of any accused clip on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

Marks objects to this Request on the ground that it requires the compilation or review of information otherwise within Defendants' possession, custody or control and more easily accessible to Defendants. Subject to and without waiving the foregoing objections, Marks denies this Request, and states that a copy of the Amended Complaint, listing video clips on the YouTube website that infringed Marks' works, was submitted to YouTube's counsel on October 8, 2007, and that the Amended Complaint, containing the same list of video clips, was filed with the Court on November 7, 2007.

**REQUEST FOR ADMISSION NO. 34:**

Admit that you retracted DMCA takedown notices sent to YouTube for one or more of your works.

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

Subject to and without waiving the foregoing objections, Marks denies this Request.

Dated: January 11, 2010

Respectfully submitted,

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York  10013-1413
Phone:      (212) 355-9500
Facsimile: (212) 355-9592

By: _____
Annika K. Martin

# Schapiro Exhibit 91

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE FOOTBALL ASSOCIATION PREMIER
LEAGUE LIMITED, BOURNE CO. (together
with its affiliate MURBO MUSIC
PUBLISHING, INC.), CHERRY LANE
MUSIC PUBLISHING COMPANY, INC.,
CAL IV ENTERTAINMENT LLC, ROBERT
TUR d/b/a LOS ANGELES NEWS SERVICE,
NATIONAL MUSIC PUBLISHERS'
ASSOCIATION, THE RODGERS &
HAMMERSTEIN ORGANIZATION, STAGE
THREE MUSIC (US), INC., EDWARD B.
MARKS MUSIC COMPANY, FREDDY
BIENSTOCK MUSIC COMPANY d/b/a
BIENSTOCK PUBLISHING COMPANY,
ALLEY MUSIC CORPORATION, X-RAY
DOG MUSIC, INC., FÉDÉRATION
FRANÇAISE DE TENNIS, THE MUSIC
FORCE LLC, and SIN-DROME RECORDS,
LTD. on behalf of themselves and all others
similarly situated,

        Plaintiff,

    v.

YOUTUBE, INC., YOUTUBE, LLC and
GOOGLE, INC.,

        Defendants.

Case No. 07 Civ. 3582 (LLS)

**BIENSTOCK PUBLISHING COMPANY'S
RESPONSES AND OBJECTIONS TO
DEFENDANTS' FIRST SET OF REQUESTS
FOR ADMISSION TO FREDDY BIENSTOCK
MUSIC COMPANY d/b/a BIENSTOCK
PUBLISHING COMPANY**

Pursuant to Rule 36(a) of the Federal Rules of Civil Procedure, Named Plaintiff Freddy

Bienstock Music Publishing Company, Inc. ("Bienstock") hereby responds and objects to the

Requests for Admission (the "Requests") propounded by Defendants YouTube, Inc., YouTube

LLC and Google, Inc. ("YouTube" or "Defendants").

## GENERAL OBJECTIONS

The following general objections and statements ("General Objections") apply to each of the particular Requests propounded by Defendants and are hereby incorporated within each response set forth below. All of the responses set forth below are subject to and do not waive the General Objections:

1.     Bienstock objects to the Requests on the ground that Bienstock is still in the process of gathering and analyzing information relevant to these Requests. Bienstock has not completed its review and analysis of all discovery obtained by the parties in this and the related *Viacom* action. Additionally, defendants and non-parties have produced more than 1.5 million pages of documents since October 13, 2009. Bienstock has not yet examined each document produced by defendants or otherwise in this action for the purpose of determining which individual allegations of the Second Amended Class Action Complaint ("Complaint") it might support, nor has Bienstock completed depositions that may more fully reveal facts and information relevant to these Requests. As discovery is not yet closed, including deposition and expert discovery, and the production of remaining data and/or documents, Bienstock's responses to these Requests are preliminary and tentative subject to completion of discovery and following an adequate opportunity to review and analyze all discovery in this action.

2.     In responding to these Requests, Bienstock does not concede the relevance, materiality or admissibility of any of the admissions or responses sought herein. Bienstock's responses are made subject to and without waiving any objections as to relevancy, materiality, admissibility, vagueness, ambiguity, competency or privilege.

3.     Bienstock does not waive any of its rights to object on any ground to the use of its responses herein.

4.     Bienstock objects to the Requests to the extent that they set forth compound, conjunctive or disjunctive statements.

5.     Bienstock objects to each request, instruction or definition to the extent that they seek to impose obligations beyond those imposed or authorized by the Federal Rules of Civil Procedure, the Civil Local Rules of the United States District Court for the Southern District of New York ("Civil Local Rules"), or the applicable standing orders and orders of this Court.

6.     Bienstock objects to each request, instruction or definition to the extent that it would require the disclosure of information that is outside the scope of information relevant to this case or that is otherwise improper.

7.     Bienstock objects to each request, instruction or definition to the extent that it would require the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

8.     Bienstock objects to each request, instruction or definition to the extent that it would require the disclosure of information generated or compiled by or at the direction of Bienstock's counsel.

9.     Bienstock objects to each request, instruction or definition to the extent that it would require the compilation or review of information otherwise within Defendants' possession, custody or control or more easily accessible to Defendants.

10.     Bienstock objects to each request, instruction or definition to the extent that they are vague, ambiguous, overly broad or unduly burdensome.

11.     Bienstock objects to each request, instruction or definition to the extent that they purport to require separate responses for each "Accused Clip" as compound and unduly burdensome.

12.     Bienstock objects to each request to the extent that they fail to specify an applicable time period and are thereby vague, ambiguous and overbroad.

13.     Bienstock objects to each request as premature to the extent that it calls for expert opinion

14.     Bienstock objects to each request to the extent that it calls for a legal conclusion.

15.     Bienstock objects to each request, instruction or definition to the extent that they purport to require Bienstock to respond to Defendants' characterizations of legal contentions or call for the application of law to fact to the extent such request seeks disclosure of privileged information.

16.     Bienstock objects to the definitions of "Bienstock", "Bienstock's", "you" and "your" as overly broad and unduly burdensome, and further objects to the extent it seeks to impose obligations broader than those specified by Federal Rules of Civil Procedure 26, and Civil Local Rule 26.3(c)(5). Bienstock further objects on the grounds that the definition includes an unknown and unknowable number of "present and former agents, employees, representatives, accountants, investigators, attorneys," "person[s] acting or purporting to act on its behalf", and "other person[s] otherwise subject to its control, which controls it, or is under common control with them." Moreover, this definition includes "affiliates," "divisions," and "units" without any explanation of those terms' meaning. Bienstock further objects to the extent these definitions call for privileged information and to the extent they seek information outside of Plaintiffs' possession, custody or control. In responding to the Interrogatories, Plaintiffs will construe the terms "Bienstock", "Bienstock's", "you" and "your" to mean Named Plaintiff Bienstock.

17.     Bienstock objects to the definitions of "Work(s) In Suit" and "Accused Clip(s)" as compound, vague and ambiguous. Bienstock further objects to the extent these definitions call

for privileged information. Bienstock further objects to the definitions of "Work(s) In Suit" and "Accused Clip(s)" to the extent such definitions attempt to limit the number or identity of infringed works or instances of infringement for which Bienstock seeks recovery. As set forth at paragraph 74 of the Second Amended Complaint, the infringed works specified by Bienstock in this litigation are "representative of Protected Works that are and have been infringed by Defendants and/or YouTube's users." Similarly, the infringements identified in Exhibit A to the Complaint and within the Complaint are representative and not an exhaustive list of the ongoing and massive infringement by Defendants. Bienstock reserves all rights to identify additional infringements and infringed works.

18.     Bienstock objects to the definition of "substantially DMCA-compliant takedown notice" as vague and ambiguous as it requires a qualitative judgment and lacks common or ready definition.

19.     Where Bienstock indicates a lack of information or knowledge sufficient to admit or deny a specific request, this lack of information or knowledge follows a reasonable inquiry by Bienstock, and the information known or readily obtainable by Bienstock is insufficient to enable the party to admit or deny.

20.     Bienstock reserves the right to supplement or amend these responses. These responses should not be construed as, and do not constitute, a waiver of Bienstock's right to prove additional facts at summary judgment or trial or any other rights.

21.     These general objections are continuing and are incorporated by reference in Bienstock's answers to each of the Requests set forth below. Any objection or lack of objection to any portion of these Requests is not an admission. Bienstock reserves the right to amend, supplement, modify, or correct these responses and objections as appropriate.

## BIENSTOCK'S RESPONSES AND OBJECTIONS TO SPECIFIC REQUESTS FOR ADMISSION

### REQUEST FOR ADMISSION NO. 1:

Admit that at all relevant times YouTube was a "service provider" as that term is used in 17 U.S.C. § 512(k)(1)(B).

### RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Bienstock objects to this Request on the grounds that it is vague and ambiguous, including the term "at all relevant times." Bienstock further objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Bienstock admits that the YouTube website in part, provides or operates facilities for, among other things, "online services or network access" as those terms are used in 17 U.S.C. § 512(k)(1)(B), and otherwise denies the request.

### REQUEST FOR ADMISSION NO. 2:

Admit that at all relevant times, YouTube stored material "at the direction of a user" as that phrase is used in 17 U.S.C. § 512(c)(1).

### RESPONSE TO REQUEST FOR ADMISSION NO. 2:

Bienstock objects to this Request as vague and overbroad, including with respect to the terms "at all relevant times" and "material," which are undefined terms. Bienstock further objects to this Request to the extent it calls for a legal conclusion. YouTube is a media entertainment enterprise that engages in an array of directly and secondarily infringing activities that are neither storage nor at the direction of a user, such as, without limitation, transforming, copying and distributing material without the direction of a user. Subject to and without waiving the foregoing objections, Bienstock denies this Request.

**REQUEST FOR ADMISSION NO. 3:**

Admit that the material you allege to infringe your copyrights in this case was stored on the youtube.com service "at the direction of a user" as that phrase is used in 17 U.S.C. § 512(c)(1).

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Bienstock objects to this Request for Admission as vague and overbroad, including with respect to the term "material," which is an undefined term. Bienstock further objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Bienstock denies this Request.

**REQUEST FOR ADMISSION NO. 4:**

Admit that all of your copyright infringement claims in this action allege infringement of copyrights "by reason of the storage at the direction of a user" of material that resides on a system or network controlled or operated by or for YouTube, as set forth in 17 U.S.C. § 512(c)(1).

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Bienstock objects to this Request for Admission as vague and overbroad, including with respect to the term "material," which is an undefined term. Bienstock further objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Bienstock denies this Request.

**REQUEST FOR ADMISSION NO. 5:**

Admit that at all relevant times, YouTube had "designated an agent to receive notifications of claimed infringement" as set forth in 17 U.S.C. § 512(c)(2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Bienstock objects to this Request on the grounds that it is vague and ambiguous, including the term "at all relevant times." Subject to and without waiving the foregoing objections, Bienstock denies this Request.

**REQUEST FOR ADMISSION NO. 6:**

Admit that on every occasion that you sent YouTube a DMCA takedown notice relating to an accused clip, YouTube responded "expeditiously," as that phrase is used in 17 U.S.C. § 512(c)(1)(A)(iii), to remove or disable access to the material claimed to be infringing.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Bienstock objects to this Request on the grounds that it is vague and ambiguous, including the term "material". Bienstock further objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Bienstock denies this Request.

**REQUEST FOR ADMISSION NO. 7:**

Admit that on every occasion that you sent YouTube a DMCA takedown notice relating to an accused clip, YouTube responded within seventy-two business hours to remove or disable access to the material claimed to be infringing.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Bienstock objects to this Request on the grounds that it is vague and ambiguous, including the term "material." Subject to and without waiving the foregoing objections, Bienstock denies this Request.

**REQUEST FOR ADMISSION NO. 8:**

Admit that for all of the accused clips, prior to receiving a DMCA takedown notice from

you identifying those specific clips, YouTube did not have "actual knowledge" that the material was infringing, as described in 17 U.S.C. § 512(c)(1)(A)(i).

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Bienstock objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Bienstock denies this Request.

**REQUEST FOR ADMISSION NO. 9:**

Admit that on no occasion did YouTube fail to expeditiously remove or disable access to an accused clip to the extent YouTube became aware of facts or circumstances from which infringing activity was apparent, as described in 17 U.S.C. § 512(c)(1)(A)(ii).

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Bienstock objects to this Request as compound. Bienstock further objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Bienstock denies this Request.

**REQUEST FOR ADMISSION NO. 10:**

Admit that YouTube lacked the right and ability to control the infringing activity alleged by you in this case, as described in 17 U.S.C. § 512(c)(l)(B).

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Bienstock objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Bienstock denies this Request.

**REQUEST FOR ADMISSION NO. 11:**

Admit that YouTube did not receive a financial benefit directly attributable to the infringing activity alleged by you in this case, as described in 17 U.S.C. § 512(c)(l)(B).

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Bienstock objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Bienstock denies this Request.

**REQUEST FOR ADMISSION NO. 12:**

Admit that at all relevant times, access to and use of the youtube.com service was provided to users by YouTube free and without charge.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Bienstock objects to the request as compound. Bienstock further objects to the terms "at all relevant times", "access" and "use" as vague and ambiguous. For example, "use" of and "access" to the youtube.com website includes various activities, such as advertising. Subject to and without waiving the foregoing objections, Bienstock denies that "use" of the youtube.com website was provided free and without charge.

**REQUEST FOR ADMISSION NO. 13:**

Admit that at all relevant times YouTube had adopted and reasonably implemented, and informed its subscribers and account holders of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of YouTube who were repeat infringers, as described in 17 U.S.C. § 512(i)(1)(A).

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Bienstock objects to this Request as vague and ambiguous, including the terms "at all relevant times", "reasonably implemented" and "appropriate circumstances". Bienstock further objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Bienstock denies this Request.

**REQUEST FOR ADMISSION NO. 14:**

Admit that at no time relevant to this lawsuit have there been any "standard technical measures" in existence as that term is defined in 17 U.S.C. §§ 512(i)(1)(B) and 512(i)(2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Bienstock objects to this Request as vague and ambiguous, including the term "in existence". Bienstock further objects to this Request to the extent it calls for a legal conclusion. Bienstock further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Subject to and without waiving the foregoing objections, Bienstock denies this Request.

**REQUEST FOR ADMISSION NO. 15:**

Admit that you do not claim in this case that YouTube failed to comply with 17 U.S.C. §§ 512(i)(1)(B) (i.e., YouTube accommodates and not interfere with "standard technical measures" to the extent any exist).

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Bienstock objects to this Request to the extent it calls for a legal conclusion. Subject to and without waiving the foregoing objections, Bienstock denies this Request.

**REQUEST FOR ADMISSION NO. 16:**

Admit that you have issued licenses that grant the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Bienstock objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Bienstock further objects to this Request on the ground that the requested matter is outside the scope of

information relevant to this case. Bienstock further objects to this Request on the ground that any rights extended to a licensee of Bienstock content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such license. Subject to and without waiving the foregoing objections, Bienstock denies that language granting rights in a license can be read in isolation, and states that it must be read in light of other terms and restrictions in that license. Bienstock admits that it has granted a limited number of licenses that grant certain rights, subject to various limitations, including without limitation, limitations on duration, territory, and use of musical compositions only in connection with particular video footage and in some cases, limitations to particular websites; among such licenses, there are an even smaller number that have granted licensees the right to use certain musical compositions on YouTube in combination with certain specified footage and in exchange for the payment of a license fee, subject to such additional restrictions, such as duration, territory and other restrictions of the type described above.

**REQUEST FOR ADMISSION NO. 17:**

Admit that you have issued licenses for works-in-suit that grant the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Bienstock objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Bienstock further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Bienstock further objects to this Request on the ground that any rights extended to a licensee of Bienstock content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such

license. Subject to and without waiving the foregoing objections, Bienstock denies that language

granting rights in a license can be read in isolation, and states that it must be read in light of other

terms and restrictions in that license. Bienstock admits that it has granted a limited number of

licenses that grant certain rights, subject to various limitations, including without limitation,

limitations on duration, territory, and use of musical compositions only in connection with

particular video footage and in some cases, limitations to particular websites; among such

licenses, there are an even smaller number that have granted licensees the right to use certain

musical compositions on YouTube in combination with certain specified footage and in

exchange for the payment of a license fee, subject to such additional restrictions, such as

duration, territory and other restrictions of the type described above. Bienstock admits that there

are fewer than twenty licenses that have granted the licensee the right to exploit a work-in-suit in

certain specific and identifiable contexts on certain specified websites, including youtube.com,

subject to the various restrictions identified above.

## REQUEST FOR ADMISSION NO. 18:

Admit that you have issued licenses after November 7, 2007 that grant the licensee the

right to exhibit and distribute the work on websites, including YouTube.com.

## RESPONSE TO REQUEST FOR ADMISSION NO. 18:

Bienstock objects to this Request on the grounds that the terms "exhibit", "distribute" and

"the work" are vague and ambiguous. Bienstock further objects to this Request on the grounds

that it seeks information that is neither relevant to any claim or defense of any party nor

reasonably calculated to lead to the discovery of admissible evidence. Subject to and without

waiving the foregoing objections, Bienstock denies that language granting rights to exploit in "all

media" or "the Internet" standing alone authorize a licensee to exploit Bienstock content on

websites generally or on YouTube.com specifically, but Bienstock admits that it has issued a limited number of licenses that grant certain rights to exploit Bienstock content on the Internet subject to the express terms of the agreement, including the fee paid by the licensee in exchange for said rights, including fewer than twenty licenses that have granted the licensee the right to exploit a work-in-suit in certain specific and identifiable contexts on certain specified websites, including youtube.com.

## REQUEST FOR ADMISSION NO. 19:

Admit that you have issued licenses for works-in-suit after November 7, 2007, that grant the licensee the right to exhibit and distribute the work on websites, including YouTube.com.

## RESPONSE TO REQUEST FOR ADMISSION NO. 19:

Bienstock objects to this Request on the grounds that it is vague and ambiguous, including the terms "exhibit", "distribute", "the work" and "on websites". Bienstock further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Bienstock further objects to this Request on the ground that any rights extended to a licensee of Bienstock content do not extend to parties such as unauthorized uploaders of content or YouTube, neither of whom derive any rights under such license. Subject to and without waiving the foregoing objections, Bienstock denies that language granting rights in a license can be read in isolation, and states that it must be read in light of other terms and restrictions in that license. Bienstock admits that it has granted a limited number of licenses that grant certain rights, subject to various limitations, including without limitation, limitations on duration, territory, and use of musical compositions only in connection with particular video footage and in some cases, limitations to particular websites; among such licenses, there are an even smaller number that have granted licensees the right to use certain

musical compositions on YouTube in combination with certain specified footage and in exchange for the payment of a license fee, subject to such additional restrictions, such as duration, territory and other restrictions of the type described above. Bienstock admits that there are fewer than ten licenses that have granted the licensee the right to exploit a work-in-suit in certain specific and identifiable contexts on certain specified websites, including youtube.com subject to the various restrictions identified above, since November 7, 2007.

## REQUEST FOR ADMISSION NO. 20:

Admit that on no occasion did you inform YouTube of the presence of any authorized videos on the YouTube.com site.

## RESPONSE TO REQUEST FOR ADMISSION NO. 20:

Bienstock objects to this Request on the ground that it is vague and ambiguous, including the terms "inform" and "any authorized videos." Bienstock further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Subject to and without waiving the foregoing objections, Bienstock denies this Request to the extent it implies that Bienstock has an obligation to inform YouTube of the presence of "any authorized videos" on the YouTube website and further denies this Request to the extent it implies that YouTube is not on active or constructive notice whether it is authorized to exploit the videos on its own website, and further denies this request to the extent it implies that YouTube does not have access to information furnished by Bienstock that would allow YouTube to determine if the presence of videos containing Bienstock content are authorized. As a business practice, it is ordinarily incumbent upon the party exploiting content, i.e. YouTube, to seek and obtain appropriate license as well as information concerning the owner and/or administrator of which it is exploiting. Such information is readily and publicly available including through public

databases identifying Bienstock as the administrator of and/or owner of the works in suit and other Bienstock content.

**REQUEST FOR ADMISSION NO. 21:**

Admit that the presence on the youtube.com website of videos embodying the works in suit can have the effect of increasing consumer demand for those works.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Bienstock objects to this Request on the grounds that it is vague and ambiguous, including the phrases "can have the effect" and "consumer demand." Bienstock further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Bienstock further objects to this request on the ground that it seeks Bienstock's opinion regarding an incomplete hypothetical question, not the admission or denial of a fact. Subject to and without waiving the foregoing objections, Bienstock denies that the presence of videos on Youtube.com has the effect of increasing consumer demand, including, without limitation, when the works are being made available for free on youtube.com and are a substitution of the products sold or licensed by Bienstock to third parties for a fee and/or otherwise damage Bienstock's business.

**REQUEST FOR ADMISSION NO. 22:**

Individually for each accused clip, admit that you did not send a DMCA takedown notice to YouTube within one week of becoming aware of that clip's presence on YouTube.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Bienstock objects to this Request on the grounds that it is vague and ambiguous, including the term "becoming aware." Bienstock further objects to this Request on the ground that it calls for the disclosure of information protected by the attorney-client privilege and/or the

work-product doctrine. Bienstock further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Bienstock further objects to this request on the ground that it misconstrues the parties' respective obligations under applicable law. Subject to and without waiving the foregoing objections, Bienstock denies this Request to the extent that many DMCA takedown notices were sent to YouTube within one week of Bienstock discovering the infringing content. Bienstock states that, because of the huge volume of infringements of its works on the YouTube website, it notified YouTube in a manner compliant with the DMCA as expeditiously as possible after determining that each YouTube video that it claims as infringing in the Complaints in this action infringed its content.

**REQUEST FOR ADMISSION NO. 23:**

Individually for each accused clip, admit that you did not send a DMCA takedown notice to YouTube within one month of becoming aware of that clip's presence on YouTube.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Bienstock objects to this Request on the grounds that it is vague and ambiguous, including the term "becoming aware." Bienstock further objects to this Request on the ground that it calls for the disclosure of information protected by the attorney-client privilege and/or the work-product doctrine. Bienstock further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Bienstock further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Bienstock further objects to this request on the ground that it misconstrues the parties' respective obligations under applicable law. Subject to and without waiving the foregoing objections, Bienstock denies this Request to the extent that many DMCA takedown notices were sent to YouTube within one month of Bienstock discovering the

infringing content. Bienstock states that, because of the huge volume of infringements of its works on the YouTube website, it notified YouTube in a manner compliant with the DMCA as expeditiously as possible after determining that each YouTube video that it claims as infringing in the Complaints in this action infringed its content.

## REQUEST FOR ADMISSION NO. 24:

Individually for each accused clip, admit that you did not send a DMCA takedown notice to YouTube within two months of becoming aware of that clip's presence on YouTube.

## RESPONSE TO REQUEST FOR ADMISSION NO. 24:

Bienstock objects to this Request on the grounds that it is vague and ambiguous, including the term "becoming aware." Bienstock further objects to this Request on the ground that it calls for the disclosure of information protected by the attorney-client privilege and/or the work-product doctrine. Bienstock further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Bienstock further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Bienstock further objects to this request on the ground that it misconstrues the parties' respective obligations under applicable law. Subject to and without waiving the foregoing objections, Bienstock denies this Request to the extent that many DMCA takedown notices were sent to YouTube within two months of Bienstock discovering the infringing content. Bienstock states that, because of the huge volume of infringements of its works on the YouTube website, it notified YouTube in a manner compliant with the DMCA as expeditiously as possible after determining that each YouTube video that it claims as infringing in the Complaints in this action infringed its content.

**REQUEST FOR ADMISSION NO. 25:**

Individually for each accused clip, admit that you did not consult with your sub-publishers to ensure that the clip was unauthorized to appear on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Bienstock objects to this request on the grounds that it is vague and ambiguous, including the terms "consult" and "ensure". Bienstock further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Bienstock further objects to this Request on the ground that it calls for the disclosure of information protected by the attorney-client privilege and/or the work-product doctrine. Subject to and without waiving the foregoing objections, Bienstock denies this Request to the extent it implies that Bienstock is obligated to consult with its sub-publishers to establish that each accused clip was unauthorized to appear on the YouTube website, and admits that in certain cases it did not contact its sub-publisher prior to requesting that YouTube take down an infringing clip, because in those cases Bienstock's sub-publishers either do not have authority under the express terms of the agreements between them and Bienstock to post content to youtube.com or to authorize third parties to posts clips containing Bienstock content on youtube.com, a website that is available worldwide, or the sub-publisher is required to seek permission from Bienstock before issuing a license to grant the right to exploit Bienstock content on the internet.

**REQUEST FOR ADMISSION NO. 26:**

Individually for each accused clip, admit that you did not consult with the writer of the work-in-suit to ensure that the clip was authorized to appear on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Bienstock objects to this request on the grounds that it is vague and ambiguous, including

the terms "consult", "ensure" and "writer". Bienstock further objects on the ground that the reference to Bienstock's co-plaintiff Stage Three Music Limited renders this Request unintelligible. Bienstock further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Subject to and without waiving the foregoing objections, Bienstock denies this Request to the extent it implies that Bienstock is obligated to consult with the "writer" to ensure that each accused clip was unauthorized to be on the YouTube website, and admits that, with respect to each accused clip, Bienstock has no obligation to consult with the "writer" of the work prior to taking action against Defendants for infringements of Bienstock's works.

**REQUEST FOR ADMISSION NO. 27:**

Individually for each accused clip, admit that you did not consult with any of your licensees to ensure that the clip was not authorized to appear on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Bienstock objects to this Request on the grounds that it is vague and ambiguous, including the word "consult" and "ensure". Bienstock further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. Subject to and without waiving the foregoing objections, Bienstock denies that, with respect to each accused clip, any of the infringing clips involved licensed materials within the scope of the license.

**REQUEST FOR ADMISSION NO. 28:**

Admit that you have not used YouTube's Content Verification Program.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Bienstock objects on the grounds that it is vague and ambiguous and that YouTube has

used several euphemisms to refer to a number of "tools" that it offers to content owners. Bienstock further objects to this Request on the ground that it calls for the disclosure of information protected by the attorney-client privilege and/or the work-product doctrine. Bienstock further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. To the extent that the Content Verification Program "tool" is an electronic substitute for a DMCA takedown notice, Bienstock admits that it has not used this "tool", and otherwise denies the Request.

**REQUEST FOR ADMISSION NO. 29:**

Admit that you have not used YouTube's Content ID tool.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

Bienstock objects on the grounds that that it is vague and ambiguous and YouTube has used several euphemisms to refer to a number of "tools" that it offers to content owners. Bienstock further objects to this Request on the ground that it calls for the disclosure of information protected by the attorney-client privilege and/or the work-product doctrine. Bienstock further objects to this Request on the ground that the requested matter is outside the scope of information relevant to this case. To the extent that Content ID is a tool that refers to digital fingerprinting technology, Bienstock states that Defendants have not made their digital fingerprinting technology readily available to Plaintiffs on reasonable terms.

**REQUEST FOR ADMISSION NO. 30:**

Admit that on no occasion prior to November 7, 2007 did you inform YouTube of the presence and location of any video on the YouTube.com site that allegedly infringed your copyrights.

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

Bienstock objects to this Request on the ground that it requires the compilation or review of information otherwise within Defendants' possession, custody or control and more easily accessible to Defendants. Subject to and without waiving the foregoing objections, Bienstock denies this Request.

**REQUEST FOR ADMISSION NO. 31:**

Admit that on no occasion prior to November 7, 2007 did you inform YouTube of the presence of any accused clip on the YouTube.com site.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

Bienstock objects to this Request on the ground that it requires the compilation or review of information otherwise within Defendants' possession, custody or control and more easily accessible to Defendants. Subject to and without waiving the foregoing objections, Bienstock denies this Request, and states that a copy of the Amended Complaint, listing video clips on the YouTube website that infringed Bienstock's works, was submitted to YouTube's counsel on October 8, 2007, and that the Amended Complaint, containing the same list of video clips, was filed with the Court on November 7, 2007.

**REQUEST FOR ADMISSION NO. 32:**

Admit that you retracted DMCA takedown notices sent to YouTube for one or more of your works.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

Subject to and without waiving the foregoing objections, Bienstock denies this Request.


Dated: January 11, 2010

Respectfully submitted,

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Phone:      (212) 355-9500
Facsimile: (212) 355-9592


By: _____
    Annika K. Martin