# SCHAPIRO DECLARATION EXHIBITS CONTINUED

# Schapiro Exhibit 130

09:38:33

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

VIACOM INTERNATIONAL, INC., COMEDY )
PARTNERS, COUNTRY MUSIC. )
TELEVISION, INC., PARAMOUNT )
PICTURES CORPORATION, and BLACK )
ENTERTAINMENT TELEVISION, LLC, )
                                 )
             Plaintiffs, )
                                 )
vs. ) NO. 07-CV-2203
                                 )
YOUTUBE, INC., YOUTUBE, LLC, )
and GOOGLE, INC., )
                                 )
             Defendants. )
_____)
                                 )
THE FOOTBALL ASSOCIATION PREMIER )
LEAGUE LIMITED, BOURNE CO., et al.,)
on behalf of themselves and all )
others similarly situated, )
                                 )
             Plaintiffs, )
vs. ) NO. 07-CV-3582
                                 )
YOUTUBE, INC., YOUTUBE, LLC, and )
GOOGLE, INC., )
                                 )
             Defendants. )
_____)

HIGHLY CONFIDENTIAL
VIDEOTAPED DEPOSITION OF DOUG HERZOG
PALO ALTO, CALIFORNIA
FRIDAY, JANUARY 16, 2009

1                  JANUARY 16, 2009

2                     9:40 a.m.

3

4       HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF

5       DOUG HERZOG, at WILSON SONSINI GOODRICH &

6       ROSATI, 601 South California, Palo Alto,

7       California pursuant to notice, before me,

8       ANDREA M. IGNACIO HOWARD, CLR, CCRR, RPR, CSR

9       License No. 9830.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

APPEARANCES:


FOR THE PLAINTIFFS VIACOM INTERNATIONAL INC.:

JENNER & BLOCK

By: SUSAN J. KOHLMANN, Esq.

919 Third Avenue, 27th Floor

New York, New York 10022-3908

(212) 891-1690  skohlmann@jenner.com


FOR THE DEFENDANTS YOUTUBE, INC., YOUTUBE, LLC and

GOOGLE, INC.:

WILSON SONSINI GOODRICH & ROSATI

By: DAVID H. KRAMER, Esq.

BART E. VOLKMER, Esq.

650 Page Mill Road

Palo Alto, California 94304-1050

(650) 320-4741 dkramer@wsgr.com;

bvolkmer@wsgr.com


ALSO PRESENT:

Michelena Hallie, MTV Networks

Mark Morril, Viacom

Jan Trudell, Videographer.


---oOo---

1                              HERZOG

2    09:54:26    A    More than five.

3    09:54:26    Q    Okay.  More than 100?

4    09:54:30    A    More than 100?  Not sure.

5    09:54:32    Q    How often do you view videos on the YouTube

6    09:54:37   service?

7    09:54:38    A    Once or twice a week.

8    09:54:40    Q    Do you view videos on the YouTube service

9    09:54:44   while you're at work?

10   09:54:47    A    Occasionally.

11   09:54:48    Q    While you're at home?

12   09:54:49    A    Occasionally.

13   09:54:50    Q    While you're on the road?

14   09:54:51    A    Occasionally.

15   09:54:52    Q    Why do you use YouTube to view videos as

16   09:54:58   opposed to some other online video sharing service?

17   09:55:01         MS. KOHLMANN:  Objection as to form.

18   09:55:02         THE WITNESS:  I use other video sharing, or

19   09:55:09   I -- I might watch video on the Internet in places

20   09:55:13   other than YouTube.

21   09:55:14         MR. KRAMER:  Q.  But why do you continue to

22   09:55:16   use YouTube today, given the existence of this

23   09:55:19   litigation?

24   09:55:20         MS. KOHLMANN:  Objection as to form.

25   09:55:21         THE WITNESS:  I don't know.

1                          HERZOG

2   09:55:23        MR. KRAMER:  Q.  Do you find that the YouTube

3   09:55:29   video service has advantages over other online video

4   09:55:32   services?

5   09:55:36      A   I find there's a lot of videos there.

6   09:55:40      Q   Any other distinguishing characteristics of

7   09:55:45   the YouTube service vis-a-vis other online video

8   09:55:51   sharing services you've used?

9   09:55:52      A   Couldn't say.

10  09:55:53      Q   Okay.  Do you consider your use of the

11  09:55:54   YouTube service to be legitimate?

12  09:55:56        MS. KOHLMANN:  Objection as to form.

13  09:55:57        You can answer.

14  09:55:58        THE WITNESS:  I -- I do.

15  09:55:59        MR. KRAMER:  Q.  For the videos that you've

16  09:56:04   watched on YouTube, did you consider them to be

17  09:56:06   infringing any third party's copyrights?

18  09:56:12      A   I wouldn't know.

19  09:56:12      Q   What do you mean you wouldn't know?

20  09:56:14      A   I -- I -- I'm just not that clear on -- I

21  09:56:16   wouldn't know.

22  09:56:16      Q   Why not?

23  09:56:17      A   I'm not a lawyer.  I don't necessarily

24  09:56:19   understand the ins and outs of copyright infringement.

25  09:56:25      Q   So in order to make a determination as to

1                           HERZOG

2    09:56:27   whether a video you've watched on the YouTube service

3    09:56:29   was infringing a third-party's copyrights, you'd need

4    09:56:34   to be a lawyer?

5    09:56:35      A   I just --

6    09:56:35          MS. KOHLMANN:  Objection to form.

7    09:56:36          THE WITNESS:  -- wouldn't know.

8    09:56:37          MR. KRAMER:  Right.

9    09:56:38      Q   I'm asking you why you wouldn't know.

10   09:56:40      A   Because I would not know.

11   09:56:40      Q   Well, don't you have the ability to tell when

12   09:56:43   you're looking at a particular video whether that

13   09:56:46   video is authorized by the copyright holder?

14   09:56:49         MS. KOHLMANN:  Objection as to form.

15   09:56:50         You can answer.

16   09:56:51         THE WITNESS:  I wouldn't -- I -- I wouldn't

17   09:56:51   know unless it was my video.

18   09:56:53         MR. KRAMER:  Q.  Would you say you're a fan

19   09:57:06   of the YouTube service, Mr. Herzog?

20   09:57:09      A   Yeah.

21   09:57:10      Q   In fact, sir, you'd say you love YouTube;

22   09:57:15   right?

23   09:57:16         MS. KOHLMANN:  Objection as to form.

24   09:57:18         You can answer.

25   09:57:19         THE WITNESS:  I -- I would -- I would not.

1      HERZOG

2   10:40:01      MR. KRAMER:  Q.  What other properties,

3   10:40:31   Mr. Herzog, would you say your statement holds true

4   10:40:34   for, that the idea that you go to the store and

5   10:40:39   purchase DVDs is a different experience than going to

6   10:40:43   the web and snacking and sharing?  Would it hold true

7   10:40:48   for Daily Show?

8   10:40:48      A    No.

9   10:40:48      Q    Would it hold true for the Colbert Report?

10  10:40:50      A    You know, I don't know.  Actually, no.

11  10:40:51         The Daily Show and Colbert are completely

12  10:40:52   different types of programs than South Park.  So, you

13  10:40:54   know, I don't know the answer to that.  I was speaking

14  10:40:56   specifically about South Park, and that's what I

15  10:40:58   believe to be the case in terms of South Park.

16  10:41:00      Q    So do you believe that the availability of

17  10:41:02   the Colbert Report online has a negative impact on DVD

18  10:41:06   sales of the program?

19  10:41:06         MS. KOHLMANN:  Objection as to form.

20  10:41:08         You can answer.

21  10:41:08         THE WITNESS:  Colbert doesn't have a DVD

22  10:41:12   business of any -- you know, I mean, he -- we put out

23  10:41:14   DVDs, but it's -- it's a different type of program.

24  10:41:18   It's a timely, topical program and its value on DVD

25  10:41:22   is -- is minimal.

1                              HERZOG

2   10:41:22          MR. KRAMER:  How about --

3   10:41:23          THE WITNESS:  -- versus a South Park, which

4   10:41:24  is something that we hope will live forever.

5   10:41:26          MR. KRAMER:  Q.  How about the Daily Show?

6   10:41:29     A    The same thing.

7   10:41:30     Q    Similar to the Colbert Report --

8   10:41:32     A    Yes --

9   10:41:32     Q    -- in that regard?

10  10:41:33     A    -- timely, topical show, and those shows have

11  10:41:35  an expiration date on them.

12  10:41:36     Q    Do you put out DVDs for Co- -- Daily Show?

13  10:41:40     A    We -- like compilations.

14  10:41:41     Q    And do you think the availability of the

15  10:41:43  Daily Show online has a positive or negative impact on

16  10:41:47  DVD sales of those Daily Show compilations?

17  10:41:54     A    Couldn't say.

18  10:42:12     Q    Mr. Herzog, you testified earlier that you

19  10:42:14  use the YouTube service; right?

20  10:42:16     A    I do.

21  10:42:16     Q    Are you familiar with the -- with content

22  10:42:18  owners creating channels on the YouTube service?

23  10:42:22     A    I -- yeah, I mean, I -- I -- I feel like I

24  10:42:25  know -- I've heard about it.  Know about it.

25  10:42:27     Q    Hasn't one of your properties at MTV Networks

1                           HERZOG

2   10:42:31   created a channel for YouTube?

3   10:42:33      A   I don't know.

4   10:42:33      Q   Aren't you aware that Spike TV had a channel

5   10:42:36   on YouTube?

6   10:42:37      A   No.

7   10:42:37      Q   Do you know whether Spike TV ever posted its

8   10:42:43   content to YouTube?

9   10:42:44      A   I don't know for sure.

10  10:42:44          (Document marked Herzog Exhibit 3

11  10:43:24           for identification.)

12  10:43:24          MR. KRAMER:  Q.  Mr. Herzog, what's been

13  10:43:26   marked as Exhibit 3 to your deposition is a document

14  10:43:29   that is an e-mail thread produced to us in discovery

15  10:43:31   by Viacom bearing Bates No. VIA 00518503.

16  10:43:38          By the way, when I say "Bates No.," I'm

17  10:43:41   referring to the number on the bottom --

18  10:43:43      A   Got it.

19  10:43:43      Q   -- right-hand corner of the document.

20  10:43:45          The subject line of the e-mail is, "Blindfold

21  10:43:49   Kickboxing," and you are CCed on the last in time and

22  10:43:52   second to last in time e-mails in the thread.

23  10:43:55          I'll ask you, first, whether you recognize

24  10:43:57   this document?

25  10:43:59      A   This one, I don't.

# Schapiro Exhibit 131

**English**

Videos | Shows | Channels | Community | Upload

Sign Up | QuickList | Help | Sign In

[ Search ]

Videos | Favorites | Playlists | Groups | Friends | Subscribers | Subscriptions

**theodoramichaels's Channel**    Subscribe



**theodoramichaels**
Joined: November 06, 2008
Last Sign In: 1 day ago
Videos Watched: 488
Subscribers: 2
Channel Views: 437

Name: Theodora
Geeky vegetarian rock 'n' roll attorney.
City: Queens, NYC
Hometown: Queens, NYC
Country: United States
Website: http://www.theodoramichaels.com

**Connect with theodoramichaels**

Send Message
Add Comment
Share Channel

Google   Add to iGoogle

http://www.youtube.com/theodoramichaels
Embed This Channel:

**Recent Activity**

theodoramichaels became friends with
JessicaLukes (1 day ago)

theodoramichaels subscribed to slaveboyfilms
(1 week ago)

theodoramichaels uploaded a new video
(1 month ago)


A Goldfinch!
A goldfinch eating chicory seeds,
right in my own backyard! I never
saw... more

theodoramichaels uploaded a new video
(1 month ago)


Best of The View
I've never seen the show, but that's
my Kevin in the red shirt,
dancing ... more

theodoramichaels subscribed to daddytapes
(3 months ago)

**Subscriptions (14)**



tronskevin


BrockOba...


MontyPython


pulsefitn...


kittyhawk...


houseshub

see all

**Friends (2)**


sirazxado...


JessicaLukes



0:00 / 1:14

A Goldfinch!
From: theodoramichaels
Views: 23
Comments: 1

**Videos (11)**

Subscribe to theodoramichaels's videos

Videos | Most Viewed | Most Discussed

[ Search ]


A Goldfinch!
1 month ago
23 views
no rating
theodoramichaels


Best of The View
1 month ago
28 views
no rating
theodoramichaels


Thelma Garnett in:
LOLbaby
8 months ago
151 views
★★★★★
theodoramichaels


Thelma dances
8 months ago
352 views
★★★★★
theodoramichaels


Thelma wears a hat
8 months ago
80 views
★★★★★
theodoramichaels


Dramatic Thelma
9 months ago
137 views
★★★★★
theodoramichaels


Thelma has a bath
9 months ago
305 views
★★★★★
theodoramichaels


Tolkien v. New Line in
plain Eng...
9 months ago
65 views
★★★★
theodoramichaels


Tolkien v. New Line in
plain Eng...
9 months ago
59 views
★★★★★
theodoramichaels

see all

**Favorites (7)**

Subscribe To Favorites

EXHIBIT
10
9/14/...
PENGAD 800-681-6989

Report background graphic.

**Subscribers (2)**


tomslevin


kittyhawkebass

**Channel Comments**

There are no comments for this user.

Add Comment

**English**

Videos | Shows | Channels | Community | Upload

Sign Up | QuickList | Help | Sign In

Search

Channel | **Videos** | Favorites | Playlists | Groups | Friends | Subscribers | Subscriptions



Videos (11)

Videos | Most Viewed | Most Discussed

Subscribe to theodoramichaels's videos

Search

**A Goldfinch!**
1 month ago
24 views
no rating
theodoramichaels

**Best of The View**
1 month ago
30 views
no rating
theodoramichaels

**Thelma Garnett in: LOLbaby**
8 months ago
151 views
★★★★★
theodoramichaels

**Thelma dances**
8 months ago
352 views
★★★★★
theodoramichaels

**Thelma wears a hat**
8 months ago
80 views
★★★★★
theodoramichaels

**Dramatic Thelma**
9 months ago
137 views
★★★★★
theodoramichaels

**Thelma has a bath**
9 months ago
306 views
★★★★★
theodoramichaels

**Tolkien v. New Line in plain Eng...**
9 months ago
66 views
★★★★★
theodoramichaels

**Tolkien v. New Line in plain Eng...**
9 months ago
59 views
★★★★★
theodoramichaels

**Tolkien v. New Line in plain Eng...**
9 months ago
125 views
★★★★★
theodoramichaels

**Sean Astin at Dragon*Con, Aug. 3...**
10 months ago
110 views
★★★★★
theodoramichaels

Report background graphic.



**Schapiro Exhibit 132**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK


----------------------------------X

VIACOM INTERNATIONAL, INC., COMEDY
PARTNERS, COUNTRY MUSIC
TELEVISION, INC., PARAMOUNT
PICTURES CORPORATION, and BLACK
ENTERTAINMENT TELEVISION, LLC,

        Plaintiffs,

vs.                        No. 07-CV-2103

YOUTUBE, INC., YOUTUBE, LLC,
and GOOGLE, INC.,

        Defendants.

----------------------------------X

HIGHLY CONFIDENTIAL

VIDEOTAPED DEPOSITION OF
NICHOLAS SEET/AUDITUDE, INC.
SAN FRANCISCO, CALIFORNIA
TUESDAY, NOVEMBER 24, 2009

JOB NO. 18254

2

1          Nicholas Seet  San Francisco, CA  November 24, 2009

2                      NOVEMBER 24, 2009

3                        9:17 P.M.

4

5          HIGHLY CONFIDENTIAL VIDEOTAPED DEPOSITION OF

6     NICHOLAS SEET, at WILSON, SONSINI, GOODRICH & ROSATI, 1

7     Market Plaza, Spear Tower, Suite 3400, San Francisco,

8     California, pursuant to notice, before me, KATHERINE E.

9     LAUSTER, CLR, CRR, RPR, CSR License No. 1894.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1          Nicholas Seet  San Francisco, CA  November 24, 2009

2          A P P E A R A N C E S :

3

4     FOR THE PLAINTIFFS, VIACOM INTERNATIONAL, INC.:

5          JENNER & BLOCK, LLP
           BY:  LUKE C. PLATZER, ESQ.
6          1099 New York Avenue, NW
           Suite 900
7          Washington, DC  20001
           Telephone:  202.639.6000
8          fax:        202.661.4813
           lplatzer@jenner.com

9

10

      FOR THE DEFENDANTS YOUTUBE, INC., YOUTUBE, LLC, and
11    GOOGLE, INC.:

12         MAYER BROWN, LLP
           BY:  BRIAN M. WILLEN, ESQ.
13         1675 Broadway
           New York, New York  10019-5820
14         Telephone:  212.506.2146
           fax:        212.262.1910
15         bwillen@mayerbrown.com

16

17    FOR THE DEFENDANTS YOUTUBE, INC., YOUTUBE, LLC, and
      GOOGLE, INC.:
18
           WILSON, SONSINI, GOODRICH & ROSATI
19         BY:  NEMA MILANINIA, ESQ.
           650 Page Mill Road
20         Palo Alto, California 94304-1050
           Telephone:  650.493.9300
21         fax:        650.493.6811
           nmilaninia@wsgr.com

22

23

24

25

91

Redacted at the Request of Auditude

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



Redacted at the Request of Auditude

93

Redacted at the Request of Auditude



**Schapiro Exhibit 133**

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK


VIACOM INTERNATIONAL, INC., COMEDY )
PARTNERS, COUNTRY MUSIC. )
TELEVISION, INC., PARAMOUNT )
PICTURES CORPORATION, and BLACK )
ENTERTAINMENT TELEVISION, LLC, )
                               )
           Plaintiffs, )
                               )
          vs. )  NO. 07-CV-2103
                               )
YOUTUBE, INC., YOUTUBE, LLC, )
and GOOGLE, INC., )
                               )
           Defendants. )
_____)
                               )
THE FOOTBALL ASSOCIATION PREMIER )
LEAGUE LIMITED, BOURNE CO., et al.,)
on behalf of themselves and all )
others similarly situated, )
                               )
           Plaintiffs, )
      vs. )  NO. 07-CV-3582
                               )
YOUTUBE, INC., YOUTUBE, LLC, and )
GOOGLE, INC., )
                               )
           Defendants. )
_____)


VIDEOTAPED DEPOSITION OF MIKA SALMI
SAN FRANCISCO, CALIFORNIA
FRIDAY, OCTOBER 16, 2009

JOB NO. 17909

1               OCTOBER 16, 2009

2                 9:30 a.m.

3

4     VIDEOTAPED DEPOSITION OF MIKA SALMI,

5     WILSON, SONSINI, GOODRICH & ROSATI, LLP,

6     One Market Street, Spear Street Tower,

7     San Francisco, California pursuant to notice,

8     and before, ANDREA M. IGNACIO HOWARD, CLR,

9     RPR, CRR, CSR License No. 9830.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    A P P E A R A N C E S:

2

3    FOR THE PLAINTIFFS VIACOM INTERNATIONAL, INC.:

4        JENNER & BLOCK, LLP

5        By:  SCOTT WILKENS, Esq.

6        1099 New York Avenue, NW, Suite 900

7        Washington, D.C. 20001

8        (202) 639-6000  swilkens@jenner.com

9

10   FOR THE DEFENDANTS YOUTUBE, INC., YOUTUBE, LLC and

11   GOOGLE, INC.:

12       WILSON SONSINI GOODRICH & ROSATI, LLP

13       By:  DAVID KRAMER, Esq.

14            CAROLINE WILSON, Esq.

15       650 Page Mill Road

16       Palo Alto, California 94304-1050

17       (650) 320-4741 dkramer@wsgr.com

18

19

20   ALSO PRESENT: Michelena Hallie, MTV Networks.

21            Lou Meadows, Videographer.

22

23            ---oOo---

24

25

1                                      SALMI, M.

2     10:04:52   analysis, and both from a technical and legal side

3     10:04:56   that I can't sit here and make an opinion on right

4     10:04:57   now.

5     10:04:58          MR. KRAMER:  Q.  When it launched

6     10:05:13   AddictingClips, did the service -- sorry.  Strike

7     10:05:15   that.

8     10:05:15          When the AddictingClips service launched, did

9     10:05:19   it have human beings screening all videos that users

10    10:05:22   were uploading to the service for potentially

11    10:05:24   unauthorized copyrighted material?

12    10:05:26     A   No.

13    10:05:26     Q   Roughly how many videos per day were uploaded

14    10:05:32   to the service?

15    10:05:34     A   I don't recall.

16    10:05:35     Q   Is it in the hundreds?  Thousands?  Tens?

17    10:05:40     A   It varied from when it launched to, you know,

18    10:05:43   a period of time, but...

19    10:05:45     Q   How about at the start?

20    10:05:48     A   Hundreds, I'd guess.

21    10:05:52     Q   You said that AddictingClips didn't want to

22    10:05:55   have unauthorized copyrighted material appearing on

23    10:05:57   the service; right?

24    10:06:04     A   I think I said it wasn't a stated intention

25    10:06:06   of ours to have it up there, but...

1                            SALMI, M.

2    10:06:08    Q    Did -- did -- did AddictingClips want

3    10:06:10    unauthorized copyrighted material?

4    10:06:11    A    No.

5    10:06:12    Q    Wouldn't one way of keeping that material off

6    10:06:16    the service have been to have human beings review all

7    10:06:19    incoming videos and block those that weren't

8    10:06:22    authorized?

9    10:06:28    A    AddictingClips was set up differently than

10   10:06:30    Atom Films, which was all about review.

11   10:06:32    AddictingClips was set up as a user-generated website

12   10:06:36    according to the legal parameters that our lawyer

13   10:06:38    provided us.

14   10:06:39    Q    But wouldn't one way of keeping unauthorized

15   10:06:42    copyrighted material off the service have been to have

16   10:06:46    human beings screening all of the videos that users

17   10:06:48    sought to upload and block the upload of those that

18   10:06:50    were unauthorized copyrighted material?

19   10:06:52            MR. WILKENS:  Objection to the form.

20   10:06:54            THE WITNESS:  That would be one way to do it,

21   10:06:55    yes.

22   10:06:56            MR. KRAMER:  All right.

23   10:06:56    Q    So when I asked you earlier whether

24   10:06:59    AddictingClips could have done more to prevent the

25   10:07:02    upload by users of unauthorized copyrighted materials,

SALMI, M.

| | |
|---|---|
| 1 | |
| 2 | 10:07:05 | one thing it could have done was employ human beings |
| 3 | 10:07:08 | to screen all videos uploaded by users and block those |
| 4 | 10:07:12 | that were unauthorized; right? |
| 5 | 10:07:16 |     A    Then it would not have been a user-generated |
| 6 | 10:07:19 | website the way we had envisioned it to be if it would |
| 7 | 10:07:24 | have done that.  It would also have been |
| 8 | 10:07:26 | cost-prohibitive to have human beings. |
| 9 | 10:07:28 |     Q    Why so? |
| 10 | 10:07:29 |     A    That's a lot of clips to... |
| 11 | 10:07:32 |     Q    Hundreds of clips a day is a lot of clips, |
| 12 | 10:07:35 | and it would be cost-prohibitive to have human beings |
| 13 | 10:07:38 | screen them; right? |
| 14 | 10:07:38 |         MR. WILKENS:  Objection to the form. |
| 15 | 10:07:39 |         THE WITNESS:  For a small company like ours, |
| 16 | 10:07:41 | yes. |
| 17 | 10:07:41 |         MR. KRAMER:  Okay. |
| 18 | 10:07:48 |     Q    Is it reasonable to conclude, based on Atom's |
| 19 | 10:07:51 | failure to employ human beings to screen videos |
| 20 | 10:07:54 | uploaded to the service, that Atom wanted users to |
| 21 | 10:07:59 | upload infringing material to AddictingClips? |
| 22 | 10:08:03 |         MR. WILKENS:  Objection to the form; asked |
| 23 | 10:08:08 | and answered. |
| 24 | 10:08:08 |         THE WITNESS:  Yeah, there was not a failure. |
| 25 | 10:08:09 | It was set up purposely in a certain methodology, so I |

1                           SALMI, M.

2    10:08:16   would not call it a failure to do either one, your

3    10:08:20   statement.

4    10:08:20        MR. KRAMER:  Okay.

5    10:08:21    Q    Would it be reasonable to conclude, based on

6    10:08:23   AddictingClips's decision not to employ human beings

7    10:08:28   to screen videos uploaded to the service by users,

8    10:08:31   that AddictingClips wanted users to upload potentially

9    10:08:35   unauthorized copyrighted material?

10   10:08:37    A    No, that's false.  We -- we never -- we never

11   10:08:42   even had the decision not to have human beings.  It

12   10:08:45   was -- it was always set up a different way.

13   10:08:48    Q    It wouldn't be reasonable to conclude, that

14   10:08:50   is what you're saying?

15   10:08:51    A    Correct, not reasonable to conclude that.

16   10:08:54    Q    And Atom -- sorry -- AddictingClips -- I

17   10:08:58   guess it's -- Atom's choice not to have human beings

18   10:09:04   screening videos uploaded to the service by users

19   10:09:07   wasn't motivated by a desire to earn advertising

20   10:09:11   revenue from unauthorized copyrighted material on the

21   10:09:14   service; right?

22   10:09:14        MR. WILKENS:  Objection to the form.

23   10:09:17        THE WITNESS:  It was strictly done that way

24   10:09:21   as a -- on the advice of our legal counsel.

25   10:09:25        MR. KRAMER:  Different question than I asked.

# Schapiro Exhibit 134



UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

VIACOM INTERNATIONAL, INC., COMEDY
PARTNERS, COUNTRY MUSIC TELEVISION,
INC., PARAMOUNT PICTURES CORPORATION,
and BLACK ENTERTAINMENT TELEVISION,
LLC,

           Plaintiffs,

       vs.          NO. 07-CV-2203

YOUTUBE, INC., YOUTUBE, LLC,
and GOOGLE, INC.,

           Defendants.
------------------------------------X


VIDEOTAPED DEPOSITION OF JASON WITT

NEW YORK, NEW YORK

THURSDAY, SEPTEMBER 25, 2008



REPORTED BY:
JENNIFER OCAMPO-GUZMAN
JOB NO.: 15651

1

2

3

4

                        SEPTEMBER 25, 2008

5                         9:14 a.m.

6

7

8              VIDEOTAPED DEPOSITION OF JASON

9 WITT, held at the offices of WILSON SONSINI

10 GOODRICH & ROSATI, PC, 1301 Avenue of the

11 Americas, New York, New York, pursuant to

12 agreement of parties, before JENNIFER

13 OCAMPO-GUZMAN, a Real-Time Shorthand Reporter

14 and Notary Public of the State of New York.

15

16

17

18

19

20

21

22

23

24

25

APPEARANCES:

FOR THE PLAINTIFFS VIACOM INTERNATIONAL,

INC.:

    JENNER & BLOCK, LLP

    By:  AMY L. TENNEY, Esq.

    1099 New York Avenue, NW, Suite 900

    Washington, D.C. 20001

    (202) 639-6000    atteney@jenner.com


FOR THE DEFENDANTS YOUTUBE, INC., YOUTUBE,

LLC and GOOGLE, INC.:

    WILSON SONSINI GOODRICH & ROSATI, PC

    BY:   BART E. VOLKMER, ESQ.

           -and-

      CHRISTOPHER R. HOWALD, ESQ.

    650 Page Mill Road

    Palo Alto, California 94304-1050

    650-565-3508    bvolkmer@wsgr.com

    650-496-4064    chowald@wsgr.com


ALSO PRESENT:

    MTV NETWORKS
    By:  HEATHER WINDT, ESQ., Senior Counsel

    MANUEL ABRUE, Videographer

1           Witt

2   14:48:50      Q.    Right.  Do you know if anyone at

3   14:48:51   Viacom has ever uploaded videos to the

4   14:48:54   YouTube website?

5   14:48:55          MS. TENNEY:  And I'll restate the

6   14:48:57      same objections.

7   14:48:58      A.    You know, gosh, I don't know.  I

8   14:49:18   remember Jason Hershorn (phonetic) at one

9   14:49:18   time, and I'm not sure if he was making a

10  14:49:20   joke or not, talked about uploading some Bar

11  14:49:24   Mitzvah videos.

12  14:49:27          Greg Clayman has uploaded some

13  14:49:29   videos of his kids and his wife, I think.  My

14  14:49:52   guess is there is more, but those are the

15  14:49:54   ones I can think of.

16  14:49:55      Q.    So besides Jason Hershorn and Greg

17  14:50:02   Clayman, you can't think of any other

18  14:50:04   instances where Viacom employees uploaded

19  14:50:06   videos to the YouTube website?

20  14:50:30      A.    There may be others, but I can't

21  14:50:32   recall.

22  14:50:32      Q.    Have you ever viewed video clips on

23  14:50:41   the YouTube website containing Viacom content

24  14:50:44   that you believed were not authorized by

25  14:50:47   Viacom?

| | | |
|---|---|---|
| 1 | | Witt |
| 2 | 14:50:48 | MS. TENNEY: Objection. To the |
| 3 | 14:50:51 | extent that it calls for a legal |
| 4 | 14:50:52 | conclusion and also that it's vague. |
| 5 | 14:50:56 | A. By authorized, I've watched, I've |
| 6 | 14:51:07 | seen Viacom content on YouTube. |
| 7 | 14:51:10 | Q. And have you ever seen Viacom |
| 8 | 14:51:12 | content on YouTube that you thought was |
| 9 | 14:51:14 | unauthorized? |
| 10 | 14:51:14 | A. I'm not sure I know what |
| 11 | 14:51:16 | unauthorized means, in what sense? |
| 12 | 14:51:20 | Q. Whether Viacom was permitting that |
| 13 | 14:51:22 | content to be on YouTube? |
| 14 | 14:51:25 | MS. TENNEY: Objection. |
| 15 | 14:51:27 | A. I wouldn't know. |
| 16 | 14:51:30 | Q. What information would you need to |
| 17 | 14:51:33 | make that determination? |
| 18 | 14:51:35 | A. Probably someone from legal telling |
| 19 | 14:51:38 | me if it was -- I mean if it were authorized, |
| 20 | 14:51:44 | that would be a determination I imagine legal |
| 21 | 14:51:48 | would be able to answer. |
| 22 | 14:51:49 | THE WITNESS: Could I take a quick |
| 23 | 14:51:51 | bathroom break? |
| 24 | 14:51:52 | MR. VOLKMER: Break, yeah. |
| 25 | 14:51:53 | THE WITNESS: Yes. |

1          Witt

2  14:51:54          MR. VOLKMER:  We can go off the

3  14:51:56  record.

4  14:51:56          THE VIDEOGRAPHER:  The time is

5  14:52:02  2:54 p.m.  We're going off the record.

6  14:52:04          (A brief recess was taken.)

7  15:07:32          THE VIDEOGRAPHER:  The time is

8  15:07:38  3:07 p.m.  We're back on the record.

9  15:07:41  BY MR. VOLKMER:

10  15:07:41          Q.   Before the break you had testified

11  15:07:44  that you had viewed Viacom content on the

12  15:07:46  YouTube website; correct?

13  15:07:46          A.   Yes.

14  15:07:50          Q.   And were there ever instances where

15  15:07:53  you viewed content that had been authorized

16  15:07:55  by Viacom?

17  15:07:56          MS. TENNEY:  Objection, to the

18  15:07:57          extent it calls for a legal conclusion.

19  15:08:02          (Discussion off the record.)

20  15:08:04          MS. TENNEY:  And that it's vague.

21  15:08:05          A.   I suppose it's possible that Viacom

22  15:08:15  and YouTube had agreed to some kind of a deal

23  15:08:17  to authorize the content but not that I was

24  15:08:21  aware of.

25  15:08:22          Q.   Not that you were aware of when you

# Schapiro Exhibit 135

**From:** Mark M. Ishikawa
**Sent:** Monday, July 10, 2006 7:37 PM
**To:** Scott Martin
**Cc:** Alfred Perry; John Salter; Evelyn Espinosa; Arielle Kim
**Subject:** Anti-Piracy discussion topcs for Wed.

Scott,

Thanks for the invite to the Wednesday meeting. I do believe that we need to sit down with Amy and Nancy to clear the air about the services that they require, and how to get their needs satisfied without having them create their own anti-piracy department. I also want to set Amy's expectations for what we can and cannot do for her. From our conversations and e-mails it would appear that they need some education as to how the DMCA works, and the level of response we can and cannot get from the ISP's in question.

Thx

Mark

==============================================================================================

Topics:

1) Coordination between Online Marketing and BayTSP

- Advance notice of when and where marketing materials being posted online.

- Copies of material being posed so we can distinguish between authorized and un-authorized materials.

- Post-Mortum of the Transformers project.

2) Determination of takedown policy and procedures

- There seems to be a level of mis-understanding about the services BayTSP provides for Paramount and Viacom by the different groups within the studio. I would like to discuss exactly what we do, and how we do it with the Marketing group so they have a better understanding of the services we provide. I also believe that there is a lack of understanding as to what the Online Piracy program in place at the studio does and its capabilities.

- Determine if there is a different procedure required for the Marketing Department infringements, and define the EXACT procedures that are to be used when the Marketing Department is involved.

- Determine the Anti-Piracy needs of the Marketing Department.

HIGHLY CONFIDENTIAL                                                    BAYTSP 003722239



**Schapiro Exhibit 136**

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK


VIACOM INTERNATIONAL, INC., COMEDY )
PARTNERS, COUNTRY MUSIC.            )
TELEVISION, INC., PARAMOUNT         )
PICTURES CORPORATION, and BLACK     )
ENTERTAINMENT TELEVISION, LLC,      )
                                    )
            Plaintiffs,             )
                                    )
        vs.                         ) NO. 07-CV-2103
                                    )
YOUTUBE, INC., YOUTUBE, LLC,        )
and GOOGLE, INC.,                   )
                                    )
            Defendants.             )
_____   )
                                    )
THE FOOTBALL ASSOCIATION PREMIER    )
LEAGUE LIMITED, BOURNE CO., et al.,)
on behalf of themselves and all     )
others similarly situated,          )
                                    )
            Plaintiffs,             )
        vs.                         ) NO. 07-CV-3582
                                    )
YOUTUBE, INC., YOUTUBE, LLC, and    )
GOOGLE, INC.,                       )
                                    )
            Defendants.             )
_____   )


VIDEOTAPED DEPOSITION OF ALFRED PERRY
NEW YORK, NEW YORK
DECEMBER 16TH, 2009

JOB NO. 18178

1

2               VIDEOTAPED DEPOSITION OF ALFRED

3    PERRY, held at the offices of Mayer

4    Brown, 1675 Broadway, New York, New

5    York, pursuant to notice, before

6    Maureen Ratto, Registered Professional

7    Reporter and Notary Public of the State

8    of New York on December 16, 2009, at

9    10:08 a.m.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1 A P P E A R A N C E S

2

3 FOR THE PLAINTIFFS:

4 JENNER & BLOCK, LLP

5 BY: SCOTT B. WILKENS, ESQ.

6 1585 Broadway, New York, NY 10036

7 (202)639-6000

8

9 FOR THE DEFENDANTS:

10 MAYER BROWN, LLP

11 BY: JOHN MANCINI, ESQ.

12  CHRISTINE HERNANDEZ, ESQ

13  JASON KIRCHNER, ESQ.

14 1675 Broadway, New York, NY 10019

15 (212)506-2146

16 jmancini@mayerbrown.com

17

18

19

20

21

22

23

24

25

1           MR. WILKENS:  Objection to the

2      form of the question. You can answer.

3           A.    As I think I said earlier, Bay

4      was to -- Bay is monitoring for

5  13:13:56   infringing content. If something is

6      authorized and they have to use some

7      judgment, otherwise it looks like there

8      was discussion that was trying to

9      impose on them this restrictions that

10 13:14:20   they need to check with Amy's group if

11      there's concerns or questions or

12      perhaps even only take down things that

13      look like they are these sort of clips

14      when requested to do so. That is what

15 13:14:41   it appears and that is my general

16      recollection where we might have been

17      at that time.

18           Q.    Let me see if I can dive further

19      into this in the next e-mail string

20 13:14:50   from what we just read, you write to

21      Scott Martin, John Salter and Eric

22      Nancy Derwin-Weiss and Amy Powell,

23      forwarding this e-mail that you had

24      just received from Nancy Derwin-Weiss

25 13:15:03   "I'm calling BayTSP now" do you recall

1     that reference?

2     A.   Yes.

3     Q.   A do you recall calling Bates

4     after having received this e-mail from

5  13:15:13  BayTSP Nancy Derwin-Weiss?

6     A.   I don't recall it but.

7     Q.   Do you recall what would have

8     been said during this conversation?

9     MR. WILKENS:  Objection to the

10  13:15:21  form. (Check).

11     A.   I don't, but -- I don't recall I

12     don't recall making the call, but...

13     Q.   Okay. In the next e-mail up

14     Nancy Derwin-Weiss replies to you by

15  13:15:49  saying "I spoke to Mark about the

16     incident." She was referring to Mark

17     Ishikawa, correct?

18     A.   Yes.

19     Q.   Continue with the e-mail, "he

20  13:16:04  wasn't exactly apologetic about the

21     incident. He said that from their

22     perspective the Zack Braff footage

23     appeared to be nothing more than

24     pirated clips from the movie mashed

25  13:16:15  together by an individual (who happens

1          to be Zack Braff). I asked why they

2          didn't put a call into us for before

3          issuing the take down notice since we

4          just had the meeting about the very

5  13:16:26    issue."

6               Just to break this down if I

7          may, does this sentence refresh your

8          recollection that as a result of July

9          2006 meeting part of the new protocols

10  13:16:39   was that BayTSP was to put a call into

11         the marketing department at Paramount

12         prior to issuing take down notices for

13         Paramount clips? Do you see that

14         sentence?

15  13:16:55   A.    Yes. I do. Not taking down clips

16         -- well, I guess depends what you mean

17         by Paramount clips. If by Paramount

18         clips you define it to mean authorized

19         clips, then if they have some sense

20  13:17:19   that something is an authorized clip

21         they should put if a call -- or

22         communicate, I'm not sure if it has to

23         be a call, but some sort of

24         communication to Amy's group, to

25  13:17:32   clarify whether that particular clip of

1                all those clips that are out there is

2                of concern or authorized.

3                   Q.     So is it your text that the

4                instruction that was given at this July

5    13:17:48     meeting was that if they had some sense

6                that it was an unauthorized Paramount

7                clip they should put in a call prior to

8                issuing a take down notice?

9                   A.     Yes.

10   13:17:59        Q.     And can you elaborate for me how

11               BayTSP, how it was defined for them

12               what it meant to have a sense as to

13               whether or not it was authorized or

14               not?

15   13:18:11          MR. WILKENS:   Objection to the

16               form.

17                 A.     I don't recall the specifics of

18               how that was to be worked out between

19               Amy's team and Bay's team. On the

20   13:18:32     e-mail it just says they should put in

21               a call before issuing the take down

22               notice to something that appears to be

23               authorized. So it's not clear to me

24               what other directive that might have

25   13:18:47     been given.

1          Q.    Or what definition was given to

2     that directive?

3          A.    Correct.

4          Q.    Ms. Derwin-Weiss goes onto

5   13:18:56   state, same paragraph, continuing. "He

6     said that they didn't have any reason

7     to believe that the material wasn't

8     pirated as we hadn't given them the

9     trailer in advance in this instance the

10  13:19:08   footage looked pirated. He said they

11     were simply operating under the

12     studio's directive to pull down

13     unauthorized clips and he said he was

14     going to direct BayTSP to stop

15  13:19:18   searching YouTube for a content since

16     it is creating too much of a headache

17     for everyone."

18          Do you see that reference?

19          A.    Yes.

20  13:19:29   Q.    When you spoke to Mr. Ishikawa

21     yourself which I think you said a

22     moment ago you testified you recall

23     having made the call did he indicate

24     this same concern to you that he was

25  13:19:47   going to direct BayTSP to stop

1             searching YouTube for Paramount's

2             content because it was quite creating

3             too much of a headache for everyone?

4             A.   I think what I said was I don't

5  13:19:57    recall making the call but I imagine,

6             if I say I'm calling someone now, that

7             I did. But I don't recall specifically

8             making that call. But in this context

9             trying to be responsive, I'm certain I

10  13:20:11    made the call but I don't recall

11            actually making the call.

12            Q.   I understand. All I'm asking,

13            sir, if in reading that sentence and

14            that comment which I think would stick

15  13:20:20    out to you, does that refresh your

16            recollection as to what Mr. Ishikawa

17            said in the conversation that they were

18            going to -- he was going to instruct

19            BayTSP to stop searching YouTube for

20  13:20:32    Paramount content because --

21            A.   He did not tell me that.

22            Q.   He did not tell you that?

23            A.   No.

24            Q.   When you received this e-mail

25  13:20:42    from Mr. Derwin-Weiss on July 25th,

# Schapiro Exhibit 137

| **From:** | Mark M. Ishikawa |
| --- | --- |
| **Sent:** | Wednesday, November 08, 2006 9:19 PM |
| **To:** | Perry, Alfred - Paramount |
| **Cc:** | Evelyn Espinosa; Scott Martin; John Salter; Arielle Kim |
| **Subject:** | RE: Bay TSP - Clips |
| **Importance:** | High |

Al, Scott, & John,

I have no idea what this is about other than the fact that Amy Powel does not like me or my company and is attemting to ruin my relationship with the studios. Nancy sent us links with a "White List" of places the clips are authorized to be on. A normal person would draw the conclusion that since she provided an authorized location list that any other place would be considered infringing, otherwise she should have said leave these clips alone.

All we did was send a clairification e-mail confirming the actions that we believe they have asked us to take. We have *NOT* taken any actions, just asking for clairification, and now we see this e-mail from Nancy. I believe her reactions are unwarrented and unjustified.

If we make a mistake I'm the first one to admit it and make it right. In this case I believe that BayTSP is being treated unfairly. We have been a long time partner with Paramount and this series of reactions is causing me great concern.

I would appreciate it if Scott could give me a call on my cell phone ▓▓▓▓▓▓▓▓ to discuss this situation.

Thx

mark

-----Original Message-----
**From:** Perry, Alfred - Paramount [mailto:Alfred_Perry@Paramount.com]
**Sent:** Wed 11/8/2006 12:14 PM
**To:** Mark M. Ishikawa
**Cc:** Evelyn Espinosa; Scott Martin; John Salter
**Subject:** Fw: Bay TSP - Clips

Mark, what is this about?

[Sent wirelessly from my BlackBerry device]

-----Original Message-----
From: Derwin-Weiss, Nancy
To: Martin, Scott; Perry, Alfred - Paramount
CC: Powell, Amy - Paramount
Sent: Wed Nov 08 12:12:06 2006
Subject: FW: Bay TSP - Clips

What will it take for Bay TSP to understand that they are not to initiate takedown actions without our express written approval?

Amy asked us to research other companies who perform competitive services that we can meet with.

Do you have a list of vendors...I will be happy to set up the initial meetings.

6/20/2008

Nancy Derwin-Weiss| VP Interactive Marketing Legal | Paramount Pictures| direct 323.956.5878

From: Derwin-Weiss, Nancy
Sent: Wednesday, November 08, 2006 12:03 PM
To: 'Evelyn Espinosa'
Cc: Deana Arizala; Warren Kim; Richard Kawasaki; Mark M. Ishikawa; Powell, Amy - Paramount; Perry, Alfred - Paramount; Martin, Scott; Magid, Karen - Paramount
Subject: RE: Bay TSP - Clips

If you find the Perfume clip on other sites, please send us the links to the sites and we will decide whether or not to pursue a take down action. Please do not initiate takedown actions without express prior written approval from us.

Nancy Derwin-Weiss| VP Interactive Marketing Legal | Paramount Pictures| direct 323.956.5878

From: Evelyn Espinosa [mailto:evelyn@baytsp.com]
Sent: Wednesday, November 08, 2006 11:38 AM
To: Derwin-Weiss, Nancy
Cc: Deana Arizala; Warren Kim; Richard Kawasaki; Mark M. Ishikawa
Subject: RE: Bay TSP - Clips

Hi Nancy,

Thanks for heads up for clips below. Just to make sure:

The perfume clip is exclusive and should only be available to view on aintitcool.com.

If we find it on youtube/google video/or any other site we will send a take down notice.

The bee movie clip is ok to stay up regardless of where it is found.

From: Derwin-Weiss, Nancy [mailto:Nancy_Derwin-Weiss@Paramount.com]
Sent: Wednesday, November 08, 2006 11:13 AM
To: Evelyn Espinosa
Cc: Perry, Alfred - Paramount; Powell, Amy - Paramount; Scott Martin; Magid, Karen - Paramount; Tipton, Kristina; Teifeld, Tamar; Mark M. Ishikawa
Subject: Bay TSP - Clips

Hi Evelyn:

Set forth below are links to two approved clips going out this week. Please exclude these clips from your search for pirated content on You Tube and other sites.

6/20/2008

HIGHLY CONFIDENTIAL

Perfume Exclusive Clip – "Don't Touch Anything" – Exclusive to AintItCool.com

http://www.perfumemovie.com/public/video_files/perfume_dont_touch_anything_large.mov

Bee Movie Trailer – wide distribution

http://www.beemovie.com/public/video_files/bee_movie_trailer1_large.mov

I will be sending you links to Freedom Writers clips and Flushed Away Featurettes when they become available.

Feel free to contact me with any questions.

Nancy

HIGHLY CONFIDENTIAL

# Schapiro Exhibit 138

**From:** Michelena.hallie@mtvn.com
**Sent:** Tuesday, October 31, 2006 5:15 PM
**To:** Deana Arizala
**Cc:** Morales, Cindy; Mark M. Ishikawa; Evelyn Espinosa; Courtney Nieman
**Subject:** Re: Fwd: Viral Internet Marketing Clips

Got it. We should be able to authorize you to search a list soon

-----Original Message-----
From: Deana Arizala <deanaa@baytsp.com>
To: Hallie, Michelena
CC: Morales, Cindy; Mark M. Ishikawa <marki@baytsp.com>; Evelyn Espinosa <evelyn@baytsp.com>; Courtney Nieman <courtneyni@baytsp.com>
Sent: Tue Oct 31 12:11:05 2006
Subject: Fwd: Viral Internet Marketing Clips

Michelena,


I'm not sure if you received the email below, so just in case I am going to forward it.




Best Regards,

Deana Arizala


--------------------------------------------------------
Deana Arizala
Client Services Manager. BayTSP, Inc
408.341.2365 (direct)
408.341.2300 (voice)
408.341.2399 (fax)
--------------------------------------------------------




From: Deana Arizala
Sent: Monday, October 30, 2006 10:09 AM
To: Michelena.hallie@mtvn.com
Cc: Morales, Cindy; Mark M. Ishikawa; Evelyn Espinosa; Courtney Nieman
Subject: RE: Viral Internet Marketing Clips


6/11/2008

HIGHLY CONFIDENTIAL                                    BAYTSP 001125469

Michelena,

Below is a list of VH1 shows I'm gathered from the links below. I do not have these shows in my list. Please let me know if these titles should be added in Cims.

VH1

The Wendy Williams Experience

Totally Awesome

Flavor of Love

Hogan Knows Best

Freestyle 59

Thanks Michelena.

Best Regards,

Deana Arizala

--------------------------------------------------------

Deana Arizala

Client Services Manager. BayTSP, Inc

408.341.2365 (direct)

408.341.2300 (voice)

408.341.2399 (fax)

--------------------------------------------------------

HIGHLY CONFIDENTIAL                                                                                           BAYTSP 001125470

-----Original Message-----
From: Michelena.hallie@mtvn.com
Sent: Friday, October 27, 2006 3:23 PM
To: Deana Arizala
Cc: Morales, Cindy
Subject: FW: Viral Internet Marketing Clips

Is this sufficient information?  If so, you can now take down VH1 clips

2 1/2 minutes or over, other than those noted below.


-----Original Message-----

From: Kadetsky, Deborah

Sent: Friday, October 27, 2006 6:07 PM

To: Cheeks, George; Maxwell, Tony

Cc: Wilson, Adam; Hallie, Michelena; Imm, Tina

Subject: RE: Viral Internet Marketing Clips


George, are you able to do your sweep of clips according to who's posted

them?

If that is the case, the clips that we've authorized to be posted are

under the usernames "vh1staff" and "reaction2006"


If you need specific links, here is a list of what we've posted as

approved clips to date:


http://www.youtube.com/watch?v=qVVGT7Rfrvk

http://www.youtube.com/watch?v=jFoQNdwaGys

http://www.youtube.com/watch?v=_5vjL2stAz0

http://www.youtube.com/watch?v=M-G_NQZb1II

http://www.youtube.com/watch?v=qvUzUOSbs9Y

http://www.youtube.com/watch?v=xPfTPn-eGKk

http://www.youtube.com/watch?v=3saVMo96328

http://www.youtube.com/watch?v=PjiZqOOAipw

http://www.youtube.com/watch?v=x1ycbHjePjM

6/11/2008

HIGHLY CONFIDENTIAL                                                    BAYTSP 001125471

http://www.youtube.com/watch?v=hFoCygnKOaA

http://www.youtube.com/watch?v=4CtHP6Ut-zM

http://www.youtube.com/watch?v=Dy9lYAELqlE

http://www.youtube.com/watch?v=kihSHIoW-Tg

http://www.youtube.com/watch?v=yZ1SEDh_JPc

http://www.youtube.com/watch?v=ia_pl6rVg_k

http://www.youtube.com/watch?v=zlbL-zhMK8k

http://www.youtube.com/watch?v=ynJmXSht2jI


http://www.youtube.com/watch?v=uXnx5QxpIRc

http://www.youtube.com/watch?v=zgl3l1BKpwjQ

http://www.youtube.com/watch?v=pAkp_Hr5rN4

http://www.youtube.com/watch?v=BRbM2qfD08U

http://www.youtube.com/watch?v=QQxyhtYk3CI


Do you have a sense of how frequently we'll be doing this takedown
sweep?  I want to make sure than any future postings through our current
process don't get removed accidentally.


Thanks,

deb


-----Original Message-----

From: Cheeks, George

Sent: Friday, October 27, 2006 1:33 PM

To: Kadetsky, Deborah; Maxwell, Tony

Cc: Wilson, Adam

Subject: Re: Viral Internet Marketing Clips


If you could send a copy directly to Michelina Hallie and copy me that
would be great!


-----Original Message-----

From: Kadetsky, Deborah


6/11/2008

HIGHLY CONFIDENTIAL

BAYTSP 001125472

To: Cheeks, George; Maxwell, Tony

CC: Wilson, Adam

Sent: Fri Oct 27 09:48:26 2006

Subject: RE: Viral Internet Marketing Clips


Hi George,

Did you get my list via Tina Imm? I can send to you directly if not...

Deb

-----Original Message-----

From: Cheeks, George

Sent: Friday, October 27, 2006 8:47 AM

To: Maxwell, Tony

Cc: Wilson, Adam; Kadetsky, Deborah

Subject: Re: Viral Internet Marketing Clips


We need everything that you have seeded thusfar as we are engaging an
outside service to send take down notices for full episodes and clips in
excess of 2 minutes and 30 seconds and we don't want to have notices
sent for content we seeded. That said, if that is too big a task I would
at least hit the stuff that we seeded over the past several months.

Thanks.

-----Original Message-----

From: Maxwell, Tony

To: Cheeks, George

CC: Wilson, Adam; Kadetsky, Deborah

Sent: Wed Oct 25 11:10:26 2006

Subject: Viral Internet Marketing Clips


Hello George,

6/11/2008

HIGHLY CONFIDENTIAL                                      BAYTSP 001125473

Nigel asked me to follow up with you about your request for a list of viral clips we are currently supplying to websites like youtube.com. Are you looking for a monthly figure or total amount since a certain date.

Please inform.

Many thanks,
Tony

--

Tony Maxwell
VP Vh1 On Air Promotions
212-846-7867
tony.maxwell@vh1staff.com

# Schapiro Exhibit 139

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

VIACOM INTERNATIONAL, INC., COMEDY )
PARTNERS, COUNTRY MUSIC )
TELEVISION, INC., PARAMOUNT )
PICTURES CORPORATION, and BLACK )
ENTERTAINMENT TELEVISION, LLC, )
                                 )
             Plaintiffs, )
                                 )
vs. )
                                 ) NO. 07-CV-2103
                                 )
YOUTUBE, INC., YOUTUBE, LLC, )
and GOOGLE, INC., )
                                 )
             Defendants. )
_____ )
                                 )
THE FOOTBALL ASSOCIATION PREMIER )
LEAGUE LIMITED, BOURNE CO., et al.,)
on behalf of themselves and all )
others similarly situated, )
                                 )
             Plaintiffs, )
vs. )
                                 ) NO. 07-CV-3582
                                 )
YOUTUBE, INC., YOUTUBE, LLC, and )
GOOGLE, INC., )
                                 )
             Defendants. )
_____ )

VIDEOTAPED DEPOSITION OF MICHELENA HALLIE
NEW YORK, NEW YORK
THURSDAY, DECEMBER 10, 2009
JOB NO.  18264

A P P E A R A N C E S:


FOR THE PLAINTIFFS VIACOM INTERNATIONAL,
INC.:

        JENNER & BLOCK
        1099 New York Avenue, NW, Suite 900
        Washington, D.C. 2000
        (202) 639-6000
        BY: SCOTT WILKENS, ESQ.
        Swilkens@jenner.com




        FOR DEFENDANTS, GOOGLE:
        WILSON SONSINI GOODRICH & ROSATI
            650 Page Mill Road
            Palo Alto, CA 94304-1050
            BY:  MAURA L. REES, ESQ.
                Mrees@wsgr.com




        ALSO PRESENT:


        Carlos King, Videographer

MICHELENA HALLIE

marked as Defendant's Exhibit

Hallie-45 for identification as of

this date by the Reporter.)

15:50:19     A.     Okay.

Q.     Can you identify Exhibit 45?

A.     It appears to be an E-mail

chain between me, various people at

BayTSP, and then, ultimately, including

15:50:33  Cindy Morales.

Q.     And in the very middle of

the first page, there is an E-mail from

you responding to a question from

Courtney Nieman.  Well, first Courtney

15:50:46  Nieman's question at the bottom of the

page, it says, "A question came up from

the group of people that are

approving/declining the video clips.

What about commercials/trailers/promos,

15:50:58  should these be approved or declined."

And your response is "If

there are commercials/trailers/promos

for programs on the list, they should

be taken down, unless it is from the

15:51:09  addresses that Cindy sent to you that

MICHELENA HALLIE

are clips that we uploaded ourselves."

And it looks, at the very
top, you are asking Cindy if she has
15:51:19   the, "White List."

First of all, what is the
White List?

A.    I am assuming from this,
that it is the list of clips that MTVN
15:51:41   authorized to be uploaded.

Q.    And how was the White List
compiled?

A.    People within MTVN were
directed to send any user names or
15:52:07   other identifying information to Cindy
Morales and/or Warren Solow's group,
depending on the time.

Q.    And in your E-mail in the
middle of the page that starts, "If
15:52:24   there are commercials/trailers/promos,"
your instruction is, "they should be
taken down unless they are from the
addresses Cindy sent to you."

So was the policy, at that
15:52:33   time, that clips that appeared to be

MICHELENA HALLIE

1

2          commercials, trailers or promos should

3          be taken down if they were not uploaded

4          by Viacom or someone affiliated with

5   15:52:45    Viacom?

6              A.    That would appear to be

7          correct.  If we hadn't authorized their

8          upload, they should be taken down.

9              MR. WILKENS:  Can we take

10  15:53:04    another, really quick, break?

11              MS. REES:  Sure.

12              MR. WILKENS:  Thanks.

13              THE VIDEOGRAPHER:  The time

14          is 3:53 p.m. and we are off the

15  15:53:15    record.

16              (Whereupon, a recess was

17          held.)

18              THE VIDEOGRAPHER:  The time

19          is 3:58 p.m. and we are back on

20  15:58:11    the record.

21        BY MS. REES:

22              MS. REES:  Exhibit 46.

23              (Whereupon, the

24          aforementioned documents, VIA

25  15:58:18    11788096 and VIA 11787096, were

1          MICHELENA HALLIE

2     January '07 than it became in April of

3     '07.

4          Q.    And do you have any

5  16:01:52  recollection of whether that's how the

6     policy evolved, at least between these

7     two dates?

8          A.    I don't.

9          Q.    Did the difference in policy

10 16:02:30  about whether to takedown or leave up

11    commercials and advertising clips for

12    MTVN programming, did it have to do

13    with the fact that January 2007 was

14    before the mass takedown and Viacom

15 16:02:48  wanted to take down as many clips as

16    possible, whereas April 2007 was after

17    the mass takedown and there was no

18    longer that goal?

19         MR. WILKENS:  Objection to

20 16:03:01      the form.

21         A.    I don't recall that being

22    the case.  I recall all of these

23    decisions, as I think the documents

24    will back up, were evolving in part of

25 16:03:14  a legal analysis.

1          MICHELENA HALLIE

2          MS. REES:  Exhibit 47.

3          (Whereupon, the

4          aforementioned document, BayTSP

5  16:03:49   004295197, was marked as

6          Defendant's Exhibit Hallie-47 for

7          identification as of this date by

8          the Reporter.)

9          A.    Okay.

10  16:04:13   Q.    Can you identify Exhibit 47?

11          A.    It is an E-mail from

12     Courtney Nieman to Travis Hill with

13     copies to various people, including me.

14          Q.    And is this the list of

15  16:04:26   account names that was described in a

16     previous E-mail as the White List?

17          A.    It -- judging from the

18     timing, that E-mail that you are

19     referring to was January 3rd and this

20  16:04:49   is January 31st, so it is possible that

21     it is.

22          Q.    And this was -- the purpose

23     of giving this list to BayTSP was so

24     that BayTSP would know not to take down

25  16:05:08   videos that Viacom had posted to

MICHELENA HALLIE

1

2          YouTube under the account names listed

3          in Exhibit 47?

4                 A.    Well, that they not take

5   16:05:19   down clips that Viacom had authorized

6          to be posted.  I don't know if it was

7          Viacom itself or agents of Viacom.

8                 Q.    In the early 2007 timeframe,

9          were you familiar with a marketing firm

10  16:05:41   that Viacom was using called Fanscape?

11                A.    I have heard of Fanscape.  I

12         don't remember when I first heard of

13         it.

14                Q.    Do you know why Fanscape is

15  16:05:52   not on this list?  Because Fanscape was

16         posting videos on behalf of Viacom at

17         this time, right?

18                MR. WILKENS:  Objection to

19                the form of the question.

20  16:05:59   A.    I don't recall.  I recall

21         hearing the name, Fanscape.  I don't

22         even remember in what context.

23                Q.    Looking at this list now, is

24         it your belief that this list is

25  16:06:15   incomplete, that even as of January 31,

MICHELENA HALLIE

1
2 2007, there are quite a few more
3 authorized clips that appear on this
4 list?
5 16:06:24  A. I don't know.
6    MS. REES: Exhibit 48.
7    (Whereupon, the
8 aforementioned documents, VIA
9 16669294 through '298, were marked
10 16:06:56 as Defendant's Exhibit Hallie-48
11 for identification as of this date
12 by the Reporter.)
13    A. Okay.
14    Q. Can you identify Exhibit 48?
15 16:10:10  A. It is an E-mail chain that
16 starts between the various people,
17 apparently, of Paramount Pictures.
18 Then Al Perry forwards it to Mark
19 Morril, Scott Martin and myself,
20 16:10:39 copying Rebecca Prentice.  I respond
21 and Mike Fricklas appears to respond.
22    Q. In the second page, there
23 appears to be a question from
24 Paramount; "Can you clarify Paramount's
25 16:10:57 position on dealing with YouTube at a