# SCHAPIRO DECLARATION EXHIBITS CONTINUED



# Schapiro Exhibit 146

| From: | Courtney Nieman |
|---|---|
| Sent: | Wednesday, January 03, 2007 2:38 AM |
| To: | Michelena.hallie@mtvn.com; Morales, Cindy |
| Cc: | Mark M. Ishikawa; Richard Kawasaki; Deana Arizala; Evelyn Espinosa; Cahan, Adam; Travis Hill |

**Subject:** RE: Commercials & Promos

Michelena,

I confirmed with our Technical Group, that if one or more MTVN Business Unit had or has an account on YouTube that they are using for
"authorized posting" we can filter those infringements out before notice sending begins.

Courtney Nieman

---

**From:** Michelena.hallie@mtvn.com
**Sent:** Tuesday, January 02, 2007 6:23 PM
**To:** Morales, Cindy; Courtney Nieman
**Cc:** Mark M. Ishikawa; Richard Kawasaki; Deana Arizala; Evelyn Espinosa; Cahan, Adam
**Subject:** Re: Commercials & Promos

----- Original Message -----
From: Morales, Cindy
To: Hallie, Michelena; 'courtneyni@baytsp.com' <courtneyni@baytsp.com>
Cc: 'marki@baytsp.com' <marki@baytsp.com>; 'richardk@baytsp.com' <richardk@baytsp.com>; 'deanaa@baytsp.com'
<deanaa@baytsp.com>; 'evelyn@baytsp.com' <evelyn@baytsp.com>; Cahan, Adam
Sent: Tue Jan 02 21:17:16 2007
Subject: Re: Commercials & Promos

I forwarded the approved links as we received them -- ofcourse there's always the possibility that the marketing groups within the diff channels
are posting without us knowing.

----- Original Message -----
From: Hallie, Michelena
To: 'courtneyni@baytsp.com' <courtneyni@baytsp.com>; Morales, Cindy
Cc: 'marki@baytsp.com' <marki@baytsp.com>; 'richardk@baytsp.com' <richardk@baytsp.com>; 'deanaa@baytsp.com'
<deanaa@baytsp.com>; 'evelyn@baytsp.com' <evelyn@baytsp.com>; Cahan, Adam
Sent: Tue Jan 02 20:46:45 2007
Subject: Re: Commercials & Promos

Cindy - you have the "white list" correct?

----- Original Message -----
From: Courtney Nieman <courtneyni@baytsp.com>
To: Hallie, Michelena; Morales, Cindy
Cc: Mark M. Ishikawa <marki@baytsp.com>; Richard Kawasaki <richardk@baytsp.com>; Deana Arizala <deanaa@baytsp.com>; Evelyn
Espinosa <evelyn@baytsp.com>; Cahan, Adam
Sent: Tue Jan 02 20:42:44 2007
Subject: RE: Commercials & Promos

I just looked back through the correspondence for this very issue, and the only authorized posts from MTVN would include (be surrounded by)

6/13/2008

the Comedy Central (Motherload) player. At that point the focus was on MySpace, so is there a list of Authorized Account names for YouTube? If so, forward them on to me and we will "white list" them out of the search/approve/decline process.

Courtney Nieman

From: Michelena.hallie@mtvn.com
Sent: Tuesday, January 02, 2007 5:12 PM
To: Courtney Nieman; Morales, Cindy
Cc: Mark M. Ishikawa; Richard Kawasaki; Deana Arizala; Evelyn Espinosa; Cahan, Adam
Subject: Re: Commercials & Promos

If they are commercials-trailers-promos for programs on the list they should be taken down unless they are from the addresses Cindy sent you that are clips we uploaded ourselves.

----- Original Message -----
From: Courtney Nieman <courtneyni@baytsp.com>
To: Hallie, Michelena; Morales, Cindy
Cc: Mark M. Ishikawa <marki@baytsp.com>; Richard Kawasaki <richardk@baytsp.com>; Courtney Nieman <courtneyni@baytsp.com>;
Deana Arizala <deanaa@baytsp.com>; Evelyn Espinosa <evelyn@baytsp.com>
Sent: Tue Jan 02 20:08:31 2007
Subject: Commercials & Promos

Michelena,

A question came up from the group of people that are approving/declining the video clips; What about commercials/trailers/promos, should these be approved or declined?

At this point we are leaving this group of clips as declined. Let me know what you would like us to do with this content.

Courtney Nieman
Manager Client Services
BayTSP, Inc.
408-341-2314
AIM: BayTSPCanne
Have you checked out BayTSP's Piracy news web log? http://www.baytsp.com/weblog <http://www.baytsp.com/weblog>

The information contained in this email message may be confidential and is intended only for the parties to whom it is addressed. If you are not the intended recipient or an agent of same, please notify us of the mistake by telephone (408-341-2300) or email and delete the message from your system. Please do not copy the message or distribute it to anyone.

# Schapiro Exhibit 147

From: "Gurney, Michelle" <Michelle.Gurney@mtvstaff.com>
Date: Sat, 10 Feb 2007 09:52:25 -0500
To: "Courtney Nieman" <courtneyni@baytsp.com>, "Solow, Warren" <
Warren.Solow@viacom.com>, "Morales, Cindy" <Cindy.Morales@
mtvstaff.com>, "Michelena Hallie" <michelena.hallie@mtvn>
Cc: "Cahan, Adam" <Adam.Cahan@mtvn.com>, "Mark M. Ishikawa" <marki@
baytsp.com>, "Evelyn Espinosa" <evelyn@baytsp.com>, "Eric Antze
" <erica@baytsp.com>
Subject: RE: MTV2AllThatRocks

i do not know for sure

Michelle Gurney
Manager, MTVN Music & Media Licensing
Business & Legal Affairs
t: 212.654.8559
NEW FAX: 201.553.6664
email: <mailto:michelle.gurney@mtvstaff.com> michelle.gurney@mtvstaff.com

_____

From: Courtney Nieman [mailto:courtneyni@baytsp.com]
Sent: Fri 2/9/2007 6:59 PM
To: Solow, Warren; Morales, Cindy; Michelena Hallie; Gurney, Michelle
Cc: Cahan, Adam; Mark M. Ishikawa; Evelyn Espinosa; Courtney Nieman; Eric Antze
Subject: MTV2AllThatRocks

Is this one of your "approved" names: MTV2AllThatRocks

Courtney Nieman
Manager Client Services
BayTSP, Inc.
408-341-2314
AIM: BayTSPCanne
Have you checked out BayTSP's Piracy news web log?
http://www.baytsp.com/weblog

The information contained in this email message may be confidential and
is intended only for the parties to whom it is addressed. If you are
not the intended recipient or an agent of same, please notify us of the
mistake by telephone (408-341-2300) or email and delete the message from
your system. Please do not copy the message or distribute it to anyone.

# Schapiro Exhibit 148

| From: | Courtney Nieman |
|---|---|
| Sent: | Friday, February 09, 2007 9:24 PM |
| To: | 'adam cahan'; 'Cindy Morales'; 'Michelena Hallie'; 'Michelle Gurney'; 'warren solow' |
| Cc: | Evelyn Espinosa; Mark M. Ishikawa; Courtney Nieman; Deana Arizala |
| Subject: | RE: bestweekevertv |

Thanks - we'll add it to the approved list

Courtney Nieman

-----Original Message-----
From: Gurney, Michelle [mailto:Michelle.Gurney@mtvstaff.com]
Sent: Friday, February 09, 2007 1:21 PM
To: Courtney Nieman; Cahan, Adam; Morales, Cindy; Michelena Hallie; Solow, Warren
Cc: Evelyn Espinosa; Mark M. Ishikawa
Subject: RE: bestweekevertv

yes

-----Original Message-----
From: Courtney Nieman [mailto:courtneyni@baytsp.com]
Sent: Friday, February 09, 2007 4:19 PM
To: Cahan, Adam; Morales, Cindy; Michelena Hallie; Gurney, Michelle; Solow, Warren
Cc: Evelyn Espinosa; Mark M. Ishikawa
Subject: bestweekevertv

Is this one of your authorized posting accounts on YouTube?
bestweekevertv

Courtney Nieman
Manager Client Services
BayTSP, Inc.
408-341-2314
AIM: BayTSPCanne
Have you checked out BayTSP's Piracy news web log?
http://www.baytsp.com/weblog

The information contained in this email message may be confidential and is intended only
for the parties to whom it is addressed.  If you are not the intended recipient or an
agent of same, please notify us of the mistake by telephone (408-341-2300) or email and
delete the message from your system.  Please do not copy the message or distribute it to
anyone.

HIGHLY CONFIDENTIAL

BAYTSP 003724925

# Schapiro Exhibit 149

Subject: Re: Fw: Unauthorized Baytsp Take-down Notice
From: "Powell, Amy - Paramount" █████████████████████████████████

To: Perry, Alfred
Cc: Salter, John - Paramount; Derwin-Weiss, Nancy - Paramount;
Martin, Scott - Paramount
Date: Wed, 26 Jul 2006 03:25:13 +0000

Al,

I look fwd to hearing back from you. As discussed in our meeting with BayTSP, they were strictly informed to never contact a third party without an OK from me, personally, either on the phone or in writing.

This instance violates our direction and I find it extremely concerning, not to mention his cavalier attitude.

amy

Amy Powell
Senior Vice President, Interactive Marketing
Paramount Pictures

███████████████████████

-----Alfred Perry/PHE/MP/Paramount_Pictures wrote: -----

To:███████████████████████████████████
From: Alfred Perry/PHE/MP/Paramount_Pictures
Date: 07/25/2006 04:21PM
cc: John Salter/IS/Group/Paramount_Pictures@Paramount_Pictures, Nancy Derwin-Weiss/Business Affairs/MP/
Paramount_Pictures@Paramount_Pictures, Scott Martin/Business Affairs/MP/
Paramount_Pictures@Paramount_Pictures
Subject: Re: Fw: Unauthorized Baytsp Take-down Notice

Amy, I want to discuss with Scott (who is in meetings) and then discuss with you.

BayTSP was not provided the trailer and therefore assumed (incorrectly) that the footage was unauthorized pre-release content from the film.

I, like Nancy, expressed incredulity to Mark that BayTSp would not have called to just make sure (given the sensitivity to removal of clips).

----- Replied by Alfred Perry on 7/25/2006 4:13:54 PM ------------------------------------------------------------------
Inactive hide details for From:Amy PowellFrom:Amy Powell

From:Amy Powell
07/25/2006 03:49 PM
To: Nancy Derwin-Weiss, Alfred Perry
cc: John Salter, Scott Martin
Subject: Re: Fw: Unauthorized Baytsp Take-down Notice

I have serious issues with this response. Al, can we discuss? I'm not comfortable with his business practices.

Inactive hide details for Nancy Derwin-WeissNancy Derwin-Weiss

From: Nancy Derwin-Weiss
Sent: 07/25/2006 03:43 PM
To: Alfred Perry

Cc: Amy Powell
Subject: Re: Fw: Unauthorized Baytsp Take-down Notice

I spoke to Mark about the incident. He wasn't exactly apologetic about the incident. He said that from their perspective, the Zack Braff footage appeared to be nothing more than pirated clips from the movie mashed together by an individual (whose name happened to be Zack Braff). I asked why they didn't put a call into us first before issuing the take-down notice since we just had the meeting about the very issue. He said that they didn't have any reason to believe that the material wasn't pirated as we hadn't given them the trailer in advance and in this instance, the footage looked pirated. He said that they were simply operating under the studio's directive to pull down unauthorized clips. He said he was going to direct Baytsp to stop searching Youtube for our content since it is creating too much of a headache for everyone. Frankly, I am not sure why he would do that since it may be that our unauthorized content appears there at a later date.

----- Replied by Nancy Derwin-Weiss on 7/25/2006 3:34:10 PM
--------------------------------------------------------------------------
Inactive hide details for From:Alfred PerryFrom:Alfred Perry

From:Alfred Perry
07/25/2006 03:15 PM
To: Scott Martin, John Salter, Nancy Derwin-Weiss, Amy Powell
cc:
Subject: Fw: Unauthorized Baytsp Take-down Notice

I am calling BayTSP now!
----- Forwarded by Alfred Perry/PHE/MP/Paramount_Pictures on 07/25/2006 03:14 PM -----

From:Nancy Derwin-Weiss
Sent by: Nancy Derwin-Weiss
07/25/2006 03:01 PM
To: Alfred Perry
cc: Amy Powell
Subject: Unauthorized Baytsp Take-down Notice

We have just learned that Baytsp issued a take-down notice to Youtube for a Zach Brack montage trailer for The Last Kiss. This is content we uploaded to Youtube in connection with our marketing efforts for the film. Obviously, we never authorized Baytsp to issue take-down notice for footage we had posted. I have a call into Mark Ishikawa to see how this could have happened. We thought we could not be clearer in our meeting that we did not want Baytsp to issue take down notices unless we explicitly requested them to do so.

Nancy



# Schapiro Exhibit 150

| | |
|---|---|
| **From:** | Evelyn Espinosa |
| **Sent:** | Friday, May 05, 2006 12:20 AM |
| **To:** | Mark M. Ishikawa |
| **Subject:** | RE: [text] FW: Paramount [Fwd: FW: Video Rejected: Copyright Infringement] |

Ask courtney/sarah
But essentially someone in csm sent infringement notices - see also my previous email from
just before I went to the dentist - youtube took down the videos within minutes of receipt
- they should NOT have been sent - paramount btiched out youtube - youtube called us - ...

-----Original Message-----
From: Mark M. Ishikawa
Sent: Thursday, May 04, 2006 5:16 PM
To: Evelyn Espinosa
Subject: RE: [text] FW: Paramount [Fwd: FW: Video Rejected: Copyright Infringement]

no

-----Original Message-----
From: Evelyn Espinosa
Sent: Thursday, May 04, 2006 5:15 PM
To: Mark M. Ishikawa
Subject: RE: [text] FW: Paramount [Fwd: FW: Video Rejected: Copyright Infringement]

You got clarification on this yet?

-----Original Message-----
From: Mark M. Ishikawa
Sent: Thursday, May 04, 2006 4:56 PM
To: Sarah Bergman
Cc: Evelyn Espinosa; Courtney Nieman
Subject: FW: [text] FW: Paramount [Fwd: FW: Video Rejected: Copyright Infringement]

What happened here?   I'm a bit confused

Mark

-----Original Message-----
From: heather gillette [mailto:heather@youtube.com]
Sent: Thursday, May 04, 2006 12:34 PM
To: Copyright-Compliance
Subject: [text] FW: Paramount [Fwd: FW: Video Rejected: Copyright Infringement]

Below is the email we received letting us know that one of the videos Baytsp had us take
down was actually uploaded by paramount themselves:

http://www.youtube.com/watch?v=R0xxWL6vvPQ

We have restored the video.


-------- Original Message --------
Subject:    FW: Video Rejected: Copyright Infringement
Date:       Thu, 4 May 2006 14:58:07 -0400
From:       XXXXXXXXXXXXXXXXX
To:    <copyright@youtube.com>


this complaint was obviously placed by some rightwing nut the video is a trailer for a new

HIGHLY CONFIDENTIAL                                                    BAYTSP 004174398

environmental film the website of the producers of the film even have a link to the
trailer at YouTube

XXXXXXX

------------------------------------------------------------------------
*From:* DMCA Complaints [mailto:copyright_counternotice@youtube.com]
*Sent:* Thursday, May 04, 2006 1:47 PM
*To:* chenson
*Subject:* Video Rejected: Copyright Infringement

<http://www.youtube.com>

Dear Member:

This is to notify you that we have removed or disabled access to the following material as
a result of a third-party notification claiming that this material is infringing:

an inconvenient truth: http://www.youtube.com/watch?v=R0xxWL6vvPQ

*Please Note:* Repeat incidents of copyright infringement will result in the deletion of
your account and all videos uploaded to that account. In order to avoid future strikes
against your account, please delete any videos to which you do not own the rights, and
refrain from uploading additional videos that infringe on the copyrights of others. For
more information about YouTube's copyright policy, please read the Copyright Tips
<http://www.youtube.com/t/howto_copyright> guide.

If you elect to send us a counter notice, to be effective it must be a written
communication provided to our designated agent that includes substantially the following
(please consult your legal counsel or see 17 U.S.C. Section 512(g)(3) to confirm these
requirements):

(A) A physical or electronic signature of the subscriber.

(B) Identification of the material that has been removed or to which access has been
disabled and the location at which the material appeared before it was removed or access
to it was disabled.

(C) A statement under penalty of perjury that the subscriber has a good faith belief that
the material was removed or disabled as a result of mistake or misidentification of the
material to be removed or disabled.

(D) The subscriberis name, address, and telephone number, and a statement that the
subscriber consents to the jurisdiction of Federal District Court for the judicial
district in which the address is located, or if the subscriberis address is outside of the
United States, for any judicial district in which the service provider may be found, and
that the subscriber will accept service of process from the person who provided
notification under subsection (c)(1)(C) or an agent of such person.

Such written notice should be sent to our designated agent as follows:

DMCA Complaints
YouTube, Inc.
PO Box 2053
San Mateo, CA 94401
Email: copyright@youtube.com

Please note that under Section 512(f) of the Copyright Act, any person who knowingly
materially misrepresents that material or activity was removed or disabled by mistake or
misidentification may be subject to liability.

Sincerely,
YouTube, Inc.

To change or cancel your email notifications, go to your email options

2

HIGHLY CONFIDENTIAL                                                    BAYTSP 004174399

<http://www.youtube.com/my_profile_email>.

Copyright C 2006 YouTube, Inc.

abuse-copyright.tmpl

HIGHLY CONFIDENTIAL

BAYTSP 004174400



# Schapiro Exhibit 151

.

| | |
|---|---|
| **From:** | Philip Cialdella |
| **Sent:** | Wednesday, June 27, 2007 2:47 PM |
| **To:** | Gregg Barron |
| **Subject:** | RE: YouTube Malibu Rum Contest using Day O! |

Provide details to the group please.

-----Original Message-----
From: Gregg Barron
Sent: Wednesday, June 27, 2007 9:46 AM
To: Philip Cialdella
Subject: RE: YouTube Malibu Rum Contest using Day O!

Yes, we licensed this.


Gregg Barron
Director, Licensing
Cherry Lane Music Publishing
6 East 32nd Street, 11th floor
New York, NY 10016
P (212) 561-3045
F (212) 447-6885
gbarron@cherrylane.com

-----Original Message-----
From: Philip Cialdella
Sent: Wednesday, June 27, 2007 9:28 AM
To: Gregg Barron
Subject: FW: YouTube Malibu Rum Contest using Day O!

Please advise.

-----Original Message-----
From: Philip Cialdella
Sent: Wednesday, June 27, 2007 8:59 AM
To: Keith Hauprich; Richard Stumpf
Cc: Mike Connelly
Subject: RE: YouTube Malibu Rum Contest using Day O!

Gregg,
Please advise.
-Phil

-----Original Message-----
From: Keith Hauprich
Sent: Wednesday, June 27, 2007 8:57 AM
To: Philip Cialdella; Richard Stumpf
Cc: Mike Connelly
Subject: YouTube Malibu Rum Contest using Day O!

Did we authorize this?

Highly Confidential

CH00019822



**Schapiro Exhibit 152**

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

THE FOOTBALL ASSOCIATION PREMIER    )
LEAGUE LIMITED, BOURNE CO., et al.,)
on behalf of themselves and all     )
others similarly situated,          )
                                    )
                Plaintiffs,         )
                                    )
        vs.                         ) Case No. 07CV3582
                                    )
YOUTUBE, INC., YOUTUBE, LLC, and    )
GOOGLE, INC.,                       )
                                    )
                Defendants.         )
_____)


VIDEOTAPE DEPOSITION OF GREGG BARRON

NEW YORK, NEW YORK

TUESDAY, SEPTEMBER 23, 2008


REPORTED BY:
ERICA RUGGIERI, CSR, RPR
JOB NO:  15379

91b957bf-7b69-48bf-9e34-bcdb7addec96

1
2
3
4                          September 23, 2008
5                          9:34 a.m.
6
7          VIDEOTAPED DEPOSITION OF GREGG
8     BARRON, held at the offices of Mayer
9     Brown, LLP, 1675 Broadway, New York, New
10    York, pursuant to notice, before Erica L.
11    Ruggieri, Registered Professional Reporter
12    and Notary Public of the State of New
13    York.
14
15
16
17
18
19
20
21
22
23
24
25

91b957bf-7b69-48bf-9e34-bcdb7addec96

1

2    A P P E A R A N C E S :

3

4    FOR THE LEAD PLAINTIFFS AND PROSPECTIVE

5    CLASS:

6         PROSKAUER ROSE, LLP

7         BY:  WILLIAM M. HART, ESQ.

8              ELIZABETH FIGUEIRA, ESQ.

9         1585 Broadway

10        New York, New York 10036-8299

11        Whart@proskauer.com

12        Efiguiera@proskauer.com

13

14    FOR THE DEFENDANTS YOUTUBE, INC.,

15    YOUTUBE, LLC and GOOGLE, INC.:

16        MAYER BROWN, LLP

17        BY:  REGINALD R. GOEKE, ESQ.

18             RICHARD S. PIANKA, ESQ.

19        1909 K Street, N.W.

20        Washington, D.C. 20006-1101

21        Rgoeke@mayerbrown.com

22        Rpianka@mayerbrown.com

23

24    ALSO PRESENT:
      MANUEL ABREU, Videographer
25    KEITH HAUPRICH, Cherry Lane

91b957bf-7b69-48bf-9e34-bcdb7addec96

|            |    |                                      |
|------------|----|--------------------------------------|
|            | 1  | G. Barron                            |
|            | 2  | statements, what sorts of statements are |
|            | 3  | you aware that BMI and ASCAP provide to |
|            | 4  | Cherry Lane?                          |
| 09:51:37   | 5  | MR. HART:  Same objections.           |
|            | 6  | A.    I don't know.  That's not my    |
|            | 7  | domain.                               |
|            | 8  | Q.    Other than licenses granted by  |
|            | 9  | your department and licenses granted  |
| 09:52:02   | 10 | through BMI and ASCAP, is there any other |
|            | 11 | entity, that you are aware of, that grants |
|            | 12 | licenses to any use of Cherry Lane works? |
|            | 13 | MR. HART:  Objection to form.         |
|            | 14 | Prior testimony.                      |
| 09:52:17   | 15 | A.    We also have a print department. |
|            | 16 | They issue licenses for musical notation, |
|            | 17 | sheet music.                          |
|            | 18 | Q.    Who is in charge of the print   |
|            | 19 | department?                           |
| 09:52:45   | 20 | A.    John Stix.                      |
|            | 21 | Q.    Do you know whether licenses     |
|            | 22 | issued by the print department would be |
|            | 23 | recorded in some fashion by Cherry Lane? |
|            | 24 | MR. HART:  Form.                      |
| 09:53:05   | 25 | A.    I don't know how our print       |

91b957bf-7b69-48bf-9e34-bcdb7addec96

                              G. Barron

    department maintains their records.

         Q.    Other than your department, BMI,

    ASCAP and the print department, are you

09:53:19    aware of any other entity that licenses

    any use of Cherry Lane works?

                    MR. HART:  Form, prior

              testimony.

         A.    Overseas we have some publishers

09:53:35    who issue licenses on our behalf.

         Q.    Is there -- do you know

    approximately how many subpublishers there

    are?

                    MR. HART:  Form.

09:53:58    Q.    Do you know approximately how

    many subpublishers Cherry Lane employs

    overseas?

                    MR. HART:  I'll maintain

              objection as to form, but please go

09:54:07          ahead.

         A.    There are approximately 20

    some-odd subpublishers.

         Q.    And when you say they issue

    licenses, do they issue mechanical

09:54:32    licenses?

91b957bf-7b69-48bf-9e34-bcdb7addec96

1               G. Barron

2          MR. HART:  Foundation.

3      A.    It's not my area of expertise.

4  As in most countries outside of the United

09:54:49    5  States and Canada, societies like Harry

6  Fox issue licenses, and we are not

7  involved with the process on the U.S.

8  side.

9      Q.    Do you know whether any of the

09:55:03   10  subpublishers issue synchronization

11  licenses overseas?

12          MR. HART:  Same objections.

13      A.    Yes, I am.

14      Q.    Yes, you do?

09:55:18  15          MR. HART:  For your sake, do you

16  want to just restate the question?

17          MR. GOEKE:  Yeah.

18      Q.    You indicated, "Yes, I am."

19          The question was, do you know

09:55:25  20  whether any of the subpublishers issue

21  synchronization licenses overseas?

22      A.    Yes, they do.

23      Q.    And are there any restrictions

24  on the scope of licenses that those

09:55:40  25  subpublishers issue overseas?

91b957bf-7b69-48bf-9e34-bcdb7addec96

1          G. Barron

2   recollection of having seen it.  But if he

3   sent me the link, I'm sure I watched it.

4       Q.    And at the top there it says,

12:23:22   5   "Thanks Selim, I don't recognize the

6   song."

7             Does that suggest you watched

8   it?

9       A.    Yes, it does suggest I watched

12:23:28   10  it.

11      Q.    Now, what is Cherry Lane's

12  relationship with Black Eyed Peas?

13            MR. HART:  Form.

14      A.    They are a client of ours.

12:23:42   15  Q.    And does Cherry Lane typically

16  manage all of Black Eyed Peas' works?

17            MR. HART:  Objection to form.

18  Legal conclusion, competence.

19      A.    As far as I know, we administer

12:24:04   20  most of their catalog, but I don't know if

21  any of it falls outside of the scope of

22  our agreement.

23      Q.    And if something did fall

24  outside the scope of your agreement, do

12:24:16   25  you have any idea who would administer

91b957bf-7b69-48bf-9e34-bcdb7addec96

                        G. Barron

those rights?

    A.    I don't know.

    Q.    Now, at the top of this you
indicate that you don't recognize the
song, perhaps it was written for the
commercial, and that you forwarded this to
the band's manager to clarify.

          Do you see that?

    A.    Yes, I see that.

    Q.    I take it you couldn't tell,
just by looking at the link on YouTube,
whether or not the work was, in fact, a
licensed work?

          MR. HART:  Objection to form.
          Competence, prior testimony,
          foundation.

    A.    I didn't recognize the song upon
watching the video.

    Q.    And so not recognizing the song,
you couldn't tell whether it was licensed
or not; is that right?

          MR. HART:  Same objections.

    A.    I wouldn't know.

    Q.    So as the director of licensing

91b957bf-7b69-48bf-9e34-bcdb7addec96

1          G. Barron

2     for Cherry Lane, which administers most of

3     the catalog for Black Eyed Peas, upon

4     looking at the YouTube link that includes

12:25:26     5     the Black Eyed Peas song, you wouldn't

6     know whether that song was, in fact,

7     licensed; is that right?

8          MR. HART:  I'll object to the

9          prior grounds, and also

12:25:31    10          mischaracterizes the witness's prior

11          testimony.

12          Go ahead.

13          A.     All I can confirm is that I

14     didn't recognize the song that was used in

12:25:41    15     the video.

16          Q.     And you didn't know whether or

17     not it was, in fact, approved to be used

18     in that fashion?

19          MR. HART:  Objection,

12:25:48    20          foundation, competence, prior

21          testimony.

22          A.     I don't know whether or not it

23     was.

24          Q.     Okay.  And then, if you turn to

12:26:11    25     the last page of this document, there's an

91b957bf-7b69-48bf-9e34-bcdb7addec96

G. Barron

2  e-mail that appears to be following up

3  from the prior string, in which you write

4  back to them, "Hi, Selim, management

12:26:21  5  confirmed that the song was written for

6  the commercial.  No need for any action on

7  our part."

8  Do you see that?

9  A.  I see that.

12:26:28  10  Q.  So does that refresh your

11  recollection that perhaps this work was

12  one that was not being administered by

13  Cherry Lane?

14  MR. HART:  Objection to form.

12:26:38  15  Competence, foundation.

16  A.  It confirms that the song was

17  written for the commercial.  I can't

18  confirm whether or not we obtained rights

19  as a result.

12:26:56  20  Q.  Okay.  And it confirms -- you

21  say, "no need for action on our part."  So

22  it confirms that this posting on YouTube

23  was, in fact, an authorized use of that

24  song; is that correct?

12:27:04  25  MR. HART:  Objection, form,

91b957bf-7b69-48bf-9e34-bcdb7addec96

                    G. Barron

                    legal conclusion, competence,

                    foundation.

                    A.    It confirms that the song was

12:27:14    written for the commercial.  What rights

                    were granted to the ad agency, with

                    respect to the broadcasting of the

                    commercial, I can't speak to.

                    Q.    So is it your testimony that

12:27:49    even after you, as the director of

                    licensing at Cherry Lane, spoke with the

                    manager of Black Eyed Peas about a

                    specific link on YouTube, you still could

                    not determine whether or not that specific

12:28:07    context was, in fact, licensed to be used

                    in the fashion it was posted on YouTube?

                    MR. HART:  I'm going to have to

                        object to that, because it

                        mischaracterizes the witness's

12:28:17        testimony and the document.

                    A.    I can only confirm that I

                    confirmed that the song was written for

                    use in the commercial.  What was done --

                    what was licensed, with respect to the

12:28:28    media in which that commercial was to be

91b957bf-7b69-48bf-9e34-bcdb7addec96

1          G. Barron

2   used, I can't speak to.

3        Q.   So again, the answer, though, is

4   you couldn't tell just by looking at this

5   and talking to Black Eyed Peas management,

6   whether or not the use on YouTube was, in

7   fact, a licensed use?

8            MR. HART:  I'm going to have to

9        maintain my objection on the grounds

10        of competence and the witness's prior

11        testimony, which I think you are

12        mischaracterizing.

13        A.   Could you repeat it, please.

14        Q.   Yes.  So the answer is that you

15   couldn't tell, by looking at this link on

16   YouTube and talking to the Black Eyed Peas

17   management, whether or not the use of this

18   work on YouTube was, in fact, a licensed

19   use?

20            MR. HART:  Same objections.

21        Competence, foundation, prior

22        testimony.

23        A.   I don't know whether or not it

24   was.

25            (Barron Exhibit 11, two

G. Barron

documents, Bates numbers CH00001540,

and CH00075142 to 143, marked for

identification, as of this date.)

12:30:28    Q.    Mr. Barron, I'm showing you a

document that's marked as Barron

Exhibit 11.  This is two documents that

have been attached, one to the next.  In

terms of Bates numbers, they are

12:30:52    nonsequential.  The first Bates number is

CH00001540, and the next two are Bates

number CH00075142 to 143.

MR. HART:  So you are saying

they didn't belong together as a

12:31:14    single document?

MR. GOEKE:  They were not

produced together as a single

document.

MR. HART:  I see.  Thanks for

12:31:21    clarifying that.

Q.    Mr. Barron, are you familiar

with the song, My Humps?

A.    Yes, I am.

Q.    And did there come a time when

12:31:36    you viewed the song My Humps, as performed

91b957bf-7b69-48bf-9e34-bcdb7addec96

# Schapiro Exhibit 153

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIACOM INTERNATIONAL INC., COMEDY ) <br> PARTNERS, COUNTRY MUSIC ) <br> TELEVISION, INC., PARAMOUNT ) <br> PICTURES CORPORATION, and BLACK ) <br> ENTERTAINMENT TELEVISION LLC, ) <br>        Plaintiffs, ) <br>       vs. ) <br> YOUTUBE, INC., YOUTUBE, LLC, ) <br> and GOOGLE, INC., ) <br> ) <br>      Defendants. ) | Case No. <br> 1:07CV02103 |

THE FOOTBALL ASSOCIATION PREMIER )
LEAGUE LIMITED, BOURNE CO., et al.,)
on behalf of themselves and all )
others similarly situated, )
                )
       Plaintiffs, )
       vs. )  Case No.
YOUTUBE, INC., YOUTUBE, LLC, and ) 07CV3582
GOOGLE, INC., )
                )
     Defendants. )

DEPOSITION OF LAUREN APOLITO
NEW YORK, NEW YORK
THURSDAY, January 7, 2010

REPORTED BY:
ERICA RUGGIERI, CSR, RPR
JOB NO: 18448

1

2

3

4                          January 7, 2010

5                          10:03 a.m.

6

7                VIDEOTAPED DEPOSITION OF LAUREN

8    APOLITO, held at the offices of WILSON

9    SONSINI GOODRICH & ROSATI, 1301 Avenue of

10    the Americas, New York, New York, pursuant

11    to notice, before before Erica L.

12    Ruggieri, Registered Professional Reporter

13    and Notary Public of the State of New

14    York.

15

16

17

18

19

20

21

22

23

24

25

A P P E A R A N C E S :

FOR THE DEFENDANTS YOUTUBE, INC., YOUTUBE,

LLC and GOOGLE, INC.:

     WILSON SONSINI GOODRICH & ROSATI, LLP

     BY:  MAURA REES, ESQ.

     650 Page Mill Road

     Palo Alto, California 94304-1050

     (650) 493-9300

     Mrees@wsgr.com


FOR THE HARRY FOX AGENCY AND

THE WITNESS:

     LIEFF CABRASER HEIMANN & BERNSTEIN

     BY:  DAVID S. STELLINGS,  ESQ

       ANNIKA K. MARTIN, ESQ.

     250 Hudson Street, 8th Floor

     New York, NY 10013-1413

     (212) 355-9500

     Dstellings@lchb.com


ALSO PRESENT:

     MANUEL ABREU, Videographer

1                           APOLITO

2          synchronization licenses on an ad hoc or a

3          one-off basis?

4                  A.    No.

5    02:57:06      Q.    Does Harry Fox Agency have any

6          policies prohibiting its employees from

7          using YouTube while at work?

8                  A.    No.

9                  Q.    Does HFA have any policies

10   02:57:44   specifically about whether its employees

11         can watch videos on the Internet at work

12         that infringe other people's copyrights?

13                 A.    No.

14                 MS. REES:   Exhibit 31.

15   02:58:20          (Apolito Exhibit 31, e-mail

16                chain among Harry Fox employees

17                regarding a YouTube video, marked

18                for identification, as of this

19                date.) .

20   02:58:51          (Witness reviews document.)

21                 Q.    Can you identify Exhibit 31?

22                 A.    This appears to be an e-mail

23         chain among three or four Harry Fox

24         employees regarding a particular YouTube

25   02:59:20   video.

1                    APOLITO

2          Q.    The first e-mail is from

3     Jonathan Elsas.  It says in this e-mail,

4     "signature licensing agent."

5   02:59:31          Is that his title at Harry Fox

6     Agency?

7          A.    Yes.

8          Q.    Who is Stephen Ebinger?

9          A.    He's also a licensing or at that

10  02:59:46  time was a licensing agent and is now a

11    collections agent.

12         Q.    What is Joseph DiPalo's

13    position?

14         A.    Joseph is part of the licensing

15  03:00:02  department, and he also handles a lot of

16    our metadata work.

17         Q.    And what is Fred Beteille's

18    title?

19         A.    Fred is the director of business

20  03:00:15  affairs and licensing technology.

21         Q.    And there's I guess three links

22    to YouTube videos listed in this e-mail.

23              I take it you don't have any way

24    of knowing whether any of the videos that

25  03:00:45  are located at these links include music

1                          APOLITO

2          that infringe a composition copyright?

3                     MR. STELLINGS:  Object to the

4                form of the question.

5    03:00:55              But you can answer.

6                A.    I have no information.

7                Q.    Is that something that you would

8          be able to determine with more

9          information?

10   03:01:13             MR. STELLINGS:  Object to the

11               form of the question.

12               A.    It would be a multi-step

13         process.

14               Q.    And what steps are you thinking

15   03:01:27  of?

16               A.    One would have to put in this

17         URL, see if it's still operable, identify

18         if there was a sound recording associated

19         with it and then conduct research to

20   03:01:44  determine if it was licensed.

21                     MS. REES:  Exhibit 32.

22                     (Apolito Exhibit 32, e-mail

23               from Fred Beteille to Maurice

24               Russell, providing two links, marked

25   03:02:58        for identification, as of this

```
1                        APOLITO
2              date.)
3                   (Witness reviews document.)
4              Q.    Can you identify Exhibit 32?
5    03:02:50   A.    It is an e-mail from Fred
6         Beteille to Maurice Russell that provides
7         two links.
8              Q.    And one of the links appears to
9         be a YouTube.com link?
10   03:03:08   A.    Correct.
11             Q.    You told me before, I think,
12        what Maurice Russell's title was, and I
13        forgot.
14                  Could you remind me?
15   03:03:20   A.    Sure.  He's VP of licensing and
16        collections.
17             Q.    And who is Warren Adler?
18             A.    Warren Adler is a former
19        employee.  He was in our publisher
20   03:03:34 services department.
21             Q.    And, again, with respect to the
22        YouTube link that's in this e-mail, I take
23        it you don't have any information about
24        whether the video at this link includes a
25   03:03:59 musical composition that infringes a
```

# Schapiro Exhibit 154

.

| | |
|---|---|
| **From:** | Brian Bradford |
| **Sent:** | Friday, June 08, 2007 8:50 PM |
| **To:** | Copyright Service |
| **Cc:** | Jerry Martin; Daniel Hill; 'Daniel Girard'; Doherty, Kevin M. |
| **Subject:** | RE: [C#154263444] DMCA Counter Notification - from Universal Music Group - re: Cal IV Entertainment, LLC |
| | |
| **Attachments:** | Complaint (Filed copy).pdf |



Complaint (Filed
copy).pdf (1 ...

Heather:

Please find the attached Complaint filed in federal court in the Middle District of
Tennessee.  At this time, CAL IV will not object to these particular URLs remaining on
your website until further clarification of ownership or licensing rights can be obtained.

Regards,

BRIAN K. BRADFORD | Director, Administration Cal IV Entertainment, LLC | 808 19th Avenue
South, Nashville, TN 37203
Tel: 615.321.2700 | Fax: 615.321.3222 | eMail: brian.bradford@cal4.com Visit us on the
web: www.cal4.com

This email and any files transmitted with it are confidential and intended solely for the
use of the individual or entity to whom they are addressed. If you have received this
email in error please notify the system manager. This message contains confidential
information and is intended only for the individual named. If you are not the named
addressee you should not disseminate, distribute or copy this e-mail. Please notify the
sender immediately by e-mail if you have received this e-mail by mistake and delete this
e-mail from your system. If you are not the intended recipient you are notified that
disclosing, copying, distributing or taking any action in reliance on the contents of this
information is strictly prohibited.


-----Original Message-----
From: Copyright Service [mailto:copyright@youtube.com]
Sent: Thursday, May 31, 2007 4:41 PM
To: Brian Bradford
Subject: Re: [C#154263444] DMCA Counter Notification - from Universal Music Group - re:
Cal IV Entertainment, LLC

Dear Brian,

We received the attached counter-notification in response to a complaint you filed with
us. As described in the United States Digital Millennium Copyright Act (DMCA) 17 U.S.C.
512, by this email, we're providing you with the counter-notification and await your
notice (in not more than 10
days) that you've filed an action seeking a court order to restrain the counter-notifier's
allegedly infringing activity. Such notice should be submitted by replying to this email.
If we don't receive notice from you, we will reinstate the material to YouTube.

If you have any questions, please contact copyright@youtube.com.

Sincerely,

Heather
The YouTube Team

1

```
Original Message Follows:
------------------------
From: "Sanchez, Angela" <angela.sanchez@umusic.com>
Subject: DMCA Complaint: UMG Counter Notification
Date: Thu, 31 May 2007 11:06:42 -0700
```

The attached 4 Copyright Infringement notices were sent to Universal Music Group byCal IV Entertainment, LLC for the videos listed below.

Shooter Jennings - Steady At The Wheel: Closed Captioned:
http://www.youtube.com/watch?v=mOtTZ2Ks_48

McBride And The Ride - Sacred Ground:
http://www.youtube.com/watch?v=06bHooOCXps

Tracy Lawrence - It's All How You Look At It: Closed Captioned:
http://www.youtube.com/watch?v=v9zWnAeIG4Y

Gary Nichols - Unbroken Ground: Closed Captioned:
http://www.youtube.com/watch?v=_ajRyqcWtXg

Universal Music Group has a good faith belief that the material was removed or disabled as a result of mistake or misidentification of the material.  Universal Music Group does have rights to these videos pursuant to physical licenses for Shooter Jennings, McBride and the Ride, and Tracy Lawrence and a contractual license for Gary Nichols in his recording agreement.  Universal Music Group would like to request that the videos remain on youtube.com and that the copyright infringement notices not be associated with the Universal Music Group account.

Universal Music Group consents to the jurisdiction of Federal District Court for the judicial district in which the following address is located:

Universal Music Group
2220 Colorado Avenue
Santa Monica, CA  90404

Angela Sanchez
Sr. Director of Marketing/Digital
Universal Music Group Distribution

Confidential

CAL00000748



# Schapiro Exhibit 155

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

VIACOM INTERNATIONAL, INC., COMEDY )
PARTNERS, COUNTRY MUSIC. )
TELEVISION, INC., PARAMOUNT )
PICTURES CORPORATION, and BLACK )
ENTERTAINMENT TELEVISION, LLC, )
                                 )
         Plaintiffs, )
                                   )
vs.                                ) NO. 07-CV-2203
                                   )
YOUTUBE, INC., YOUTUBE, LLC, )
and GOOGLE, INC., )
                                   )
         Defendants. )
_____)
                                   )
THE FOOTBALL ASSOCIATION PREMIER )
LEAGUE LIMITED, BOURNE CO., et al.,)
on behalf of themselves and all )
others similarly situated, )
                                   )
         Plaintiffs, )
vs.                                ) NO. 07-CV-3582
                                   )
YOUTUBE, INC., YOUTUBE, LLC, and )
GOOGLE, INC., )
                                   )
         Defendants. )
_____)

VIDEOTAPED DEPOSITION OF DANIEL HILL
SAN FRANCISCO, CALIFORNIA
FRIDAY, MARCH 13, 2009

BY: ANDREA M. IGNACIO HOWARD, CSR, RPR, CLR
JOB NO. 16594

1               MARCH 13, 2009

2                  9:33 A.M.

3

4     VIDEOTAPED DEPOSITION OF DANIEL HILL,

5     WILSON SONSINI GOODRICH & ROSATI, LLP,

6     One Market Street, Spear Tower, San Francisco

7     California, pursuant to notice, and before,

8     ANDREA M. IGNACIO HOWARD, CLR, RPR, CSR

9     License No. 9830.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1      A P P E A R A N C E S:

 2

 3      FOR THE PLAINTIFFS CAL IV ENTERTAINMENT:

 4          GIRARD GIBBS LLP

 5          By:  CHRISTINA C. SHARP, Esq.

 6          601 California Street, 14th Floor

 7          San Francisco, California 94108-2819

 8          (415) 981-4800 chc@girardgibbs.com

 9

10      FOR THE DEFENDANTS YOUTUBE, INC., YOUTUBE, LLC and

11      GOOGLE, INC.:

12          MAYER BROWN LLP

13          By:  GREGRORY FRANTZ, Esq.

14               ILANA D. GOLANT, Esq.

15          1675 Broadway

16          New York, New York 10019-5820

17          (212) 506-2423 gfrantz@mayerbrown.com;

18                          igolant@mayerbrown.com

19

20      ALSO PRESENT:  Lou Meadows, Videographer.

21

22                    ---oOo---

23

24

25
```

da61e1e5-6ea7-44c9-99e8-f0f188c7a1b0

|          |    |                                                      |
|----------|----|------------------------------------------------------|
|          | 1  | HILL                                                 |
| 11:37:38 | 2  | Q  And what do you know now?                         |
| 11:37:41 | 3  | MS. SHARP:  Form.                                     |
| 11:37:43 | 4  | THE WITNESS:  That it did not help Carey Ott,         |
| 11:37:47 | 5  | and it was not properly licensed.                    |
| 11:37:53 | 6  | MR. FRANTZ:  Q.  What do you mean by "it was          |
| 11:37:55 | 7  | not properly licensed"?                              |
| 11:37:58 | 8  | A  I don't believe we issued a license, and I         |
| 11:38:03 | 9  | don't believe that we can control the -- the content |
| 11:38:11 | 10 | over YouTube at this time, and that is detrimental to |
| 11:38:17 | 11 | Cal IV.                                              |
| 11:38:18 | 12 | Q  And when you say you don't believe it helped       |
| 11:38:25 | 13 | Carey Ott, why do you say that?                      |
| 11:38:29 | 14 | A  Because his -- his content was posted.  It         |
| 11:38:35 | 15 | was intended for possible promotion.  His album did  |
| 11:38:40 | 16 | not get the exposure that was intended, and          |
| 11:38:45 | 17 | subsequently we had to drop Carey from our roster.   |
| 11:38:53 | 18 | Q  And do you attribute the circumstances you        |
| 11:38:56 | 19 | just described to the posting of his works on YouTube?|
| 11:38:59 | 20 | MS. SHARP:  Form.                                     |
| 11:39:00 | 21 | THE WITNESS:  I don't believe that it helped         |
| 11:39:03 | 22 | Carey.                                               |
| 11:39:05 | 23 | MR. FRANTZ:  Q.  Do you believe it harmed             |
| 11:39:07 | 24 | Carey?                                               |
| 11:39:08 | 25 | A  Yes.                                               |

da61e1e5-6ea7-44c9-99e8-f0f188c7a1b0

HILL

| | | |
|---|---|---|
| 11:39:08 | 1 | |
| 11:39:08 | 2 | Q   How so? |
| 11:39:09 | 3 | A   It made the music available for free on |
| 11:39:15 | 4 | YouTube and dis-incentivized people from going out and |
| 11:39:27 | 5 | buying Carey's music. |
| 11:39:29 | 6 | Q   Did you ever attempt to substantiate that |
| 11:39:35 | 7 | with an analysis of any data? |
| 11:39:42 | 8 | A   No. |
| 11:39:42 | 9 | Q   Other than the Carey Ott situation, were |
| 11:39:45 | 10 | there other instances in which you allowed content to |
| 11:39:49 | 11 | remain on YouTube? |
| 11:39:51 | 12 | MS. SHARP:  Form. |
| 11:39:52 | 13 | THE WITNESS:  There was a situation where |
| 11:40:03 | 14 | Universal Music or Universal Records, I believe, |
| 11:40:09 | 15 | requested that YouTube repost several videos on |
| 11:40:15 | 16 | YouTube. |
| 11:40:19 | 17 | We chose not to fight Universal on the |
| 11:40:25 | 18 | posting of those videos.  It's arguable whether they |
| 11:40:32 | 19 | had the right.  But at the time, we felt that we did |
| 11:40:35 | 20 | not want to enter into a dispute with Universal with |
| 11:40:41 | 21 | those videos posted. |
| 11:40:47 | 22 | But I would not permit them to be posted now. |
| 11:40:52 | 23 | MR. FRANTZ:  Q.  Can you explain what you |
| 11:40:53 | 24 | mean by it was arguable whether Universal had the |
| 11:40:59 | 25 | right to post the videos on YouTube? |

da61e1e5-6ea7-44c9-99e8-f0f188c7a1b0

|         |    |                                                              |
|---------|----|--------------------------------------------------------------|
|         | 1  | HILL                                                         |
| 11:41:01 | 2  | A    Well, Universal apparently claimed that they           |
| 11:41:06 | 3  | had the right to post those videos, and I would            |
| 11:41:08 | 4  | dispute that.                                               |
| 11:41:11 | 5  | Q    Your position is they did not have the right           |
| 11:41:14 | 6  | to post the videos?                                         |
| 11:41:15 | 7  | A    That is correct.                                       |
| 11:41:15 | 8  | Q    And do you understand what their position is           |
| 11:41:20 | 9  | as to the right to post the works on YouTube?              |
| 11:41:23 | 10 | MS. SHARP:  Form.                                           |
| 11:41:29 | 11 | THE WITNESS:  No.  Only their insistence to                |
| 11:41:32 | 12 | post the videos, as they did in their request.            |
| 11:41:44 | 13 | MR. FRANTZ:  Q.  Did they give you any                     |
| 11:41:45 | 14 | evidence that they, in fact, had a right to post the      |
| 11:41:47 | 15 | works on YouTube?                                          |
| 11:41:50 | 16 | A    Not that I can recall.                                |
| 11:41:51 | 17 | Q    And yet you allowed them to post the works on         |
| 11:41:55 | 18 | YouTube without taking them down.  Why is that?           |
| 11:41:57 | 19 | A    Well, we had taken them down.  We -- we had           |
| 11:42:00 | 20 | them taken down.  That's why they requested for them      |
| 11:42:04 | 21 | to be reposted.                                            |
| 11:42:06 | 22 | I made a judgment call not to dispute their          |
| 11:42:20 | 23 | claim at that time, because I didn't feel that it was     |
| 11:42:31 | 24 | in our best interests at that time to dispute the         |
| 11:42:37 | 25 | claim.                                                      |

|  | 1 | HILL |
|--|--|------|

11:42:37  2     Q   Why did you believe it was not in your best

11:42:40  3   interests to dispute the claim?

11:42:42  4       MS. SHARP:  Caution the witness as to the

11:42:43  5   attorney-client privilege.

11:42:45  6       THE WITNESS:  It was something that we had

11:42:48  7   discussed with our attorneys and made a determination.

11:42:51  8       MR. FRANTZ:  Q.  And you say you wouldn't

11:43:04  9   reach the same decision if a similar circumstance were

11:43:09  10  permitted -- were to occur in the present; is that

11:43:12  11  correct?

11:43:16  12      MS. SHARP:  Form.

11:43:17  13      THE WITNESS:  That's correct.

11:43:17  14      MR. FRANTZ:  Q.  And why is that?

11:43:19  15    A   Because I -- I think that there are -- there

11:43:27  16  are too many issues that still need to be worked out

11:43:32  17  in regards to licensing work on YouTube, and I think

11:43:39  18  it's detrimental to -- to us to allow works to be up

11:43:48  19  there.  That's it.

11:43:58  20    Q   What are those issues that need to be worked

11:44:01  21  out?

11:44:06  22    A   Control over our works and -- and

11:44:20  23  compensation for the creators for the works.

11:44:26  24    Q   Weren't you aware of those issues when you

11:44:32  25  had decided to allow Universal to keep the clips up on

da61e1e5-6ea7-44c9-99e8-f0f188c7a1b0

                    1                    HILL

11:44:37   2    YouTube?

11:44:39   3        A    Yes.

11:44:39   4        Q    Has your opinion on those issues changed as a

11:44:47   5    result of the experience with Universal?

11:44:56   6        A    My opinions have not changed in regards to

11:45:02   7    the infringement of YouTube and the songs being

11:45:10   8    present on YouTube.  This is something that we are

11:45:15   9    working out.

11:45:18   10            Our licenses and contracts are something that

11:45:29   11   are changing and must change in light of the new

11:45:38   12   technology.  And -- and we are in the process of

11:45:49   13   reviewing all of our licenses and contracts, and we'll

11:45:54   14   adjust them in counsel with our attorneys as we see

11:46:03   15   it's to our benefit and the benefit of our

11:46:08   16   songwriters.

11:46:10   17       Q    And when you say the licenses and contracts

11:46:12   18   are something that "must change in light of the new

11:46:14   19   technology," what do you mean by that?

11:46:19   20       A    Anything that's left for interpretation, such

11:46:24   21   as digital rights, streaming, downloading, obviously

11:46:29   22   these issues are evolving as we speak.  And we need to

11:46:37   23   be able to address the issues of theft and

11:46:45   24   infringement on our rights and decide what the best

11:46:56   25   course of action is as these technological innovations

da61e1e5-6ea7-44c9-99e8-f0f188c7a1b0

|          |    | HILL |
|----------|----|------|
| 11:47:03 | 2  | evolve. |
| 11:47:04 | 3  | Q   Do you believe that your current licenses |
| 11:47:07 | 4  | sometimes leave ambiguity as to whether a work can be |
| 11:47:10 | 5  | posted on YouTube? |
| 11:47:30 | 6  | A   I believe that in the past licenses have not |
| 11:47:46 | 7  | anticipated developments such as YouTube, and our |
| 11:47:56 | 8  | contracts are evolving.  Certain entities may |
| 11:48:08 | 9  | interpret certain -- certain aspects of licenses and |
| 11:48:18 | 10 | assume that they allow certain uses which were not |
| 11:48:31 | 11 | intended by Cal IV. |
| 11:48:34 | 12 | Q   I think we're -- we're out of tape now, so |
| 11:48:38 | 13 | why don't we take a break. |
| 11:48:40 | 14 | A   All right. |
| 11:48:40 | 15 | THE VIDEOGRAPHER:  This marks the end of |
| 11:48:42 | 16 | videotape number one. |
| 11:48:43 | 17 | Off the record. |
| 11:48:44 | 18 | The time is 11:47 a.m. |
| 11:48:46 | 19 | (Recess taken.) |
| 12:04:37 | 20 | THE VIDEOGRAPHER:  On the record. |
| 12:04:38 | 21 | This marks the beginning of videotape number |
| 12:04:40 | 22 | two in the deposition of Daniel Hill on March 13, |
| 12:04:40 | 23 | 2009. |
| 12:04:46 | 24 | The time is 12:03 p.m. |
| 12:04:49 | 25 | Please continue. |

da61e1e5-6ea7-44c9-99e8-f0f188c7a1b0

|          |    |                                                   |
|----------|----|---------------------------------------------------|
|          | 1  | HILL                                              |
| 12:04:49 | 2  | MR. FRANTZ:  Q.  Mr. Hill, you testified          |
| 12:04:51 | 3  | earlier that your company is in the process of    |
| 12:04:54 | 4  | reviewing all of its licenses to account for new  |
| 12:04:56 | 5  | technology such as YouTube; correct?              |
| 12:04:58 | 6  | MS. SHARP:  Form.                                  |
| 12:04:59 | 7  | THE WITNESS:  Yes.                                 |
| 12:04:59 | 8  | MR. FRANTZ:  Q.  When did that process of         |
| 12:05:01 | 9  | review begin?                                     |
| 12:05:03 | 10 | A   It is ongoing.                                |
| 12:05:07 | 11 | Q   And when did it begin?                        |
| 12:05:11 | 12 | A   It began when we realized that there are      |
| 12:05:18 | 13 | problems with YouTube and our rights on YouTube.  |
| 12:05:30 | 14 | Q   And when was that?                            |
| 12:05:34 | 15 | A   That would be around the time that we         |
| 12:05:40 | 16 | filed -- a bit before we filed for the class action |
| 12:05:47 | 17 | lawsuit.                                          |
| 12:05:48 | 18 | Q   Are you referring to the Tennessee action?   |
| 12:05:50 | 19 | A   Yes.                                          |
| 12:05:50 | 20 | Q   And when you say you "realized there are      |
| 12:05:54 | 21 | problems with YouTube and our rights on YouTube," what |
| 12:05:59 | 22 | did you mean by that?                             |
| 12:06:02 | 23 | A   We realized that, excuse me, there were and  |
| 12:06:10 | 24 | are works up on YouTube that are our copyrights that |
| 12:06:19 | 25 | we are not being compensated for.                |

da61e1e5-6ea7-44c9-99e8-f0f188c7a1b0



# Schapiro Exhibit 156



## DVD SYNCHRONIZATION LICENSE AGREEMENT

License Agreement entered into this 16 day of April, 2008, between **EAGLE ROCK ENTERTAINMENT,** whose address is 22 W. 38th Street, New York, N.Y. 10018 Attn: Melissa Roy (hereinafter referred to as "Licensee") and **STAGE THREE MUSIC (U.S.) INC. d/b/a STAGE THREE SONGS (ASCAP)** whose address is 1616 Vista del Mar, 2nd Fl., Los Angeles, CA 90028 (hereinafter referred to as "Publisher").

Publisher, to the extent indicated herein, **owns and/or controls 100%** of the worldwide copyrights in and to the musical Compositions hereinafter designated. Licensee is a potential user of the Compositions in the production and distribution of the DVD Program below, and desires to use said Compositions as part of the Program. Publisher is willing to grant to Licensee a synchronization license, which will permit Licensee, to use the Compositions for the purposes contemplated, subject to the terms and conditions of this License. Upon the terms, conditions and covenants herein, it is agreed:

| | | |
|---|---|---|
| 1. | **COMPOSITION(S):** | **SEE ATTACHED SCHEDULE** |
| 2. | **WORDS & MUSIC BY:** | SEE ATTACHED SCHEDULE |
| 3. | **TITLE ("Program" or "DVD"):** | **"ZZ TOP-LIVE FROM TEXAS"/# EV30252-9/EVBRD 33316-9** |
| 4. | **ARTIST:** | **ZZ TOP** |
| 5. | **TERRITORY:** | **UNITED STATES AND CANADA** |
| 6. | **TERM:** | The term shall commence upon the release date of the Program. **June 24, 2008** and shall continue for a period of ten (10) years. |
| 7. | **USE & TIMING:** | Up to 1 full performance use of each of the Compositions, and for use behind bonus material, up to 3 uses each of the four (4) Compositions listed on the attached Schedule |
| 8. | **ADVANCE:** | ███████████████████ |
| 9. | **GRANT OF RIGHTS** | |

**Video/DVD** Publisher hereby grants to Licensee and its successors and assigns the non-exclusive, limited right, license, privilege, and authority to cause the fixing of or the synchronization of the Composition in and as part of the Program on audiovisual contrivances such as video cassettes, video tapes, video discs and similar compact audiovisual devices reproducing Videos of the entire Program in substantially its original form ("Videos" or "DVD's") during the Term and in the Licensed Territory, including use in trailers/promotions for the Program only, in all media. The License granted to Licensee herein shall also include the right to reproduce, and to sell, lease, license, or otherwise distribute and make such Video available to the public by sale or other transfer of ownership as a device intended primarily for "home use" (as such term is commonly understood in the entertainment industry). Provided the Licensee is not then in breach of any of the terms or conditions of this Agreement, Licensee shall have the right, for six (6) months following the end of the Term, to sell off its remaining inventory of the Program provided Licensee accounts to Publisher.

10. **ACCOUNTINGS & AUDITS**

(a)   In consideration for the rights which are subject to this License, Licensee hereby agrees to pay to Publisher, and Publisher agrees to accept a royalty equal to ████████████████████ ████████████████████ for all copies of the Program manufactured and distributed by Licensee or under its authority, and not returned, in the Territory during the Term. Licensee shall send an immediate up-to-date accounting and payment, and thereafter shall account to Publisher quarterly, within forty-five (45) days after the end of each March 31st, June 30th, September 30th and December 31st period, on the basis of DVD's made and

Highly Confidential

ST00105023

distributed. In the event Licensee fails to account to Publisher and pay royalties as herein provided, Publisher or our agent may give written notice to Licensee that, unless the default is remedied within thirty (30) days from the date of the notice, this license will be automatically terminated. Such termination shall render either the making or the distribution, or both, of all copies of DVD's for which the royalties have not been paid, actionable as acts of infringement under and fully subject to the remedies provided by the Copyright Act.

(b)     Licensee agrees to maintain accurate books and records with respect to the Composition. Publisher and/or our designated representatives shall, upon thirty (30) days' written notice, have the right to inspect Licensee's books and records with respect to each statement for a period of three (3) years after the date such statement is rendered, and not more than once during any calendar year and only once with respect to any statement rendered hereunder. Any such inspection shall be made by a certified public accountant appointed by Publisher and shall take place during Licensee's normal business hours at Licensee's principal place of business or such other place where Licensee maintains the books and records which relate to Licensor's statements hereunder and which are necessary to verify the accuracy of the statement or statements in question.

11.     **COPIES**          Upon written request, Licensee agrees to furnish Publisher with a copy of the Program for review and for Publisher's records.

12.     **RESTRICTIONS**     This license does not authorize or permit any use of the Composition not expressly set forth herein. Without in any way limiting the generality of the foregoing, this license does not include the right to alter the fundamental character of the music of the Composition, to use the title or subtitle of the Composition as the title of the Program, to use the story of the Composition, to use the Composition in audio-only sound recordings, or to make any other use of the Composition not expressly authorized hereunder. All rights granted hereunder are granted on a non-exclusive basis.

13.     **WARRANTIES**       Publisher warrants only that it has the legal right to grant this license and this license is granted to and accepted by Licensee, its successors and assigns, without other warranty or recourse against Publisher, its successors or assigns.

14.     **COPYRIGHT NOTICE** Licensee agrees to accord credit for the Composition by listing the title and the writer(s) inside the packaging of the Program. Further, if any publisher of a composition embodied in the Program shall receive credit, then Publisher shall also receive credit in the Program. The size and placement of all such credit shall be no less favorable to Publisher than the size and placement of the credits for other outside musical compositions used in the Program.

15.     **RIGHTS RESERVED**  All rights in the Composition not expressly granted to Licensee herein are reserved to Publisher, and no expansion or modification of rights explicitly granted is to be inferred by use or convention.

16.     **TERMINATION**      Timely and faithful performance of each of the terms and conditions of this License are of the essence. All rights of any nature in the Composition are derived solely from this License, and shall terminate immediately upon the expiration or cancellation of this License. Any use thereafter, or any use not expressly authorized hereunder shall be deemed a violation of the applicable provisions of the United States Copyright Act (17 U.S.C., Section 101 et. seq.), and Publisher reserves all rights and remedies thereunder. The license set forth herein will be void if an up-to-date accounting/payment and a fully executed copy hereof is not returned to Publisher within thirty (30) days of the date above

17.     **INTEGRATION**      This agreement shall be governed by and construed and enforced in accordance with the laws of the State of California applicable to agreements made and to be wholly performed therein.

IN WITNESS WHEREOF, the parties have caused the foregoing to be executed as of the date first above written.

EAGLE ROCK ENTERTAINMENT                    STAGE THREE MUSIC (U.S.) INC.

By: _____                        By: _____

Highly Confidential                                          ST00105024

An Authorized Signatory

An Authorized Signatory

SP08010
Page 3 of 4

Highly Confidential

ST00105025

## SCHEDULE A

| COMPOSITION | WRITER(S) | STAGE THREE SHARE |
|---|---|---|
| GOT ME UNDER PRESSURE | Gibbons/Hill/Beard | 100% |
| WAITIN' FOR THE BUS | Gibbons/Hill | 100% |
| JESUS JUST LEFT CHICAGO | Gibbons/Hill/Beard | 100% |
| I'M BAD I'M NATIONWIDE | Gibbons/Hill/Beard | 100% |
| PINCUSHION | Gibbons/Hill/Beard | 100% |
| CHEAP SUNGLASSES | Gibbons/Hill/Beard | 100% |
| PEARL NECKLACE | Gibbons/Hill/Beard | 100% |
| HEARD IT ON THE X | Gibbons/Hill/Beard | 100% |
| JUST GOT PAID | Gibbons/Ham | 100% |
| ROUGH BOY | Gibbons/Hill/Beard | 100% |
| BLUE JEAN BLUES | Gibbons/Hill/Beard | 100% |
| GIMME ALL YOUR LOVIN' | Gibbons/Hill/Beard | 100% |
| SHARP DRESSED MAN | Gibbons/Hill/Beard | 100% |
| LEGS | Gibbons/Hill/Beard | 100% |
| TUBE SHAKE BOOGIE | Gibbons/Hill/Beard | 100% |
| LA GRANGE | Gibbons/Hill/Beard | 100% |
| BARB-B-Q | Gibbons/Ham | 100% |
| TUSH | Gibbons/Hill/Beard | 100% |

**TRACKS USED AS BACKGROUND TRACK TO BONUS MATERIAL**

| | | |
|---|---|---|
| GIMME ALL YOUR LOVIN' | Gibbons/Hill/Beard | 100% |
| WAITIN' FOR THE BUS | Gibbons/Hill/Beard | 100% |
| JESUS JUST LEFT CHICAGO | Gibbons/Hill/Beard | 100% |
| JUST GOT PAID | Gibbons/Ham | 100% |

*Back up's*
*"Blue Jean Blues"*
*song file*

Highly Confidential



**Schapiro Exhibit 157**

**From:** Mary Ann Slim
**Sent:** Wednesday, April 08, 2009 1:51 PM
**To:** Steve Lewis; Alan Kading
**Subject:** "Stuck In The Middle With You" - C1000 Supermarket Ad in Holland - Possible Soundalike

**Importance:** High
Hi Steve & Alan

Please see below and watch/listen to the YouTube link.  I'm not convinced we would win this one but please let me know if you would like CP Masters to pursue this and get a musicologist involved which we would have to pay for.

Mary Ann

Mary Ann Slim
Head of Film, TV & Media
Stage Three Music Ltd
13A Hillgate Street
London W8 7SP
Tel:   + 44 20 7792 6060

www.stagethreemusic.com



---

**From:** Bobby Sukhraj [mailto:bobby.sukhraj@ctm.eu.com]
**Sent:** 08 April 2009 13:41
**To:** Mary Ann Slim
**Subject:** C1000 - Stuck In the Middle

Dear Mary-Ann,

Please find enclosed a youtube link to the TV commercial of a big supermarket chain in Holland called 'C1000'. As you will notice they have very cleverly arranged music sounding very obviously like 'Stuck In the Middle' to accompany the visuals. We think it might be worthwhile  to involve a musicologist and eventually take the appropriate steps. What do you think?

Confidential

Please also let us know if you want to contact Joe Egan about this or want us to do it for you.

Here is the link: http://www.youtube.com/watch?v=GVosO9IiN1g

Best,
Bobby



**Bobby Sukhraj**
**CP Masters BV**

P.O. Box 1088 - 1200 BB - Hilversum | Marathon 11 - 1213 PG - Hilversum | The Netherlands
T ▮▮▮▮▮▮▮▮▮ F +31 (0)35 6474049 M ▮▮▮▮▮▮▮▮▮ E bobby@ctm.eu.com

NOTICE: The contents of this e-mail is subject to a disclaimer.
Please refer to http://ctm.eu.com/emaildisclaimer for details.

# Schapiro Exhibit 158

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

VIACOM INTERNATIONAL, INC., COMEDY  )
PARTNERS, COUNTRY MUSIC          )
TELEVISION, INC., PARAMOUNT       )
PICTURES CORPORATION, and BLACK   )
ENTERTAINMENT TELEVISION, LLC,   )
                          )
         Plaintiffs,       )
                          )
vs.                     ) NO. 07-CV-2203
                          )
YOUTUBE, INC., YOUTUBE, LLC,     )
and GOOGLE, INC.,            )
                          )
         Defendants.       )
_____)
                          )
THE FOOTBALL ASSOCIATION PREMIER  )
LEAGUE LIMITED, BOURNE CO., et al.,)
on behalf of themselves and all   )
others similarly situated,       )
                          )
         Plaintiffs,       )
vs.                     ) NO. 07-CV-3582
                          )
YOUTUBE, INC., YOUTUBE, LLC, and  )
GOOGLE, INC.,               )
                          )
         Defendants.       )
_____)

VIDEOTAPED DEPOSITION OF CHAD HURLEY
SAN FRANCISCO, CALIFORNIA
WEDNESDAY, APRIL 22, 2009

BY:  ANDREA M. IGNACIO HOWARD, CSR, RPR, CLR
JOB NO. 16789

1                        APRIL 22, 2009

2                        9:08 a.m.

3

4        VIDEOTAPED DEPOSITION OF CHAD HURLEY,

5        held at the offices of SHEARMAN & STERLING,

6        525 Market Street, San Francisco, California,

7        pursuant to notice, before ANDREA M. IGNACIO

8        HOWARD, CLR, CCRR, RPR, CSR License No. 9830.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    A P P E A R A N C E S:

2

3    FOR THE PLAINTIFFS VIACOM INTERNATIONAL, INC.:

4    JENNER & BLOCK, LLP

5    By:  SCOTT WILKENS, Esq.

6    1099 New York Avenue, NW, Suite 900

7    Washington, D.C. 20001

8    (202) 639-6000  swilkens@jenner.com

9

10   FOR THE LEAD PLAINTIFFS AND PROSPECTIVE CLASS:

11   BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

12   By:  JOHN C. BROWNE, Esq.

13   1285 Avenue Of The Americas

14   New York, New York 10019

15   (212) 554-1533  johnb@blbglaw.com

16

17   FOR THE PLAINTIFFS VIACOM INTERNATIONAL INC.:

18   SHEARMAN & STERLING LLP

19   By:  STUART J. BASKIN, Esq.

20   599 Lexington Avenue

21   New York, New York 10022-6069

22   (212) 848-4000  stuart.baskin@shearman.com

23

24

25

1        A P P E A R A N C E S   (Continued.)

2

3        FOR THE DEFENDANTS YOUTUBE, INC., YOUTUBE, LLC and

4        GOOGLE, INC.:

5            MAYER BROWN, LLP

6            By:  ANDREW H. SCHAPIRO, Esq.

7                 BRIAN WILLEN, Esq.

8            1675 Broadway

9            New York, New York 10019-5820

10           (212) 506-2279  aschapiro@mayer.com

11

12       ALSO PRESENT:

13           GOOGLE

14           By:  ADAM L. BAREA, Litigation Counsel

15           1600 Amphitheater Parkway

16           Mountain View, California 94043

17           (650) 214-4879  adambarea@google.com

18

19           KEN REESER, Videographer.

20

21                       ---oOo---

22

23

24

25

1          HURLEY, CHAD

2  09:58:21  professional was actually there with authorization,

3  09:58:24  and we found by trying to make decisions like these,

4  09:58:27  that we were making mistakes, just as our users would

5  09:58:29  make mistakes.

6  09:58:31       MR. BROWNE:  Q.  Well, at this time, at least

7  09:58:33  June of 2005, you as the CEO of YouTube believed that

8  09:58:37  the right way to go about keeping copyrighted material

9  09:58:40  off of the website was to make some judgment calls

10 09:58:42  about professional content and reject it if you

11 09:58:45  thought that it was copyrighted; is that correct?

12 09:58:46       MR. SCHAPIRO:  Objection; foundation.

13 09:58:47       THE WITNESS:  We didn't -- we didn't know.

14 09:58:50  We were trying to do what was right.

15 09:58:54       MR. BROWNE:  Q.  And at this time, you

16 09:58:54  thought the thing that was right was to review videos,

17 09:58:58  and, if they looked like they were up on the website

18 09:59:01  without authorization, to remove them; isn't that

19 09:59:03  right?

20 09:59:04       A   We didn't know the process.

21 09:59:06       Q   Well, whether you knew it or not, this was

22 09:59:08  the judgment that you had reached as of June of 2005;

23 09:59:11  right?

24 09:59:12       MR. SCHAPIRO:  Objection; asked and answered.

25 09:59:15       THE WITNESS:  Yeah, like I said, I -- that's

HURLEY, CHAD

| | |
|---|---|
| 1 | |
| 2 | 09:59:18 | what I stated. |
| 3 | 09:59:28 | MR. BROWNE: Q. Now, is it -- is it fair to |
| 4 | 09:59:29 | say that in this Exhibit 2 that you were making a |
| 5 | 09:59:32 | judgment as the CEO of YouTube that the user |
| 6 | 09:59:36 | OCRocks311 was not authorized to post the entire |
| 7 | 09:59:43 | season finale of Charmed on the YouTube website? |
| 8 | 09:59:49 | A   I mean, like I was trying to -- to state |
| 9 | 09:59:52 | before, I mean, we wanted -- if -- if it was |
| 10 | 09:59:55 | authorized or not, it was -- it was something that |
| 11 | 09:59:57 | looked professional, and we wanted personal videos |
| 12 | 09:59:59 | to -- to be what the site's about.  That's what the |
| 13 | 10:00:03 | site's about today, and it's -- you know, down the |
| 14 | 10:00:06 | road, you know, we -- we may, perhaps, you know, some |
| 15 | 10:00:08 | day offer premium content, but that's not what we were |
| 16 | 10:00:11 | concentrating on at that time. |
| 17 | 10:00:13 | Q   Well, at -- at this time, were -- were |
| 18 | 10:00:15 | your -- was you or anyone else at YouTube going |
| 19 | 10:00:19 | through the site and removing all professional |
| 20 | 10:00:21 | content? |
| 21 | 10:00:23 | A   I can't -- I can't recall what we were doing |
| 22 | 10:00:25 | at the time. |
| 23 | 10:00:25 | Q   At -- do you recall at any point in time |
| 24 | 10:00:28 | anyone at YouTube doing that? |
| 25 | 10:00:32 | A   I -- I don't know. |

HURLEY, CHAD

| | |
|---|---|
| 10:00:33 | Q   You can't recall one way or the other? |
| 10:00:35 | A   I can't. |
| 10:00:41 | Q   Now, a little bit further down on that -- |
| 10:00:43 | on -- on that e-mail, you say, "When it blatantly |
| 10:00:45 | comes from a network or movie, we shouldn't mess |
| 10:00:48 | around." |
| 10:00:49 | What did you mean when you wrote that? |
| 10:00:57 | A   Again, kind of us assuming, you know, because |
| 10:01:01 | it was professional, it shouldn't be there and it -- |
| 10:01:06 | it wouldn't resonate with what the site's about. |
| 10:01:09 | That, you know, for us to be good business partners, |
| 10:01:15 | we'd have to try to do what's right, I mean. |
| 10:01:17 | Q   And -- and you felt that the thing that was |
| 10:01:19 | right was to -- to take down from the website stuff |
| 10:01:24 | that you felt was a copyrighted material that was up |
| 10:01:28 | there without authorization from the copyright owner? |
| 10:01:31 | A   Well, it was professional and we didn't know |
| 10:01:35 | if it had authorization, but like I was saying, we |
| 10:01:37 | came to realize that us doing it or users doing it, |
| 10:01:40 | we're making many mistakes; where, in fact, studios |
| 10:01:44 | and networks and advertisers, everyone was -- was |
| 10:01:46 | uploading content.  We didn't know who had the rights. |
| 10:01:49 | Q   Did you ever learn -- well, strike that. |
| 10:01:52 | Did you ever -- do you know whether you or |



**Schapiro Exhibit 159**

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

ATTORNEYS EYES ONLY

VIACOM INTERNATIONAL INC., COMEDY  )
PARTNERS, COUNTRY MUSIC            )
TELEVISION, INC., PARAMOUNT        )
PICTURES CORPORATION, and BLACK    )
ENTERTAINMENT TELEVISION, LLC,     )
                    Plaintiffs,    )
vs.                                ) Case No 1:07CV02103
YOUTUBE, INC., YOUTUBE, LLC,       )
and GOOGLE, INC.,                  )
                    Defendants.    )
_____)
THE FOOTBALL ASSOCIATION PREMIER   )
LEAGUE LIMITED, BOURNE CO., et al. )
on behalf of themselves and all    )
others similarly situated,         )
                    Plaintiffs,    )
vs.                                ) Case No. 07CV03582
YOUTUBE, INC., YOUTUBE LLC, and    )
GOOGLE, INC.,                      )
                    Defendants.    )
_____)

Deposition of VARUN KACHOLIA

Palo Alto, California

Friday, January 8, 2010

JOB NO. 18544

1

2          January 8, 2010

3           9:35 a.m.

4

5

6

7          VIDEOTAPED DEPOSITION OF VARUN KACHOLIA,

8     held at the offices of Wilson Sonsini Goodrich

9     & Rosati, 601 South California Avenue, Palo Alto,

10    California, pursuant to  Notice before Peppina Rayna

11    Thompson, Certified Shorthand Reporter of the State

12    of California.

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1

2          A P P E A R A N C E S.

3          FOR THE VIACOM PLAINTIFFS:

4          JENNER & BLOCK, LLP
           By:  SARAH MAGUIRE, ESQ.
5               ALLISON CROWE, ESQ.
                1009 New York Avenue, NW
6               Suite 900
                Washington, DC  20001
7               202.639.6000
                SMaguire@jenner.com

8

9          FOR THE CLASS PLAINTIFFS:

10              BERNSTEIN LITOWITZ BERGER & GROSSMAN
                By: BENJAMIN GALDSTON, ESQ.
11              12481 High Bluff Drive
                Suite 300
12              San Diego, California  92130
                858.720.3188
13              beng@blbglaw.com

14

15         FOR THE DEFENDANTS GOOGLE/YOUTUBE:

16              WILSON, SONSINI, GOODRICH & ROSATI
                By:  MICHAEL H. RUBIN, ESQ.
17              650 Page Mill Road
                Palo Alto, California  94304
18              650.493.9300
                mrubin@wsgr.com

19

20         ALSO PRESENT:

21              WILLIAM TRUELOVE

22              ARMANDO CARRASCO, Videographer

23

24

25

```
 1    16:00:00           MR. GALDSTON:  (Nods head)

 2                   Q   So there's --

 3                   A   They do not consult each other.  They work in

 4            parallel.

 5                   Q   Very good, that's helpful.

 6                       Similarly, on the right-hand side occasionally

 7            you see advertisements that are returned in response to

 8            a query.  And I'd ask the same question:  Is there some

 9            functional connection between the search functionality

10            and the advertising that's returned?

11                   A   It's -- do you mean advertising which is not

12            Promoted Videos?

13                   Q   Correct.

14                   A   What kind of advertising?

15    16:00:00       Q   Well, I can show you an example if that would

16            be helpful.

17                   A   Sure.

18                   Q   Okay.

19                       MR. RUBIN:  Again, this is beyond the scope of

20            the deposition.

21                       MR. GALDSTON:  Sir, I'll hand you what's been

22            previously marked in the deposition of Susie Ryder

23            Exhibit 13.

24                       (Plaintiffs' Exhibit 15 marked for

25            identification)
```

1    16:00:00        MR. GALDSTON:  If you would just take a moment

2                to look at that, I will represent to you that my

3                questions will only concern the advertisement on the

4                right-hand side.

5                        MR. RUBIN:  Are you done with 14?

6                        MR. GALDSTON:  I am done with 14, right.

7                        MR. RUBIN:  And 4?

8                        MR. GALDSTON:  Correct.

9                        THE WITNESS:  Sir, what is your question here?

10                       MR. GALDSTON:

11                   Q   It's really the same question that I was asking

12               about the promoted videos.

13                       When the user inputs a term, in this case

14               English Premier League 2008, is there functional

15   16:00:00    connection between the search engine technology and the

16               functionality that displays advertising on the

17               right-hand side?

18                       MR. RUBIN:  Objection, vague, outside the scope

19               of the deposition.  I'm going to allow the witness to

20               answer to establish that.

21                       THE WITNESS:  Okay.  Our advertising system is

22               a completely separate system.

23                       MR. GALDSTON:  Okay.

24                       THE WITNESS:  It runs independent of search.

25               And search runs independent to advertising.

1   16:00:00          MR. GALDSTON:  Okay.  What I'm trying to

2              understand is if within the search functionality is

3              there a component when a user inputs a term like

4              "English Premier League 2008" where the search

5              functionality says let's go capture some promoted videos

6              that are relevant or responsive to these search terms

7              and put them on the right-hand side margin of the

8              screen.

9                   MR. RUBIN:  Objection, asked and answered with

10             respect to prior exhibit.  The witness testified that

11             that was not the case, and I'm not going to allow him to

12             answer that question again.

13                  It's well outside the scope of the deposition.

14             Mr. Kacholia is here to testify about selecting and

15  16:00:00   ranking videos in response to search queries.  He's

16             testified --

17                  MR. GALDSTON:  Michael, it's really a

18             foundational question.

19                  MR. RUBIN:  Let me finish.

20                  MR. GALDSTON:  If there's no foundations to be

21             laid, it's beyond the scope.  I'm just getting a yes or

22             no.

23                  MR. RUBIN:  Let me finish the objection.

24                  He's testified with respect to a prior exhibit

25             that you are now were visiting that the other system is

1    16:00:00   separate, and he just testified that this system is

2               separate.

3                         MR. GALDSTON:  Okay.

4                         MR. RUBIN:  Okay.  He already -- he already --

5               you already established -- you already

6               established that the foundation didn't exist and you

7               have gone further.

8                         MR. GALDSTON:  I don't believe I have.  But I'd

9               like the witness to answer the question as opposed to

10              your testimony.

11                        MR. RUBIN:  He did.  He already did and you are

12              asking the question again.

13                        MR. GALDSTON:  No, it's a different question.

14                        THE WITNESS:  You have asked the same question

15   16:00:00   five times now.  You know, You can ask her to repeat the

16              same thing for you.

17                        MR. GALDSTON:  Indulge me on this one last

18              question, and we'll put the document away.

19                        THE WITNESS:  Sure.  Please ask it again.

20                        MR. GALDSTON:  Sure.

21              Q    When a user inputs a search term like "English

22              Premier League 2008" does the search functionality have

23              any functionality that determines whether, for example,

24              a promoted video is displayed on the right-hand side

25              versus an advertisement?

# Schapiro Exhibit 160

To:            "'Chad Hurley'" ███████████████████
From:          "Steve Chen" █████████████
Cc:            "'Jawed'" ████████████████
Bcc:
Received Date: 2005-04-04 09:03:42 GMT
Subject:       RE: deploying to live

Okay, cool.  I think we're all in agreement then.

So, Chad, if you can figure out a way to blend together the two, HotOrNot and Flickr, into one common site, let's hear it!  One problem I saw with the channels was that it's not just about channels but like all the features/payment models would be different too, you know?

It seems like you're pretty opposed to the idea of two different sites though.  Why is that?  I'm curious.

Yahoo of videos, I like it.

-s

-----Original Message-----
From: Chad Hurley ████████████████████
Sent: Sunday, April 03, 2005 10:37 PM
To: Steve Chen
Cc: 'Jawed'
Subject: Re: deploying to live

Yes, I see your point. I thought that our site would become the hub of short, personal videos and we could have channels to separate the differences. We would be the Yahoo of videos in a way.

Lets get together as soon as we can and really talk about this. But I think we are all on the same page to launch our current product as is. We need to figure out where we are going down the road.

-Chad


On Apr 3, 2005, at 8:12 PM, Steve Chen wrote:

> I agree with you on the most part.  The primary motivation for
> creating a new site is the intended audiences and consequently the
> payments model.  I feel that these differences are irreconciliable to
> the point where they can't be the same site.
>
> For HotOrNot, it's about dating.  The intended audience are hip
> college kids with raging hormones trying to hook up.  The payments
> model would be based on connections and interaction between members.
>
> For Flickr, it's about creativity and colleague acceptance.  The
> intended audience would be designers, artists, and creative folks.
> The payments model would be based on hosting, backups, and management
> abilities.
>
> Those differences are the motivators for me to not merge the two.

> What do
> you think?
>
> -s
>
> -----Original Message-----
> From: Chad Hurley █████████████████████
> Sent: Sunday, April 03, 2005 8:06 PM
> To: Steve Chen
> Cc: 'Jawed'
> Subject: Re: deploying to live
>
> I agree we launch the site as a dating/connection site, but evolve the
> site into more. I don't think we need to build another site
> necessarily.
>
> This is what I wanted to talk about at the next meeting. I don't know
> if Flickr would work as well for video. It's much more difficult to
> get the video on your computer, edit it, export it, and upload it to
> the web.
> Posting photos and typing daily blogs is sooo much more straight
> forward.
> Plus, photos are easier to browse, letting someone go through many in
> a short amount of time.
>
> If we solve some of these problems, I think it can work. But
> currently, I think we are going in the right direction... we are
> letting people put up short videos with a "purpose" and that add
> "value". Dating is a good start for our company, people want to see
> and be seen, and would be willing to pay to make a connection.
>
> We build on this idea of "purpose" and "value" videos to make more
> channels.
> Like, I was talking about at one meeting, a product channel would be a
> good extension... people would have the "purpose" of selling there
> product and we add "value" by hosting the video for the time the
> auction is live. So, for this channel, the payment scheme would be
> different, like a flat fee for each video hosted.
>
> Thoughts?
>
> -Chad
>
>
>
>
> On Apr 3, 2005, at 6:56 PM, Steve Chen wrote:
>
>> Chad, do you agree?
>>
>> If we agree, let's work on compiling a list of remaining big-ticket
>> todos we need to have for private 1.0 launch.
>>
>> In parallel, let's also start talking about the Flickr YouTube idea.
>> Chad,
>> do you have a good name for this already? :)
>>
>> -s

GOO001-02757266

>>
>> -----Original Message-----
>> From: Jawed ███████████████
>> Sent: Sunday, April 03, 2005 6:47 PM
>> To: Steve Chen
>> Cc: 'Chad Hurley'
>> Subject: RE: deploying to live
>>
>> That makes the most sense... agreed.
>>
>>
>> Jawed
>>
>> _____
>> Jawed Karim                    http://jawed.com/
>>
>> On Sun, 3 Apr 2005, Steve Chen wrote:
>>
>>> So, you guys, what do you think about the strategy of finishing up
>>> YouTube as a Video Dating site.  Then after we launch 1.0 YouTube,
>>> start brainstorming on all a Flickr-like Video site?
>>>
>>> -s
>>>
>>> -----Original Message-----
>>> From: Chad Hurley ██████████████████
>>> Sent: Sunday, April 03, 2005 6:21 PM
>>> To: Steve Chen
>>> Cc: 'Jawed'
>>> Subject: Re: deploying to live
>>>
>>> Yeah, I know what you mean, I noticed the email chatter dropped
>>> off...
>>> I was busy last week with house crap, Jawed's family is in town,
>>> plus he just quit PayPal and is enjoying his time off, and you are
>>> buying a new place. So, I think last week wasn't good for anyone.
>>>
>>> But yes, lets get the energy back up this week. Let's get together
>>> for another meeting... I have some ideas on why we will be different
>>> than flickr.
>>>
>>> -Chad
>>>
>>>
>>>
>>> On Apr 3, 2005, at 5:00 PM, Steve Chen wrote:
>>>
>>>> Okay, I wanted to start thinking about it.
>>>>
>>>> What are the availability for you guys?  I want to keep the energy
>>>> going for the next couple weeks until we launch.
>>>>
>>>> I'm going to be working on the convert scripts with the new
>>>> directory structure.  Let me know what else you guys want me to
>>>> look at.
>>>>
>>>> -s
>>>>

GOO001-02757267

>>>> -----Original Message-----
>>>> From: Jawed ███████████████
>>>> Sent: Sunday, April 03, 2005 11:20 AM
>>>> To: Steve Chen
>>>> Cc: Chad Hurley
>>>> Subject: Re: deploying to live
>>>>
>>>> I think we can look into it, but we definitely shouldn't buy or set
>>>> anything up. These are things that can be done on 24 hr notice.
>>>>
>>>> There will be a lot of options to discuss, so let's just wait until
>>>> we are actually nearly ready to deploy.
>>>>
>>>> We also still need a PayPal account to test the membership stuff
>>>> with.
>>>>
>>>> Jawed
>>>>
>>>> _____
>>>> Jawed Karim                    http://jawed.com/
>>>>
>>>> On Sun, 3 Apr 2005, Steve Chen wrote:
>>>>
>>>>> hey guys --
>>>>>
>>>>> should I start looking into getting us the live server and getting
>>>>> ready for deployment?
>>>>>
>>>>> -s
>>>>>
>>>>
>>>
>>>
>>>
>>
>

<?xml version="1.0" encoding="UTF-8"?>
<!DOCTYPE plist PUBLIC "-//Apple Computer//DTD PLIST 1.0//EN" "http://www.apple.com/DTDs/PropertyList-1.0.dtd">
<plist version="1.0">
<dict>
        <key>flags</key>
        <integer>8590195845</integer>
        <key>original-mailbox</key>
        <string>imap://m3092049@mail.chadhurley.com/INBOX/old-messages</string>
        <key>remote-id</key>
        <string>2750</string>
</dict>
</plist>