# SCHAPIRO DECLARATION EXHIBITS CONTINUED

# Schapiro Exhibit 180

1  Francis C.J. Pizzulli, State Bar No. 67151
   718 Wilshire Boulevard
2  Santa Monica, CA 90401
   Tel:  (310) 451-8020
3  Fax:  (310) 458-6156
   francis@pizzulli.com
4
   Attorney for Plaintiff
5  Robert Tur d/b/a Los Angeles News Service
6
7
8
9              **UNITED STATES DISTRICT COURT**
10             **CENTRAL DISTRICT OF CALIFORNIA**
11                                **CV06-4436 GAF**
                                                        **FMO**
12 ROBERT TUR d/b/a LOS ANGELES        Case No.
   NEWS SERVICE,
13
                                        COMPLAINT
14             Plaintiff,
                                        1. Copyright Act
15     v.                               2. California Unfair Competition
16                                         Law, Cal. Bus. & Prof. Code
   YOUTUBE, INC.,                          §17200 *et seq.*
17
               Defendant.
18                                      JURY DEMAND
19
20     Plaintiff Robert Tur, doing business as Los Angeles News Service, alleges
21 for his complaint as follows:
22                    **JURISDICTION AND VENUE**
23
24     1.     This action seeks damages and injunctive relief for copyright
25 infringement under the Copyright Act, 17 U.S.C. §101 *et seq.*, and for equitable
26 relief under the California Unfair Competition Law, Cal. Bus. & Prof. Code,
27
28 §17200 *et seq.* ("UCL").

2. This court has jurisdiction over this action under 28 U.S.C. §§1331 and 1338 (a)-(b).

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c).

**PARTIES**

4. Plaintiff Robert Tur is a citizen of the State of California, residing in the County of Los Angeles, State of California, and doing business therein as Los Angeles News Service.

5. Defendant YouTube, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of California, and residing in the Central District of California, within the meaning of 28 U.S.C. §1391(c).

**GENERAL ALLEGATIONS**

6. Los Angeles News Service ("LANS") is a duly accredited news gathering and reporting organization, owned and operated by Plaintiff Tur, which produces video and audio tape recordings of newsworthy events. LANS both operates and contracts to other news organizations and licenses and sells news video, videotapes, photographs, and other products used by other news operations for all media, including television, cable, motion picture, Internet and print media.

7. Plaintiff is a pioneering helicopter pilot and television journalist who for over the past 20 years has applied for and received numerous copyright

2

registrations for segments of newsworthy videotape footage. Among his awards for journalism and heroism, Plaintiff has received three television news Emmys, the Edward R. Morrow Award for broadcast excellence, and the George Foster Peabody Award.

8.    LANS' library is composed of over 10,000 hours of copyrightable audiovisual works, pursuant to 17 U.S.C §§101-102. Plaintiff's tape library includes works such as Tur's first-on-the-scene tracking of the ignominious 1994 freeway chase of  O.J. Simpson (PA-733-108). In 1992, the Turs reported exclusively over the intersection of Florence and Normandie the shocking attack upon Reginald Denny at the start of the 1992 Los Angeles riots (PA-576-704).

9.    LANS' library's value is exemplified by its licensing for retail sale of several compilations of its copyrighted works illustrative of Plaintiff's innovative helicopter news gathering in capturing and narrating the first live broadcast of high-speed vehicle pursuits, and in covering wild fires, earthquakes, and other natural disasters.

10.    Over the past two decades, Plaintiff's works have been infringed numerous times by various media companies. Plaintiff has had to expend millions of dollars to protect his copyright interests. In so doing, he has helped the copyright owners of newsworthy works generally in successfully litigating limitations to the assertion of "fair use" as an excuse  for pirating his copyrights.

3

COMPLAINT

*See, e.g., Los Angeles News Service v. CBS Broadcasting, Inc.*, 305 F.3d 924 (9th Cir. 2002); *Los Angeles News Service v. KCAL-TV Channel 9*, 108 F.3d 1119 (9th Cir. 1997); *Los Angeles News Service v. Tullo*, 973 F.2d 791 (9th Cir. 1992).

11.   In recent years Tur and other copyright owners faced the threat of even more pervasive infringements on a worldwide basis through peer-to-peer file-sharing software and websites distributing such software *gratis*. The pernicious threat of a "copyright-free" Internet poses a huge obstacle to small news organizations, if not also a significant problem for large media companies. However, in June 2005, the United States Supreme Court decided *MGM, Inc. v. Grokster Ltd.*, (___ U.S. ___, 125 S. Ct. 2764 (June 27, 2005)), which ostensibly provides clear limits to the abuse of copyright infringement via the Internet by means of contributory infringement.

12.   Nevertheless, Tur discovered in July 2006 that various of his copyrighted works were being distributed, copied, and publicly displayed throughout the world through Defendant YouTube's website, YouTube.com., without a license or his permission. These infringements are occurring on a substantial scale as measured by YouTube.com's own view counter feature. For example, PA-576-704, "Beating of Reginald Denny," has been infringed in excess of 5,500 times through at least three bootlegged version. In less than a week's time, one version alone had over 1,000 additional views downloaded.

13.    The other copyrighted works of Plaintiff infringed via YouTube.com include, but are not limited to, the following:

    a.    PA-576-702: "Beating of man in brown hatchback with rescue;"

    b.    PA-576-703: "Beating of man in white panel truck;"

    c.    PA-839-603: "Earthquake;" and

    d.    PA-862-544: "North Hollywood shootout."

14.    In May 2005, YouTube's predecessor entity, YouTube, LLC, had given a public preview of its website and service, which was designed to enable persons worldwide to share videos through the Internet.  Like Grokster -- and Napster before it-- YouTube directs its market development to the youthful user base familiar with sharing digitized audiovisual media, including copyrighted recordings, films and video – i.e., subject to protection under 17 U.S.C. §102 (whether registered or not, pursuant to 17 U.S.C. §§407-410).  YouTube explicitly courts the "new clip culture," describing itself as "the leading video entertainment destination on the Internet."  As one of YouTube's board members proclaims, "YouTube is at the forefront of a cultural shift in digital media entertainment and media distribution . . . ."

15.    YouTube.com is not merely *Grokster redux*.  For unlike the peer-to-peer file sharing systems at issue in the *Grokster* case, YouTube provides the

computer servers and "world-class data centers" which allow users to upload video clips directly to YouTube's servers. From there, they can be publicly viewed and copied through downloading by any user of the Internet, at no charge to either the uploader or the downloader. YouTube also allows video embedding, which lets users insert a YouTube video into "blogs, or other Websites where anyone can watch them." Thus, unlike the peer-to-peer file-sharing model, YouTube's business model allows it to have actual knowledge of what particular copyrightable files are being distributed, played and copied through its service.

16.    While substantial use of YouTube's website was and is made by users uploading their own homemade videos, which they impliedly license to YouTube, by the time of YouTube's official public release, it was becoming clear to its principals that its users were sharing more than just their own videos, and that membership stretched far beyond just circles of friends. For example, consumers viewed, millions of times, copyrighted material from major television networks, e.g., NBC, Fox, and cable networks, the same pool of clients that Plaintiff licenses his works to.

17.    Nevertheless, after incorporating in October 2005, Defendant, with the aid of experienced counsel and with funding from an established venture capital firm, went forward with its site's official public release on December 15, 2005.

18.   What was originally started in February 2005 -- pre-*Grokster* decision -- as a "personal video sharing service," has morphed and grown "into the leading video entertainment destination on the Internet," with people watching more than 70 million videos on the site daily, according to Defendant.   This massive dissemination is to a present average of 6 million unique users per day.  Its video clip holdings are enriched daily by more than 60,000 uploads of new copyrighted and uncopyrighted or licensed videos. Presently, YouTube is the most-visited video site on the Web.

19.   Moreover, the scope of the infringements is akin to a murky moving target, in that videos uploaded are not identified by copyright owner or registration number, but rather by the uploader's idiosyncratic choice of descriptive terms to describe the content of the video -- "tags" -- making it extremely impractical to identify Plaintiff's copyrighted works.

20.   Even though YouTube's website allows for non-infringing copying and public display of videos, it also necessarily intended to promote infringement of copyrighted works.  Defendant aimed to satisfy in part a known source of demand for copyright infringement, e.g., the market comprised of former Grokster video "sharers."  Among such market participants are the community of users who are against copyright protection, and who even have their videotaped diatribes for a "free" Internet displayed on YouTube.com as among the top most talked about

7

videos. Second, prior to its official public release, YouTube failed to develop any substantial filtering tools or other mechanisms to diminish the infringing activity. This failure continues to the present despite YouTube's expenditure of significant funds on developing world-class data centers while at the same time it knows it is being perceived by mainstream media as a "bootleg-heavy site." Third, YouTube has already commenced what it identifies as its strategy in "pursuing advertising as its business model," that is, a model which rewards high-volume use, including that of infringing uses, with greater advertising revenue, as revenue is correlated to usage. The more users YouTube is able to attract, the more pirated videos YouTube will be able to offer, and the more attractive YouTube will be to other potential users.

21.   YouTube enables this massive infringement to occur by providing Internet users with a fully integrated network of central computer servers to which they connect and which can handle about 110 video formats and 64 audio formats used by digital photo and video cameras and cell phones; and a continuously updated database of millions of copyrightable videos. Plaintiff's works, some of which are readily available for sale by consumers at retail video stores, are particularly vulnerable to being uploaded and "liberated" on the Internet by those members of YouTube's community who do not believe in copyright right conscious and deliberate copyright infringement, however, may be no less an

8

1    unlawful taking of property than garden-variety theft. *See Grokster, supra,* 125. S.

2    Ct. at 2793 (Breyer, J., concurring).

3

4                           **FIRST CLAIM FOR RELIEF**

5        **(Copyright Infringement – Direct, Contributory and Vicarious)**

6
7        22.    Plaintiff incorporates herein by reference paragraphs 1-22 set forth

8    above.

9
10       23.    An infringement occurs each and every time one of the millions of

11   YouTube users, without authorization of the copyright owner, uploads a

12   copyrightable video to YouTube.com's centralized servers, thus offering it for

13
14   distribution; and each time a YouTube user views or downloads another user's

15   video file from these servers into his or her own computer, resulting in an

16   unauthorized public performance and/or copy, or even a derivative work if there

17
18   has been a transformative use (e.g., crossing a soundtrack of the Simpsons singing

19   over the video component from an episode of *All in the Family*).

20
21       24.    Despite uninterrupted awareness of continuous infringing activity,

22   YouTube has willfully engaged and continues to engage in the business of

23
24   unauthorized reproduction, distribution, and/or public performance of copies of

25   copyrighted works, therefore infringing on Plaintiff's copyrights and his exclusive

26   rights under 17 U.S.C. §106.

27

28

25.    The infringement of each of Plaintiff's rights in and to the copyrightable videos constitutes a separate and distinct act of infringement.

26.    YouTube's conduct also constitutes contributory and vicarious copyright infringement of Plaintiff's copyrights.

27.    For each separate infringement, Plaintiff is entitled to damages and Defendant's profits, pursuant to 17 U.S.C. §504(b).

28.    Alternatively, Plaintiff is entitled to statutory damages with respect to each work willfully infringed in the amount of $150,000, or such other amounts as determined under 17 U.S.C. §504(c).

29.    Plaintiff is also entitled to his attorneys' fees and costs pursuant to 17 U.S.C. §505.

30.    YouTube continues to cause Plaintiff substantial irreparable injury, and Plaintiff has no adequate remedy at law. Plaintiff is entitled to preliminary and permanent injunctions prohibiting further direct, contributory and vicarious infringements of Plaintiff's copyrights, pursuant to 17 U.S.C. §502.

## SECOND CLAIM FOR RELIEF

### (California Unfair Competition Law Violations)

31.    Plaintiff incorporates herein by reference paragraphs 1-22 and 23-24 set forth above.

COMPLAINT

32. Defendant YouTube's website and business model incorporate as an integral feature a structured component of unfair and/or fraudulent business acts and/or practices, as prohibited by Cal. Bus. & Prof. Code §17200 *et seq.*

33. Plaintiff is entitled to preliminary and permanent injunctive and equitable relief, pursuant to Cal. Bus. & Prof. Code §17203.

WHEREFORE, Plaintiff prays for judgment against Defendant YouTube as follows:

1. On his First Claim for Relief, for damages according to proof; alternatively, for statutory damages with respect to each copyrighted work infringed, in the amount of $150,000 for willful infringement or as otherwise determined pursuant to 17 U.S.C. §504(c)

2. Further on his First Claim for Relief, that Defendant YouTube and its agents, servants, and all persons acting in concert with it be enjoined, during the pendency of this action and permanently from directly or indirectly contributorily or vicariously infringing in any manner any of Plaintiff's copyrightable works.

3. On his Second Claim for Relief, for preliminary and permanent equitable relief.

4. For prejudgment interest according to law.

5. For Plaintiff's attorneys' fees and costs in this action.

6.    For such other relief as the Court may deem proper.

Dated: July 13, 2006

*[signature]*

Francis C.J. Pizzulli
Attorney for Plaintiff
Robert Tur d/b/a Los Angeles
News Service

12

# JURY DEMAND

Plaintiff demands a trial by jury of all issues triable of right by a jury.

Dated:  July 13, 2006

_Francis C.J. Pizzulli_
Francis C.J. Pizzulli
Attorney for Plaintiff
Robert Tur d/b/a Los Angeles
News Service

13

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Robert Tur dba Los Angeles News Service | CASE NUMBER |
| PLAINTIFF(S) | CV06 - 4436  GAF  FMOx |
| v. | |
| YouTube, Inc. | |
| DEFENDANT(S). | **SUMMONS** |

TO:    THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney
Francis C.J. Pizzulli _____ , whose address is:

718 Wilshire Boulevard
Santa Monica, CA 90401

an answer to the ☒ complaint ☐____ _____amended complaint ☐ counterclaim ☐ cross-claim
which is herewith served upon you within _20_ days after service of this Summons upon you, exclusive
of the day of service. If you fail to do so, judgement by default will be taken against you for the relief
demanded in the complaint.

Dated: ___JUL 1 4 2006___

Clerk, U.S. District Court

By: ___NORA CULLEN  SEAL___
Deputy Clerk

*(Seal of the Court)*

**FRANCIS C. PIZZULLI, INC.**
Law Corporation

**DATE:**      July 17, 2006

| TO: | FAX NUMBER: |
|---|---|
| Karin B. Swope, Esq.<br>Wilson Sonsini Goodrich & Rosati | 206-883-2699 |
| **FROM:** | **FAX NUMBER:** |
| Francis C.J. Pizzulli | 310-458-6156 |

**NO. OF PAGES TRANSMITTED:**       **15**     **(including cover page)**

**RE:**   *Tur v. YouTube, Inc.*

Dear Ms. Swope:

      Enclosed please find a copy of the summons and complaint in *Tur v. YouTube, Inc.* filed on July 14.

      Will you accept service on behalf of YouTube?

      Please feel free to contact me with any questions you have in this matter.

      Thank you for your cooperation.


cc:    Mr. Robert Tur (via email)

IF YOU HAVE NOT RECEIVED THE INDICATED NUMBER OF PAGES OR IF THERE HAS BEEN SOME OTHER
TRANSMISSION PROBLEM, PLEASE CALL (310) 451-8020.

*718 Wilshire Boulevard Santa Monica California 90401-1708*
*Telephone (310) 451-8020 Fax (310) 458-6156*

# Schapiro Exhibits 181 - 210

# VIDEO EXHIBITS: FILED MANUALLY