UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------X

THE FOOTBALL ASSOCIATION PREMIER LEAGUE
LIMITED, BOURNE CO. (together with its
Affiliate MURBO MUSIC PUBLISHING, INC.),
THE MUSIC FORCE LLC, CAL IV ENTERTAINMENT
LLC, NATIONAL MUSIC PUBLISHERS' ASSOCIATION,
THE RODGERS & HAMMERSTEIN ORGANIZATION,
EDWARD B. MARKS MUSIC COMPANY, FREDDY
BIENSTOCK MUSIC COMPANY d/b/a BEINSTOCK
PUBLISHING COMPANY, ALLEY MUSIC CORPORATION,
X-RAY DOG MUSIC, INC., FEDERATION FRANCAISE
DE TENNIS, THE MUSIC FORCE MEDIA GROUP LLC,
SIN-DROME RECORDS, LTD., on behalf of
themselves and all others similarly situated,

         Plaintiffs,

              : 07 Civ. 3582(LLS)

    -against-

              : **OPINION AND ORDER**
YOUTUBE, INC., YOUTUBE, LLC, and     **DENYING CLASS**
GOOGLE INC.,              : **CERTIFICATION**

        Defendants.   :

-----------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/15/13

   Forty-five years ago Judge Lumbard of the United States

Court of Appeals for this Circuit called a case a "Frankenstein

monster posing as a class action." Eisen v. Carlisle & Jacquelin,

391 F.2d 555, 572 (2d Cir. 1968) (Judge Lumbard dissenting from

remand).[1]  The description fits the class aspects of this case.

_____

[1] Six years later the United States Supreme Court endorsed dismissal of the
class allegations, 417 U.S. 156 (1974), with a reference to Judge Lumbard's
characterization of it, id. at 169.

The putative class consists of every person and entity in the world who own infringed copyrighted works, who have or will register them with the U.S. Copyright Office as required, whose works fall into either of two categories: they were the subject of prior infringement which was blocked by YouTube after notice, but suffered additional infringement through subsequent uploads (the "repeat infringement class"), or are musical compositions which defendants tracked, monetized or identified and allowed to be used without proper authorization (the "music publisher class"). Plaintiffs assert that there are "at least thousands of class members" in the Repeat Infringement Class, and "hundreds" in the Music Publisher Class (Mem. in Supp. of Certification, undated but served Dec. 12, 2012, p. 20).

Plaintiffs offer no explanation of how the worldwide members of this proposed class are to be identified, how they are to prove copyright ownership by themselves or by their authorized agent, or how they will establish that defendants became aware of the specific video clips which allegedly infringed each of the potentially tens of thousands of musical compositions incorporated into specific videos.  Unless an exception applies, the Digital Millennium Copyright Act 17 U.S.C. § 512(c) ("DMCA") requires that YouTube have legal knowledge or awareness of the specific infringement, to be liable for it.  Viacom Int'l v.

2

YouTube, Inc., 718 F. Supp. 2d 514 (S.D.N.Y. 2010), aff'd, 676
F.3d 19 (2d Cir. 2012).  Defendant YouTube does not generate
infringing material: it offers a website on which others post
video clips, some of which infringe (e.g., by quoting or copying)
material in copyrighted works.  Thus YouTube is mainly alleged to
be secondarily liable for its users' uploading an infringing clip
onto the service.

     An idea of the scope of the materials involved may be
gleaned from the record in the parallel Viacom International,
Inc. v. YouTube case in this court (07 Civ. 2103), which
establishes that as of March 2010 ". . . site traffic on YouTube
had soared to more than one billion daily views, with more than
24 hours of new videos uploaded to the site every minute."  (676
F.3d at 28; 718 F. Supp. 2d at 518).

     The suggestion that a class action of these dimensions can
be managed with judicial resourcefulness is flattering, but
unrealistic.

     Generally speaking, copyright claims are poor candidates for
class-action treatment.  They have superficial similarities.  The
nature of their legal requirements and analyses are similar:
plaintiff must prove ownership of a copyright and the copyrighted
work infringed by a clip posted on YouTube by one who had no
authorization from the copyright owner or licensee to post it,

which is substantially similar to the copyrighted work and does not constitute a fair use of it, under circumstances in which YouTube had such knowledge or awareness of the infringing action that it should have expeditiously removed it, and failed to do so.  But that merely identifies some of the issues, each of which must be resolved upon facts which are particular to that single claim of infringement, and separate from all the other claims. Thus, accumulation of all the copyright claims, and claimants, into one action will not simplify or unify the process of their resolution, but multiply its difficulties over the normal one-by-one adjudications of copyright cases.

Much class litigation is justified by an economic need to combine cases whose costs would prevent individual litigation. In copyright litigation this factor is diminished: the availability of statutory damages is designed to give litigation value to each individual case.

- 1 -

Federal Rule of Civil Procedure 23 prescribes as prerequisites to class actions that

(a) **Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

4

> (1)   the class is so numerous that joinder
>        of all members is impracticable;
>
> (2)   there are questions of law or fact
>        common to the class;
>
> (3)   the claims or defenses of the
>        representative parties are typical of
>        the claims or defenses of the class;
>        and
>
> (4)   the representative parties will fairly
>        and adequately protect the interests of
>        the class.

Although ill-defined at this point, it may be taken as stated that the membership of the worldwide class is extremely numerous, so much so that not only their joinder individually in a single action is impracticable, but also that administration of their claims in a single legal action is impracticable. While one can often phrase questions of law or fact in ways that make them "common" to the class, in this case one can do that only at a level of generality which is useless in practical application.   As the Supreme Court stated in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011),

> "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.   Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."

5

(emphasis in original) (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-132 (2009)).

Here to make resolutions which advance the litigation will require the court to determine, for each copyrighted work claimed to have been infringed, whether a copyright holder gave notices containing sufficient information to permit the service provider to identify and locate the infringing material so that it could be taken down.  That requires individualized evidence. Further, the analysis required to determine "fair use," and other defenses, is necessarily specific to the individual case.

Issues foreseeably arising with repetitive frequency in the nature of this litigation are validity and ownership of the copyright, its licensing to and the authorization of the party asserting it (including by way of implied licenses and equitable estoppels) and amount of injury and damages, as well as the over-arching questions of substantial similarity and fair use. These issues arise from facts peculiar to each protected work and each claimed infringement of it, in a compartmented case differing from every other one.  These "dissimilarities within the proposed class" prevent the adjudication of claims en masse. One piece of music is unlike another, and is untouched by what infringes the other.

In brief, decisions of these individual factual issues do not resolve "an issue that is central to the validity of each one of the claims in one stroke" (Dukes, 131 S. Ct. at 2551) and the few truly common issues, which largely pertain to the defendants' conduct, do not predominate over individual issues.

Nor are the claims of any plaintiff typical of the claims of the class.  By their very nature, copyrightable works of art are each unique, and what infringes one work will probably have no effect upon another.  The facts which must be established to determine infringement are peculiar to each infringement, and are not "typical of the claims" of the class.  Each claim presents particular factual issues of copyright ownership, infringement, fair use, and damages, among others.

Further considerations affecting the propriety of class treatment are expressed in Rule 23(b), if the prerequisites quoted above are satisfied (which they are not):

> (b) **Types of Class Actions.**  A class action may be maintained if Rule 23(a) is satisfied and if:
>
> > (1) prosecuting separate actions by or against individual class members would create a risk of:
> >
> > > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

7

> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> > (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole; or
>
> > (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > > (D) the likely difficulties in managing a class action.

The individual and non-transferrable nature of the findings necessary to determine each infringement claim (discussed above) render subdivisions (1) and (2) inapplicable. Since, with

8

respect to subdivision (3) "questions affecting only individual members" predominate over common questions, a class action is not superior, but inferior to other methods of adjudication.  It would compress into one mammoth proceeding a universe of individual claims, each with its particular facts, issues and (in many cases foreign) law, much better handled in separate cases where each can receive individual attention.  As noted above, the usual objection to individual litigation is its expense; here that concern is palliated by the availability of statutory damages.  In any event, the unique nature of each work and of its infringement cannot be obliterated by its inclusion in a sea of other claims, and the defendants are entitled to contest each of them.

There is no particular desirability of concentrating the litigation in a single forum, and there are significant drawbacks. Questions of title, assignment, waiver and fair use are better handled in the jurisdictions (often foreign) in which they arise, rather than thousands of miles away.

- 2 -

Plaintiffs propose the certification of two subclasses and two "issues" classes.  Each of them consists of all persons and

entities in the world (with minor exclusions of the defendants and their principals, subsidiaries, affiliates, assigns, legal representatives, etc.) that own the copyright which has been registered, or will be registered before final judgment in this action, or does not require registration, in a work that was publically distributed or performed on the YouTube website after April 15, 2005, and either

    1. for the "Repeat Infringement Class":

        (a) submitted to defendants a notification of infringement pursuant to 17 U.S.C. §512(c)(3) or its equivalent for a particular work, which caused defendants to remove or block the infringing activity identified in the notice, but as to which additional infringements occurred through subsequent uploads that could have been identified and blocked using text-based or digital-fingerprinting (or other) screening tools used by defendants.

    Or,

    2. for the "Music Publisher Class":

        (a) own and/or control one or more copyrighted musical composition(s) available on the YouTube site, which composition(s) defendants tracked, monetized, or otherwise identified in any recorded form, including because YouTube identified a sound recording of the composition using its text-based or audio-fingerprinting screening tools; and

        (b) such musical composition was used without proper authorization on the YouTube site.

Pls.' Notice of Mot. at pp. 1-2.

(a)

The Repeat Infringement Class

This "class" depends, for the validity of its claim, on the proposition that YouTube could readily have identified, by the use of its own screening tools, the identity and location of later infringements of works whose earlier claimed infringements had been removed based on a takedown notice.   But the class plaintiffs were parties to the appeal, and are bound by the Second Circuit's determination, Viacom, 676 F.3d at 40-41, which addressed that very assertion, which it identified as made by "the class plaintiffs."

The Court of Appeals considered this assertion's conflict with § 512(m)'s provision that "safe harbor protection cannot be conditioned on a 'service provider monitoring its service or affirmatively seeking facts indicating infringing activity'". It held that "For that reason, YouTube cannot be excluded from the safe harbor by dint of a decision to restrict access to its proprietary search mechanisms" (id. at 41).

This leaves little or nothing to the claim[2] of the repeat infringement class.   Even if they were to prevail on the claim,

---

[2] At various points, e.g. their Reply Mem. p. 5, plaintiffs imply that YouTube's takedown of a clip was a tacit concession or determination that it infringed.   That is not so.   It was compliance with a statute which itself contemplates reposting 10-14 days after the subscriber who posted it objects to its removal, unless litigation has been started.   See 17 U.S.C. § 512(g)(2)(C).

each of the thousands of them would have to proceed on the individual issues of infringement.

(b)

The Music Publisher Class

In this class, as in the repeat infringement class, even if the "safe harbor" defense were overcome, each plaintiff will have to show that it owns the copyright in the infringed work (under the applicable foreign law in the instances of foreign plaintiffs), that the copying was not authorized and was not a fair use, and the nature and amount of damages (depending at least in part on when the individual work's copyright was registered).

Plaintiffs say that the burden is much simpler for this class than in the usual case, because of the special business characteristics of the class definition, and that may be so. But the showing must still be made, and one plaintiff's will be different from another's.  That means no claim is typical of another in the sense of providing common answers, and leaves the "class" no more than a diverse and unmanageable aggregation of individual claims, better dealt with separately.

(c)

The Two "Issues" Classes

12

The issues with respect to which these class certifications are sought are (i) whether defendants have the right and ability to control infringing activity on their website and received a direct financial benefit attributable to that activity, and (ii) whether defendants' unilateral syndication of clips to third parties is "by reason of the storage at the direction of a user." Pls.' Br. at 3.

Those issues are dealt with at considerable length in my April 18, 2013 opinion in Viacom (which was not available to the parties when they were briefing this "class" motion) at 2013 WL 1689071, *5-9 (right and ability to control) and *9-11 (syndication).

There is no need to certify classes of plaintiffs to consider them further.

**CONCLUSION**

The motion for class certification is denied.

So ordered.

DATED:    New York, New York
          May 15, 2013

_Louis L. Stanton_
LOUIS L. STANTON
U. S. D. J.

13